**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BOBAN JOVANOVIC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO.: 1:07-CV-00927 (CKK)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **US-ALGERIA BUSINESS COUNCIL** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JOHN DOES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT US-ALGERIA BUSINESS COUNCIL'S MOTION TO DISMISS
THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant US-Algeria Business Council ("US-ABC"), by counsel, respectfully moves that the Court dismiss Plaintiff's Amended Complaint because Plaintiff fails to state a claim upon which relief can be granted.

The grounds for this motion are fully set forth in the accompanying Memorandum of Points and Authorities in Support of US-Algeria Business Council's Motion to Dismiss the Amended Complaint for Failure to State a Claim Upon which Relief Can be Granted and Declaration of Kevin H. Metz, Esq.  The US-ABC also has attached a Proposed Order for the Court's consideration.

Respectfully submitted,

/s/ Kevin H. Metz
Kevin H. Metz
D.C. Bar No. 494087
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Kevin.Metz@lw.com

Alan E. Kraus, admitted *pro hac vice*
Kira S. Dabby, admitted *pro hac vice*
LATHAM & WATKINS LLP
One Newark Center, 16th Floor
Newark, NJ 07101
Telephone: 973-639-1234
Facsimile: 973-639-7298
Alan.Kraus@lw.com
Kira.Dabby@lw.com

*Attorneys for Defendant US-Algeria Business Council*

**PROOF OF SERVICE**

I, Kevin H. Metz, counsel for the US-Algeria Business Council and a member of the Bar of this Court, hereby certify that on this 13th day of December, 2007, I caused true and correct copies of the US-ABC's **MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**, **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF US-ALGERIA BUSINESS COUNCIL'S MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** and the **DECLARATION OF KEVIN H. METZ, ESQ. AND EXHIBITS** to be served by Federal Express on Plaintiff Boban Jovanovic at the following address:

Boban Jovanovic
440 Magie Ave
Elizabeth, NJ 07208

Dated:  December 13, 2007            /s/ Kevin H. Metz
                                     Kevin H. Metz

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BOBAN JOVANOVIC, | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO.: 1:07-CV-00927 (CKK)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| US-ALGERIA BUSINESS COUNCIL | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| JOHN DOES, | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF US-ALGERIA BUSINESS COUNCIL'S MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

---

Kevin H. Metz
D.C. Bar No. 494087
LATHAM & WATKINS LLP
555 11th Street, N.W, Suite 1000
Washington, D.C. 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Kevin.Metz@lw.com

*Attorney for Defendant US-Algeria Business Council*

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.................................4

      A.     Factual Background .....................................................................4

      B.     Procedural History .......................................................................6

ARGUMENT .........................................................................................................8

   I.     PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON
        WHICH RELIEF CAN BE GRANTED.................................................8

   II.    PLAINTIFF'S CLAIMS ARE TIME-BARRED UNDER THE DISTRICT
        OF COLUMBIA STATUTE OF LIMITATIONS. ...............................9

   III.   EVEN IF THEY WERE NOT TIME-BARRED, PLAINTIFF'S CLAIMS
        SHOULD STILL BE DISMISSED. ...................................................12

      A.     Plaintiff's Fraud, Misrepresentation, And Deceit Count Must Be
           Dismissed For Failure To State A Claim.....................................12

           1.     Plaintiff Fails to Plead that He Detrimentally Relied on
                 Allegedly Fraudulent Statements.....................................13

           2.     Plaintiff Fails to Allege that Any "Statement" Regarding
                 Donald Wilhelm as Chairman of the US-ABC was False. ............14

           3.     Plaintiff Cannot Allege that the Election of Mr. Wilhelm or
                 the US-ABC's Tax Status Caused Him Injury. .............................15

      B.     Plaintiff's Tortious Interference With Economic Relations,
           Contractual Relations, And Prospective Business Advantage Count
           Must Be Dismissed For Failure To State A Claim And Lack Of
           Standing. ....................................................................................15

           1.     Plaintiff Lacks Standing to Assert Tortious Interference
                 Claims For Harms Suffered By Genesis and IIC..........................15

           2.     Plaintiff's Claims for Tortious Interference with Contract
                 and Prospective Business Advantage Fail to State a Claim..........17

                a.     The Letter of Intent ...........................................18

                b.     Plaintiff's Employment Contracts......................22

                c.     Plaintiff's Sotrama Contract ..............................23

      C.     Plaintiff's Defamation, Libel, And Slander Count Must Be
           Dismissed For Failure To State A Claim.....................................23

D.      Plaintiff's Intentional Infliction Of Emotional Distress Count Must Be Dismissed For Failure To State A Claim. ............................................29

E.      Plaintiff's Conspiracy Claims Must Be Dismissed For Failure To State A Claim. ...........................................................................................31

F.      Plaintiff Is Not Entitled To Injunctive Or Declaratory Relief. .................32

CONCLUSION.........................................................................................................................33

TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*A.I. Trade Finance, Inc. v. Petra International Banking Corp.*,
  62 F.3d 1454 (D.C. Cir. 1995) ...................................................................9

*Alade v. Borg-Warner Protective Services Corp.*,
  28 F. Supp. 2d 655 (D.D.C. 1998) ...............................................24, 26, 27

*Alicke v. MCI Commc'ns Corp.*,
  111 F.3d 909 (D.C. Cir. 1997) .................................................................13

*Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*,
  383 F. Supp. 2d 32 (D.D.C. 2005) ......................................................20, 22

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) ...................................................................1, 8, 9

*Browning v. Clinton*,
  No. 98-1991, 2001 U.S. Dist. LEXIS 24537 (D.D.C. Feb. 8, 2001) ....................4, 25

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002) .........................................................4, 10, 25

\* *Cadet v. Draper & Goldberg, PLLC*,
  No. 05-2105, 2007 U.S. Dist. LEXIS 72504 (D.D.C. Sept. 28, 2007) ............12, 13, 31

*Caudle v. Thomason*,
  992 F. Supp. 1 (D.D.C. 1997) .................................................................28

*Chambliss v. Nat'l R.R. Passenger Corp.*,
  No. 05-2490, 2007 U.S. Dist. LEXIS 11522, (D.D.C.
  Feb. 20, 2007) .................................................................17, 20, 21, 29, 30

*Continental Group, Inc. v. Justice*, 536 F. Supp. 658 (D. Del. 1982) ................15

*Crisafi v. Holland*, 655 F.2d 1305 (D.C. Cir. 1981) ........................................8

*Dove v. Washington Metropolitan Area Transit Authority*,
  402 F. Supp. 2d 91 (D.D.C. 2005) ............................................................32

*Dye v. U.S.*,
  No. 06-1372, 2007 U.S. Dist. LEXIS 71449 (D.D.C. Sept. 27, 2007) ...................8, 13

*Genesis International Holdings v. Amerada Hess Corp.*,
  No. 05-CV-4487, 2006 U.S. Dist. LEXIS 94863 (D.N.J. May 1, 2006) ......................7

*Genesis International Holdings v. Northrop Grumman Corp.*,
  No. 06-3566, 2007 U.S. Dist. LEXIS 15205 (3d Cir. June 26, 2007) ......................2, 7

*Genesis International Holdings v. US-Algeria Business Council*,
  No. 05-CV-4487, 2006 U.S. Dist. LEXIS 25141 (D.N.J. Apr. 28, 2006) ....................7

*Genesis International Holdings v. US-Algeria Business Council*,
No. 05-CV-4487, 2006 U.S. Dist. LEXIS 28240 (D.N.J. Apr. 27, 2006) ....................7

\*      *Government Relations, Inc. v. Howe*,
No. 05-1081, 2007 U.S. Dist. LEXIS 4952 (D.D.C. Jan. 24, 2007).........17, 18, 20, 21

*Grandison v. Wackenhut Services, Inc.*,
No. 07-754, 2007 U.S. Dist. LEXIS 70459 (D.D.C. Sept. 25, 2007).........................8

*Gross v. Davis*,
No. 01-1486, 2003 U.S. Dist. LEXIS 3427 (D.D.C. Mar. 3, 2003) ..........................22

*Henthorn v. Department of Navy*,
29 F.3d 682 (D.C. Cir. 1994).................................................................................8

*Holmes v. Sec. Investor Prot. Corp.*,
112 S. Ct. 1311 (1992).........................................................................................16

*Jankovic v. International Crisis Group*,
494 F.3d 1080 (D.C. Cir. 2007) .......................................................................5, 9, 10

\*      *Johnson v. Long Beach Mortgage Loan Trust 2001-4*,
451 F. Supp. 2d 16 (D.D.C. 2006) ...................................................................9, 10, 11

*Jovanovic v. Wilentz, Goldman and Spitzer*,
C.A. No. 95-21321 (Bankr. D.N.J. May 5, 1998), *aff'd*, 263 F.3d 158 (3d Cir.
2001) ................................................................................................................2

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) ................................................................................4

\*      *Labovitz v. Washington Times Corp.*,
900 F. Supp. 500 (D.D.C. 1995)........................................................................15, 16

*Larue v. U.S.*,
No. 06-61, 2007 U.S. Dist. LEXIS 50567 (D.D.C. July 12, 2007) .........................8, 9

*Marsh v. Hollander*,
339 F. Supp. 2d 1 (D.D.C. 2004).................................................................6, 14, 24, 25

\*      *Mastro v. Potomac Electric Power Co.*,
447 F.3d 843 (D.C. Cir. 2006) ...................................................................24, 27, 28

*Ned Chartering & Trading, Inc. v. Republic of Pakistan*,
No. 98-2626, 2000 U.S. Dist. LEXIS 22174 (D.D.C. Dec. 4, 2000).........................18

*Nichols v. Agency for International Development*,
18 F. Supp. 2d 1 (D.D.C. 1998)..............................................................................32

*Papasan v. Allain*, 478 U.S. 265 (1986) .........................................................................4

*Stained Glass Overlay v. Jovanovic*,
59 F.3d 180 (Fed. Cir. 1995)..................................................................................2

*Stith v. Chadbourne & Parke, LLP,*
    160 F. Supp. 2d 1 (D.D.C. 2001) ........................................................................25, 27

*Thomas v. News World Commc'ns,*
    681 F. Supp. 55 (D.D.C. 1988) ...........................................................................10, 11

\*    *Washington Metropolitan Area Transit Authority v. Quik Serve Foods, Inc.,*
    Nos. 04-838/04-687, 2006 U.S. Dist. LEXIS 24510
    (D.D.C. Apr. 28, 2006) .................................................................................17, 19, 20

*Washington v. Thurgood Marshall Academy,*
    No. 03-2570, 2006 U.S. Dist. LEXIS 40318 (D.D.C. June 19, 2006)...................12, 13

*Wis. Gas Co. v. Federal Energy Regulatory Commission,*
    758 F.2d 669 (D.C. Cir. 1985) ....................................................................................32

**STATE CASES**

*Almy v. Grisham,*
    639 S.E.2d 182 (Va. 2007)...........................................................................................24

\*    *Blodgett v. University Club,*
    930 A.2d 210 (D.C. 2007) .............................................................24, 26, 27, 28, 30

*Bond v. Serano,*
    566 A.2d 47 (D.C. 1989) .............................................................................................11

*Buckley v. Trenton Sav. Fund Society,*
    544 A.2d 857 (N.J. 1988).............................................................................................29

*CASCO Marina Development, L.L.C. v. D.C. Redevelopment Land Agency,*
    834 A.2d 77 (D.C. 2003) .............................................................................................17

*Carey v. Edgewood Management Corp.,*
    754 A.2d 951 (D.C. 2000) ...........................................................................................29

*Century-21 v. Elder,*
    391 S.E.2d 296 (Va. 1990)...........................................................................................17

*D.C. Area Community Council, Inc. v. Jackson,*
    385 A.2d 185 (D.C. 1978) ...........................................................................................19

*Drejza v. Vaccaro,*
    650 A.2d 1308 (D.C. 1994) ...................................................................................29, 31

*Dresser v. Sunderland Apts. Tenants Association,*
    465 A.2d 835 (D.C. 1983) ...........................................................................................15

*Duffy v. Duffy,*
    881 A.2d 630 (D.C. 2005) ...........................................................................................29

*Georgetown Entertainment Corp. v. District of Columbia,*
    496 A.2d 587 (D.C. 1985) ...........................................................................................18

*Govito v. W. Jersey Health System, Inc.*,
    753 A.2d 716 (N.J. Super. Ct. App. Div. 2000).........................................................24

*Heard v. Johnson*,
     810 A.2d 871 (D.C. 2002) ..........................................................................26, 27

*Homan v. Goyal*,
    711 A.2d 812 (D.C. 1998) ..............................................................................30

*Jack Baker, Inc. v. Office Space Development Corp.*,
    664 A.2d 1236 (D.C. 1995) .............................................................................19

*Jonathan Woodner Co. v. Breeden*,
    665 A.2d 929 (D.C. 1995) ..............................................................................30

*Jovanovic v. Swiss Airlines*,
    No. 03-2686, 2004 WL 255657 (3d Cir. Jan. 26, 2004) ................................................2

*Kitt v. Capital Concerts, Inc.*,
    742 A.2d 856 (D.C. 1999) ..............................................................................15

*Kramer Associates, Inc. v. Ikam, Ltd.*,
    888 A.2d 247 (D.C. 2005) ..............................................................................18

*McManus v. MCI Commc'ns Corp.*,
    748 A.2d 949 (D.C. 2000) ....................................................................17, 18, 22

*Morton v. National Medical Enterprises*,
    725 A.2d 462 (D.C. 1999) ..............................................................................10

*Moss v. Stockard*,
    580 A.2d 1011, 1024 (D.C. 1990) .................................................................24, 26

*Paul v. Howard University*,
    754 A.2d 297 (D.C. 2000) ..............................................................................31

*Powell v. District of Columbia Housing Authority*,
    818 A.2d 188 (D.C. 2003) ..............................................................................12

*Printing Mart-Morristown v. Sharp Electrics Corp.*,
    563 A.2d 31 (N.J. 1989)................................................................................17

*Rohrbaugh v. Kreidler*, 71 Va. Cir. 298, 302 (Va. Cir. Ct. 2006) ....................................24

*Sayyad v. Fawzi*,
    674 A.2d 905 (D.C. 1996) ..............................................................................11

*State v. Qwest Commc'ns International, Inc.*,
    904 A.2d 775 (N.J. Super. Ct. App. Div. 2006)........................................................12

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ............................................................................16

*Weaver v. Grafio,*
  595 A.2d 983 (D.C. 1991) ..................................................................................30

*Weishapl v. Sowers,*
  771 A.2d 1014 (D.C. 2001) ..........................................................................31, 32

*Winn v. Aleda Construction Co.,*
  315 S.E.2d 193 (Va. 1984).................................................................................12

## FEDERAL RULES

Fed. R. Civ. P. 8 ...................................................................................................9

Fed. R. Civ. P. 9 .................................................................................................12

Fed. R. Civ. P. 17 ...............................................................................................14

## STATE STATUTES

D.C. Code § 12-301(4) (2001)..............................................................................9

## OTHER

Restatement (Second) of Contracts § 172 (1981) ...............................................13

Defendant US-Algeria Business Council ("US-ABC" or "Defendant") submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss the Amended Complaint for Failure to State a Claim Upon which Relief Can be Granted.

## PRELIMINARY STATEMENT

In his Amended Complaint, *pro se* plaintiff Boban Jovanovic contends that a single allegedly defamatory letter, written on the letterhead of the US-ABC and sent by email to members of its Board of Directors, caused him to lose <u>$6.2 billion</u> in potential profits from the management of a multi-billion dollar highway development project in Algeria and associated opportunities. He does not contend that he personally had a contract to serve as the manager of that highway development project; rather, he claims only that a small, closely-held business of which he was a shareholder and officer had a May 2003 "letter of intent" to discuss the project with the Algerian Government. Nor does he allege that he or his company had negotiated or reduced to writing the material terms of a development contract or that the Algerian Government backed out of a deal because of anything the US-ABC did. Instead, he simply asserts that the allegedly defamatory letter, sent to him on September 14, 2004, caused him to lose $6.2 billion because the letter was sent, on September 15, 2004, to the Algerian Ambassador, who was an Honorary President of the US-ABC, and Mr. Jovanovic's company was not awarded the highway development project. But Mr. Jovanovic's *ipse dixit* is not near enough to justify such a leap of logic.

In short, this is a textbook example of a claim that, no matter what legal label Mr. Jovanovic attaches to it, is implausible on its face. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965-66 (2007) (holding to survive motion to dismiss, plaintiff must state claim for relief that is "plausible on its face"). Indeed, this is not the first time Mr. Jovanovic has brought this

claim.  In 2005, he filed in the District of New Jersey a nearly identical set of claims on behalf of himself and two affiliated companies against the US-ABC and more than 25 members of the US-ABC or US-ABC personnel.  That lawsuit was dismissed against most of the defendants because the court concluded that the allegations against them were merely conclusory; others (including the US-ABC) were dismissed for lack of personal jurisdiction.[1]  Hence, Mr. Jovanovic seeks a better result from this Court.[2]  He is not entitled to one.

First and foremost, every single one of Mr. Jovanovic's claims in this Court is time-barred.  He did not file his defamation claim within the District of Columbia's one-year statute of limitations period for defamation claims.  Moreover, because all his other causes of action are inextricably intertwined with his defamation claim -- because they all rest on the assertion that the allegedly defamatory letter injured him in various ways -- those other claims are likewise time-barred.  Plaintiff's filing of his New Jersey action did not toll the statute; accordingly, he is too late in this Court.

---

[1]  On appeal, the Third Circuit affirmed the dismissal of Mr. Jovanovic's claims against all of the defendants except Northrop Grumman Corporation.  *Genesis Int'l Holdings v. Northrop Grumman Corp.*, No. 06-3566, 2007 U.S. Dist. LEXIS 15205 (3d Cir. June 26, 2007).  With respect to Northrop Grumman, the Third Circuit held that Mr. Jovanovic had "adequately alleged" that he was personally defamed and that Northrop Grumman could be vicariously liable for the activities of its employees who drafted and disseminated the allegedly defamatory letter.  Mr. Jovanovic's defamation claim against Northrop Grumman is proceeding in the District of New Jersey.

[2]  Mr. Jovanovic is fairly described as a persistent *pro se* plaintiff. S*ee, e.g., Jovanovic v. Wilentz, Goldman and Spitzer*, C.A. No. 95-21321, Slip. Op. (Bankr. D.N.J. May 5, 1998) (dismissing Debtor/Third Party-Plaintiffs Boban and Rosa Jovanovic's Complaint in its entirety; Complaint had been filed against twenty-two (22) separate defendants and asserted forty-eight (48) separate causes of action, including breach of contract, legal malpractice, contributory negligence, deceit/nondisclosure, antitrust, libel and slander, and mental anguish), *aff'd*, 263 F.3d 158 (3d Cir. 2001); *Stained Glass Overlay v. Jovanovic*, 59 F.3d 180 (Fed. Cir. 1995) (affirming fine against Mr. Jovanovic in the amount of $34,999.98 for contempt of the Court's permanent injunction based on an earlier judgment against Mr. Jovanovic for willful patent infringement); *Jovanovic v. Swiss Airlines*, No. 03-2686, 2004 WL 255657 (3d Cir. Jan. 26, 2004) (affirming dismissal of Mr. Jovanovic's claim that because he was not permitted to take two carry-on bags onto an economy class seat of a Swiss Airlines flight, he was entitled to damages for feeling threatened, embarrassed and discriminated against).

That is reason enough to dismiss the Amended Complaint.  But it is not the only reason: on the merits, the Amended Complaint does not state a cause of action upon which relief ever could be granted.  Plaintiff's fraud claim must fail because he misunderstands the tort of fraud -- he cannot allege reliance on alleged misrepresentations about him and his company when his actions, *e.g.*, immediately hiring a lawyer, show he never believed they were true.  Likewise, his tortious interference claims rest on alleged harms suffered by Genesis International Holdings ("Genesis") and International Infrastructure Consortium ("IIC")[3], and Plaintiff, as a shareholder, officer, or employee, has no standing to recoup alleged corporate losses.  In addition, his unfounded hope of winning a dream construction management project is insufficient, as a matter of law, to constitute a valid business expectancy, much less a contract.  Plaintiff fares no better with defamation since any statements by the Chairman of the US-ABC to US-ABC Board members and personnel regarding membership in that organization are protected by the common interest privilege.  Plaintiff's intentional infliction of emotional distress count similarly fails for want of extreme or outrageous conduct.  Finally, Plaintiff alleges no facts to support his naked assertion of a conspiracy to harm him.

In short, Plaintiff's untimely claims that a single letter and email entitle him to billons of dollars in damages cannot stand.  The Amended Complaint must be dismissed.

---

[3]     According to the Amended Complaint, Plaintiff is a shareholder and "as per special need an acting President" of Genesis and IIC.  (AC at ¶¶ 19-20.)

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    Factual Background[4]

All of Plaintiff's claims arise out of a September 14, 2004 letter and September 15, 2004 email concerning Genesis' membership in the US-ABC.  Plaintiff alleges that Donald Wilhelm, then the Chairman of the US-ABC[5], wrote a "fraudulent letter" requesting that Genesis voluntarily withdraw from the US-ABC because Genesis "inappropriately claim[ed] some manner of affiliation with a number of individuals and entities that are or were members of the US-ABC" and had an "uneven history" of paying its financial obligations to the US-ABC.  (AC at Exh. A.)  Plaintiff alleges he believed these "misrepresentations" were true even though they concerned the conduct of a company of which he was the President -- and yet he admits that he "immediately" hired an attorney "to ascertain the reason for the attack" against him.  (*Id.* at ¶¶ 80-81).

Plaintiff now seeks to blame the US-ABC for the letter; however, he previously alleged that Donald Wilhelm acted on his own in sending the letter.  Plaintiff's Second Amended Complaint in the District of New Jersey alleges that Mr. Wilhelm's

> letter was in fact written above and beyond Chairman's prescribed
> duty . . . and in fact was written without official authorization from

---

[4]    For purposes of this motion to dismiss, we assume, as we must, the truth of the factual allegations set forth in the Amended Complaint.  *See, e.g., Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The Court does not have to accept as true conclusory allegations, however.  And where, as here, the complaint is unusually lengthy and convoluted, the Court should be especially wary of legal conclusions styled as factual allegations.  *Browning v. Clinton*, No. 98-1991, 2001 U.S. Dist. LEXIS 24537, at *23 (D.D.C. Feb. 8, 2001) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)), *rev'd* on other grounds, 292 F.3d 235, 246 (D.C. Cir. 2002).

[5]    According to the Amended Complaint, the US-ABC is "an International business council, constituted in September 2002, as a District of Columbia 501(c)(4)/(6) non-profit corporation, for the purpose of developing closer economic and political ties between Countries of United States and Algeria."  (AC at ¶ 2.)

> the US-ABC Board, to Chairman of US-ABC, and executed
> expressly in his capacity as Chairman of US-ABC to plaintiffs
> Genesis and Bob Jovanovic.

(Metz Decl. Exh. 1 (New Jersey Second Amended Complaint ("NJ SAC") at ¶ 163).)[6]

Plaintiff's new story is that the letter was the conspiratorial product of the US-ABC and

John Does.  (AC at ¶¶ 51-53.)  Plaintiff also asserts in this action that the US-ABC and Northrop

Grumman employees conspired to transmit the letter, via a September 15, 2004 email, to US-

ABC Board members and the Government of Algeria.[7]  (*See id.* at ¶¶ 60-62.)

Plaintiff also contends that Mr. Wilhelm was "fraudulently elect[ed]" as Chairman

because only US-ABC Board members were notified of the election.  (*See id.* at ¶¶ 46-47.)

Plaintiff further claims that the US-ABC was "fraudulently and illegally enacted" as a District of

Columbia social welfare organization.  (AC at ¶¶ 35-37.)  Plaintiff does not explain how he was

injured in any way by Mr. Wilhelm's election or the tax status of the US-ABC.

Plaintiff alleges that the September 14, 2004 letter and September 15, 2004 email

(together, the "September 2004 correspondence") damaged his reputation, caused him emotional

distress, and interfered with various business relationships, including a Letter of Intent for the

development and construction of an East-West Highway in Algeria.  (*Id.* at ¶¶ 100, 105.)  He

also alleges interference with his purported employment and licensing agreements with Genesis

and others, all relating to the East-West Highway project.  (AC at ¶¶ 25, 28, 98-100.)  However,

the so-called Letter of Intent ("LOI") between Genesis and the Algerian Ministry of Civil Works,

---

[6]     Citations to "Metz Decl." refer to the Declaration of Kevin H. Metz, dated December 13,
2007, submitted herewith.  The Court may consider Plaintiff's NJ SAC without
converting this motion into one for summary judgment because the NJ SAC is public
record information filed by Plaintiff in another action.  *See Jankovic v. Int'l Crisis Group*,
494 F.3d 1080, 1088 (D.C. Cir. 2007) (holding court could consult extrinsic public record
information from party's filings in separate action without converting Rule 12 motion to
Rule 56 summary judgment motion).

[7]     Plaintiff previously admitted, before the District of New Jersey, that the Government of
Algeria received the email not from the US-ABC, but from the Algerian Ambassador,
who was the US-ABC's Honorary President.  (Metz Decl. Exh. 1 (NJ SAC at ¶ 190).)

dated May 5, 2003, is, at most, an agreement to have further discussions, and the Algerian

Government reserved the right to reject any proposal from Genesis for any reason or no reason at

all.  (*See* Metz Decl. Exh. 2 (LOI).)[8]  That LOI says only that the Ministry and Genesis jointly

intend:

> a.    To review the proposal for East-West
>       highway BOT [Build Operate Transfer]
>       project on September 30th, 2003 or other
>       mutually agreed date, soon thereafter.
>
> b.    To enter into a BOT concession agreement,
>       if all the terms of the proposed are
>       acceptable to the GOVERNMENT.

(*See id.*)  Notably, Plaintiff does not allege how the September 2004 correspondence could

interfere with a proposal and negotiations that were to take place in the fall of 2003, nearly a year

*before* the letter and email were sent.  Nor does Plaintiff allege that his supposed employment or

licensing agreements were ever breached.

Finally, Plaintiff claims that as a result of the alleged fraud, tortious interference,

defamation, conspiracy, and emotional distress, he is entitled to $6.2 billion in compensatory

damages, $18.6 billion in treble damages (although none of his causes of action involve statutory

trebling), and injunctive and declaratory relief.  (*Id.* at ¶¶ 94, 107, 114-115, 124-26.)

### B.    Procedural History

This action arises out of Plaintiff's unsuccessful lawsuit commenced on September 14,

2005 (a year to the day after the date of the September 14, 2004 letter at issue) in the United

States District Court for the District of New Jersey.  Plaintiff filed that action *pro se*, on behalf of

---

[8]    The Letter of Intent is purportedly, but not actually, attached as Exhibit A to Plaintiff's
       Amended Complaint.  (AC at ¶ 23.)  For that reason, we have attached it to the Metz
       Declaration.  The Court may consider the LOI without converting this motion into one
       for summary judgment because Plaintiff's Amended Complaint refers to this document
       and it is central to Plaintiff's tortious interference claims.  *See Marsh v. Hollander*, 339 F.
       Supp. 2d 1, 5 n.4 (D.D.C. 2004); (*see also* AC at ¶ 23.)

himself, Genesis, and IIC against the US-ABC and twenty-six defendants, who were all members

of or personnel associated with the US-ABC.  (*See* Metz Decl. Exh. 1.)  After Plaintiff's three

attempts at drafting a valid complaint, Judge Dennis M. Cavanaugh dismissed the NJ SAC

against the majority of the defendants for failure to state a claim upon which relief can be

granted.  *Genesis Int'l Holdings v. Amerada Hess Corp.*, No. 05-CV-4487, 2006 U.S. Dist.

LEXIS 94863 (D.N.J. May 1, 2006).  Judge Cavanaugh dismissed Plaintiff's NJ SAC against the

US-ABC and the remaining defendants for lack of personal jurisdiction and held that Plaintiff

could not represent the entity plaintiffs *pro se*.  *Genesis Int'l Holdings v. US-Algeria Business

Council*, No. 05-CV-4487, 2006 U.S. Dist. LEXIS 28240 (D.N.J. Apr. 27, 2006); *Genesis Int'l

Holdings v. US-Algeria Business Council*, No. 05-CV-4487, 2006 U.S. Dist. LEXIS 25141

(D.N.J. Apr. 28, 2006).[9]

On May 18, 2007, Plaintiff commenced this action, which alleges twelve of the same

claims and arises out of the same facts as the New Jersey action.  Plaintiff initially sued twelve

defendants, including the US-ABC.  On September 12, 2007, Plaintiff filed an Amended

Complaint, removing all defendants save the US-ABC and John Does, and demanding $18.6

billion dollars in treble damages as well as declaratory and injunctive relief.  Plaintiff's Amended

Complaint raises the following claims:

> 1) Fraud, Misrepresentation and Deceit and Conspiracy to Defraud
> and Conspiracy to Fraudulently misrepresent the truth and
> Conspiracy to Deceit, 2) Tortuous [sic] Interference with
> Economic Relations and Tortuous [sic] Interference with
> Contractual Relations and Tortuous [sic] Interference with
> Prospective Business Advantage and Conspiracy to Tortuously
> [sic] Interfere with Economic relations, Conspiracy to Tortuously
> [sic] interfere with Contractual Relations and Conspiracy to
> Tortuously [sic] Interfere with Prospective Business Advantage, 3)

---

[9]    The Third Circuit affirmed these dismissals with the exception of Plaintiff's defamation
claim against Northrop Grumman Corporation.  *Genesis Int'l Holdings v. Northrop
Grumman Corp.*, No. 06-3566, 2007 U.S. Dist. LEXIS 15205 (3d Cir. June 26, 2007);
s*ee also supra* note 1.

Defamation, Libel and Slander, 4) Intentional Infliction of
Emotional Distress, and Conspiracy to Inflict Emotional Distress,
and 5) Injunctive and Declaratory Relief

(AC at p. 1.)

## ARGUMENT

## I.     PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

"A *pro se* complaint, like any other, must state a claim upon which relief can be granted by the court." *Dye v. U.S.*, No. 06-1372, 2007 U.S. Dist. LEXIS 71449, at *14 (D.D.C. Sept. 27, 2007) (quoting *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).  The plaintiff must allege something beyond a "mere possibility" to survive a motion to dismiss:  He must state a claim for relief that is "plausible on its face."  *See id.* (quoting *Twombly*, 127 S. Ct. at 1965-66); *see also Grandison v. Wackenhut Servs., Inc.*, No. 07-754, 2007 U.S. Dist. LEXIS 70459, at *13 (D.D.C. Sept. 25, 2007) (applying *Twombly* to intentional infliction of emotional distress claim).

Furthermore, the plaintiff must "furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Larue v. U.S.*, No. 06-61, 2007 U.S. Dist. LEXIS 50567, at *7 (D.D.C. July 12, 2007) (quoting *Twombly*, 127 S. Ct. at 1964-65).  While the Court must draw all inferences in a plaintiff's favor, it need not accept inferences unsupported by facts or legal conclusions cast as factual allegations.  *See Dye*, 2007 U.S. Dist. LEXIS 71449, at *15.  This applies equally to *pro se* plaintiffs.  *See id.*; *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994).

Plaintiff cannot state a plausible claim for relief.  His hodgepodge of allegations, many of them internally inconsistent, are rambling and illogical at best.  They are rife with conclusory assertions of law, apparently designed to parrot the legal elements of his causes of action but bereft of facts that could conceivably (much less plausibly) support such claims.  (*See, e.g.,* AC

at ¶¶ 118-121.)  Most certainly, Plaintiff has not "nudged [his] claims across the line from conceivable to plausible."  *See Twombly*, 127 S. Ct. at 1974.  Plaintiff's 135-paragraph Amended Complaint -- despite four previous attempts in the District of New Jersey and this Court -- is anything but a "short and plain statement" of an actionable claim.  Fed. R. Civ. P. 8(a)(2).  In spite of its length, it lacks "enough heft" to state a claim for relief.  *See Larue*, 2007 U.S. Dist. LEXIS 50567, at *7 (quoting *Twombly*, 127 S. Ct. at 1966).

Moreover, on its face, the Amended Complaint leaves no doubt that all of Plaintiff's claims are time-barred.  The linchpin of each of those claims is the assertion that Plaintiff was defamed and injured by the September 2004 correspondence.  Thus, all of his claims are subject to a one-year statute of limitations and had to be filed in this Court by September 15, 2005 at the latest.  This action was not filed until May 18, 2007, more than 20 months too late.  That is more than sufficient reason to dismiss the Amended Complaint with prejudice.

## II.    PLAINTIFF'S CLAIMS ARE TIME-BARRED UNDER THE DISTRICT OF COLUMBIA STATUTE OF LIMITATIONS.

Statute of limitations issues can be resolved on a motion to dismiss.  *See Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 38 (D.D.C. 2006) (stating statute of limitations arguments are properly considered via Rule 12(b)(6) motion).  District of Columbia law governs statute of limitations issues in diversity cases brought in federal courts in this District.  *See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995).

The one-year statute of limitations for libel and slander claims in the District of Columbia applies to defamation claims.  D.C. CODE § 12-301(4) (2001); *Jankovic,* 494 F.3d at 1086. Moreover, "'[w]hen a cause of action with no prescribed statute of limitations is 'intertwined' with one having a prescribed limitations period, District of Columbia courts apply the prescribed

9

period.'" *Johnson*, 451 F. Supp. 2d at 48 (quoting *Browning v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002)). This intertwining doctrine prevents "claims turning on identical elements of proof from being allowed under one label but not another." *Id.* at 49.

"The one-year period [for libel and slander] has [] been imposed to govern actions for torts, like the intentional infliction of emotional distress, that are dependent on the same personal interests infringed by the intentional torts expressly subject to § 12-301(4)." *Thomas v. News World Commc'ns*, 681 F. Supp. 55, 72-73 (D.D.C. 1988) (holding emotional distress and defamation claims arising out of same occurrence were "intertwined" and subject to one-year limitation) (internal quotations omitted); *see also Jankovic*, 494 F.3d at 1086 (applying one-year limitations period to tortious interference claim intertwined with defamation claim); *Browning*, 292 F.3d at 244 (same); *Morton v. Nat'l Medical Enters.*, 725 A.2d 462, 471 (D.C. 1999) (holding fraud claims were intertwined with medical malpractice claims for statute of limitations purposes).

Plaintiff's defamation claim, arising from the September 2004 correspondence, was well more than two years old by the time Plaintiff filed this suit in May 2007. (AC at ¶¶ 108-113.) His defamation claim therefore cannot survive.

Moreover, Plaintiff's claims of intentional infliction of emotional distress, tortious interference, and fraud are "intertwined" with his defamation claim. Those claims all arise out of the same September 2004 correspondence that is the heart of his defamation claim. (AC at ¶ 78 (referencing alleged fraudulent misrepresentations from September 2004 correspondence); ¶¶ 101-102 (alleging September 2004 correspondence "interfered with all plaintiff Jovanovic's Economic, Business and Contractual relations as well as certain plaintiff Jovanovic's Prospective Business advantage"); ¶ 121 ("The emotional distress suffered by the plaintiff at the time and

immediately after receiving and reading the defendants US-ABC September 14, 2004 letter was

so severe and of such nature that no reasonable person could be expected to endure it.").)

Because they are all intertwined, Plaintiff's fraud, intentional infliction of emotional distress, and

tortious interference claims are all subject to -- and barred by -- the one-year statute of

limitations barring his defamation claim.  And because the limitations period for civil conspiracy

claims is governed by the same statute of limitations as the underlying tort, Plaintiff's conspiracy

claims likewise are barred.  *See Thomas*, 681 F. Supp. at 73.

Plaintiff was plainly aware of these claims during the limitations period: although he

waited until the next to last day, he timely filed suit against Defendant raising these claims on

these exact facts in the District of New Jersey.  But the filing of the New Jersey action does not

save the untimely Complaint in this Court: well-settled law in this District precludes any

argument that the filing of that suit tolled the statute of limitations.  *See Sayyad v. Fawzi*, 674

A.2d 905, 906 (D.C. 1996) ("This court has previously rejected the equitable tolling doctrine as

applied to good-faith mistakes of forum, where a party files suit in the proper forum only after a

statute of limitations has run, but where the defendant was on notice of the claim as of the initial

filing in an improper forum that occurred within the limitations period."); *Bond v. Serano*, 566

A.2d 47, 49 (D.C. 1989) (rejecting equitable tolling of statute of limitations based on filing of

previous suit where defendant had notice and was not prejudiced); *Jankovic*, 494 F.3d at 1087

("[T]he District of Columbia Court of Appeals has made clear that 'good faith mistakes of

forum' do not qualify for equitable tolling even if 'the defendant was on notice of the claim as of

the initial filing in an improper forum that occurred within the limitations period.'"); *Johnson*,

451 F. Supp. 2d at 53 ("The statutes of limitations applicable to Plaintiff's claims are [] not

subject to equitable tolling because Plaintiff filed an earlier lawsuit that put Defendants on notice

of her claims.").  In sum, there is no basis for equitable tolling of the statute of limitations in these circumstances.  Because Plaintiff's claims are time-barred, this case should be dismissed in its entirety, with prejudice.

## III.  EVEN IF THEY WERE NOT TIME-BARRED, PLAINTIFF'S CLAIMS SHOULD STILL BE DISMISSED.

On their merits (or, more precisely, their lack of merit), each of Plaintiff's causes of action fails.  Plaintiff has not pled -- because he cannot -- the essential elements of any of his claims.  For that reason also, the Amended Complaint should be dismissed with prejudice.

### A.    Plaintiff's Fraud, Misrepresentation, And Deceit Count Must Be Dismissed For Failure To State A Claim.

Under District of Columbia law, a claim for fraud must allege 1) a false misrepresentation; 2) of a material fact; 3) made with knowledge of its falsity; 4) with the intent to deceive; and 5) action taken in reliance on the representation.  *See Powell v. District of Columbia Housing Auth.*, 818 A.2d 188, 197 (D.C. 2003).[10]  Moreover, a fraud claim must be stated "with particularity."  Fed. R. Civ. P. 9(b).  Rule 9(b) requires a pleader to state the time, place, and content of the false misrepresentation, the fact that was misrepresented, and what was retained or given up in reliance on the fraud.  *Cadet v. Draper & Goldberg, PLLC*, No. 05-2105, 2007 U.S. Dist. LEXIS 72504, at *14 (D.D.C. Sept. 28, 2007).  Measured by those standards, Plaintiff's fraud claim falls woefully short and should be dismissed.  *See Washington v. Thurgood Marshall Academy*, No. 03-2570, 2006 U.S. Dist. LEXIS 40318, at *30 (D.D.C. June 19, 2006) (holding failure to prove any element causes fraud claim to fail).

---

[10]    The District of Columbia's law of fraud is consistent with fraud law in New Jersey and Virginia; therefore, no choice of law analysis is necessary.  *See State v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 784 (N.J. Super. Ct. App. Div. 2006); *Winn v. Aleda Constr. Co.*, 315 S.E.2d 193, 195 (Va. 1984).

1.     **Plaintiff Fails to Plead that He Detrimentally Relied on Allegedly Fraudulent Statements.**

A plaintiff's reliance on allegedly fraudulent statements must be reasonable or justifiable. *See id.* at *30. "If the recipient knows that the assertion is false or should have discovered its falsity by making a cursory examination, his reliance is clearly not justified and he is not entitled to relief." *Cadet*, 2007 U.S. Dist. LEXIS 72504, at *39 (quoting Restatement (Second) of Contracts § 172 cmt. B (1981)); *see also Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997) (dismissing claim alleging fraud in "rounding-up" billing policy because no reasonable customer could believe that every phone call terminated in full minute increments).

Plaintiff baldly alleges that the September 2004 correspondence contains fraudulent misrepresentations; however, he cannot reasonably claim he believed those statements were true. The crux of those alleged misrepresentations was that Genesis had misrepresented its affiliations with certain individuals and had an "uneven history" of honoring its financial obligations. As its "per special need acting President", Mr. Jovanovic had to know whether those statements were true or not. Indeed, Plaintiff claims that he "immediately" hired an attorney to threaten litigation against the US-ABC for the "attack" against Plaintiff. That threat plainly rested on the assertion that the statements in the September 2004 correspondence were false. (*See* AC at ¶ 81; *see also* Metz Decl. Exh. 1 (NJ SAC at ¶ 174 (alleging "September 2004, in response to Grumman September, 15, 2004 offending letter, Genesis responded . . . totally refuting all allegations within said letter")).) Plaintiff's belief that the allegedly fraudulent statements were false belies any claim that he was misled.

Moreover, Plaintiff nowhere alleges that he relied *to his detriment* on the September 2004 correspondence. He does not claim that he did or did not take any action because he believed the alleged misrepresentations in the September 2004 correspondence to be true -- which he plainly

did not believe. His hiring an attorney to represent him certainly is not detrimental reliance. Nor, obviously, is Genesis' failure to win the highway management project, which was a decision made by the Algerian Government, not Mr. Jovanovic. In short, because Plaintiff cannot contend that he took any detrimental action as a result of relying on the September 2004 correspondence, his fraud claim must fail.

2.  **Plaintiff Fails to Allege that Any "Statement" Regarding Donald Wilhelm as Chairman of the US-ABC was False.**

Plaintiff also cannot credibly or plausibly allege that "statements" concerning Mr. Wilhelm's status as Chairman of the US-ABC were false. (*See* AC at ¶ 78(a), (b), (f).) Plaintiff does not dispute that Mr. Wilhelm was elected as Chairman; he challenges only the propriety of that election because all members of the US-ABC were not solicited to vote. (*See* AC at ¶¶ 45-48.) Thus, the "statement" that Mr. Wilhelm was Chairman was not false. Moreover, Plaintiff's contention that Mr. Wilhelm was elected improperly because not all US-ABC members voted is demonstrably wrong. Plaintiff has either mis-read or not read all of the US-ABC By-Laws. Those By-Laws provide that only Board members, not all "57 US-ABC Members", vote for US-ABC officers and must be notified of those elections. (*See* Metz Decl. Exh. 3 (US-ABC By-Laws at Art. V, §§ 2-3; Art. IV, § 3 ).)[11] Among other reasons, because Mr. Wilhelm's election was not "fraudulently noticed," Plaintiff's fraud claim based on Mr. Wilhelm's designation as the US-ABC Chairman necessarily fails.[12]

---

[11]    The Court may consider the US-ABC By-Laws without converting this motion into one for summary judgment because Plaintiff's Amended Complaint refers to them and they are central to Plaintiff's claim for fraud. *See Marsh*, 339 F. Supp. 2d at 5 n.4; (*see also* AC at ¶¶ 40(h), 41-44.)

[12]    Similarly, Plaintiff's NJ SAC undermines his ability to allege the falsity of statements regarding certain individuals' denial of relationships with Plaintiff. (*Contrast* AC at ¶¶ 54-55, 78(c)-(d) *with* Metz Decl. Exh. 1 (NJ SAC at ¶¶ 158, 161-162, 183, 185, 308(g), 308(i)(b)-(c) (alleging Ali Jazairy, Lamine Djilani, and Northrop Grumman actually did deny having personal relationships with Genesis or Plaintiff)).)

3.   **Plaintiff Cannot Allege that the Election of Mr. Wilhelm or the US-ABC's Tax Status Caused Him Injury.**

To recover for fraud in the District of Columbia, proof of damages caused by the alleged fraud is "critical."  *See Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 861 (D.C. 1999) (quoting *Dresser v. Sunderland Apts. Tenants Ass'n*, 465 A.2d 835, 839 (D.C. 1983)).  The "*sine qua non* of any recovery for misrepresentation is a showing of pecuniary loss proximately caused by reliance on the misrepresentation."  *Id.* (quoting *Day v. Avery*, 548 F.2d 1018, 1029 (D.C. Cir. 1976)).  Here, even assuming for the sake of argument that Mr. Wilhelm was improperly elected, Plaintiff still fails to allege how that caused him damage.  Similarly, Plaintiff's failure to allege injury also dooms his fraud claim based on alleged misrepresentations concerning the US-ABC's corporate tax status.  (*See* AC at ¶¶ 36-37.)  Thus, not only did he not detrimentally rely -- Plaintiff also cannot allege that these purportedly fraudulent statements caused him harm.

Because Plaintiff cannot allege that any "fraudulent misrepresentations" were misrepresentations, on which he relied, to his detriment, his fraud claim must fail.

B.   **Plaintiff's Tortious Interference With Economic Relations, Contractual Relations, And Prospective Business Advantage Count Must Be Dismissed For Failure To State A Claim And Lack Of Standing.**

1.   **Plaintiff Lacks Standing to Assert Tortious Interference Claims For Harms Suffered By Genesis and IIC.**

"A shareholder has no personal or individual right of action against a third party for acts causing injury to a corporation."  *Cont'l Group, Inc. v. Justice*, 536 F. Supp. 658, 660 (D. Del. 1982).  Under Delaware law[13], a stockholder cannot bring a direct, as opposed to a derivative, action unless he can claim an injury "*independent* of any alleged injury to the corporation."

---

[13]   Under the internal affairs doctrine, whether a direct or derivative suit must be brought is determined by the law of the state in which the corporation at issue is incorporated.  *See Labovitz v. Washington Times Corp.*, 900 F. Supp. 500, 503 (D.D.C. 1995).  Both Genesis and IIC are incorporated in Delaware, (*see* AC at ¶¶ 19-20,) so Delaware law governs this issue.

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (emphasis added).  The stockholder must allege that he is entitled to relief without reference to corporate harm.  *Id.*

For that reason, stockholder actions seeking damages for a decrease in stock value may not be maintained as direct suits because "the *indirect* injury to the stockholders aris[es] out of the harm to the corporation [and] comes about solely by virtue of their stockholdings."  *Id.* at 1037; *see also Labovitz v. Washington Times Corp.*, 900 F. Supp. 500, 504-05 (D.D.C. 1995) (granting partial motion to dismiss because Delaware law required plaintiffs' claims for lost stock value to be asserted derivatively).

By a parity of reasoning, officers, employees, and licensors of corporations cannot sue directly for damages incidental to harm suffered by a corporation.  Simply put, their injuries are too remote to be actionable where, as here, those injures are merely the indirect consequence of a wrong committed against the corporation.  *See, e.g.*, *Holmes v. Sec. Investor Prot. Corp.*, 112 S. Ct. 1311, 1316 n.10, 1318-19 (1992).

Here, Plaintiff is not the real party in interest under Federal Rule of Civil Procedure 17(a).  *See Labovitz*, 900 F. Supp. at 501 n.2.  His tortious interference claims -- and purported damages of $6.2 billion (before trebling) -- are for share value, profits, or employee compensation lost as a result of Genesis not winning the East-West Highway project.  (*See* AC at ¶¶ 99-100, 130-128.)  Even Plaintiff's alleged injuries to his relationships with Sotrama are ancillary to the corporate harms since they are based on Sotrama's inability to sell cultured marble and stone to the East-West Highway.  (*See* AC at ¶¶ 98, 100(c).)  Because all of these alleged injuries are incidental to, and not independent of, harm to Genesis, Sotrama, and IIC, Plaintiff lacks standing to assert these claims.

2.    **Plaintiff's Claims for Tortious Interference with Contract and Prospective Business Advantage Fail to State a Claim**[14]

To allege tortious interference with contract, a plaintiff must plead "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach." *Gov't Relations, Inc. v. Howe*, No. 05-1081, 2007 U.S. Dist. LEXIS 4952, at *27 (D.D.C. Jan. 24, 2007) (quoting *CASCO Marina Dev., L.L.C. v. D.C. Redevelopment Land Agency*, 834 A.2d 77, 83 (D.C. 2003)).[15]

Tortious interference with contract and tortious interference with prospective business advantage are identical, save only the element of an existing contract versus a protectible business expectancy. *Id.* at *28 n.4. A valid business expectancy requires a "commercially reasonable anticipation of a future business relationship." *Washington Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*, Nos. 04-838/04-687, 2006 U.S. Dist. LEXIS 24510, at *17 (D.D.C. Apr. 28, 2006) (citing *McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 957 (D.C. 2000)). It is not enough that the plaintiff subjectively hoped for or even expected a business opportunity to ripen into a profitable business relationship. An expectancy has to be objectively reasonable and probable. For example, *Washington Metropolitan* concerned a lease agreement with a right of purchase. *Id.* at *2. When the WMATA prematurely terminated Quik Serve's lease, Quik Serve alleged that the WMATA tortiously interfered with its prospective business advantage in developing, purchasing, and selling the property. *Id.* at *4-5, 16. The court held that Howard

---

[14]    This Court does not recognize causes of action for "Tortuous [sic] Interference with Contractual Relations" or "Tortuous (sic) Interference with Economic Relations." *Chambliss v. Nat'l R.R. Passenger Corp.*, No. 05-2490, 2007 U.S. Dist. LEXIS 11522, at *92 (D.D.C. Feb. 20, 2007) (recognizing only claims for tortious interference with contract and intentional interference with prospective business advantage or business relationship).

[15]    There is no conflict with the tortious interference laws of New Jersey and Virginia, so no choice of law analysis is necessary. *See Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989); *Century-21 v. Elder*, 391 S.E.2d 296, 298 (Va. 1990).

University's inquiries into purchasing the leased property (that Quik Serve did not yet own) did not create a commercially reasonable anticipation of a future business relationship between Quik Serve and Howard University. Because the relationship was "speculative and not probable," the court dismissed the claim. *Id.* at *18. Plaintiff's claims here are even more flawed.

### a.     The Letter of Intent

Plaintiff appears to allege that the September 2004 correspondence tortiously interfered with Genesis' Letter of Intent ("LOI") relating to a construction project for an East-West Highway in Algeria. (AC at ¶¶ 27, 101-03.) This claim must fail because Plaintiff has not, and cannot, allege (1) the existence of a contract or business expectancy, (2) breach, (3) intentional interference, (4) causation, or (5) damages.

As a preliminary matter, the LOI was with Genesis, not Plaintiff. This deficiency alone should preclude his tortious interference claim. *See Gov't Relations*, 2007 U.S. Dist. LEXIS 4952, at *29 ("[I]nterference with contractual relations . . . only arises . . . if there is interference with a contract between the *plaintiff* and some third party.") (emphasis added) (citations omitted); (*see also* AC at ¶ 23 ("May 05, 2003, Algeria Government and *Genesis* execute an official LOI agreement") (emphasis added).)

"The interpretation of contract documents is a question of law." *Georgetown Entm't Corp. v. District of Columbia*, 496 A.2d 587, 590 (D.C. 1985); *see also Ned Chartering & Trading, Inc. v. Republic of Pakistan*, No. 98-2626, 2000 U.S. Dist. LEXIS 22174, at *13 (D.D.C. Dec. 4, 2000) ("[C]ontract interpretation is a question of law, not fact."). A valid contract requires an (1) agreement to all material terms and (2) the parties' intention to be bound. *Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247, 251 (D.C. 2005). Failure to agree to all material terms means that no contract was formed. *Duffy v. Duffy*, 881 A.2d 630, 634 (D.C. 2005). Thus, it is well-settled that "agreements to agree" and similar documents leaving

discussion of material terms to future negotiation are not enforceable contracts. *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238-39 (D.C. 1995) (citing *D.C. Area Cmty. Council, Inc. v. Jackson*, 385 A.2d 185 (D.C. 1978) (holding letter that lacked essential terms and expressed conditions precedent was not valid contract)).

By its plain language, the LOI was no more than a non-binding preliminary agreement to have further discussions. It was not, itself, a contract, and Plaintiff admits as much. (*See* AC at ¶ 29.) Indeed, it is an overstatement even to characterize it as a letter of intent. The LOI specifically stated that the Government of Algeria and Genesis intended, at most, to "enter into a BOT concession agreement, <u>if all the terms of the proposal are acceptable to the</u> <u>GOVERNMENT</u>." (*See* Metz Decl. Exh. 2 (emphasis added).) The extent of the Algerian Government's "obligation", if any, under the LOI was to review a proposal made by Genesis and to enter into a concession agreement with Genesis if, and only if, the Government found all of the terms of the proposal to be acceptable. The LOI does not include any terms that are necessary for a binding contract, such as a description of the project, Genesis' duties, a timetable for completion of the terms or the amount of Genesis' compensation. The LOI is not a contract.

Nor is the LOI a protectible business expectancy. Plaintiff's allegations describe his hope and dream for a multi-billion-dollar construction deal -- not a "commercially reasonable" expectation. *See Washington Metro. Area Transit Auth.*, 2006 U.S. Dist. LEXIS 24510, at *17. Simply put, Plaintiff's preliminary discussions with the Government of Algeria are not enough to establish a probable future business relationship. *See id.* at *18 (holding discussions and inquiries into real property did not create valid business expectancy).

Moreover, Plaintiff cannot plead any interference by the US-ABC that prevented the LOI from ripening into a contract. *See Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F.

19

Supp. 2d 32, 43-44 (D.D.C. 2005) (holding allegations of defamatory statements that purportedly interfered with contract are inadequate absent evidence of breach).  By its very terms, the LOI required Genesis to finalize a proposal for the transportation project no later than September 30, 2003 -- nearly a full year before the September 2004 correspondence.  Thus, timing alone makes Plaintiff's tortious interference claims not plausible.  That is confirmed by Plaintiff's New Jersey Complaint, where he acknowledged that Genesis' performance under the LOI was completed in mid-2003, making it logically impossible for the sending of a September 2004 letter and email to have interfered with any potential agreement.  (*See* Metz Decl. Exh. 1 (NJ SAC at ¶ 97 ("January, 2002-July 2003 Genesis & IIC Consortium management develops and presents a first proposal East-West Highway, financial and operational architectures, and delivers a major, ten volume project development architecture, initial proposal presentation, to Algeria ministry of Civil works in Algeria")).)

Nor did Plaintiff plead intent on the part of the US-ABC.  Intentional procurement of a breach requires a strong showing of intent.  *Gov't Relations*, 2007 U.S. Dist. LEXIS 4952, at *30.  Evidence of a general intent that the conduct will interfere with a contract or prospective business advantage is insufficient; a plaintiff must "demonstrate strong intent to disrupt the business expectancy through egregious conduct."  *Washington Metro. Transit Auth.*, 2006 U.S. Dist. LEXIS 24510, at *17 (citing *Bannum*, 383 F. Supp. 2d at 45); *see also Chambliss*, 2007 U.S. Dist. LEXIS 11522, at *96-97 (holding plaintiff failed to adduce evidence that defendant acted with requisite intent to interfere with contract).  Plaintiff has not (and cannot) allege that Defendant specifically intended to thwart Genesis' ability to secure the Highway project when Mr. Wilhelm asked Genesis to withdraw from the US-ABC.  Likewise, Plaintiff has not identified any motive for the US-ABC to interfere with Genesis' or his business opportunities in

Algeria.  The US-ABC is a trade association; it is not a business, anxious to steal a valuable

business opportunity away from Genesis or Plaintiff.  It makes no sense that the US-ABC would

engage in egregious and malicious misconduct to interfere with a business opportunity of

Genesis or Plaintiff for no reason at all.

Plaintiff also failed adequately to plead causation.  His speculation that the September

2004 correspondence triggered events that ultimately caused his harm is woefully inadequate.

*See Chambliss*, 2007 U.S. Dist. LEXIS 11522, at *96-97 (rejecting allegation that the

defendant's conduct "set off a chain of events" leading to the plaintiff's contractual damages).  In

truth, Plaintiff's "causation chronology" is inherently implausible.  According to Plaintiff, the

Algerian Government received the September 2004 correspondence on or after September 15,

2004, and on September 16, 2004, the Algerian Minister of Civil Works announced "in [the]

Algeria official newspaper that from September 16, 2004 Algeria East West highway project is

now being 'only' developed by Europeans and the Asian (entities)."  (AC at ¶ 67.)  It strains

credulity to assume that the Algerian Ministry decided in one day or less not to contract with <u>any</u>

United States company and to develop a multi-billion dollar highway project only with European

or Asian companies because of the September 2004 correspondence concerning Genesis.  That

notion fails the *Twombly* plausibility test.

Finally, Plaintiff did not properly plead damages.  Compensatory damage claims must be

supported by factual allegations, not merely alleged through speculation and hyperbole.  *See*

*Gov't Relations*, 2007 U.S. Dist. LEXIS 4952, at *31 (holding allegations of "serious damages,

loss of clients, loss of reputation, and . . . loss of confidential information" insufficient without

supporting facts).  Plaintiff's Amended Complaint alleges only that Genesis did not win the East-

West Highway contract, Sotrama lost potential cultured stone business as a result and Plaintiff

lost profits, salaries, and license fees in the amount of $6.2 billion dollars.  (AC at ¶¶ 105-106.)

Plaintiff has not pled anything more than a naked allegation that, but for the acts of Defendant,

Plaintiff would have obtained billions of dollars in contracts and revenues.  That is not enough to

survive a motion to dismiss.

In sum, Plaintiff's tortious interference claims based on his supposed lost Algerian

business opportunities should be dismissed for a host of reasons.

<b>b.    Plaintiff's Employment Contracts</b>

Plaintiff also alleges that the September 2004 correspondence caused Genesis and IIC to

breach Plaintiff's employment contracts.  (AC at ¶ 99.)  This claim, too, must be dismissed.

As a matter of law, no valid business expectancy accrues under an at-will employee

relationship.  *See McManus*, 748 A.2d at 957 ("This court never has held that an employee can

maintain a suit for interference with prospective advantage where her expectancy was based on

an at-will relationship, and we do not do so now."); *see also Gross v. Davis*, No. 01-1486, 2003

U.S. Dist. LEXIS 3427, at *9-10 (D.D.C. Mar. 3, 2003) (same).  Moreover, because Plaintiff

lacks a valid business expectancy in the East-West Highway project, (s*ee e.g.,* AC at ¶ 28(a),) he

cannot have a valid business expectancy in contracts whose performance depended on Genesis'

winning that project.

More to the point, Plaintiff's tortious interference with employment contracts claim fails

for the most straightforward of reasons: he never alleges that his employment contracts were

breached.  That those contracts did not turn out to be as lucrative as he hoped does not give rise

to a tortious interference claim absent a breach caused by malicious conduct by the US-ABC.

*See Bannum*, 383 F. Supp. 2d at 43-44.

22

### c.    Plaintiff's Sotrama Contract

Nor can Plaintiff state a cause of action for tortious interference with his Sotrama contract.  (AC at ¶¶ 101-03.)  First, it is not even clear whether Plaintiff is a party to this contract.  (*See* Metz Decl. Exh. 1 (NJ SAC at ¶ 33 ("Bob Jovanovic, dba Genesis International Holdings, personally finalized and personally executed one such licensing agreement . . . with a . . . promoter doing business under legal name 'SOTRAMA.'")).)  Second, Plaintiff fails to allege interference: to the extent he tries to claim that the Sotrama contract was adversely affected by Genesis not receiving the East-West Highway project, (*see* AC at ¶¶ 28(b)(iii), 100(c),) he lacks standing to make that claim.  (*See supra* pp. 16-17.)  To the extent his Sotrama contract is independent of the East-West Highway, (*see* AC at ¶¶ 86-87,) Plaintiff has not alleged that this contract was breached or that some malicious misconduct by the US-ABC caused a breach.  Plaintiff's conclusory allegations are not sufficient.

### C.    <u>Plaintiff's Defamation, Libel, And Slander Count Must Be Dismissed For Failure To State A Claim.</u>

Plaintiff's defamation claim also arises from the September 2004 correspondence.  (*See* AC at ¶¶ 109-116.)  In his Amended Complaint in this Court, Plaintiff alleges only in conclusory fashion that "defendant US-ABC and John Does" drafted and forwarded the September 14, 2004 letter to him.  Plaintiff's vagueness on who actually wrote and delivered that letter is not surprising, given that he specifically alleged in the New Jersey action that the US-ABC was <u>not</u> responsible for the September 14 letter:

> Said letter was in fact written above and beyond acting Chairman's prescribed duty, and in violation and breach of fiduciary duty, as prescribed by article V, and other articles of US-ABC By-Laws, and in fact was written without official authorization from the US-ABC Board, to Chairman of US-ABC . . .

(*See* Metz Decl. Exh. 1 (NJ SAC at ¶ 163).)  It is axiomatic that the US-ABC cannot be liable for an allegedly defamatory letter that was drafted and sent without its authorization.  Plaintiff's

23

Amended Complaint in this Court does not specifically allege that the September 2004

correspondence was authorized.  It cannot: Plaintiff has already stated the contrary.  For that

reason alone, Plaintiff's defamation claim against the US-ABC fails.

Moreover, to state a claim for defamation, a plaintiff must allege "(1) that the defendant

made a false and defamatory statement concerning the plaintiff; (2) that the defendant published

the statement without privilege to a third party; (3) that the defendant's fault in publishing the

statement amounted to at least negligence; and (4) either that the statement is actionable as a

matter of law irrespective of special harm, or that its publication caused the plaintiff special

harm." *Marsh*, 339 F. Supp. 2d at 5 (internal quotations omitted); *Blodgett v. Univ. Club*, 930

A.2d 210, 222 (D.C. 2007).[16]  Because Plaintiff's defamation allegations fall squarely within the

common interest privilege, Plaintiff cannot satisfy the second element of this standard.[17]

To be privileged, the statement must have been "(1) made in good faith, (2) on a subject

in which the party communicating has an interest, or in reference to which he has, or honestly

believes he has, a duty to a person having a corresponding interest or duty, (3) to a person who

has such a corresponding interest." *Blodgett*, 930 A.2d at 223-24 (quoting *Moss v. Stockard*, 580

A.2d 1011, 1024 (D.C. 1990)).  "Where the facts relating to publication are undisputed, the

question of whether or not a statement is privileged is one of law for the court." *Alade v. Borg-*

*Warner Protective Servs. Corp.*, 28 F. Supp. 2d 655, 656 (D.D.C. 1998); *accord Moss*, 580 A.2d

at 1024.  "Courts in this District have previously dismissed defamation claims at the motion to

dismiss stage when the facts alleged by the plaintiff showed that the communication was

---

[16]     The elements of defamation under District of Columbia law are not in conflict with those
in Virginia or New Jersey, so no choice of law analysis is necessary.  *See Govito v. W.
Jersey Health Sys., Inc.*, 753 A.2d 716, 722, 724 (N.J. Super. Ct. App. Div. 2000);
*Rohrbaugh v. Kreidler*, 71 Va. Cir. 298, 302 (Va. Cir. Ct. 2006).

[17]     The US-ABC does not concede that Plaintiff satisfies the other elements of this standard.

privileged." *Marsh*, 339 F. Supp. 2d at 7 (discussing absolute privilege); *see also Browning*, 2001 U.S. Dist. LEXIS 24537, at *29-31 (granting motion to dismiss defamation claim), *aff'd* on common interest privilege grounds, *rev'd* on other grounds, 292 F.3d at 246; *Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1, 9 (D.D.C. 2001) (holding at pleadings stage that defamatory statements were protected by common interest privilege).

Exhibits A and B to Plaintiff's Amended Complaint show that the assistant to the Chairman of the US-ABC sent the September 2004 correspondence, in good faith, to US-ABC personnel, to convey information about Plaintiff's company's membership in the US-ABC -- a subject in which both the Chairman and US-ABC personnel shared a common interest. Specifically, the September 14, 2004 letter was sent to Plaintiff, as a representative of Genesis. (*See* AC at Exh. A.) The September 15, 2004 email forwarded the September 14 letter to the board members of the US-ABC, who also had a common interest in the activities and membership of the US-ABC. (*See* AC at ¶ 113; Exh. B ("To All Board Members . . . .").)[18]

The common interest privilege is an "absolute defense" to defamation as long as the statement was made without malice or excessive publication. *Alade*, 28 F. Supp. 2d at 656.

---

[18]    Plaintiff's allegations in paragraph 113 of his Amended Complaint regarding other recipients of this correspondence are inconsistent with his Exhibits, which speak for themselves. Those Exhibits do not reflect that the US-ABC forwarded the correspondence to IIC or its "invited members" Messrs. Solunac and Kaufman. (*See* AC at ¶ 53.) To the extent they saw this letter, they must have received it from Plaintiff himself. (*See* AC at ¶ 113 (alleging letter and email "were seen and read . . . by" these persons/entities, and not alleging that Defendant published the correspondence to them).) In any event, IIC also would share a common interest in Genesis' membership in the US-ABC. (*See* AC at ¶ 24(a).)

Plaintiff's Exhibits also fail to reflect that the documents went to any "unknown" persons.

In addition, Plaintiff admits that the Algerian Ambassador, Lies Goumiry, and Northrop Grumman are all US-ABC personnel. (*See* AC at Exh. B (sending email to Algerian Ambassador, Goumiry, and Northrop Grumman addressed "To All Board Members"); AC at ¶¶ 30-31 (alleging Algerian Ambassador is "Honorary President of US-ABC"); AC at ¶ 33 (admitting Northrop Grumman is member of US-ABC); Metz Decl. Exh. 1 (NJ SAC at ¶ 48-49 (noting Goumiry was associated with US-ABC)).)

Excessive publication is "defined as 'publication to those with no common interest in the information communicated, or publication not reasonably calculated to protect or further the interest,'" and malice is "'the equivalent of bad faith.'" *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843 (D.C. Cir. 2006) (quoting *Moss*, 580 A.2d at 1024-25). Once the communication is deemed privileged, the plaintiff bears the burden of proving that the privilege was abused. *See Blodgett*, 930 A.2d at 224. District of Columbia law sets a "high standard" for establishing malice sufficient to defeat the common interest privilege. *Mastro*, 447 F.3d at 859. Ill will does not "forfeit the privilege so long as the *primary* purpose is to further the interest which is entitled to protection." *Id*. (quoting *Columbia First Bank v. Ferguson*, 665 A.2d 650, 656 (D.C. 1995)) (internal quotations omitted); *accord Blodgett*, 930 A.2d at 224. Proof that the statement was false, or that the defendant failed to undertake a reasonable inquiry prior to publication, are also insufficient to show malice. *See Moss*, 580 A.2d at 1025, 1025 n.27. Essentially, "if the language of the communication, and the circumstances attending its publication . . . are as consistent with the nonexistence of malice as with its existence, there is no issue for the jury . . . ." *Heard v. Johnson*, 810 A.2d 871, 886 (D.C. 2002) (applying common interest privilege at motion to dismiss stage of litigation) (quoting *May Dep't Stores Co. v. Devercelli*, 314 A.2d 767, 774 (D.C. 1973)).

There are no factual allegations (as opposed to mere conclusory statements) in the Amended Complaint of excessive publication or malice -- because none could be made. The September 2004 correspondence was not excessively published because all recipients had a common interest in information regarding Genesis' membership in the US-ABC. *See Mastro*, 447 F.3d at 858-59. On its face, the language of the September 2004 correspondence is thoroughly "consistent with the nonexistence of malice," and reflects that the "primary purpose"

in its publication was to further the interest commonly shared by US-ABC Board members in the membership of their organization. *See Mastro*, 447 F.3d at 858; *Heard*, 810 A.2d at 886.[19]

District of Columbia law is replete with examples of the common interest privilege protecting statements like those at issue. In *Blodgett v. University Club*, for example, the plaintiff claimed defamation arising out of his expulsion from membership in a private social club after the club concluded he had used its facilities "to conduct business with persons who publicly expound racist and anti-Semitic views." 930 A.2d at 214. A club committee investigated the complaints against him and summarized witness interviews in a report presented at a board meeting. *See id.* at 223. The plaintiff claimed that the Board defamed him by repeating the witnesses' statements and endorsing the report by expelling him. *See id.* The District of Columbia Court of Appeals affirmed summary judgment against the plaintiff: "Because Blodgett voluntarily joined the Club and agreed to be bound by its by-laws and rules, his conduct within the Club became a matter of 'common interest' to the defendants." *Id.* Furthermore, the plaintiff's conclusory assertion that the investigation was conducted in bad faith was insufficient to create a genuine issue of fact regarding malice. *See id.* at 224-25; *see also Alade*, 28 F. Supp. 2d at 655-57 (holding statements that plaintiffs-employees were dismissed for violating sexual harassment policy were protected by common interest privilege and not excessively published where announcement was made at official company meeting attended by employer's managers); *Mastro*, 447 F.3d at 858-59 (holding memoranda explaining employee's termination due to "serious/major incidents of lack of candor and a serious/major incident of unsatisfactory performance" circulated to plaintiff, management, Employee Relations

---

[19] It would be futile to allow Plaintiff to re-amend his Amended Complaint to plead malice because the facts he has already alleged refute any such claim. *See Stith*, 160 F. Supp. 2d at 9 ("Although plaintiff is entitled to all reasonable inferences at this stage of the litigation, the Court concludes that his attempt to add Count VI by way of amendment would be futile because the facts that he himself asserts do not show malice.").

Department, two clerical assistants, and District of Columbia Department of Employment Services were protected under common interest privilege because recipients had legitimate interest in knowing "nature and outcome of personnel actions at Pepco," and primary purpose behind publication was to document events leading to employee's dismissal); *Caudle v. Thomason*, 992 F. Supp. 1, 4-5 (D.D.C. 1997) (holding defendant's forwarding of allegedly defamatory memorandum to White House officials was shielded under common interest privilege because defendant had "interest in assuring the smooth functioning of the Administration" and "in avoiding a scandal that might reflect poorly on the Clinton Administration," and defendant did not "knowingly publish[]" the statement outside the privilege).

As in *Blodgett*, the September 2004 correspondence, sent by an organization to its board members, documenting the reasons for Genesis' being asked to withdraw from that association, is protected by the common interest privilege. *See* 930 A.2d at 223-24. Plaintiff's conclusory allegations of bad faith, like Blodgett's, are insufficient to pierce the privilege. *See id.* at 224-25. Furthermore, Plaintiff cannot hold the US-ABC responsible for any republication of the letter to members of the Algerian Government since the US-ABC did not "knowingly publish" the letter outside the privilege. *See Caudle*, 992 F. Supp. at 5; (*see also* Metz Decl. Exh. 1 (NJ SAC at ¶ 190 (alleging Algerian Government received copy of correspondence forwarded by Algerian Ambassador, not the US-ABC))). Indeed, Plaintiff contends it was this republication of the September 2004 correspondence to the Algerian Government that caused the lion's share, if not all, of his injuries. Since he admits that the Algerian Ambassador, and <u>not</u> the US-ABC, sent the letter to the Algerian Government, the US-ABC cannot be liable as a matter of law. Both this fact and the common interest privilege require that Plaintiff's defamation claim be dismissed.

### D.    **Plaintiff's Intentional Infliction Of Emotional Distress Count Must Be Dismissed For Failure To State A Claim.**

Plaintiff also fails to state a claim for Intentional Infliction of Emotional Distress ("IIED").  Plaintiff's allegations do not come close to meeting the "extreme and outrageous" standard for this cause of action.

In the District of Columbia, a plaintiff seeking to state an IIED claim must allege "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress."  *Chambliss*, 2007 U.S. Dist. LEXIS 11522, at *101 (quoting *Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 211 (D.C. 1997) (internal quotation omitted)).[20]  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not constitute actionable conduct.  *See id.* at 103 (quoting *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993)).  A claim for IIED must be based on acts "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Id.* at 101 (quoting *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)).  "If that standard means what it says, then ***the conduct alleged must truly be extraordinary*** to hold a defendant accountable for this tort."  *Id.* at 102 (emphasis added) (quoting *Carey v. Edgewood Mgmt. Corp.*, 754 A.2d 951, 956 (D.C. 2000)); *see also Drejza v. Vaccaro*, 650 A.2d 1308, 1312 (D.C. 1994) ("The requirement of outrageousness is not an easy one to meet.").  The court must consider the action in context, taking into account the parties' relationship and the environment in which the conduct occurred.  *See Chambliss*, 2007 U.S. Dist. LEXIS 11522, at *102-03 (citing *Kidd*, 640 A.2d at 668).

---

[20]    These elements of IIED are the same in both New Jersey and Virginia; therefore, there is no need to conduct a choice of law analysis.  *See Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988); *Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007).

Here, Plaintiff pleaded only one intentional act by the US-ABC that allegedly caused him emotional distress: the sending of the September 2004 correspondence.[21]  As a matter of law, that is not sufficiently extreme or outrageous to support an IIED claim.  Even accepting Plaintiff's allegations as true, a letter requesting withdrawal due to an "uneven" payment history and "inappropriate" claims of affiliation, is far from "extraordinary."  *See id.* at 102.  Indeed, courts in the District of Columbia already have rejected arguments that similar (or worse) conduct is "extreme and outrageous."  *See Blodgett*, 930 A.2d at 230-31 (holding private social club's expulsion of member not extreme or outrageous); *see also Weaver v. Grafio*, 595 A.2d 983, 991 (D.C. 1991) (holding not extreme and outrageous defendant's sending letter to ethics committee falsely accusing plaintiffs of knowingly passing bad check).

The type of conduct held to be "extreme and outrageous" in the District of Columbia is vastly different from sending a letter requesting withdrawal from a voluntary trade association. *See Homan v. Goyal*, 711 A.2d 812, 820 (D.C. 1998) (holding defendant's giving plaintiff's home address to third person who defendant should have expected would severely harass and threaten plaintiff's life sufficiently extreme and outrageous); *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 935-36 (D.C. 1995) (holding apartment management's allowance of unsafe and unsanitary conditions, including sporadic fires, boarded emergency exits, and presence of urine and feces, and hiring workers to harass and intimidate tenants sufficiently extreme and outrageous); *Drejza*, 650 A.2d at 1317 (holding police detective's bullying and ridiculing of rape victim an hour after rape occurred sufficiently extreme and outrageous).

---

[21]    Plaintiff alleges that he suffered emotional distress on other occasions; however, he does not allege that the US-ABC instigated those events.  (*See* AC at ¶¶ 72-76 (alleging Plaintiff suffered emotional distress after being "named persona-Non-Grata by Algeria Government" and after "learning that Algeria President officially announced it is now internally developing the Algeria East-West Highway")).

Plaintiff's allegations pale in comparison.  The statements in the September 2004 letter do not approach outrageousness as recognized by District of Columbia courts.  Plaintiff's claim for IIED must be dismissed.

**E.      Plaintiff's Conspiracy Claims Must Be Dismissed For Failure To State A Claim.**

Three of Plaintiff's claims include allegations that the US-ABC conspired to commit the alleged torts.  (AC at ¶¶ 59.l, 60-62, 101.)  If, as demonstrated above, Plaintiff has failed to adequately allege the underlying torts, then it necessarily follows that his allegations of conspiracy to commit those torts fail as well.  In any event, Plaintiff has not alleged any facts to support a conspiracy claim.

The elements of an actionable conspiracy are: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme.  *Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001).

To survive a motion to dismiss, a plaintiff alleging conspiracy must plead facts, as opposed to conclusory statements, to establish the existence of an agreement between co-conspirators.  *See Cadet*, 2007 U.S. Dist. LEXIS 72504, at *46-48 (dismissing conspiracy claims because allegations that merely re-state allegedly wrongful action and add that defendants acted in concert are "impermissibly bare"); *see also Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (stating plaintiff must allege agreement to commit unlawful act).  Plaintiff does not allege a single fact to support even an inference that the US-ABC acted in a conspiratorial manner: he alleges no actions, communications, or any supporting information, other than his mere say so.  As a matter of law, that is not enough.

Moreover, there is no independent action for conspiracy under District of Columbia law; rather, it depends on the performance of some underlying tortious act. *Weishapl*, 771 A.2d at 1023-24. Since Plaintiff's other claims fail as a matter of law, his conspiracy counts also must be dismissed. *See Dove v. Washington Metro. Area Transit Auth.*, 402 F. Supp. 2d 91, 99 (D.D.C. 2005).

### F.     Plaintiff Is Not Entitled To Injunctive Or Declaratory Relief.

Where a plaintiff fails to prove imminent, irreparable harm that cannot be compensated by money damages, an injunction cannot issue. *See Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985). Monetary injuries, no matter how substantial, do not entitle a plaintiff to injunctive relief. *Id.*; *see also Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 4-5 (D.D.C. 1998) (holding plaintiff could not show irreparable harm where monetary damages could be recovered). Even in the commercial context, irreparable harm exists only where a monetary loss threatens the very existence of the plaintiff's business. *Wis. Gas Co.*, 758 F.2d at 674.

Here, Plaintiff does not allege irreparable harm or a presently existing actual threat justifying injunctive relief. (AC at ¶ 125 ("plaintiffs [sic] are entitled to an injunction, enjoining defendants . . . from engaging in further libelous and slanderous acts"), ¶ 126 (requesting letters of retraction and apology).) The September 2004 correspondence was sent more than three years ago. There is no allegation in the Amended Complaint of any subsequent actions that supposedly harmed Plaintiff or of any threatened actions against him. Because the Amended Complaint fails to allege actual or imminent harm, much less irreparable injury, that cannot be compensated by money damages, Plaintiff is not entitled to injunctive relief, and this "claim" should be dismissed.

## CONCLUSION

Plaintiff's claims are time-barred. And even if they were not, they fail to state a claim upon which relief can be granted. Accordingly, his Amended Complaint must be dismissed.

Dated: December 13, 2007

Respectfully submitted,

/s/ Kevin H. Metz
Kevin H. Metz
D.C. Bar No. 494087
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Kevin.Metz@lw.com

Alan E. Kraus, admitted *pro hac vice*
Kira S. Dabby, admitted *pro hac vice*
LATHAM & WATKINS LLP
One Newark Center, 16th Floor
Newark, NJ 07101
Telephone: 973-639-1234
Facsimile: 973-639-7298
Alan.Kraus@lw.com
Kira.Dabby@lw.com

*Attorneys for Defendant US-Algeria Business Council*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BOBAN JOVANOVIC,** ) | |
| ) | |
| **Plaintiff,** ) | **CASE NO.: 1:07-CV-00927 (CKK)** |
| ) | |
| **v.** ) | |
| ) | |
| **US-ALGERIA BUSINESS COUNCIL** ) | |
| ) | |
| **and** ) | |
| ) | |
| **JOHN DOES,** ) | |
| ) | |
| **Defendants.** ) | |

## DECLARATION OF KEVIN H. METZ, ESQ.

Kevin H. Metz, Esq., pursuant to 28 U.S.C. § 1746(2), under penalty of perjury, hereby declares as follows:

1.     I am an attorney admitted to practice before this Court.  I am an associate at the law firm of Latham & Watkins, LLP, counsel for the US-Algeria Business Council ("US-ABC"). I make this Declaration, of my own personal knowledge, to furnish this Court with certain documents relevant to this proceeding.

2.     I submit this Declaration in connection with the US-ABC's Motion to Dismiss the Amended Complaint for Failure to State a Claim Upon which Relief Can be Granted.

3.     A true and correct copy of Plaintiff's Second Amended Complaint For Damages and Injunctive and Declaratory Relief and Demand for Jury Trial, filed in the United States District Court for the District of New Jersey, is attached hereto as Exhibit 1.

4.     To the best of my knowledge, a true and correct copy of the Letter of Intent, dated May 5, 2003 between Genesis International Holdings and the Government of Algeria, is attached

hereto as <u>Exhibit 2</u>.

  5.  To the best of my knowledge, a true and correct copy of the By-Laws of United

States - Algeria Business Council, Inc., as adopted by the Board of Directors on September 4,

2002, is attached hereto as <u>Exhibit 3</u>.

  I declare under penalty of perjury that the foregoing is true and correct and that this

Declaration was executed in Washington, D.C. on December 13, 2007.

        Kevin H. Metz
        D.C. Bar No. 494087
        LATHAM & WATKINS LLP
        555 11th Street, N.W.
        Suite 1000
        Washington, D.C. 20004
        Telephone: 202-637-2200
        Facsimile: 202-637-2201
        Kevin.Metz@lw.com

        *Attorney for Defendant US-Algeria Business
        Council*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

RECEIVED-CLERK
U.S. DISTRICT COURT

2005 DEC 30 P 1: 58

Case No.  05-4487 ( DMC )

| | |
|---|---|
| Genesis International Holdings ) | 2nd AMMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE AND |
| International Infrastructure Consortium ) | DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL |
| & ) | 1. Intentional Inducement of a Breach of |
| Boban Jovanovic ) | Contract and Conspiracy to Intentionally induce a Breach of Contract |
| Plaintiffs, ) | 2. Tortuous Interference with Business |
| **vs.** ) | Relations and Tortuous Interference with Prospective Economic Advantage and |
| Northrop Grumman Corporation ) | Conspiracy to Tortuously Interfere with Business Relations and Conspiracy to |
| Mr. Donald Wilhelm ) | Tortuously interfere with Prospective Economic Advantage |
| Ms. Peggy Hewinson ) | 3. Tortuous Interference With Contractual |
| US Algeria Business Council ) | Relations and Conspiracy to Tortuously Interfere with Contractual Relations |
| Sonatrach Corporation ) | 4. Libel, Slander and Defamation and |
| Halliburton Corporation ) | Conspiracy to Libel, Slander and Defame |
| Boeing Corporation ) | 5. Intentional Infliction of Emotional Distress and Conspiracy to Inflict Emotional Distress |
| Anadarko Corporation ) | 6. Anti Trust through Boycott, Refusal to |
| Lockheed Martin Corporation ) | Deal, Monopoly of Relevant market, Refusal of access to Essential facility and through |
| Amerada Hess Corporation ) | Conspiracy to Boycott, Conspiracy to Refuse to Deal, Conspiracy to Monopolize relevant |
| Pfizer Corporation ) | market and Conspiracy to Refuse Access to Essential Facility |
| Tractabel Corporation ) | 7. Fraud, Misrepresentation and Deceit and |
| Textron Corporation ) | Conspiracy to Defraud  and Conspiracy to Misrepresent truth and Conspiracy to Deceit |
| Red-Med Corporation ) | 8. Extortion and Attempted Extortion and |
| British Petroleum Corporation ) | Extortion and Conspiracy to Extort |
| Arab Banking Corporation ) | 9. Breach of Fiduciary Duty |

Air Products Corporation )9. Injunctive and Declaratory Relief

Raytheon Corporation )

General Electric Corporation )

Gulf Keystone Petroleum Corporation )

Burlington Resources Corporation )

Mr.Lamin Djilani )

Mr.Ali Djazairy )

Mr.Jim Bailey )

Dr. Ismael Chikhoune )

Ms.Elizabeth Lord Stewart )

John Doe's )

Defendants, )

## COMPLAINT

1.   Comes now Plaintiffs, Genesis International Holdings ltd and Boban Jovanovic ,and International Infrastructure Consortium ltd., to allege against the Defendants, jointly and severely , as follows:

## INTRODUCTORY ALLEGATIONS

2.   This action is brought under diversity jurisdiction against defendants for damages as well as declaratory and injunctive relief for (1) Intentional Inducement of a Breach of Contract and Conspiracy to intentionally induce a Breach of Contract, (2) Tortuous Interference with Business Relations and Tortuous Interference with Prospective Economic Advantage and Conspiracy to Tortuously Interfere with Business Relations and Conspiracy to Tortuously Interfere with Prospective Economic Advantage and (3) Tortuous Interference With Contractual Relations and Conspiracy to Tortuously Interfere with Contractual Relations, (4) Libel, Slander and Defamation and Conspiracy to Libel, Slander and Defame, (5) Intentional Infliction of Emotional Distress and Conspiracy to Inflict Emotional Distress, (6) Anti Trust through Boycott, Refusal to Deal, Monopoly of Relevant market, Refusal of access to Essential facility and through Conspiracy to Boycott, Conspiracy to Refuse to Deal, Conspiracy to monopolize relevant market and Conspiracy to Refuse Access to Essential Facility,(7) Fraud, Misrepresentation and Deceit and Conspiracy to Defraud and Conspiracy to Misrepresent truth and Conspiracy to Deceit, (8) Extortion and Attempted Extortion,(9) Breach of Fiduciary Duty,(10) Injunctive and Declaratory Relief.

3.   Plaintiffs own and operate an international commercial infrastructure project and supporting project development business in transportation, housing, energy and other major economic sectors, in countries with emerging economies and presently focusing on countries of North and West Africa, where plaintiffs were developing several separate projects on September,15,2004.

4.   Defendants are a group of companies and persons, engaged as members, management, and other capacities in operation of United States-Algeria Business Council, and other entities which council is construed from commercial and from time to time, Algeria and US Government, its representatives and or its members.

5.   Plaintiff Genesis is one of founding board members of US Algeria Business Council, and for more than four years was active in development of several major commercial

3

infrastructure projects and other smaller, supporting, commercial infrastructure projects,
under umbrella of US-ABC.

## JURISDICTION AND VENUE

6.   This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1332, this being an
action arising between parties domiciled in different states and foreign countries with the
amount in controversy in excess of $75,000.

7.   This Court's jurisdiction is also invoked under 28 U.S.C. §§ 2201 and 2202, this
being a case of actual controversy where the relief sought by Plaintiffs, among other things,
includes a declaration of the parties' respective rights and obligations.

8.   In addition, this Courts jurisdiction is invoked as per Sherman Act USCA 15, 1-2.

9.   Venue is proper in the District of New Jersey, pursuant to 28 U.S.C. § 1391(a)(2),
which is where substantial part of events, which were the result of this law suit, took place .

## PARTIES

10.   Plaintiff (1) Boban Jovanovic is a US Citizen domiciled in the state of
New Jersey, an honorary President, and a shareholder, of defendants Genesis International
Holdings,(Genesis) and International Infrastructure Consortium,(IIC) an owner and executor
of certain licensing agreement, for transfer of know how, technology and technology system
for (industrial) manufacturing and marketing, certain construction and decorative materials.
Mr.Jovanovic is also an owner of certain proprietary know how for international financing of
said technology system, and an owner of certain proprietary financial and operational know
how for development and implementation of BOT/PPP (Build Operate Transfer/Public
Private Partnership), financial, operational and other architectures for major Infrastructure
projects in Transportation, Housing, Telecommunication and other sectors of emerging
market economies, an individual investor, in projects in North and West Africa.

11.   Plaintiff Boban Jovanovic, other than in his individual capacity is, within this
complaint, also bringing a representative action on behalf of plaintiffs Genesis and IIC, based
on distinct injuries suffered by him individually and or as the stockholder of Genesis and IIC,
and where this action is based on contracts, to which he is a party, and as a result of said
contracts he has suffered direct and distinct injuries individually, personally  and or as a
shareholder of Genesis and IIC.

4

12. Plaintiff (2) Genesis International Holdings ltd. is an owner of certain Proprietary financial and operational know how for development and implementation of Build Operate Transfer/Public Private Partnership (BOT/PPP), financial, operational and other architectures for major Infrastructure projects in Transportation, Housing, Telecommunication and other sectors of emerging market economies. Genesis is also doing business domestically and internationally in developing commercial infrastructure and or any commercial infrastructure projects and or its supporting projects, as project management entity and an owner of executed letter agreement with plaintiff Boban Jovanovic, for acting in project management capacity in setting up and managing start up and operation of, industrial plants,(as supporting projects), for manufacturing of construction and decorative materials in North Africa, West Africa and South Eastern Europe. Genesis is also one of founding members of US Algeria Business Council {US-ABC}, an association of US and Algerian Governments and companies founded in year 2002, for purpose of promoting commerce between countries of US and Algeria and an owner of Executed Letter of Intent Contract/Agreement with Algeria Government, for developing Algeria East-West Highway project, as BOT/PPP.

13. Plaintiff (3) International Infrastructure Consortium is a US, Delaware State, constituted subsidiary of Genesis International Holdings and thus an owner of certain granted rights and know how, by plaintiffs Bob Jovanovic and Genesis International Holdings, for development and to be negotiated operation, of major Algeria Toll Highway and other Transportation projects. IIC is also an owner of executed MOU and executed Concession agreement for development and operation of major Abidjan, Ivory Coast, Urban Train Transportation project.

14. There are twenty six, (26) defendants (in this case), which are divided in seven separate and distinct groups.

15. US CORPORATE defendants group members includes, (1) Northrop Grumman Corporation, a US based defense Contractor, (2) Halliburton Corporation, a US based Engineering company, (3) Boeing Corporation, a US based airplane manufacturer, (4) Anadarko Corporation, a US based Oil Company, (5) Lockheed Martin Corporation, a US based defense contractor, (6) Amerada Hess Corporation, a US based oil company, (7) Pfizer Corporation, a US based pharmaceutical company,(8) Tractabel Corporation, a US company, (9) Textron Corporation, US based company, (10) Air Products Corporation, a US based company, (11) Raytheon Corporation, a US based defense contractor, (12) General Electric

5

Corporation, a US based diverse company, (13) Gulf Keystone Corporation, a US oil company, (14) Burlington Corporation, a US based company.

16. INTERNATIONAL CORPORATE defendants group members includes , (1) Sonatrach Corporation, an Algeria oil company,(2) Red-Med Corporation, an Algeria oil services company, (3) British Petroleum, a UK oil company, (4) Arab Banking Corporation an International banking entity.

17. GRUMMAN AGENTS defendants group members includes (1) Mr.Donald Wilhelm, (2) Ms.Peggy Hewinson and (3) Mr.Ali Jazzairy as agents and employees of defendant Northrop Grumman Corporation.

18. COUNCIL defendants group members includes (1)US-Algeria Business Council, a business council constituted for promotion of business activities between United States companies and or Algeria Government and or commercial business entities .

19. COUNCIL AGENTS defendants group members to include (1)Mr.Ismael Chicoun, (2)Ms. Elizabeth Lord Stewart, and (3) Mr.Lamine Djilani as management of US-ABC.

20. LAWYER defendants group member to include Mr.Jim Bailey.

21. INDIVIDUAL defendants group members to include defendants as individual persons and individual companies, (1) Northrop Grumman Corporation, (2) Mr. Donald Wilhelm, (3) Ms. Peggy Hewinson, (4) US Algeria Business Council, (5) Sonatrach Corporation, (6)Halliburton Corporation (7) Boeing Corporation,(8) Anadarko Corporation, (9) Lockheed Martin (10) Amerada Hess Corporation,(11) Pfizer Corporation, (12) Tractabel Corporation (13) Textron Corporation, (14) Red-Med Corporation,(15) British Petroleum Corporation, (16) Arab Banking Corporation, (17) Air Products Corporation, (18) Raytheon Corporation, (19) General Electric Corporation, (20) Gulf Keystone Petroleum Corporation, (21) Burlington Resources Corporation, (22) Mr.Lamine Djilani, (23)Mr.Ali Djazairy, (24)Mr.Jim Bailey, (25) Dr. Ismael Chikhoune and (26) Ms.Elizabeth Lord Stewart.

22. Plaintiffs do not presently know the true names and capacities of John Doe defendants, but will amend this complaint as soon as they become ascertained.

## BACKGROUND

23. Mid 1980's Plaintiff Bob Jovanovic has been interested and thus became involved in development of technology and know, with intent to enter business of

6

development of major commercial infrastructure projects through initial development of industrial support projects, which produce products used in development and or operation of same.

24. Mid 1980's until present plaintiff Bob Jovanovic has obtained and continues to obtain certain proprietary know how on implementation and or operation of major commercial Infrastructure projects, based on Build Operate Transfer (BOT) and Public Private Partnership (PPP) systems.

25. Mid 1980's, plaintiff Bob Jovanovic began development of proprietary technology and know how for decorative glass and window treatment product lines, which may be used in hotels, restaurants, office buildings or any other commercial or residential building with glass windows, including hotels, restaurants, and office buildings, as part of major commercial infrastructure project supporting infrastructures, such as toll highway rest areas or as part of major commercial infrastructure Urban train project office and other operational building facilities.

26. August 1995, Sasha Jovanovic, nephew of Bob Jovanovic, obtains know-how for Cultured marble, Cultured Granite and Cultured Granite Manufacturing,

27. 1997, Northrop Grumman, through its Vice President Mr.Donald Wilhelm becomes active in Algeria in development of commercial infrastructure.

28. January 1999, plaintiff Bob Jovanovic, entered into a business agreement, with his nephew, Sasa Jovanovic, owner of Cultured Stone product lines manufacturing know how license, which may also be used in hotels, restaurants, office buildings or any other commercial or residential facilities , including hotels, restaurants, and office buildings or as part of structures highway rest areas.    Also same product lines can be used as part of Urban train project office and other operational buildings infrastructure, to transfer manufacturing know how and to jointly develop industrial based projects in Europe and Africa through licensing and or transferring certain rights and know how, on project specific turn key basis.

29. From late 1980's until present plaintiff Bob Jovanovic has obtained and continues to obtain certain proprietary know how on implementation and or operation of major commercial Infrastructure projects, based on Build Operate Transfer (BOT) and Public Private Partnership (PPP) systems.

30. Since March 1999, Bob Jovanovic began marketing and developing a first Industrial development project, for North and West Africa consisting of transfer of know how and certain rights, on a turn keys project basis, whereby installing a first factory

for manufacturing Cultured Stone, decorative glass and decorative window treatments, in Tunisia, where one more installation was planned for Tunisia and five more installations for Algeria, and where Mr.Jovanovic invested substantial personal time and money and acted individually in all aspects of sales, marketing and negotiating all business relationship agreements.

31. From June 1999, Mr.Jovanovic, enters into an agreement with Mr.Ahmed Azouz, of Tunisia, for Mr.Azouz to begin assisting, as needed, Mr.Jovanovic efforts in developing and supporting start up and operation, of commercial infrastructure supporting project for installing manufacturing capacity for construction and decorative materials, in Tunisia and elsewhere.

32. January 2000, Bob Jovanovic develops and begins instituting a plan for entering South Eastern Europe, North Africa and West Africa emerging markets through licensing agreements.

33. June 2000, Bob Jovanovic, dba Genesis International Holdings, personally finalized and personally executed one such licensing agreement for transfer of know how and proprietary rights, on a turn keys project basis, for manufacturing Cultured Stone, decorative glass and decorative window treatments, with a Tunisia, North Africa, based promoter doing business under legal name "SOTRAMA".

34. June 2000, Said Licensing agreement provided plaintiff Bob Jovanovic with two separate and severable, rights and responsibilities, with first being rights and responsibility for all said project start up, including continuous project management rights, and second being all marketing rights and responsibilities for all manufactured products and sub licensing of all know how and technologies in all territories as defined within said agreement.

35. July 2000, Sasa Jovanovic, nephew of Bob Jovanovic, constitutes a Delaware Corporation, under name Genesis International Holdings ltd. and acts as a founding shareholder of said newly formed corporation, for the purpose of initially acting as a turn key project management entity, for June,2000 Bob Jovanovic,s licensing agreement and subsequently on any other projects in any emerging or other markets.

36. July 2000, Bob Jovanovic executes a letter agreement with Genesis International Holdings, ltd, where Bob Jovanovic transfers certain project management rights and obligations, to Genesis, and retains certain sub-licensing marketing rights and obligations, individually, in exchange for certain shares and rights by Genesis, as defined within said letter agreement.

8

37. July 2000, plaintiff Bob Jovanovic, enters into a letter agreement, with newly formed legal entity, (plaintiff within this action)Genesis International Holdings ltd.,(Genesis) where he became Genesis's, minority shareholder thereby granting Genesis all rights, existing in June 2000 agreement, for turn key project management in Tunisia industrial manufacturing plant project development start up.     Said rights also included all rights for turn key project management in any additional, sub licensed, industrial plants, in all markets covered by June 2000 licensing agreement, including Algeria and Abidjan, where said rights also included continuous and ongoing project management.

38. July,2000 letter agreement with Genesis further defines that plaintiff Bob Jovanovic personally retains all sub licensing rights and responsibilities of June 2000 licensing agreement, where Bob Jovanovic agrees to act, from time to time, on behalf of Genesis, and or any of Genesis subsidiaries.     Further he also agrees to invest his time and money from time to time, as co investor with Genesis, and or any of Genesis subsidiaries, and where he will be compensated for certain successes and or his invested time and money, in money, Genesis stock or any other form of compensation at time of successful completion of any activity acted on.

39. After June,2000 Mr. Jovanovic begins personally co investing with Genesis in developing joint presence in South Eastern Europe, including forging personal relationships and assisting Genesis to forge strong ties with newly elected democratic government of Yugoslavia.

40. After June,2000 Mr. Jovanovic begins personally co investing with Genesis in developing joint presence in Africa , including forging personal relationships and assisting Genesis to forge strong ties with newly elected democratic governments of Algeria and Ivory Coast.

41. March,2001, Mr.Azous announces to Mr.Jovanovic that he had forged good relationship with high level Tunisian officials, which can assist in development of necessary high level business and Governmental relationships in North and West Africa.

42. March,2001 Mr.Jovanovic agrees and begins assisting Mr.Azouz on an architecture and a schedule for further entering North and West Africa, markets.

43. April, 2001, Mr.Azouz proposes to Mr. Jovanovic, to meet Mr.Lies Goumiry, an Algerian business man, and discuss entering Algeria, North Africa, market.

44. April, 2001 Mr.Jovanovic and Mr.Azouz, met Mr.Goumiry in Tunis, Tunisia and discuss Algeria market opportunities.

**45.** April,2001 Mr.Jovanovic begin co investing with Genesis in development of Algeria market, and immediately start using $50,000.00 allocated personal funds while establishing additional Africa operations, capacities.

**46.** April,2001, Mr.Ahmed Azouz is granted mandate by Mr.Jovanovic to act on Mr.Jovanovics behalf, in charge of new Algeria business opportunities for construction, decorative products and other business opportunities.

**47.** October,2001, Algeria business delegation arrives to Tunis and begins discussions on transfer of all SOTRAMA licensed Bob Jovanovic construction materials technology to Algeria.

**48.** July,2002, Mr.Goumiry announces to Genesis that Algeria company, Finnamel, where he is now a President, has been invited by Algeria Government to participate as one of founding members of United States-Algeria Business Council (US-ABC), a council formed to facilitate good relations between US and Algeria, through facilitating major Algeria Business Opportunities, including most major Algeria commercial infrastructure and its supporting projects , for US Companies, as US-ABC Council members.

**49.** July,2002, Mr.Goumiry also invites Genesis and Mr.Jovanovic to participate as founding member, in creation of US-ABC, and jointly attend inauguration meeting and dinner at Washington DC residence of Algeria Ambassador to US, Mr.Idriss Jazzairy.

**50.** July 2002 Mr.Jovanovic accepts, and directs Genesis representative, Mr.Jelisijevic to attend US-ABC inauguration in Washington DC.

**51.** July 2002, after meeting with Mr.Jelisijevic, Algeria Ambassador personally invites, through Mr.Jelisijevic, Mr.Jovanovic for a meeting at Algeria Embassy.

**52.** July 2002 Mr.Jovanovic, accepts, and officially meets with Algeria Ambassador, Mr.Jazzairy in beginning of August,2002, at Washington DC, Algeria Embassy.

**53.** August 2002, Mr.Idriss Jazzairy, in his capacity as Ambassador of Algeria, with Algeria Government being one of founding members and a brain child of US-ABC business concept, Mr.Jazzairy now officially invites Genesis to participate as founding member of US-ABC with a condition that Mr.Jovanovic, uses his existing experience, expertise, know how and relationships in North Africa to develop major commercial infrastructure projects as well as necessary supporting projects in Algeria. Further Mr.Jovanovic is requested to act personally as Genesis Representative, thus being able to assist Genesis and US-ABC council in all phases of business and relationship development in US, Algeria and if necessary other

parts of Africa.

**54.**    August 2002, in return, Algeria (Government) Ambassador, US-ABC major founding member fraudulently misrepresents to Mr.Jovanovic that US-ABC and Algeria Government will initially and continuously, personally support Genesis and thus Mr.Jovanovic efforts, as one of founding members of US-ABC.

**55.** August,2002 Mr.Jovanovic accepts Ambassadors invitation and agrees to become one of founding members of US-ABC and act in development of major commercial infrastructure and its supporting project, relevant market, in country of Algeria where said infrastructure projects always require granting of Algeria Governmental concession rights.

**56.**  September,2002 US-ABC is officially formed as a 501(c)(4) non profit Social Welfare Organization.

**57.**  September,2002 Both plaintiff Genesis and Northrop Grumman, amongst others, enter into an agreement (expressed in council By-Laws), with US Algeria Business Council where both companies enter in a business relations and became two of founding board members of US Algeria Business Council with a duty, under approved By-Laws, to promote common business interests.

**58.**  September,2002 US-ABC certain founding members attend a first board meeting, in Washington, D.C. where Genesis representative Mr.Jovanovic is present and where Mr.Jovanovic officially presents to present board members his personal and Genesis business activity, in North Africa and elsewhere, including his personal and Genesis existing agreements, and future plans for Algeria, and is assured in various public and private discussions with present founding members and present management, that US-ABC has been formed with clear mission to equally support individual business interests of all its members.

**59.**  November,2002, Algeria Ambassador, Mr.Idriss Jazzairy, forwards his sons resume, to Bob Jovanovic and requests that Bob Jovanovic hires his son to act in any Genesis Algeria Commercial Infrastructure project development, as full time employee of Genesis.

**60.**  November,2002 Mr.Jovanovic agrees, with two conditions, where as first condition Mr.Jovanovic directs  Genesis must obtain all necessary Algeria Governmental approvals needed for beginning said Commercial projects, before hiring Ambassadors son in full time employment. As second, condition, Mr.Jovanovic directs, Genesis must complete legal review of any potential violations of US FCPA (Foreign Corrupt Practices Act)act, as Algeria Government is a founding member of US-ABC, where Genesis is also a founding member and where it may be perceived that Algeria Ambassador may assist Genesis to obtain

certain Algeria rights for possible Genesis owned project in exchange for certain value, said value being his sons employment with Genesis.

61.  December,2002, Algeria company, Finnamel, whose President is Mr.Goumiry, obtains approval of US-ABC board and Mr.Goumry acts on behalf of Finnamel and becomes US-ABC representative in Algeria.

62.  December,2002, US-ABC proposes Genesis to meet, as one of US-ABC founding members, Algeria Government's owned oil company, Sonatrach, for discussions on possible Joint Venture in "Algeria Last Mile Telecommunication project".

63.  December 2002, Genesis agrees and Genesis delegation travels to Algiers, in January 2003, meets and discusses with Sonatrach management, Last Mile Telecommunications project opportunity.

64.  January 2003, US-ABC, through its Algeria Representative President, Finnamel, arranges for Genesis all visit details, including airport pick-up, hotel reservations, arranges all meetings for Genesis delegation and its representative Mr.Goumity participates in all presentations and meetings, in support of Algeria, individual, Genesis business activities.

65.  January, 2003, during visit to Algeria, US-ABC proposes to Genesis and Mr.Jovanovic to meet with Government appointed Algeria East West Highway project commission and discuss development of same.

66.  January 2003, Mr.Jovanovic agrees and US-ABC arranges a meeting with Algeria East-West Highway commission.

67.  January,2003, Genesis representatives Mr.Jovanovic, and Mr.Azouz individually assisted by US-ABC, meet with four member Algeria East-West Highway commission,  where Mr.Jovanovic makes a decision to jointly develop with Genesis and Algeria Government Commission the architecture for development of BOT/PPP Algeria East-West Highway project.

68.  February, 2003 Algeria press announces that Genesis was commissioned by Algeria Government to draft architecture for East-West Highway project.

69.  February,2003, Genesis and Mr.Jovanovic and Mr.Azouz arrive again in Algeria for further talks on Algeria East West Highway project.

70.  US-ABC arranges all visit details for Genesis, Mr.Jovanovic and Mr.Azouz such as airport pick up, hotel reservations, etc., and arranges all meetings for the delegation and its representative participates in several private business meetings and several Government

business meetings

**71.** March,2003, other than East-West Highway project, US-ABC invites and supports individual Genesis efforts to engage in developing additional diverse Infrastructure and other supporting commercial projects in Algeria, such as Bitumen Refinery, Cement Plant and Agricultural Commodity products trading.

**72** . March,2003, Mr.Jovanovic and Mr.Azouz arrive again in Algeria for further talks on Algeria East West Highway.

**73** . March 2003, US-ABC arranges all visit details such as Airport pick up, hotel reservations, and arranges all meetings for the delegation several private business meetings and several Government business meetings

**74** . April,2003, US-ABC directly assists Genesis, to enter in a business arrangement with Algeria Government Agricultural inspectors  as well as Algeria private agricultural import company BMC, for exporting US Agricultural Commodities of Wheat and Corn to Algeria, where Genesis through its subsidiary, also executes an agreement to supply certain Agricultural commodities to BMC of Algeria.

**75** . April,2003, Genesis representative attends a Northern Crops Institute symposium on Commodity trading, and obtains certification in support of its Algeria Commodity business

**76** . May 2003, Genesis and Algeria Government execute an LOI agreement contract for development of 1,200 km Algeria East-West Highway project as BOT/PPP (Build Operate Transfer/Public Private Partnership)

**77** . May 2003, Letter of Intent, of May,05,2003, granted plaintiff Genesis a right to act as central project management entity, in developing detailed project architecture for financing, implementation and operation of Algeria East-West Highway.

**78** . May 2003, same letter of intent, also formalized an agreement, between Algerian Government and plaintiff Genesis, to negotiate and enter in a Concession agreement, for operating the Algeria East-West Highway on a 30 year Public Private Partnership and Build Operate Transfer, business concept.

**79** . May 2003, Algeria East-West  Highway project was defined as 1,200 km Algeria East-West Toll Highway system, in the country of Algeria, North Africa, where development costs for this project have been estimated at $7.3 Billion US Dollars and cumulative profit, during 30 year toll highway concession operation, were estimated at $41.3 Billion US Dollars and where this project was initially developed, by Genesis, as a 30 year concession BOT,

(Build Operate Transfer) and PPP ( Public Private Partnership) business concept.

**80** . May 2003, after execution of LOI, US-ABC, requests, that in order for US-ABC to individually back a relatively small company, Genesis, in this mammoth $7.3 Billion Dollars, or any other Algeria project, Mr.Jovanovic and Genesis must cease all its West Africa infrastructure project development activities.     US-ABC also requests that Genesis and Mr.Jovanovic must concentrate on Algeria market and Mr.Jovanovic must continue personally co financing and assisting Genesis and IIC in Algeria.     Further Genesis and Mr.Jovanovic must also co-invest and establish a US based International Infrastructure Consortium , and invite most major US, European, North Africa and Asia companies to participate in East-West Highway Consortium company, as combination of management vendors, financiers, shareholders, technology providers, etc.

**81.**   May 2003 In return, US-ABC again misrepresents to Bob Jovanovic, that it will continuously support Genesis and Bob Jovanovic in Algeria East-West Highway and any other Algeria Infrastructure and supporting projects and Mr.Jovanovic agrees to co-invest with Genesis and IIC in Algeria East-West and other projects.

**82** .  May 2003, additionally US-ABC requests Mr.Jovanovic must personally stand behind Algeria East West project, and personally co-invest and coordinate establishment and development of 19 members Consortium Management team.

**83** . May 2003, Mr.Jovanovic agrees to abide by US-ABC requests and ceases, all his and Genesis West Africa activities and starts concentrating on Algeria thus continues in personally co-investing in certain operational Algeria East West Highway project costs and participates as a co investor with Genesis when establishing a US based International Consortium of major International capacities and represents to his hand picked management team that he will stand behind this project as a result of Genesis being a founding member of US-ABC and as a result of US-ABC misrepresentation to individually back Genesis in this effort.

**84** . May 2003, Genesis, Mr.Jovanovic and certain 19 members of IIC management team begin to invest jointly and form International Infrastructure Consortium (IIC), as US Delaware corporation, for purpose of developing and operating Algeria East West Highway and other Africa projects.

**85** . May 2003, Genesis and IIC enter in a letter agreement to transfer Genesis Algeria East-West LOI contract agreement, rights and responsibilities to IIC.

**86** . May 2003, as part of said letter agreement, Genesis negotiates to become IIC

14

minor founding shareholder and Bob Jovanovic and IIC and certain individual members of IIC management team, negotiate to invest their time and money, on a success of project basis.

87 . May 2003, Bob Jovanovic and Genesis execute a letter agreement with IIC to become vendors(suppliers), for all necessary cultured stone and other Mr.Jovanovic licensed, under June and July,2000 contract agreements, product lines.

88 . June 2003, Genesis exhibits at Algeria International Trade Fair, where Northrop Grumman and certain other individual defendants group are also exhibitors, and where Mr.Jovanovic presents Genesis business activities in North Africa and Algeria, to all present individual defendants group.     Said presentations also included its Genesis construction material existing contracts, and where he receives Algeria President Bouteflika and US Ambassador Sanderson, at Genesis trade show booth, for a 15 minute personal discussion with the President,  on  same as well as development of Algeria East West highway project.

89 . June 2003, During trade fair, Genesis and IIC management officially meet representatives of Northrop Grumman Corporation, Mr.John Foggan and Mr.St.Claire where Mr.Jovanovic presents Genesis business activities including its construction material existing Contracts, Algeria sub license construction materials business opportunities, and Algeria East-West Highway Executed LOI agreement contract, in North Africa and Algeria, and where Genesis and IIC invite Northrop Grumman Corporation to participate with IIC Consortium in development of Algeria East-West project.

90 . June 2003, Northrop Grumman representatives officially express interest to participate, in East West Highway project and express need for additional information on details of Consortium formation, possible forms of participation, scope of its activity, etc.

91 . June 2003, US Embassy in Algiers, holds an official reception, on Embassy grounds, where during reception Mr.Jovanovic presents Genesis business activities in North Africa and Algeria, to all present individual defendants group members, including its construction material existing contracts and newly executed Algeria East-West Highway LOI agreement contract.

92 . June 2003, Genesis and IIC, now jointly with US-ABC, organize and sponsor and hold an International Conference, in Washington DC, on development of Algeria East West Highway ,and other major infrastructure and commercial projects in Algeria, where Genesis is one of major sponsors, and where all individual defendants are in attendance, except Mr.Ismael Chicoun and Elizabeth Lord Stewart. and where Bob Jovanovic, presents

15

during his official and unofficial presentations and or discussions, Genesis Business History in North Africa, including its existing successes in form of all executed Agreements and Contracts.

**93.**   June 2003, Bob Jovanovic announces, during conference presentation an internal bid system, where IIC Consortium will choose suppliers of products and services based on best price discovery formula, where one or several Consortium members compete for becoming a supplier and where one or more may win internal bid , depending on type of product or service requirement.

**94.**   June 2003, US State Department privately introduces new US Ambassador to Algeria, Mr.Richard Erdman to Mr.Bob Jovanovic., where Mr.Jovanovic continues close cooperation with Mr.Erdman until September 14,2004.

**95.** July 2003, than US-ABC Chairman Mr.Zapanta and President Mr.Holmes write a letter of praise and thanks to Mr.Jovanovic for his lucid, high energy presentation, during June conference, which had a significant impact in making an event a great success.

**96** July 2003, Mr.Jovanovic visits US-ABC Chairman Mr.Al Zapanta, in his Washington DC office, where Mr.Jovanovic invites Mr.Zapanta to act in development and or operation of Algeria East-West, after project takes off the ground, and Mr.Zapanta accepts invitation.

**97** . January, 2002-July 2003, Genesis & IIC Consortium management develops and presents a first proposal East-West Highway, financial and operational architectures, and delivers a major, ten volume project development architecture, initial proposal presentation, to Algeria ministry of Civil works in Algeria, which, within its architecture, also contained a proposal to build new housing and mini industrial parks in close vicinity of said Highway exits.

**98** . July ,2003 Northrop Grumman, through its representative Mr.John Foggan, writes an e-mail to Mr.Jovanovic, (hence confirming Northrop Grumman was one of invited members of IIC for development of Algeria East West Highway, as a short listed supplier of IT systems for Toll Highway toll collection, communications and operation), and agrees to continue developing Grumman's position, in the project.

**99** . July 2003, Mr.Ali Jazzairy, son of Algeria Ambassador to US performs minor financial consulting work for Genesis, on East-West Highway project, and receives official payment, from Genesis, for performed consulting work.

**100**. July,2003 Genesis still refrains from hiring Mr.Ali Jazzairy, son of Ambassador to Algeria, as a full time employee of Genesis, or IIC, (against continuous pressure from the Ambassador), as a result of Genesis investigation pointing to certain liabilities, which may be undertaken by Genesis, IIC and Mr.Ali Jazzairy, if and when Mr.Jazzairy becomes a full time employee of Genesis and Algeria Highway $7.3 Billion 30 year BOT/PPP project rights are officially granted to Genesis.

**101**. August 2003, Mr.Jovanovic and Mr.Azouz arrive again in Algeria for further talks on Algeria East-West Highway, with Algeria Presidents Cabinet, and US-ABC supports Genesis individually by arranging all visit details such as airport pick up, hotel reservations, and arranges all meetings for Genesis delegation consisting several private business meetings and several Government business meetings

**102**. September 2003, Mr.Jovanovic and Mr.Azouz arrive again in Algeria for further talks on Algeria East-West Highway, with Algeria Presidents cabinet, and enlarged highway commission and again US-ABC arranges all visit details such as airport pick up, hotel reservations, and arranges all meetings for the delegation including several private business meetings and several Government business meetings.

**103** . September 2003, IIC and Genesis delegation meets with 15 member, enhanced East-West Highway project commission, in Algiers, and present most recent update, on East-West Highway, project development including architecture for housing and industrial development along the highway and in close vicinity of highway exits.

**104**. September 2003, US-ABC, Genesis, IIC and all individual defendants group, US-ABC members are present and or sponsor a dinner in New York City, for Algeria President Mr.Bouteflika, and where Genesis and (IIC) act as $10,000.00 sponsors.

**105**. September, 2003, Mr.Jovanovic meets privately with Algeria President Bouteflika, before dinner, to discuss East-West project development, and President directs Mr.Jovanovic to continue working closely with his cabinet while continuously developing East-West project and acting on inviting European and other potential IIC members.

**106**. September 2003, during dinner, and his official speech, Algeria President Bouteflika, officially recognizes that an American Consortium is developing Algeria East-West Highway.

**107**. September 2003, after Algeria President official speech, now Mr.Jovanovic, as President of IIC, in his official greeting to the President and his official speech and presentation to President of Algeria, presents Genesis and IIC North Africa history, including

its construction materials and other business, and as a major event, hand delivers, in official ceremony to the President, a draft of proposed BOT/PPP Concession Contract Agreement for East-West Highway Project where President officially accepts said draft agreement on behalf of Algeria Government.

**108.**  September 2003, immediately after New York reception, main stream Algerian news papers (press), announce IIC, US Consortium, is well placed to finance Algeria East-West Highway, under US-ABC.

**109.**  September,2003 US-ABC Chairman Zapanta and President Holmes write another official letter of thanks to Mr.Jovanovic and Genesis for supporting and participating Algeria President's dinner event.

**110.**  October 2003, IIC and Genesis continue private negotiations and additional intensive work on development of the East-West project, according to advise by Algeria President , which directed that during pre-election period, there must be a quiet Algeria East-West project development period without any public events, as a result of upcoming Algeria Presidential elections.

**111.**  October,2003, US-ABC invite Genesis and Mr.Jovanovic to now participate and assist US-ABC sponsored agriculture conference in Chicago.

**112.**  October 2003, Genesis, represented by Mr.Jovanovic agrees to assist Chicago US-ABC conference efforts, in welcoming Algeria Delegation, and also assist Algeria participation in US, Chicago held Food Expo.

**113.**  December 2003, Mr.Goumiry's credibility is attacked by US-ABC.

**114.**  December,2003, Ambassador of Algeria Mr.Idriss Jazzairy, advises Mr.Jovanovic to sever his relationship with Mr.Goumiry as a result of Mr.Goumiries failure to act properly in his capacity as US-ABC representative, without providing any details of said improper acts, citing ongoing negotiation with Mr.Goumiry, for inability to provide same.

**115.**  December 2003, Mr.Jovanovic advises Ambassador that Mr.Goumiry, has always acted as US-ABC representative and in great support of individual Genesis Algeria business needs and has been a very necessary and welcome part of Mr.Jovanovic personal, IIC and Genesis activity in Algeria.

**116.**  December 2003, Mr.Jovanovic further advises Algeria Ambassador that he will

examine the situation, and advise Ambassador, on any decisions reached in regards to future relationship with Mr.Goumiry, as soon as his investigation is complete.

117.   December 2003, immediately after discussion with Algeria Ambassador, Mr.Jovanovic and Genesis perform an investigation regarding implied responsibility of US-ABC activities in regards to Algeria market, as a qualified business league, to support individual US-ABC members activities in entering said Algeria market.

118.   December 2003, during said investigation, copies of US-ABC By-Laws and other documents were reviewed, where Mr.Jovanovic learned, that US-ABC has been incorporated in 2002, under a non-profit, Social Welfare organization, statue and where original US-ABC By-Laws were drafted directing that US-ABC is a qualified 501(c)(4) corporation and not capable to act individually on behalf of any of its members, or supporting any acts, according to IRS rules, generating individual profits.

119.   December 2003, Genesis investigation also showed that 501(c)(4) non-profit corporation, such as US-ABC, is not allowed by US tax law to represent individual interests of its members/shareholders, etc. and is, as such, violating certain US tax laws, and as a result potentially incurring certain tax liabilities for it self and potentially for its members.

120.   December 2003, in addition, during same investigation, it became clear to Mr.Jovanovic that US-ABC was potentially violating certain US Tax laws, as US-ABC and Mr.Goumiry have promised and in fact were assisting all individual Genesis, for profit business activities.

121.   December 2003, Genesis investigation also clearly showed that US-ABC was from beginning of its inception, fraudulently misrepresenting to Genesis and mr.Jovanovic, its legal ability to individually back Genesis, or any other US-ABC member, in development of their individual Algeria business, and where based on said fraudulent misrepresentations, US-ABC enticed and coerced Genesis and mr.Jovanovic to invest their money and their good name and as result, Bob Jovanovic continued to invest in their construction material, Algeria East-West Highway and other business, in Algeria and elsewhere.

122.   December 2003, Mr.Jovanovic schedules now a private meeting, with Algeria Ambassador Mr.Jazzairy, at Algeria Embassy in Washington DC, where he advises Ambassador of his findings, and requests guidance from the Ambassador on these relevant issues.

123.   December 2003, during private meeting, Ambassador advises Mr.Jovanovic

that US-ABC council will be undergoing major management change and promises that individual member representation issue will be addressed by next council administration.

**124.** January 2004, all individual group members, conspire to illegally nominate agent of Northrop Grumman, Don Wilhelm, as only candidate for new Chairman of US-ABC.

**125.** January 2004, Algeria press announces that Genesis is well placed to win a Multi Billion Dollar contract to build $1,216km East-West Motorway.

**126.** February 2004, during Algeria quiet period,(as a result of Algeria Presidential elections) and based on concerns about US-ABC individual representation situation, Mr.Jovanovic, Genesis and IIC make a decision to continue with West Africa business and proceed to execute, as IIC, an MOU to build Abidjan, Ivory Coast Urban Train project.

**127.** February 2004, President of OPIC, Mr.Peter Watson, invites Mr.Jovanovic to meet with him in Bucharest.

**128.** February 2004, US Ambassador to Algeria Mr.Richard Erdman invites Mr.Jovanovic to participate in 2004 Algeria Trade fair, and asks for Mr.Jovanovic's assistance in inviting additional US firms to participate at 2004 Algeria trade fair.

**129.** March 2004, International Infrastructure Consortium ltd (IIC), has executed a 30 year concession agreement, with Governor of district of Abidjan on March,13,2004, granting plaintiff Genesis subsidiary (IIC) the right for development, construction and operation of Abidjan Urban Train project, as a 30 year concession.

**130.** March 2004, Abidjan project is developed as a 150km urban train system in District of Abidjan, country of Cote d'Ivoire, Western Africa, where total development costs, for this project where than valued at $1.5 Billion US Dollars and cumulative profit, during 30 year district of Abidjan Urban Train concession operation, was estimated at $2.9 Billion USD, and this project being developed as a 30 year concession, BOT, (Build Operate Transfer) and PPP ( Public Private Partnership) business concepts.

**131.** March,2004, Genesis still not certain in regards to individual representation capability issue, decides to retain, for 2004, only a corporate membership in US-ABC and makes a payment of $1,500, as required payment for same, according to US-ABC By-Laws.

**132.** March 2004, US-ABC Board elects agent of Northrop Grumman, Mr.Donald Wilhelm, new Chairman of US-ABC.

**133.** April 2004, or soon thereafter Mr.Wilhelm, proceeds and names a new hand picked US-ABC President, Algerian man, Mr.Ismael Chicoun, as replacement for President, Mr.Richard Holmes, there by even more strengthening monopoly and control of US-ABC by Northrop Grumman and Algeria Government.

**134.** April 2004, President Bouteflika of Algeria wins Presidential election in Algeria.

**135.** April 2004, defendant Mr.Lamine Djilani performs certain administrative work for Genesis/Consortium.

**136.** May 2004, Mr.Jovanovic holds yet another meeting with Ali Jazzairy, in Washington DC, during which he finds out, for the first time, about Mr.Jazzairies new relationship with Northrop Grumman.

**137.** May 2004, IIC,Genesis and Mr.Jovanovic receive official invitation to Algeria, by Algeria Presidents cabinet, to undergo a final East-West Highway project review process, by President designated UN economic consultant.

**138.** May, 2004, Mr.Jovanovic and Mr.Azouz arrive in Algeria, for meetings with President designated UN economic adviser, where at end of process, a final project review report is issued by said Algeria president designated advisor, in which said advisor defines IIC approach to Algeria East-West highway project as "excellent financial opportunity" for Algeria"

**139.** June 2004, IIC and Genesis exhibit at Algeria International trade fair, where Genesis and IIC present its North African history all its executed agreements, and all its construction materials sub License opportunities for Algeria and where IIC is one of only four out of forty three major US exhibitors, chosen by Algeria President for an official personal visit at opening of trade fair.

**140.** June 2004, Mr.Jovanovic again officially receives Algeria President Bouteflika US-Ambassador Erdman and additionally US under Secretary of Commerce Mr.Doug Baker, at IIC East-West Highway project booth, for approximately twenty minute official discussion on latest East-West Highway, project development.

**141.** June 2004, in their discussions, Algeria President encourages Mr.Jovanovic to be patient and officially ensures him that East –West Highway project decision is on schedule and will be positively decided for the Consortium, based on May issued report, in the near future.

**142.** July,2004, President of US EXIM bank, Mr.Philip Merril, travels for first time to Algeria, for official meeting with President Bouteflika, where Mr.Merril officially announced to Algeria President that EXIM bank is ready to finance up to $50 Billion Dollars for US companies involvement in major Infrastructure and supporting projects, including Algeria East West highway project.

**143.** July 2004, immediately after learning of news that Exim Bank will now finance East-West Highway and other projects in Algeria, Mr.Jovanovic and other IIC and Genesis management immediately become concerned about Genesis and IIC legal and financial position in Algeria East-West Project, and further civil and other implications as a result of potential violations of IRS Tax and FCPA laws.

**144.** July 2004, Mr.Jovanovic now contacts Mr.Don Wilhelm at his Northrop Grumman's office and requests a private meeting with him, for discussions on IRS Tax Code and FCPA violations issues, and impact FCPA violations may have on IIC and or Genesis ability to obtain Exim Bank Financing for Algeria East-West Highway business.

**145.** July,2004, Mr.Jovanovic is invited by Wilhelm to meet with him at his Northrop Grumman office in Grummans Linthicum Maryland headquarters, on August,02,2004.

**146.** August, 02, 2004, Mr.Jovanovic arrives for a meeting with Mr.Don Wilhelm, new Chairman of US-ABC, at Northrop Grumman Linthicum Maryland headquarters.

**147.** August, 2004, upon arrival, Mr.Jovanovic is initially greeted by Ms.Peggy Hewinson, Operations manager of Northrop Grumman, where Ms.Hewinson identifies her self as Northrop Grumman Operations Managers and where Mr.Jovanovic meets Ms.Hewinson for the first time.

**148.** August 2004, Mr.Jovanovic meets with Mr.Don Wilhelm where he initially presents to Mr.Wilhelm North Africa business history of Genesis, as one of founding members of US-ABC, explaining Genesis's involvement and its existing North Africa contract agreements for licensing and manufacturing Cultured Stone and decorative glass construction products, destined to be used in Algeria East-West Highway.       Further Mr.Jovanovic explains the existence of Genesis executed LOI Algeria East-West Highway agreement with Algeria Government, and second, as to history of IIC, explained IIC involvement in Algeria East West Highway and Abidjan Urban Train projects, including the existence of proposed draft of IIC Concession agreement for Algeria East West Highway Project as well as existence of MOU and executed concession agreement for Abidjan Urban

22

Train project.

**149.** August 2004 , after Genesis and IIC presentations, Mr.Jovanovic now expressed strong concerns, to Mr.Wilhelm, in regards to initial US-ABC misrepresentation to Genesis and Mr.Jovanovic on legal ability of US-ABC to individually assist Genesis, Mr.Jovanovic or any other US-ABC members in specific, individual, business projects in Algeria and as per almost two year history of US-ABC representation of Genesis individual interests, apparent US-ABC violation of 501(c)(4) or 501(c) (6) IRS non-profit standing.

**150.** August 2004, after discussions on potential IRS violations, Mr.Jovanovic now represents additional concerns, to Mr.Wilhelm, in regards to US-ABC and Grumman potential violations of US FCPA act (US Federal Corrupt Practices Act) and its potential impact on any future Genesis/IIC project, Exim Bank Government financing, as well as existing Grumman's Government contract business, as a result of Algeria Ambassadors son employment in Grumman while simultaneous, Grumman's ascension to Chairman's position in US-ABC.

**151.** August 2004, after expressing his concerns in regards to potential violations of IRS Tax and FCPA laws, Mr.Jovanovic recommends to Mr.Wilhelm that US-ABC board should vote on instituting US-ABC tax status changes, with IRS, where US-ABC should become a for profit Business Council, where also Northrop Grumman should act and remove potential violation as to FCPA, by relinquishing its Chairman's position in US-ABC, or immediately terminating employment of Algerian Ambassadors son Mr.Ali Jazzairy, with Northrop Grumman.

**152.** August 2004, at the end of meeting, Mr.Wilhem misrepresents to Mr.Jovanovic that he will examine both situations with his legal team, , and will immediately personally advise Mr.Jovanovic of results of his examinations, as soon as same is finalized.

**153.** August 2004, immediately after meeting with Mr.Wilhelm, Mr.Jovanovic now meets with Mr.Ali Jazzairy, at Grumman Linthicum Headquarters, and discusses East-West Highway project, Mr.Jazzairy employment with Grumman, and potential FCPA violations, as a result of Mr.Jazzairies employment with Grumman, as part of simultaneous, Grumman's ascension to Chairman's position in US-ABC.

**154.** August 2004, at the end of their meeting, Mr.Jovanovic recommends to Mr.Jazzairy to cooperate with Grumman's decision, where a goal is to remove potential violation as to FCPA by either Grumman relinquishing its Chairman's position in US-ABC, or Mr.Ali Jazzairy, leaving his employment position at Grumman.

**155.**   August 2004, after meeting with Donald Wilhelm and Ali Jazzairy, Mr.Jovanovic schedules and meets with individual defendant Ismael Chicoun, new President of US-ABC and individual defendant Elizabeth Lord Stewart, new operations director for US-ABC, at new, Arlington based, offices of US-ABC, located now at individual defendant's, Northrop Grumman property, in Arlington Virginia, where INDIVIDUAL defendant group member, Northrop Grumman, further strengthened its control of US-ABC by moving its offices to its owned or controlled office space premises.

**156.**   August 2004, during meeting with Mr.Chicoun and Ms.Stewart Bob Jovanovic, presents business history of Genesis, as one of founding members of US-ABC, explaining Genesis's involvement and existing North Africa contract agreements for licensing and manufacturing Cultured Stone and decorative glass construction products, destined to be used in Algeria East-West Highway.       Further he explains existence of executed LOI agreement with Algeria Government, and second, as to history of IIC, explaining IIC involvement in Algeria East West Highway and Abidjan Urban Train projects, including the existence of proposed draft of IIC Concession agreement for Algeria East West Highway Project as well as MOU and executed concession agreement for Abidjan Urban Train project.

**157.**   August 2004, Mr.Lamine Djilani, continues his two years history of Business correspondence with Mr.Jovanovic and this time again e-mails Mr.Jovanovic, in his continuous effort to monitor East-West Highway project status, where he briefly inquires about most recent status of Algeria East-West Highway project development , while he is away.

**158.**   September, 2004, less than one month after their August meeting, Mr.Ali Jazzairy conspires with all individual defendants group, as listed in "parties" section of this complaint, to write a letter to IIC and Mr.Jovanovic, where he would begin to deny any relationship with IIC by now fraudulently misrepresenting he never gave his consent to be included in any IIC documentation.

**159.**   September 2004, as a result of receiving Mr.Jazzairy's fraudulent misrepresentation correspondence, Mr.Jovanovic, in the face of injustice suffers major emotional distress.

**160.**   As part of conspiracy to fraudulently misrepresents his personal relationship with Mr.Jovanovic and IIC, Mr.Jazzairy requests, in his September,02,2004 letter, that his name is removed from all IIC documentation and urgently sends his letter, via Federal

Express overnight service, from his personal address in Washington DC to IIC New Jersey office.

**161**   September,14, 2004, individual defendant Lamine Djilani as individual and as agent of US-ABC, conspired with all individual defendants group, to now libel Bob Jovanovic, Genesis and IIC, and fraudulently stated and misrepresented to all plaintiffs all individual defendants group, and Algeria Government that he never had any personal and business relations with Genesis or Bob Jovanovic.

**162** . September 14, 2004, individual defendant Northrop Grumman as individual corporate member  conspired with all individual defendants group, to libel Bob Jovanovic, Genesis and IIC, and fraudulently stated and misrepresented to all plaintiffs all individual defendants group, and Algeria Government that it never had any personal and business relations with Genesis or Bob Jovanovic even though Grumman jointly invested with Genesis, in US-ABC, and had two year business relations as a result thereof, whereby US-ABC By-Laws contract directed all members act in jointly promoting common business interests.

**163.**   September 14,2004  defendant Donald Wilhelm, individually and in his capacity as agent of defendants Northrop Grumman and acting Chairman of US-ABC, conspires with all individual defendants group as listed in "parties " section of this complaint, and write a September,14,2004 offending letter.      Said letter was in fact written above and beyond acting Chairman's prescribed duty, and in violation and breach of fiduciary duty, as prescribed by article V, and other articles of US-ABC By-Laws, and in fact was written without official authorization from the US-ABC Board, to Chairman of US-ABC, and executed expressly in his capacity as Chairman of US-ABC, to plaintiffs Genesis and Bob Jovanovic.

**164.**   September,14,2004 letter is drafted and or reviewed and or participated in approval by all INDIVIDUAL defendants group, as listed in "PARTIES" section of this complaint, whereby all individual defendants group, through silent approval, participated in fraudulent misrepresentation, within said letter, that Genesis and Mr.Jovanovic have inappropriately claimed some manner of affiliation with certain individuals and certain entities and further also fraudulently misrepresenting that Genesis had an uneven history while paying its financial obligations.

**165.**   September 2004, where September,14,2004 letter fraudulently claimed identities of said certain individuals and entities included past Chairman of US-ABC, Mr.Al Zapanta, past President of US-ABC Mr.Richard Holmes, Vice Chairman of US-ABC

Mr.Lamine Djilani, Mr.Ali Jazzairy as son of Algeria Ambassador and one of founding members of US-ABC Northrop Grumman Corporation.

166. September 2004, through drafting, writing and or silently approving September 14,2004 offending letter,  defendant Donald Wilhelm, individually and as agent of individual defendant Northrop Grumman and as agent of individual defendant US-ABC, and all individual defendants group, conspired with all individual group defendants for all said defendants to participate in silent approval, and thus jointly fraudulently misrepresent that all individual group defendants  have consulted with and based their conclusions, in September,14,2004 letter on consultations with past Chairman of US-ABC, Mr.Al Zapanta, past President of US-ABC Mr.Richard Holmes, Vice Chairman of US-ABC Mr.Lamine Djilani, Northrop Grumman Corporation and Mr.Ali Jazzairy as son of Algeria Ambassador to United States.     Additionally, all above named defendants in this paragraph, again fraudulently misrepresent that Mr.Ali Jazzairy is now or was formerly a member of US-ABC or is now or was formerly individually associated with US-ABC.

167. September 2004, also as part of said letter all individual defendants as listed in "PARTIES " section of this complaint, conspire and attempt to extort from plaintiff Genesis, Genesis's membership in US-ABC through requesting Genesis to voluntarily withdraw from US-ABC membership, and absent Genesis withdrawal all individual defendants group Threatened to seek a resolution of all membership expelling Genesis from US-ABC organization.

168. September 15,2004, all defendants group as listed in "parties " section of this complaint, conspired, forward via fax machine, forward via mail and advise via telephone September,14,2005 offending letter, to plaintiffs Genesis and Boban Jovanovic, through individual defendants Northrop Grumman Fax system, mail systems and or other telephone systems to plaintiff Genesis New Jersey based fax number and telephone number.

169. September 15,2004, immediately after receiving letter from Northrop Grumman and in response to receiving faxed copy of September 14,2004 letter, Bob Jovanovic telephoned Mr.Donald Wilhelm and verbally represented to Mr.Wilhelm that Genesis will not withdraw from US-ABC membership and also advises Mr.Wilhelm that Genesis will officially reply to his allegations in the very near future.

170. September, 15, 2004, as a result of receiving September, 15, 2004 fraudulent misrepresentation correspondence from all individual defendants group, Mr.Jovanovic, in the face of injustice suffers another major emotional distress.

26

171. September, 2004, and on September 15,2004 all individual defendants group as listed in "parties " section of this complaint, now conspires with INDIVIDUAL defendant group member Northrop Grumman and GRUMMAN AGENT defendant group member Ms.Peggy Hewinson to draft, write and send an offending e-mail, with attached copy of September,14,2004 letter, to all individual defendants group, where all will approve said letter, through silent approval, (and deliberately copy same e-mail to Algeria Government), whereby fraudulently misrepresenting and announcing in said e-mail that plaintiff Genesis has been expelled from US-ABC.     All said e-mails were than sent to all recipients by INDIVIDUAL defendant group member Northrop Grumman, via Northrop Grummans e-mail server system.

172. September 2004, in writing of offending letter all individual defendants group, INDIVIDUAL defendant group member Northrop Grumman and GRUMMAN AGENT defendant group member
Mr.Wilhelm, state many times that they are acting on behalf of and representing opinions requests and decisions of all US-ABC Council board and corporate members when they used "we" (8 times) and "us-our" (2 times), specific language. (As an example, "By this letter we are requesting..." and, "We make this request".)

173. September 2004 and until today, all individual defendants group, conspired and provided silent approval (silence, in the face of wrongdoing, which is evidence of de-facto approval ) after receiving from defendant Northrop Grumman and defendant US-ABC on September,15,2005, an e-mail message and a copy of September,14,2004 letter, stating that Genesis has been expelled from US-ABC.     Further, all defendants have ever since failed to act or contact US-ABC or Northrop Grumman or Don Wilhelm and question the decision to expel Genesis or call for an appropriate hearing, on why has Genesis been expelled from Council, as required by US section 6 By-Laws and in violation of same section 6 rule, of said By-laws, as well as violations of sections 1-7 of Sherman-Act.

174. September 2004, in response to Grumman September, 15,2004 offending letter, Genesis responded, on September 17, 2004, to all individual defendants group as defined in "parties section of this", complaint ", through US-ABC and Northrop Grumman's agent Mr.Wilhelm, where by totally refuting all allegations within said letter and requesting a fact finding forum, within US-ABC, to clear its name.

175. September 2004 and until today, all individual defendants group, conspired and provided silent approval (silence, in the face of wrongdoing, which is evidence of de-facto approval ) after learning of September,17,2004 Genesis correspondence, and has ever

since failed to act or contact Genesis or US-ABC or Northrop Grumman or Don Wilhelm and comment and or question the allegations against Bob Jovanovic and Genesis and decision to expel Genesis or call for an appropriate hearing, on why has Genesis been expelled from Council, as required by US section 6 By-Laws and in violation of same section 6 of same By-laws as well as violations violation of sections 1-7 of Sherman-Act.

176. September 2004, as a result of not receiving any response to Genesis September,17, 2004 correspondence, Mr.Jovanovic, in the face of yet another injustice suffers more, major emotional distress.

177. September,19,2004 as additional part of his response, Mr.Jovanovic now personally writes an e-mail directly to all individual group members and Algeria Government, and requested a forum within US- ABC, where he invites Mr.Wilhelm to provide evidence as to his "very serious allegations", and where he proposes Genesis and Mr.Jovanovic to bring forth evidence as support of their rebuttal of said very serious allegations.

178. September 2004 and until today, all individual defendants group, conspired and provided immediate silent approval (silence, in the face of wrongdoing, which is evidence of de-facto approval) after receiving of September 19,2004, Bob Jovanovic correspondence, and has ever since failed to act or contact Bob Jovanovic or US-ABC or Northrop Grumman or Don Wilhelm and comment and or question the allegations against Bob Jovanovic and Genesis and decision to expel Genesis or call for an appropriate hearing, on why has Genesis been expelled from Council, as required by US section 6 By-Laws and in violation of same section 6 of same By-laws as well as violations violation of sections 1-7 of Sherman-Act.

179. September, 21,2004 individual group member, Jim Bailey, briefly breaks silent approval and writes September,21,2004 e-mail to Mr.Jovanovic, and provides personal opinion and certain fraudulent misrepresentations and personal assurances, that September,15,2004 e-mail was unfortunate mischaracterization of facts, and that there was an act of withdrawal by Mr.Wilhelm, of same e-mail.

180. September,21,2004 individual group member Jim Bailey, further represents that Don Wilhelm is "now examining the situation", and will be in touch with plaintiff Bob Jovanovic to further discuss the matter.

181. September 2004-November 2005 there was never any retraction by Mr.Wilhelm of September,15,2004 email, and Mr.Wilhelm never attempted to get in touch with Mr.Jovanovic or his attorney, to meet and discuss the matter further, as such making it very clear that Mr.Bailey fraudulently misrepresented to plaintiff that there was retraction of said

e-mail and that Mr.Wilhelm will examine the situation, meet with Mr.Jovanovic and further discuss the matter.

**182.**   September 2004, as a result of not receiving any response to his September,19, 2004 correspondence, Mr.Jovanovic, in the face of yet another injustice suffers even more, major emotional distress.

**183.**   September 2004, Mr.Ali Jazzairy again writes, in response to Mr.Jovanovic September 19, E-mail correspondence, and writes a September 21, 2004 letter to Mr.Jovanovic, and all individual defendants group members where he now states that He never agreed to any business or personal relationship with Genesis or IIC.

**184.**   This time Mr.Jazzairy again misrepresents the truth when sends to Bob Jovanovic as President of IIC, what he describes to be, a refund check to Genesis for $206.00, claiming Genesis wrongly wrote a check for $500.00 to him, as payment for his train fare, while visiting Genesis and IIC office in Cranford N.J.

**185.**   September 2004 in his September 21,2004 letter Mr.Jazzairy again conspires to misrepresent the truth and as a result of, libels Mr.Jovanovic, jointly with all individual group defendants, as listed in "parties " section of this complaint, when he drafts and sends said letter to mr.Jovanovic, Genesis and IIC, and copies said letter to all other individual defendants group and Algeria Government, where he states within said letter that he has never had a business relationship with or agreed to any business relationship with IIC or Genesis.

**186.**   September 2004, Mr.Richard Holmes, past President of US-ABC confirms in writing that he "clearly" had relationship with Genesis and Jovanovic in clear testimony that September,14,2004 letter was in fact misrepresentation by all individual defendants group.

**187.**   September 2004, further in their legal defense to Mr.Wilhelms letter, Genesis lawyer, writes, on September 24,2004 an official legal response letter to Mr.Don Wilhelm, in his capacity as Chairman of US-ABC, his capacity as Vice President of Northrop Grumman and his personal capacity, now requesting officially, with legal ramifications, that libelous statements be retracted and demanding apology to Genesis and Mr.Jovanovic, as a result of these unfortunate acts.

**188.**   September 2004 and until today, all individual defendants group members , conspired and provided silent approval (silence, in the face of wrongdoing, which is evidence of de-facto approval ) after learning of September,24,2004 Genesis and Bob Jovanovic's lawyer correspondence, and has ever since failed to act or contact Genesis and Bob Jovanovic's lawyer or US-ABC or Northrop Grumman or Don Wilhelm and comment and or

question the allegations against Bob Jovanovic and Genesis and decision to expel Genesis or call for an appropriate hearing, on why has Genesis been expelled from Council, as required by US section 6 By-Laws and in violation of same section 6 of same By-laws.

**189.** September 2004, as a result of not his lawyer now not receiving any response to Genesis his September,24, 2004 correspondence, Mr.Jovanovic, in the face of yet another injustice suffers more, major emotional distress.

**190.** September 2004, in response to receiving a copy of Mr.Wilhelm letter to Genesis and Mr.Jovanovic, and an e-mail from Northrop Grumman, Algeria Ambassador Jazzairy, forwards copies of same to Algeria Minister of Civil works, H.E.Mr.Ammar Ghool.

**191.** September 2004, in response to receiving offending September, 15 letter and Northrop Grumman e-mail, Algeria Minister of Public works, announces on September,16,2004, in an interview with Algiers newspaper 1 Expression ( reported in official Algeria Press Service) that from now on, Algeria East West Highway project will be developed by European and Asian companies.

**192.** September 2004, as a result of learning of Algeria minister of Civil works announcement that Algeria East-West project is now only being developed by Asians and Europeans, in the face of losing his project and major investments, Mr.Jovanovic suffers now , most major to date, emotional distress.

**193.** September 2004, in response to Algeria Press announcement from Algeria Minister Ghool's, statement. Mr.Jovanovic forwards an official response to President of Algeria H.E.Mr.Bouteflika, advising him officially of this unfortunate situation and proposes to Algeria President a five months, of investigative period, where Genesis, him self and IIC will attempt to resolve situation at hand with US-ABC, Grumman and any other parties which participated in the attack.

**194.** September 2004, in his letter to Algerian President Mr.Jovanovic further proposes to President that if no resolution can be obtained until February,15,2005, a five month, attack against Genesis anniversary date, Algeria Government is free of any obligation under May,05,2003 executed LOI agreement with Genesis, and can proceed to develop the all important Algeria East-West Highway project.

**195.** September 2004, further, in response to learning of Genesis lawyer's demanding legal letter (position), to Mr.Donald Wilhelm, and Northrop Grumman, Ambassador Jazzairy clearly shows Algeria Government belief in September,14,2004 letter allegations against Genesis and Bob Jovanovic, when immediately,(without performing any

30

due diligence on issues at hand) takes a position of defense on behalf of Mr.Wilhelm, and "other litigants", names Mr.Jovanovic persona non-grata and informs Mr.Jovanovic that Algeria Government invitation previously extended for Mr. Jovanovic, for Ambassadors farewell party, is "null and void".

**196**. September 2004, as part of Mr.Jovanovic persona non-grata status, Mr.Jazzairy also instructs Algerian consul in Washingon DC, not to issue any more visas to Mr.Jovanovic, for entry in Algeria.

**197**.  September 2004, as a result of receiving a letter from Algeria Government( through Algeria Ambassador) advising Mr.Jovanovic that he is now persona non-grata, and terming his invitation to going away party "null and void" and learning that his visa to Algeria will not be issued any more, he suffers now , extreme emotional distress.

**198**. October,2004 Mr.Jovanovic advises US Embassy, in Algeria, in regards to this situation, and receives an invitation from US Ambassador to Algeria Mr.Richard Erdman inviting Mr.Jovanovic for a meeting with him, in Algiers, on this subject.

**197**. October,2004 Algeria Consul, in Washington DC, denies issuance of Visa to Mr.Jovanovic, for any further entry in Country of Algeria even though there is also invitations from Genesis potential auto distribution business partner in Algeria, as well  as from a US Ambassador to Algeria.

**199**. October, 2004, Mr.Jovanovic ,and Mr.Azouz arrive in Abidjan for a meeting with Abidjan government, where Mr.Jovanovic personally advises Abidjan Government of an unfortunate attack on his, Genesis and hence IIC credibility by one of important invited members of IIC, Northrop Grumman, and negative impact this unfortunate situation may have on their ability to finalize Abidjan Urban Train project.

**200**. October 2004, Abidjan Governor responds officially to Mr.Jovanovic, that Abidjan Government is ceasing all its activities, under March 2004 concession agreement and breaching said Concession contract agreement, with Genesis, Mr.Jovanovic and IIC, until, situation with Grumman is resolved.

**201**.  September 2004, as a result of learning from Abidjan Government that the Abidjan Urban Train project has been put on hold, pending resolution of allegations by all individual Defendants group, Mr.Jovanovic suffers now, even more extreme emotional distress.

**202**.  October 2004, Algeria Government official represents, at official speech in

31

United States, that US companies are active in many important commercial activities in Algeria, naming several projects, and excludes East-West Highway project during his speech.

**203.** January 2005, Northrop Grumman announce at a press conference in Algeria, that Grumman has established AIDG, its Algeria subsidiary, in continuation of its long term strategy for developing and monopolizing Algeria commercial infrastructure projects and other important business segments,

**204.** February 2005, immediately after expiration of Genesis imposed Fenbruary,15 deadline, President Bouteflika announces that "as a result of lack of interest from foreign investors" Algeria East-West Highway will be developed as a Government sponsored project.

**205.** March 2005, as a result of learning directly of President Bouteflika, that he has made a final decision and Algeria East West project will now be developed internally by Algeria and other capacities, Mr.Jovanovic now suffers, ultimate emotional distress.

**206.** March 2005, as a result of six months of continuous September,14, 2004 letter related stress, plaintiff Bob Jovanovic suffers great emotional distress, also suffers major other health consequences as result thereof, was committed to two weeks of hospital stay, was submitted to a multitude of medical tests, was put on major drug treatment for psychological problems, and was on a suicide watch for several days, as a result of all individual defendnat group members acts as described within this complaint.

**207.** April 2005, plaintiff Bob Jovanovic was released from the hospital and is still presently under doctor's care.

**208.** December 2005, Northrop Grumman Algeria Subsidiary, AIDG is now advertised as board member of US-ABC.

### FIRST CLAIM FOR RELIEF

#### Intentional Inducing a Breach of Contract/Agreements

**209.** Plaintiff re-alleges all allegations as alleged in 1-208 above.

**210.** Plaintiff Genesis had existing agreements and contractual relationships with Bob Jovanovic, US-ABC, Algeria Government, IIC and members of Genesis Management team.

**211.** Plaintiff Bob Jovanovic was a party to and had existing, individually executed, contracts and or agreements, and was a party to agreements and or contractual relationships

with Ahmed Azouz, SOTRAMA, Genesis and IIC.

212.    Plaintiff IIC had existing agreements and or contractual relationships with Genesis, Bob Jovanovic, Ivory Coast (Abidjan) Government, as well with members of IIC management team.

213.    From, 2000 until September 14, 2004, all plaintiffs have jointly expanded direct costs and undertook certain liabilities, in business development, operations, and other activities, in total amount of $21.3 Million Dollars.

214.    Where all INDIVIDUAL defendants group members had knowledge of all plaintiffs, existing, contractual relationships.

215.    Where "first group" of defendants, consisted of (a) GRUMMAN AGENTS defendant group members Donald Wilhelm and Peggy Hewinson, (b) all COUNCIL defendant group members and (c) INDIVIDUAL defendant group member Northrop Grumman, and "acted directly or through other acts", wrote and forwarded September,14, 2004 letter and September 15,2004 e-mail correspondences, to plaintiffs, Algeria Government and all members of US-ABC, and as a result of said letter, induced breach of all plaintiffs contracts and or agreements.

216.    Where also said "direct and other acts" consisted of conspiring and or acting directly or through other acts , to Libel all plaintiffs and  where also in support of their libelous activity, above named defendants misrepresented, (in September 14,2004 letter and September 15,2004 e-mail), certain facts, where also above named defendants acted with fraud and deceit, while misrepresenting, within said letter and said e-mail, existence of certain plaintiff's relationships, certain plaintiff's financial history and plaintiff Genesis membership status with US-ABC, (as described within background statements of this complaint) and as a result induced breach of all plaintiffs contracts and or agreements.

217.    Where also, now a "second group" of defendants, [consisted of: (a) All US CORPORATE defendant group members, (b) all INTERNATIONAL CORPORATE defendant group members, (c) GRUMMAN AGENT defendant group member Mr.Ali Jazzairy (d) All COUNCIL AGENTS defendants group members (e) all LAWYER group Members and (f) INDIVIDUAL defendant group member Donald Wilhelm] "acted indirectly", breached their fiduciary duty, to Genesis, aided and abetted "first group" defendants and as a result assisted and or induced breach of all plaintiffs contracts and or agreements.

**218.** Where said "indirect acts" of "second group" defendants, [consisted of (a) All US CORPORATE defendant group members, (b) all INTERNATIONAL CORPORATE defendant group members (c) all LAWYER group Members and (d) INDIVIDUAL defendant group member Donald Wilhelm], were performed by these "second group" named defendants individually or as founding corporate members of US-ABC, and individually and as members of board of directors of US-ABC, and where these members of US-ABC board of directors owed certain fiduciary duties, vested upon them . under US-ABC By-Laws, to Genesis, a fellow US-ABC founding member and a member of US-ABC board of directors.

**219.** And where, as a result of same "indirect acts" above mentioned "second group defendants" induced breach of all plaintiffs contracts and or agreements, when they conspired and or acted individually to violate certain obligations and breach their fiduciary duties, vested upon them by US-ABC by-laws, when refused to properly manage and govern US-ABC, through improperly electing agent of Northrop Grumman, Mr.Donald Wilhelm as Chairman of US-ABC, thus empowering Mr.Wilhelm to execute and forward September 14, 2004 letter and September 15,2004 e-mail to plaintiffs, Algeria Government and all members of US-ABC and as a result of said violation, induced breach of plaintiffs contracts and or agreements as described within this complaint.

**220.** Further, said "second group" of defendants(as named in 217-218) also conspired and or acted individually to violate and breach their fiduciary duty, vested upon them by US-ABC laws, when failed and or did not act in any way and or hold an appropriate hearing, and not continue and or stop libeling defrauding and expelling Genesis from US-ABC, upon receiving of correspondence from Chairman of US-ABC, which officially noticed them of initial threat and than (illegal) expelling of Genesis from US-ABC and as a result of said breach and violation, induced breach of plaintiffs contracts and or agreements.

**221.** Further more , said " second group" of defendants also conspired and or acted individually to violate their fiduciary duty, vested upon them by US-ABC laws, when failed and or did not act in any way and or hold an appropriate hearing, and not continue and or to stop any illegal activity, upon receiving of correspondence from Chairman of US-ABC, which officially noticed them that Chairman of US-ABC was writing on their behalf and representing their requests opinions and conclusions, while also additionally acting on behalf of all other US-ABC board members, while threatening and than illegally expelling Genesis from US-ABC.

222. Further more, said defendants also conspired and or acted individually to violate their fiduciary duty, vested upon them by US-ABC By-Laws, when failed and or refused to or did not act in any way or hold an appropriate hearing, and not continue and or stop any illegal activity, upon receiving three separate correspondences, (where first was from qualified US-ABC member Genesis, second directly from honorary president of Genesis, Bob Jovanovic, and third from Genesis and Bob Jovanovic lawyer, and where within said correspondence plaintiffs and their lawyers, requested a fact finding process, an appropriate hearing a retraction of libelous statements and apology in regards to allegations within September,14, 2004 letter) and as a result of violation of said breach of fiduciary duty, aided and abetted and assisted inducement of breach of plaintiffs contracts and or agreements.

223. Where now certain other defendants, consisted of (a) GRUMMAN AGENTS defendant group members Ms.Peggy Hewinson and Mr.Ali Jazzairy, (b) COUNCIL AGENT defendants group members Mr.Lamine Djilani and (c) INDIVIDUAL defendants group member Northrop Grumman, conspired and or acted individually to fraudulently disseminate false information thus aiding and abetting misrepresentation of facts, in September,14,2004 and September, 15,2004 correspondences, where said misrepresentations induced breach of plaintiffs agreements and or contracts.

224. Said acts as described in 209-223 above, caused or assisted in causing and inducing breach of all plaintiff's agreements and or contracts.

225. Said direct or indirect acts were done without justification and caused major financial and other damages to plaintiff Genesis, Bob Jovanovic and IIC.

226. There are damages to plaintiffs, resulting from defendant's Intentional Inducement of Breach of Contract / Agreements.

227. As a result of direct and proximate conduct of defendants, plaintiffs have suffered, general and special pecuniary and non-pecuniary damages, in a form of direct loss of all direct project development investment in time and money for, North Africa Construction Materials Project, Algeria Highway and Abidjan Urban Train projects, in amount of $21.3 million US Dollars.

228. As result of direct and proximate conduct of defendants, plaintiffs have suffered general and special pecuniary and non-pecuniary loss and damages, in form of direct loss of present and future profit and increased shareholder value, from loss of all North and West Africa based Construction Materials projects activity, Algeria East-West Highway and District of Abidjan Urban Train project development and 30 year project concession operation

activity businesses, amounting to present and future losses of $11.3 Billion Dollars or any other amount proven at trial.

**229.** Further, defendants' actions were undertaken willfully, wantonly, maliciously and in reckless disregard for Plaintiff's rights, and as a direct and proximate result thereof plaintiff suffered emotional and other damage in a total amount to be proven at trial, therefore plaintiff seeks punitive and treble damages, as required by law, and in an amount sufficient to deter said defendant and others from similar future wrongful conduct.

### SECOND CLAIM FOR RELIEF

**Tortuous Interference with all Plaintiffs Business Relations and Tortuous Interference with all Plaintiffs Prospective Business Advantage**

**230.** Plaintiff re-alleges all allegations as alleged in 1-229 above.

**231.** Plaintiff Genesis had existing Business Relations and Prospective Business Advantage with Bob Jovanovic, US-ABC, IIC and members of Genesis Management team.

**232.** Plaintiff Bob Jovanovic was a party to and had existing, individually executed, contracts and or agreements, and was a party to agreements and or contractual relationships with Ahmed Azouz, SOTRAMA, Genesis and IIC.

**233.** Plaintiff IIC had existing Business Relations and Prospective Business Advantage with Genesis, Bob Jovanovic, Ivory Coast (Abidjan) Government, as well with members of IIC management team.

**234.** From, 2000 until September 14, 2004, all plaintiffs have jointly expanded direct costs and undertook certain liabilities, in business development, operations, and other activities, in total amount of $21.3 Million Dollars.

**235.** Where all INDIVIDUAL defendants group members had knowledge of existence of all Genesis Business Relations and Prospective Business Advantage.

**236.** Where "first group" of defendants, consisted of (a) GRUMMAN AGENTS group members Donald Wilhelm and Peggy Hewinson, (b) all COUNCIL group members and (c) INDIVIDUAL group member Northrop Grumman, and "acted directly or through other acts ", wrote and forwarded September,14, 2004 letter and September 15,2004 e-mail correspondences, to plaintiffs, Algeria Government and all members of US-ABC, and as a result of said correspondences, tortuously interfered with plaintiff Business Relations and Prospective Business Advantage.

36

237.    Where said "direct and other acts" consisted of conspiring and or acting directly, or through other acts, to Libel all plaintiffs, and where also in support of their libelous activity, above named defendants misrepresented, (in September 14,2004 letter and September 15,2004 e-mail), certain facts, where also above named defendants acted with fraud and deceit, while misrepresenting, within said letter and said e-mail, existence of certain plaintiff's relationships, certain plaintiff's financial history and plaintiff Genesis membership status with US-ABC.(as described within background statements of this complaint)

238.    Where also, now a "second group" of defendants, [consisting of: (a) All US CORPORATE defendant group members, (b) all INTERNATIONAL CORPORATE defendant group members, (c) GRUMMAN AGENT defendant group member Mr.Ali Jazzairy (d) All COUNCIL AGENTS defendants group members and (e) all LAWYER group Members and (f) INDIVIDUAL defendant group member Donald Wilhelm] "acted indirectly" breached their fiduciary duty, aided and abetted "first group" defendants and as a result assisted in and or tortuously interfered with plaintiffs Business Relations and Prospective Business Advantage.

239.    Where said "indirect acts" of "second group" defendants, [consisted of (a) All US CORPORATE defendant group members, (b) all INTERNATIONAL CORPORATE defendant group members (c) all LAWYER group members and (d) and INDIVIDUAL defendant group member Donald Wilhelm], were performed by these "second group" named defendants individually or as founding corporate members of US-ABC, individually and as members of board of directors of US-ABC. And where these members of US-ABC board of directors, owed certain fiduciary duties to Genesis, fellow US-ABC founding member and member of US-ABC board of directors.

240.    And where, as a result of same "indirect acts" above mentioned "second group defendants" , tortuously interfered with plaintiffs Business Relations and Prospective Business Advantage when they conspired and or acted individually to violate certain obligations and breached their fiduciary duties, vested upon them by US-ABC by-laws, when refused to properly govern US-ABC, through improperly electing agent of Northrop Grumman, Mr.Donald Wilhelm as Chairman of US-ABC, thus empowering Mr.Wilhelm to execute and forward September 14, 2004 letter and September 15,2004 e-mail to plaintiffs, Algeria Government and all members of US-ABC and as a result of said violation, tortuously interfered with plaintiffs Business Relations and Prospective Business Advantage as described within this complaint.

241.   Further, said "second group" of defendants, (as defined in 238-239) also conspired and or acted individually to violate and breach their fiduciary duty, vested upon them by US-ABC laws, when failed and or refused to and did not act in any way, and or hold an appropriate hearing, and not continue and stop libeling defrauding and expelling Genesis from US-ABC, upon receiving of correspondence from Chairman of US-ABC, which officially noticed them of initial threat and illegal expelling of Genesis from US-ABC and as a result of said violation, tortuously interfered with plaintiff Business Relations and Prospective Business Advantage.

242.   Furthermore, said " second group" of defendants also conspired and or acted individually to violate and breach their fiduciary duty, vested upon them by US-ABC laws, when failed and or refused to or did not act in any way, upon receiving of correspondence from Chairman of US-ABC, which officially noticed them that Chairman of US-ABC was writing on their behalf and expressing their requests opinions and conclusions, while also additionally acting on behalf of all other US-ABC board members, while threatening and than illegally expelling Genesis from US-ABC.

243.   Further more, said defendants also conspired and or acted individually to violate and breach their fiduciary duty, vested upon them by US-ABC laws, when failed and or refused to or did not act in any way and or hold an appropriate hearing, and not continue and stop any illegal activity, upon receiving three separate correspondences, (where first was from qualified US-ABC member Genesis, second directly from honorary president of Genesis, Bob Jovanovic, and third from Genesis and Bob Jovanovic lawyer, and where within said correspondence plaintiffs and their lawyers, requested a fact finding process a retraction of libelous statements and apology in regards to allegations within September,14, 2004 letter) and as a result of said violations, tortuously interfered with plaintiff Business Relations and Prospective Business Advantage.

244.   Where now certain other defendants, consisting of (a) GRUMMAN AGENTS defendant group members Ms.Peggy Hewinson and Mr.Ali Jazzairy, (b) COUNCIL AGENT defendants group members Mr.Lamine Djilani and (c) INDIVIDUAL defendants group member Northrop Grumman, conspired and or acted individually to fraudulently disseminating false information as described in 306-131 within this complaint, thus aiding and abetting misrepresentation of facts, in September 14,2004 and September 15,2004 correspondences, where said misrepresentations tortuously interfered with plaintiff Business Relations and Prospective Business Advantage.

245.   Said direct or indirect acts were done without justification and caused major

financial and other damages to plaintiffs Genesis, Bob Jovanovic and IIC.

246. As a result of said allegations, as described above, defendants Tortuously Interfered with all Plaintiffs Business Relations and Tortuous Interference with Plaintiffs Prospective Business Advantages.

247. As a result of direct and proximate conduct of defendants, plaintiffs have suffered, general and special pecuniary and non-pecuniary damages, in a form of direct loss of all direct project development investment in time and money for, North Africa Construction Materials Project, Algeria Highway and Abidjan Urban Train projects, in amount of $21.3 million US Dollars.

248. As result of direct and proximate conduct of defendants, plaintiffs have suffered general and special pecuniary and non-pecuniary loss and damages, in form of direct loss of present and future profit and increased shareholder value, from loss of all North and West Africa based Construction Materials projects activity, Algeria East-West Highway and District of Abidjan Urban Train project development and 30 year project concession operation activity businesses, amounting to present and future losses of $11.3 Billion Dollars or any other amount proven at trial.

249. Further, defendants' actions were undertaken willfully, wantonly, maliciously and in reckless disregard for Plaintiff's rights, and as a direct and proximate result thereof plaintiff suffered emotional and other damage in a total amount to be proven at trial, therefore plaintiff seeks punitive and treble damages, as required by law, and in an amount sufficient to deter said defendant and others from similar future wrongful conduct.

## THIRD CLAIM FOR RELIEF

### Tortuous Interference with all Plaintiffs Contractual Relations

250. Plaintiff re-alleges all allegations as alleged in 1-249 above.

251. Plaintiff Genesis had existing agreements and or contractual relations with Bob Jovanovic, US-ABC, Algeria Government, IIC and members of Genesis Management team.

252. Plaintiff Bob Jovanovic was a party to and had existing, individually executed, contracts and agreements, and was a party to agreements and or contractual relationships with Ahmed Azouz, SOTRAMA, Genesis and IIC.

253. Plaintiff IIC had existing agreements and contractual relations with Genesis, Bob Jovanovic, Ivory Coast (Abidjan) Government, as well with members of IIC management team.

financial and other damages to plaintiffs Genesis, Bob Jovanovic and IIC.

**246.** As a result of said allegations, as described above, defendants Tortuously Interfered with all Plaintiffs Business Relations and Tortuous Interference with Plaintiffs Prospective Business Advantages.

**247.** As a result of direct and proximate conduct of defendants, plaintiffs have suffered, general and special pecuniary and non-pecuniary damages, in a form of direct loss of all direct project development investment in time and money for, North Africa Construction Materials Project, Algeria Highway and Abidjan Urban Train projects, in amount of $21.3 million US Dollars.

**248.** As result of direct and proximate conduct of defendants, plaintiffs have suffered general and special pecuniary and non-pecuniary loss and damages, in form of direct loss of present and future profit and increased shareholder value, from loss of all North and West Africa based Construction Materials projects activity, Algeria East-West Highway and District of Abidjan Urban Train project development and 30 year project concession operation activity businesses, amounting to present and future losses of $11.3 Billion Dollars or any other amount proven at trial.

**249.** Further, defendants' actions were undertaken willfully, wantonly, maliciously and in reckless disregard for Plaintiff's rights, and as a direct and proximate result thereof plaintiff suffered emotional and other damage in a total amount to be proven at trial, therefore plaintiff seeks punitive and treble damages, as required by law, and in an amount sufficient to deter said defendant and others from similar future wrongful conduct.

### THIRD CLAIM FOR RELIEF

#### Tortuous Interference with all Plaintiffs Contractual Relations

**250.** Plaintiff re-alleges all allegations as alleged in 1-249 above.

**251.** Plaintiff Genesis had existing agreements and or contractual relations with Bob Jovanovic, US-ABC, Algeria Government, IIC and members of Genesis Management team.

**252.** Plaintiff Bob Jovanovic was a party to and had existing, individually executed, contracts and agreements, and was a party to agreements and or contractual relationships with Ahmed Azouz, SOTRAMA, Genesis and IIC.

**253.** Plaintiff IIC had existing agreements and contractual relations with Genesis, Bob Jovanovic, Ivory Coast (Abidjan) Government, as well with members of IIC management team.

39

**254.** From, 2000 until September 14, 2004, all plaintiffs have jointly expanded direct costs and undertook certain liabilities, in business development, operations, and other activities, in total amount of $21.3 Million Dollars.

**255.** Where all INDIVIDUAL defendants group members had knowledge of All plaintiffs, existing contractual relationships.

**256.** Where "first group" of defendants, consisted of **(a)** GRUMMAN AGENTS group members Donald Wilhelm and Peggy Hewinson, **(b)** all COUNCIL defendant group members and **(c)** INDIVIDUAL group member Northrop Grumman, "acted directly or through other acts", wrote and forwarded September 14,2004 letter and September 15,2004 e-mail correspondence, to plaintiffs, to plaintiffs, Algeria Government and all members of US-ABC, and as a result of said letter, tortuously interfered with plaintiff's Contractual Relations.

**257.** Where also said "direct and other acts" consisted of conspiring and or acting directly, or through other acts, to Libel all plaintiffs, and where also in support of their libelous activity, above named defendants misrepresented, (in September 14,2004 letter and September 15,2004 e-mail), certain facts, where also above named defendants acted with fraud and deceit, while misrepresenting, within said letter and said e-mail, existence of certain plaintiff's relationships, certain plaintiff's financial history and plaintiff Genesis membership status with US-ABC, (as described within background statements of this complaint.)

**258.** Where also, now a "second group" of defendants, [consisting of: **(a)** All US CORPORATE defendant group members, **(b)** all INTERNATIONAL CORPORATE defendant group members, **(c)** GRUMMAN AGENT defendant group member Mr.Ali Jazzairy **(d)** All COUNCIL AGENTS defendants group members and **(e)** all LAWYER group Members and **(f)** INDIVIDUAL defendant group member Donald Wilhelm] "acted indirectly" breached their fiduciary duty, aided and abetted "first group" defendants and as a result assisted in or tortuously interfered with plaintiff's Contractual Relations.

**259.** Where said "indirect acts" of "second group" defendants, [consisted of **(a)** All US CORPORATE defendant group members, **(b)** all INTERNATIONAL CORPORATE defendant group members **(c)** all LAWYER group Members and **(d)** and INDIVIDUAL defendant group member Donald Wilhelm], were performed by these "second group" named defendants individually or as founding corporate members of US-ABC, individually and as members of board of directors of US-ABC, and where these members of US-ABC board of directors owed certain fiduciary duties, vested upon them under US-ABC

By-Laws, to Genesis, a fellow US-ABC founding member and a member of US-ABC board of directors.

260. And where, as a result of same "indirect acts" above mentioned "second group defendants" induced breach of all plaintiffs contracts and or agreements, when they conspired and or acted individually to violate certain obligations and breach their fiduciary duties, vested upon them by US-ABC by-laws, when refused to properly govern US-ABC, through improperly electing agent of Northrop Grumman, Mr.Donald Wilhelm as Chairman of US-ABC, thus empowering Mr.Wilhelm to execute and forward September 14, 2004 letter and September 15,2004 e-mail to plaintiffs, Algeria Government and all members of US-ABC and as a result of said violation, tortuously interfered with plaintiff's Contractual Relations.

261. Further, said "second group" of defendant's (as defined in 258-259) also conspired and or acted individually to violate and breach their fiduciary duty, vested upon them by US-ABC laws when failed and or refused to or did not act in any way, and or hold an appropriate hearing, and not continue and or stop libeling defrauding and expelling Genesis from US-ABC, upon receiving of correspondence from Chairman of US-ABC, which officially noticed them of initial threat and illegal expelling of Genesis from US-ABC and as a result of said violation, tortuously interfered with plaintiff's Contractual Relations.

262. Further more, said "second group" of defendants also conspired and or acted individually to violate and breach their fiduciary duty, vested upon them by US-ABC by-laws, when failed and or refused to or did not act in any way, and or hold an appropriate hearing, and not continue and or stop any legal activity, upon receiving of correspondence from Chairman of US-ABC, which officially noticed them that Chairman of US-ABC was writing on their behalf and expressing their requests opinions and conclusions, while also additionally acting on behalf of all other US-ABC board members, while threatening and than illegally expelling Genesis from US-ABC.

263. Further more, said defendants also conspired and or acted individually to violate their fiduciary duty, vested upon them by US-ABC by-laws, when failed and or refused to or did not act in anyway and or to and or hold an appropriate hearing, and not continue and or stop any illegal activity, upon receiving three separate correspondences, (where first was from qualified US-ABC member Genesis, second directly from honorary president of Genesis, Bob Jovanovic, and third from Genesis and Bob Jovanovic lawyer, where within said correspondence plaintiffs and their lawyers, and where within said correspondence plaintiffs and their lawyers, requested a fact finding process a retraction of libelous statements and apology in regards to allegations within September,14, 2004 letter)

41

and as a result of said violations, tortuously interfered with plaintiff's Contractual Relations

264. Where now certain other defendants, consisted of **(a)** GRUMMAN AGENTS defendant group members Ms.Peggy Hewinson and Mr.Ali Jazzairy, **(b)** COUNCIL AGENT defendants group members Mr.Lamine Djilani and **(c)** INDIVIDUAL defendants group member Northrop Grumman, conspired and or acted individually to fraudulently disseminate false information( as in 306-313 within this complaint) thus aiding and abetting misrepresentation of facts, in September,14,2004 and September, 15,2004 correspondences, where said misrepresentations tortuously interfered with all plaintiff's Contractual Relations.

265. Said direct or direct acts were done without justification and caused major finances damages to plaintiff Genesis.

266. There are damages to plaintiffs, resulting from defendant's tortuous interference with plaintiffs Contractual relations.

267. As a result of direct and proximate conduct of defendants, plaintiffs have suffered, general and special pecuniary and non-pecuniary damages, in a form of direct loss of all direct project development investment in time and money for, North Africa Construction Materials Project, Algeria Highway and Abidjan Urban Train projects, in amount of $21.3 million US Dollars.

268. As result of direct and proximate conduct of defendants, plaintiffs have suffered general and special pecuniary and non-pecuniary loss and damages, in form of direct loss of present and future profit and increased shareholder value, from loss of all North and West Africa based Construction Materials projects activity, Algeria East-West Highway and District of Abidjan Urban Train project development and 30 year project concession operation activity businesses, amounting to present and future losses of $11.3 Billion Dollars or any other amount proven at trial.

269. Further, defendants' actions were undertaken willfully, wantonly, maliciously and in reckless disregard for Plaintiff's rights, and as a direct and proximate result thereof plaintiff suffered emotional and other damage in a total amount to be proven at trial, therefore plaintiff seeks punitive and treble damages, as required by law, and in an amount sufficient to deter said defendant and others from similar future wrongful conduct.

## FOURTH CLAIM FOR RELIEF

### Libel and Defamation to plaintiffs Bob Jovanovic, Genesis and IIC

270. Plaintiff re-alleges all allegations in 1-269 above.

**271.** On September 14,2004 "first group" defendants, consisting of **(a)** GRUMMAN AGENTS group members Donald Wilhelm and Peggy Hewinson **(b)** all COUNCIL group members and **(c)** INDIVIDUAL group member Northrop Grumman "acted directly" and Libeled all plaintiffs , through (these and other acts) of drafting, writing, forwarding a September,14, 2004 letter, and September 15, 2004, e-mail correspondences, containing defamatory statements about plaintiffs and than published same, to plaintiffs, Algeria Government, all members of US-ABC and all John Doe defendants.

**272.** Said defamatory statements were used by all recipients and Abidjan Government as a reason to end all business and personal relationships with all plaintiffs.

**273.** Said defamatory statements caused plaintiffs substantial loss of character, loss of face, loss of operational business development costs, loss of contracts, and or agreements and loss of present and future profits, loss of personal well being as well as other, presently unknown losses.

**274.** Within September 14,2004 correspondence following libelous statements were used to defame all plaintiffs.

    **1.** "By this letter we request that you immediately withdraw your company from membership in United States-Algeria Business Council(US-ABC)"

        **a)** Where by suggesting and or stating that situation( implied inflicted harm to US-ABC) is so serious that requires immediate resolution.

    **2.** " If you wish to expedite payment, we ask that you send us your notice of withdrawal via facsimile, original mailed, and we will mail the check upon receipt of your facsimile."

        **a)** Where by suggesting and or stating that Genesis financial situation is so desperate that expediting $1,500 repayment is necessary for Genesis to survive.

    **3.** "In these materials, Genesis appears to inappropriately claim some manner of affiliation with a number of individuals and entities that are or were members of the US-ABC, as well as individuals who are or were formally associated with US-ABC. We use the word "inappropriate" because each of those named with whom we have consulted with, denies any business or personal relationship with Genesis or with you as an individual. These individuals and entities with whom we have consulted include Al Zapanta and Richard Holmes, former Chairman and President of US-ABC, US-ABC Vice Chairman Lamine

43

Djilani, Ali Jazzairy, son of incumbent Algerian Ambassador to United States, and Northrop Grumman Corporation."

        a.      Where by certifying and or testifying that Genesis and Bob Jovanovic "lied".

**4.** "All of this is done in the context of an uneven history of your respect of the obligation you have , from time, undertaken with regards to payment of certain moneys."

        a.      Where by stating Genesis is financially irresponsible.

**275.** Within September 15,2004 correspondence following libelous statements were used to defame all plaintiffs.

        1.      "Please be advised, per the attached letter, that Genesis International Holdings Ltd. has been expelled from US-ABC".

        a.      Where by stating that Genesis reputation is so bad that it requires expelling and that it was so bad and situation so serious that he needed to be expelled "immediately" and in violation of US-ABC By-Laws.

**276.** Where all statements and or certifications and or testimony and or suggestions, as described in 270 above, were misrepresentations by "first group" defendants.

**277.** Further, a "second group", defendants, [consisting of: **(a)** All US CORPORATE defendant group members, **(b)** all INTERNATIONAL CORPORATE defendant group members, **(c)** INDIVIDUAL and GRUMMAN AGENT defendant group member Mr.Ali Jazzairy **(d)** All COUNCIL AGENTS defendants group members and **(e)** INDIVIDUAL and LAWYER group member Mr.Jim Bailey **(f)** INDIVIDUAL defendant group member Donald Wilhelm] "acted indirectly" aiding and abetting "first group" defendants and thus assisted and aided and abetted "first group" defendants, to libel all plaintiffs, through breaching their fiduciary duties and conspiring to misrepresent certain facts, as well as performing or failing to perform certain other acts:

        a.  Where INDIVIDUAL and GRUMMAN AGENT group member Mr.Ali Jazzairy conspired with all INDIVIDUAL defendants group members and misrepresented that he never had personal or business relations with any plaintiffs.

        b.  Where INDIVIDUAL and COUNCIL AGENT group member Mr.Lamine Djilani conspired with all INDIVIDUAL defendants group members and misrepresented that he never had personal or business relations with any plaintiffs .

c.  Where INDIVIDUAL defendants group member Northrop Grumman
conspired with all INDIVIDUAL defendants group members and misrepresented  that it
never had personal or business relations with any plaintiffs.

d.  Where INDIVIDUAL defendant group member Mr.Jim Bailey
conspired with INDIVIDUAL defendants group member Donald Wilhelm and misrepresented
that Mr.Donald Wilhelm will be in touch with Mr.Jovanovic to discuss the matter.

e.  Where they conspired (or acted individually), to aid and abet "first
group" defendants, and thus violate and breach their fiduciary duty, vested upon them by US-
ABC by-laws, when refused to properly manage and or govern US-ABC, to, through
conspiracy and other means improperly elect agent of Northrop Grumman, Mr.Donald
Wilhelm as Chairman of US-ABC, whereby empowering Mr.Wilhelm to execute
and forward September 14, 2004 letter and September 15,2004 e-mail to plaintiffs, Algeria
Government and all members of US-ABC, where by libeling all plaintiffs.

f.  Where all "second group" defendants, other than Mr.Ali Jazzairy, also
conspired or acted individually to aid and abet "first group defendants" and thus violate and
breach their fiduciary duty, vested upon them by US-ABC by-laws, when failed and or
refused to or did not act to retract and or hold an appropriate hearing, and not continue and or
stop and end, any libelous activity towards plaintiffs, upon receiving correspondence from
Chairman of US-ABC, which officially noticed them of initial threat and illegal expelling of
Genesis from US-ABC.

g.  Further, again, all said "second group" defendants, other than Mr.Ali
Jazzairy also conspired or acted individually to aid and abet "first group defendants" to libel
all plaintiffs, through violating and breaching their fiduciary duty, vested upon them by US-
ABC by-laws, and failed and or refused to or did not act in any way, upon receiving of
correspondence from Chairman of US-ABC, which officially noticed them that Chairman of
US-ABC was writing on their behalf as well as on behalf of all US-ABC board members,
while initially threatening and than illegally expelling Genesis from US-ABC.

h.  Further more, said "second group" defendants,( other than Mr.Ali
Jazzairy), also conspired and or acted individually to aid and abet "first group defendants" and
thus violate and breached their fiduciary duty, vested upon them by US-ABC By-Laws, when
failed and or refused to or did not act to retract and or hold an appropriate hearing, and not
continue and or stop and end any libelous activity against plaintiffs, upon receiving three
separate correspondences, where first was from qualified US-ABC member Genesis, second
directly from honorary president of Genesis, Bob Jovanovic, and third from Genesis and Bob

45

Jovanovic lawyer, and where within said correspondence plaintiffs and their lawyers, requested a fact finding process a retraction of libelous statements and apology in regards to allegations within September,14, 2004 letter and as a result of said conspiracy and violations, aided abetted and assisted libeling of all plaintiffs.

**278.** Both September 14,2004 letter and September 15,2004 e-mail are libelous on its face as both clearly caused plaintiffs loss of contracts and agreements In Tunisia, Algeria, Abidjan and elsewhere, loss of face, loss of personal reputation, loss of personal or business credibility, and of ability to compete in Algeria and elsewhere, and loss of costs and profits.

**279.** The above-described publication was not privileged because it was published by defendants malice, and ill will toward plaintiff and the desire to injure plaintiffs Genesis and Bob Jovanovic.

**280.** Because of defendants' malice in publishing said libelous statements, plaintiff seeks punitive damages in the total amount to be established by proof at trial.

**281.** As a result of direct and proximate conduct of defendants, plaintiffs have suffered, general and special pecuniary and non-pecuniary damages, in a form of direct loss of all direct project development investment in time and money for, North Africa Construction Materials Project, Algeria Highway and Abidjan Urban Train projects, in amount of $21.3 million US Dollars.

**282.** As result of direct and proximate conduct of defendants, plaintiffs have suffered general and special pecuniary and non-pecuniary loss and damages, in form of direct loss of present and future profit and increased shareholder value, from loss of all North and West Africa based Construction Materials projects activity, Algeria East-West Highway and District of Abidjan Urban Train project development and 30 year project concession operation activity businesses, amounting to present and future losses of $11.3 Billion Dollars or any other amount proven at trial.

**283.** Further, defendants' actions were undertaken willfully, wantonly, maliciously and in reckless disregard for Plaintiff's rights, and as a direct and proximate result thereof plaintiff suffered emotional and other damage in a total amount to be proven at trial, therefore plaintiff seeks punitive and treble damages, as required by law, and in an amount sufficient to deter said defendant and others from similar future wrongful conduct.

## FIFTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

### As to Plaintiff Bob Jovanovic

**284.** Plaintiff re alleges all allegations in 1-283 above.

**285.** All INDIVIDUAL defendants' group members acted intentionally, recklessly and with extreme and outrageous conduct, which caused emotional distress to Bob Jovanovic, with their direct acts or assisting direct acts of others, of conspiracy, fraud, misrepresentation, deceit, and while acting in violation, outside their prescribed duty and in breach of their fiduciary duty under US-ABC by-laws, or failed to and or hold an appropriate hearing, and not continue and or stop said acts of their fellow US-ABC members or US-ABC management, in violation of their prescribed duty, as members or management or legal representatives of US-ABC, and as such intentionally inflicted severe emotional distress on defendant Bob Jovanovic.

**286.** Following events, caused by all INDIVIDUAL defendants' group members acts as described within background section of this complaint caused plaintiff Bob Jovanovic intentional infliction of emotional distress

a. September 2004, as a result of receiving Mr.Jazzairy's fraudulent misrepresentation correspondence, Mr.Jovanovic, in the face of injustice suffers major emotional distress.

b. September, 15, 2004, as a result of receiving September, 15, 2004 fraudulent misrepresentation correspondence from all individual defendants group, Mr.Jovanovic, in the face of injustice suffers another major emotional distress.

c. September 2004, as a result of not receiving any response to Genesis September,17, 2004 correspondence, Mr.Jovanovic, in the face of yet another injustice suffers more, major emotional distress.

d. September 2004, as a result of not receiving any response to his September,19, 2004 correspondence, Mr.Jovanovic, in the face of yet another injustice suffers even more, major emotional distress.

e. September 2004, as a result of his lawyer not receiving any response to Genesis his September,24, 2004 correspondence, Mr.Jovanovic, in the face of yet another injustice suffers more, major emotional distress.

f. September 2004, as a result of learning of Algeria minister of Civil works announcement that Algeria East-West project is now only being developed by Asians and Europeans, in the face of losing his project and major investments, Mr.Jovanovic suffers

47

now , most major to date, emotional distress.

g.     September 2004, as a result of receiving a letter from Algeria Government( through Algeria Ambassador) advising Mr.Jovanovic that he is now persona non-grata, and terming his invitation to going away party "null and void" and learning that his visa to Algeria will not be issued any more, he suffers now , extreme emotional distress.

h.     September 2004, as a result of learning from Abidjan Government that the Abidjan Urban Train project has been put on hold, pending resolution of allegations by all individual Defendants group, Mr.Jovanovic suffers now, even more extreme emotional distress.

h.     March 2005, as a result of learning directly of President Bouteflika, that he has made a final decision and Algeria East West project will now be developed internally by Algeria and other capacities, Mr.Jovanovic now suffers, ultimate emotional distress.

i.     March 2005, as a result of six months of continuous September,14, 2004 letter (and other events), related stress, plaintiff Bob Jovanovic suffers great emotional distress, also suffers major other health consequences as result thereof, was committed to two weeks of hospital stay, was submitted to a multitude of medical tests, was put on major drug treatment for stress related problems, and was on a suicide watch for several days, as a result of all individual defendant group members acts as described within this complaint.

**287.**  As a result of direct and proximate conduct of defendants, as described within this complaint, plaintiffs have suffered, general and special pecuniary and non-pecuniary damages, in a form of direct loss of personal well being, all direct projects development investment in time and money for, North Africa Construction Materials Project, Algeria Highway and Abidjan Urban Train projects, in amount of $21.3 million US Dollars or any other amount to be determined by the Court.

**288.**  As result of direct and proximate conduct of defendants, plaintiffs have suffered general and special pecuniary and non-pecuniary loss and damages, in form of direct loss of present and future profit and increased shareholder value, from loss of all North and West Africa based Construction Materials projects activity, Algeria East-West Highway and District of Abidjan Urban Train project development and 30 year project concession operation activity businesses, amounting to present and future losses of $11.3 Billion Dollars or any other amount proven at trial.

**289.**  Further, defendants' actions were undertaken willfully, wantonly, maliciously and in reckless disregard for Plaintiff's rights, and as a direct and proximate result thereof

48

plaintiff suffered emotional and other damage in a total amount to be proven at trial, therefore plaintiff seeks punitive and treble damages, as required by law, and in an amount sufficient to deter said defendant and others from similar future wrongful conduct.

## SIXTH CLAIM FOR RELIEF

### Anti Trust

**290.** Plaintiff re alleges all allegations in 1-289 above.

**291.** All US CORPORATE and all INTERNATIONAL CORPORATE defendants group members, violated or assisted other INDIVIDUAL defendants group members in violating Sherman Act 1-2 Anti Trust violations through **(a)** Boycott of plaintiffs and Refusal to Deal, with plaintiffs **(b)** Monopoly of Relevant market, where said market is described as Algeria Governmentally approved business for development of commercial infrastructure and its supporting projects, in Country of Algeria **(c)** Refusal of access to Essential facility, where said essential facility is described as US-ABC Business Council **(d)** Conspiracy to Refuse to Deal with plaintiffs **(e)** Conspiracy to attempt to monopolize relevant market, through control of essential facility, **(f)** Conspiracy to Refuse Access to Essential Facility to plaintiff Genesis.

**292.** Plaintiff Genesis was a founding member of COUNCIL defendant group US-ABC (Essential Facility), and the only competitor to INDIVIDUAL defendant group member Northrop Grumman in developing diverse Commercial Infrastructure and its supporting Projects, which projects needed approval by Algeria Government (Relevant Market).

**293.** Where "first group" of defendants, consisting of (a) GRUMMAN AGENTS group members Donald Wilhelm and Peggy Hewinson, (b) all COUNCIL group members and (c) INDIVIDUAL group member Northrop Grumman, "acted directly", through writing and forwarding September,14, 2004 letter and September 15,2004 e-mail correspondences, to plaintiffs, Algeria Government and all members of US-ABC, and as a result of said correspondences, conspired to achieve and achieved boycott of all plaintiffs, conspired to achieve and achieved refusal to deal with all plaintiffs, conspired to cause refusal of access to essential facility and refused essential facility, cause attempt to monopolize relevant market and achieved monopoly of relevant market.

**294.** Where said "direct acts" consisted of conspiring and or acting directly, to Libel all plaintiffs, and designed to remove the only competitor in relevant market, monopoly of relevant market and control of essential facility, where also in support of their libelous activity, misrepresenting, (in September 14,2004 letter and September 15,2004 e-mail),

49

certain facts, as well as acting with fraud and deceit, while representing, within said letter and said e-mail, certain plaintiff's relationships, certain plaintiff's financial history and plaintiff Genesis membership status with US-ABC and as a result violated Sherman act 1-2 laws.

**295.** Where also, now a "second group" of defendants, [consisting of: (a) All US CORPORATE defendant group members, (b) all INTERNATIONAL CORPORATE defendant group members, (c) GRUMMAN AGENT defendant group member Mr.Ali Jazzairy (d) All COUNCIL AGENTS defendants group members and (e) all LAWYER group Members and (f) INDIVIDUAL defendant group member Donald Wilhelm] "acted indirectly" breached their fiduciary duty, and conspired to boycott all plaintiffs, conspired to refuse to deal with all plaintiffs, conspired to refuse access to essential facility and attempted to monopolize relevant market and as a result violated Sherman act 1-2 laws.

**296.** Where said "indirect acts" of certain "second group" defendants, [consisting of (a) All US CORPORATE defendant group members, (b) all INTERNATIONAL CORPORATE defendant group members (e) all LAWYER group Members and (f) and INDIVIDUAL defendant group member Donald Wilhelm], were performed by these "second group" named defendants individually and or as founding corporate members of US-ABC, individually and as members of board of directors of US-ABC.( where any performed acts are governed by article IV section 2 of, US-ABC by-laws).

**297.** And where, as a result of same "indirect acts" certain above mentioned "second group defendants"violated Anti Trust Laws, when they conspired and or acted individually to violate and breach their fiduciary duty, vested upon them by US-ABC by-laws, and did not act to properly govern US-ABC, when they improperly elected agent of Northrop Grumman, Mr.Donald Wilhelm as Chairman of US-ABC, thus empowering Mr.Wilhelm to execute and forward September 14, 2004 letter and September 15,2004 e-mail to plaintiffs, Algeria Government and all members of US-ABC and as a result of said violation, conspired to boycott all plaintiffs, conspired to refuse to deal with all plaintiffs, conspired to refuse access to essential facility and attempted to monopolize relevant market. and as a result violated Sherman act 1-2 laws.

**298.** Further, said "second group" of defendant's (as defined in 295-296) also conspired or acted individually to violate and breach their fiduciary duty, vested upon them by US-ABC laws when failed and or refused to or did not act in any way, upon receiving of correspondence from Chairman of US-ABC, which officially noticed them of initial threat and illegal expelling of Genesis from US-ABC and as a result of said violation, conspired to boycott all plaintiffs, conspired to refuse to deal with all plaintiffs, conspired to refuse access

to essential facility and attempted to monopolize relevant market and as a result violated Sherman act 1-2 laws.

299.    Further, said "second group" of defendants also conspired or acted individually to violate and breach their fiduciary duty, vested upon them by US-ABC By-laws, when failed and or refused to or did not act in any way, upon receiving of correspondence from Chairman of US-ABC, which officially noticed them that Chairman of US-ABC was writing on their behalf as well as on behalf of all US-ABC board members, while threatening and than illegally expelling Genesis from US-ABC and as a result violated Sherman act 1-2 laws.

300.    Further more, said defendants also conspired or acted individually to violate and breach their fiduciary duty, vested upon them by US-ABC By-laws, when failed and or refused to or did not act upon receiving three separate correspondences, where first was from qualified US-ABC member Genesis, second directly from honorary president of Genesis, Bob Jovanovic, and third from Genesis and Bob Jovanovic's lawyer, where within said correspondence plaintiffs and their lawyers, requested a fact finding process a retraction of libelous statements and apology in regards to allegations within September,14, 2004 letter and as a result of said violations, conspired to boycott all plaintiffs, conspired to refuse to deal with all plaintiffs, conspired to refuse access to essential facility and attempted to monopolize relevant market and as a result violated Sherman act 1-2 laws.

301.    Where now certain other defendants, consisting of (a) GRUMMAN AGENTS defendant group members Ms.Peggy Hewinson and Mr.Ali Jazzairy, (b) COUNCIL AGENT defendants group members Mr.Lamine Djilani and (c) INDIVIDUAL defendants group member Northrop Grumman, conspired or acted individually while fraudulently misrepresenting facts, in September,14,2004 and September, 15,2004 correspondences, where through said misrepresentations conspired to boycott all plaintiffs, conspired to refuse to deal with all plaintiffs, conspired to refuse access to essential facility and attempted to monopolize relevant market, and as a result violated Sherman act 1-2 laws.

302.    The actions complained of herein restrained and adversely affected interstate commerce where competition and competitive pricing will be so affected that end user consumer will or would have suffered consequences of limiting competition, and higher and non competitive pricing in violation of Anti Trust laws, as alleged within this complaint.

303.    As a result of direct and proximate conduct of defendants, plaintiffs have suffered, general and special pecuniary and non-pecuniary damages, in a form of direct

loss of all direct project development investment in time and money for, North Africa Construction Materials Project, Algeria Highway and Abidjan Urban Train projects, in amount of $21.3 million US Dollars.

**304.** As result of direct and proximate conduct of defendants, plaintiffs have suffered general and special pecuniary and non-pecuniary loss and damages, in form of direct loss of present and future profit and increased shareholder value, from loss of all North and West Africa based Construction Materials projects activity, Algeria East-West Highway and District of Abidjan Urban Train project development and 30 year project concession operation activity businesses, amounting to present and future losses of $11.3 Billion Dollars or any other amount proven at trial.

**305.** Further, defendants' actions were undertaken willfully, wantonly, maliciously and in reckless disregard for Plaintiff's rights, and as a direct and proximate result thereof plaintiff suffered emotional and other damage in a total amount to be proven at trial, therefore plaintiff seeks punitive and treble damages, as required by law, and in an amount sufficient to deter said defendant and others from similar future wrongful conduct.

## SEVENTH CLAIM FOR RELIEF

### Fraud, Misrepresentation and Deceit and Conspiracy to Defraud, Conspiracy to Misrepresent Facts and Conspiracy to Deceit

**306.** Plaintiff re-alleges all allegations 1-305 above.

**307.** All INDIVIDUAL defendant group members acted with intentional misrepresentation of facts or assisting aiding and abetting said misrepresentation of facts, with intent to deceive, thereby effecting justifiable reliance by plaintiffs and others to rely on said misrepresentations in their decision making process, where said acts resulted in substantial financial damages, damages to reputation and presently unknown and to be proven, other damages, to plaintiffs Genesis, Bob Jovanovic and IIC.

**308.** Where following acts of misrepresentation were and occurred as follows:

a.      August 2002, COUNCIL defendant member, honorary President, (main power broker within US-ABC), Algeria (Government) Ambassador, US-ABC major founding member, fraudulently misrepresents to Mr.Jovanovic that US-ABC and Algeria Government will initially and continuously, personally, support Genesis and thus Mr.Jovanovic efforts, as one of founding members of US-ABC and where as a result of said misrepresentation

52

plaintiffs Genesis and Bob Jovanovic did rely on said misrepresentations, and invested in Tunisia Supporting operation, US-ABC and subsequently in other aspects of development of Algeria market.

    b.    September 2002, all INDIVIDUAL defendants' group members present, at first US-ABC board meeting, misrepresented to Bob Jovanovic , US-ABC was legally capable of supporting individual and continuous representation of its founding members including Genesis and Genesis representatives Bob Jovanovic, and as a result of said misrepresentation, Genesis and Bob Jovanovic relied on same to invest in Tunisia supporting operation, US-ABC and subsequently in other aspects of development of Algeria market.

    c.    September 2002, until September 2004 COUNCIL defendants group member Vice Chair for Development Lamine Djilani, (acting in this capacity) personally misrepresented to Bob Jovanovic on several occasions, he can assist in Algeria and will insure US-ABC individual and continuous support of Genesis and Genesis representative Bob Jovanovic, in all US-ABC activity, including Algeria East-West Highway and other Business, and performed certain acts as part of promised support, and where he also agreed to accept invitation for a personal and business relations with Genesis and Bob Jovanovic, where as a result of said misrepresentation, Genesis and Bob Jovanovic relied on same to invest in Tunisia supporting operation, US-ABC and subsequently in development and operation of IIC and Algeria market.

    d.  November 2002, until September 2004 INDIVIDUAL defendants group member, Ali Jazzairy misrepresented, to Genesis, IIC and Mr.Jovanovic that he accepts Genesis and Mr.Jovanovic invitation to participate in Genesis and IIC development of Algeria East-West Highway, where as a result of said misrepresentation, Genesis and Bob Jovanovic relied on same to initially employ Mr.Jazzairy, as consultant to Genesis, and subsequently relied on his services in development and operation of commercial infrastructure and their supporting projects in Algeria market and where as a result of said misrepresentation Genesis and IIC relied on said misrepresentations to enter into a business relationship with Mr.Jazzairy.

    e.    December 2003, during private meeting, US-ABC and its honorary president misrepresent to Mr.Jovanovic that US-ABC council will be undergoing major management change and further misrepresents that IRS 501 (c)(4) and or 501(c)(6) issue concerning taxation and individual member representation will be addressed by next council administration.

53

f.     August 2004, GRUMAN AGENT defendant group member Mr.Wilhem misrepresents to Mr.Jovanovic he will examine COUNCIL defendant group member US-ABC and INDIVIDUAL defendant group member Northrop Grumman, IRS 501(c)(4), 501 (c)(6) and FCPA violations with his legal team, and will immediately personally advise Mr.Jovanovic of results of his examinations, as soon as same is finalized.

g.     September 2004, GRUMMAN AGENT defendant group member Mr.Ali Jazzairy misrepresents to Mr.Jovanovic and IIC, in written correspondence, he has not provided his consent to be included in IIC documentation.

h.     September 2004, (a) GRUMMAN AGENTS group members Donald Wilhelm and Peggy Hewinson, (b) all COUNCIL group members and (c) INDIVIDUAL group member Northrop Grumman "acted directly" through drafting, writing and forwarding September 14,2004 letter and September 15,2004 e-mail and misrepresented within said letter and e-mail that:

1.    Genesis and Bob Jovanovic inappropriately claimed business and personal relationships with Al Zapanta, Richard Holmes, Ali Jazzairy, Lamine Djilani and Northrop Grumman. (from now on "respondents")

2.    All "first group" defendants have consulted, individually, with each, "respondent", to discover if Genesis and Bob Jovanovic had personal or business relations with them.

3.    All "first group" defendants have been advised by each of "respondents" that all "respondents" deny any business or personal relations with Genesis and with Bob Jovanovic.

4.    Mr.Ali Jazzairy is now or was a member of US-ABC.

5.    Mr.Ali Jazzairy is now or was formally associated with US-ABC

6.    Genesis has an uneven history of its respect to obligations with regards to payment of certain moneys.

7.    Genesis has been "officially expelled" from US-ABC.

i.     September 2004, "second group" defendants, [consisting of: (a) All US CORPORATE defendant group members, (b) all INTERNATIONAL CORPORATE defendant group members, (c) INDIVIDUAL and GRUMMAN AGENT defendant group member Mr.Ali Jazzairy (d) All COUNCIL AGENTS defendants group members and (e) INDIVIDUAL and LAWYER group member Mr.Jim Bailey (f) INDIVIDUAL defendant

54

group member Donald Wilhelm] "acted indirectly", while breaching their fiduciary and other duties, (by not acting in any way to and or hold an appropriate hearing, and not continue and or stop said misrepresentations) thus aiding and abetting "first group" defendants and as such conspired and assisted said misrepresentations, as described in (h) above and within this complaint.

a) Where INDIVIDUAL and GRUMMAN AGENT group member Mr.Ali Jazzairy conspired with all INDIVIDUAL defendants group members and misrepresented that he never had personal or business relations with any plaintiffs.

b) Where INDIVIDUAL and COUNCIL AGENT group member Mr.Lamine Djilani conspired with all INDIVIDUAL defendants group members and misrepresented that he never had personal or business relations with any plaintiffs.

c) Where INDIVIDUAL defendants group member Northrop Grumman conspired with all INDIVIDUAL defendants group members and misrepresented that it never had personal or business relations with any plaintiffs.

d) Where INDIVIDUAL defendant group member Mr.Jim Bailey conspired with INDIVIDUAL defendants group member Mr.Donald Wihelm and misrepresented that Mr.Donald Wilhelm will be in touch with Mr.Jovanovic to discuss the matter.

**309.** Where all plaintiffs relied on and were deceived by certain above mentioned fraudulent misrepresentations and invested time and money in Tunisia, US-ABC, North Africa (Algeria relevant markets), South Eastern Europe and West Africa.

**310.** Where also certain US-ABC members, Algeria Government and Abidjan Government, IIC members and IIC invited management, relied on above stated misrepresentations and breached contracts, agreements, business relationships, etc., with all plaintiffs.

**311.** As a result of direct and proximate conduct of defendants, plaintiffs have suffered, general and special pecuniary and non-pecuniary damages, in a form of direct loss of all direct project development investment in time and money for, North Africa Construction Materials Project, Algeria Highway and Abidjan Urban Train projects, in amount of $21.3 million US Dollars.

**312.** As result of direct and proximate conduct of defendants, plaintiffs have suffered general and special pecuniary and non-pecuniary loss and damages, in form of direct

loss of present and future profit and increased shareholder value, from loss of all North and West Africa based Construction Materials projects activity, Algeria East-West Highway and District of Abidjan Urban Train project development and 30 year project concession operation activity businesses, amounting to present and future losses of $11.3 Billion Dollars or any other amount proven at trial.

313.  Further, defendants' actions were undertaken willfully, wantonly, maliciously and in reckless disregard for Plaintiff's rights, and as a direct and proximate result thereof plaintiff suffered emotional and other damage in a total amount to be proven at trial, therefore plaintiff seeks punitive and treble damages, as required by law, and in an amount sufficient to deter said defendant and others from similar future wrongful conduct.

## EIGHT CLAIM FOR RELEIF

### Extortion of plaintiff Genesis

314.  Plaintiff re-alleges all allegations as alleged in 1-313 above.

315.  All INDIVIDUAL defendant group members acted and or conspired with an intent to deprive Genesis of its property, said property being membership rights of Genesis in US-ABC, and wrongful obtaining and or removing of such property, from Genesis, through direct extortion activity or indirectly aiding, abetting, breaching their fiduciary duty, and assisting said direct acts by failing to hold an appropriate hearing, in violation of certain defendants obligations and fiduciary duties under US-ABC approved By-Laws.

316.  On September 14,2004 Plaintiff Genesis was one of founding members of US-ABC.

317.  On or before, or around September,14,2004 "first group" defendants consisting of (a) GRUMMAN AGENTS group members Donald Wilhelm, Peggy Hewinson and Ali Jazzairy, (b) all COUNCIL group members (c) INDIVIDUAL group member Northrop Grumman and (d) COUNCIL AGENT group member Lamine Djilani, "acted directly" and conspired to "extort" membership rights, from plaintiff Genesis, by drafting, writing and forwarding a September,14,2004 correspondence, thereby misrepresenting certain facts, to plaintiffs and as a result of, "attempted extortion" and extorted US-ABC membership from plaintiff Genesis.

318.  On or before or around September 14,2004 "second group" defendants [consisting of: (a) All US CORPORATE defendant group members, (b) all INTERNATIONAL CORPORATE defendant group members, (c) All COUNCIL AGENTS

defendants group members (d) all LAWYER group members and (e) INDIVIDUAL
defendant group member Donald Wilhelm], have aided and abetted "first group" defendants
and thus conspired or acted individually, to violate and breach their fiduciary duty, vested
upon them by US-ABC by-laws, and as a result of, assisted "attempted extortion" and
extorted US-ABC membership from plaintiff Genesis.

319.    On, before, or soon thereafter of September 14,2004, defendants conspired and
attempted to extort, and extorted, plaintiff Genesis US-ABC membership, by fraudulently
misrepresenting certain facts, where they knew or should have known said facts where false
and threatening to expel plaintiff Genesis, from US-ABC membership, as a result of said
misrepresentations.

320.    Pursuant to this conspiracy, defendants requested plaintiff Genesis to
voluntarily withdraw from US-ABC membership and if Genesis refuses to do so, threatened
to call a vote to expel Genesis from US-ABC.

321.    Immediately after learning plaintiff Genesis refused to voluntarily withdraw
from US-ABC, defendants now acted on their threat and announced, and published,
that Genesis has been expelled by US-ABC thereby de-facto extorting Genesis
US-ABC membership.

322.    As a result of direct and proximate conduct of defendants, plaintiffs
have suffered, general and special pecuniary and non-pecuniary damages, in a form of direct
loss of all direct project development investment in time and money for, North Africa
Construction Materials Project, Algeria Highway and Abidjan Urban Train projects, in
amount of $21.3 million US Dollars.

323.    As result of direct and proximate conduct of defendants, plaintiffs have
suffered general and special pecuniary and non-pecuniary loss and damages, in form of direct
loss of present and future profit and increased shareholder value, from loss of all North and
West Africa based Construction Materials projects activity, Algeria East-West Highway and
District of Abidjan Urban Train project development and 30 year project concession operation
activity businesses, amounting to present and future losses of $11.3 Billion Dollars or any
other amount proven at trial.

324.    Further, defendants' actions were undertaken willfully, wantonly, maliciously
and in reckless disregard for Plaintiff's rights, and as a direct and proximate result thereof
plaintiff suffered emotional and other damage in a total amount to be proven at trial,
therefore plaintiff seeks punitive and treble damages, as required by law, and in an amount

sufficient to deter said defendant and others from similar future wrongful conduct.

## NINTH CLAIM FOR RELEIF

### Breach of Fiduciary Duty

**325.** Plaintiff re-alleges all allegations as alleged in 1-324 above.

**326.** On September 14,2004 plaintiff Genesis was one of qualified founding members of US-ABC and as such an active members of board of Directors of US-ABC.

**327.** On September 14,2004 all US CORPORATE defendant group members and all INTERNATIONAL CORPORATE defendant group members, were also qualified founding members of US-ABC and as such, as per article IV SECTION 2 of US-ABC By-Laws, were required to serve, were active members of board of Directors of US-ABC and as a result of article IV SECTION 1 had fiduciary duties to properly manage US-ABC.

**328.** On September 14,2004 all COUNCIL AGENTS defendant group members and GRUMMAN AGENT defendant group member Mr.Donald Wilhelm , were acting as members and or management of US-ABC, LAWYER defendant group member was acting as legal representative of US-ABC and COUNCIL defendant group member US-ABC was acting as a legal entity with valid, approved and adopted By-Laws.

**329.** From September 14,2002 until September 14, 2004 certain or all above described groups of defendants were either acting as US-ABC qualified board of director members and or US-ABC management and legal representatives and as such had certain fiduciary duties and obligations under valid, approved and adopted articles of US-ABC By-Laws, where said duties included to manage affairs of US-ABC as per I-XII articles of said By-Laws.

**330.** From September, 04, 2002 until September 14, 2004, plaintiff Genesis, with its honorary president Bob Jovanovic, and or through its subsidiary IIC, was acting as US-ABC qualified board of director member and as such owned and was owed fiduciary rights under each valid, approved and adopted articles, I-XII, of US-ABC By-Laws.

**331.** All INDIVIDUAL defendant group members as described in 306-310, acted with fraud, deceit, misrepresentation or have failed to act as per their obligations in US-ABC By-laws, thus breaching their fiduciary duties, under US-ABC By-Laws with plaintiffs.

**332.** As a result of direct and proximate conduct of defendants, plaintiffs have suffered, general and special pecuniary and non-pecuniary damages, in a form of direct

loss of all direct project development investment in time and money for, North Africa Construction Materials Project, Algeria Highway and Abidjan Urban Train projects, in amount of $21.3 million US Dollars.

333.  As result of direct and proximate conduct of defendants, plaintiffs have suffered general and special pecuniary and non-pecuniary loss and damages, in form of direct loss of present and future profit and increased shareholder value, from loss of all North and West Africa based Construction Materials projects activity, Algeria East-West Highway and District of Abidjan Urban Train project development and 30 year project concession operation activity businesses, amounting to present and future losses of $11.3 Billion Dollars or any other amount proven at trial.

334.  Further, defendants' actions were undertaken willfully, wantonly, maliciously and in reckless disregard for Plaintiff's rights, and as a direct and proximate result thereof plaintiff suffered emotional and other damage in a total amount to be proven at trial, therefore plaintiff seeks punitive and treble damages, as required by law, and in an amount sufficient to deter said defendant and others from similar future wrongful conduct.

## TENTH CLAIM FOR RELIEF

### Injunctive and Declaratory Relief

335.  Plaintiff re-alleges all allegations in 1-334 above.

336.  As a direct and proximate result of the foregoing conduct as described herein, plaintiffs have sustained and will continue to sustain irreparable damage to their reputation and their business and have no adequate remedy at law to prevent repeated, unfounded, interference with their business relationships by defendants.

337.  Therefore, plaintiffs are entitled to an injunction, enjoining defendants and its officers, agents, directors, employees, licensees and all other persons acting by, through, or in concert with other defendants, from engaging in further libelous and slanderous acts which would damage plaintiffs, Genesis (its major subsidiary IIC) and Boban Jovanovic business and personal reputation.

338.  Further plaintiffs seek declaratory relief, in form of

a.  Official letter of retraction, on all allegations, (as written in offending September,15,2004 letter and e-mail), to be executed by all defendants, in this action, and once executed, for said retraction to be forwarded to all recipients of September,15,2004 offending correspondence, via e-mail and

59

hard copy.

b.  Official letter by US-ABC, stating Genesis is restored as a full
    qualifying member of US-ABC.

c.  Official letter of apology to all plaintiffs, apologizing for all acts against
    Plaintiffs, which led to filing of this legal action.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff requests the following relief against all defendants, Jointly
and Severely, as follows:

339.  For an award of damages of $21.3 million Dollars, equal to direct costs,
plaintiffs incurred in developing North Africa Construction Materials project, Algeria
Highway and District of Abidjan Urban Train projects.

340.  For an award of general, special, consequential and/or continuing
damages, caused from the acts of defendants, jointly and severely, plus prejudgment interest
thereon, in the total amount of $11.3 Billion USD, computed as a result of loss of present and
future income.

341.  For damages for libel caused to defendants in an amount to be
determined according to proof or by operation of law;

342.  For an award of treble, exemplary and punitive damages to the extent
allowed by law and in an amount according to proof and determined by the Court.

343.  For preliminary and permanent injunctive and declaratory relief.

344.  For attorneys' fees and costs of suit herein pursuant to statute or as
otherwise may be allowed by law; and,

345.  For such other relief as this Court may deem just and proper.

### JURY DEMAND

346.  Pursuant to the Seventh Amendment to the Constitution of the United States,
Rule 38(a) and (b) of the FEDERAL RULES OF CIVIL PROCEDURE, and similar
provisions of any state of the United States that apply, plaintiffs Genesis, Bob Jovanovic and
IIC demand a trial by jury of all issues triable of right by a jury.

hard copy.

    b. Official letter by US-ABC, stating Genesis is restored as a full qualifying member of US-ABC.

    c. Official letter of apology to all plaintiffs, apologizing for all acts against Plaintiffs, which led to filing of this legal action.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff requests the following relief against all defendants, Jointly and Severely, as follows:

339. For an award of damages of $21.3 million Dollars, equal to direct costs, plaintiffs incurred in developing North Africa Construction Materials projects, Algeria Highway and District of Abidjan Urban Train projects.

340. For an award of general, special, consequential and/or continuing damages, caused from the acts of defendants, jointly and severely, plus prejudgment interest thereon, in the total amount of $11.3 Billion USD, computed as a result of loss of present and future income.

341. For damages for libel caused to defendants in an amount to be determined according to proof or by operation of law;

342. For an award of treble, exemplary and punitive damages to the extent allowed by law and in an amount according to proof and determined by the Court.

343. For preliminary and permanent injunctive and declaratory relief.

344. For attorneys' fees and costs of suit herein pursuant to statute or as otherwise may be allowed by law; and,

345. For such other relief as this Court may deem just and proper.

## JURY DEMAND

346. Pursuant to the Seventh Amendment to the Constitution of the United States, Rule 38(a) and (b) of the FEDERAL RULES OF CIVIL PROCEDURE, and similar provisions of any state of the United States that apply, plaintiffs Genesis, Bob Jovanovic and IIC demand a trial by jury of all issues triable of right by a jury.

Dated this 30th day of December, 2005

Bob Jovanovic (Pro-Se)

## SERVICE LIST

Plaintiff

**Boban Jovanovic (Pro-Se)**
**440 Magie av.**
**Elizabeth N.J. 07208**
**1-908-803-0293**

Defendants

**Latham & Watkins**
Mr.Alan E. Kraus
One Newark Center
Newark, N.J. 07101-3174
T(973) 639-12343
F(973) 639-7298

**Gibbons, Del Deo, Dolan,**
Giffinger & Vecchione
Mr.Philip Crawford
Ms.Eileen Quinn Steiner
One Riverfront Plaza
Newark, N.J. 07102
T (973) 596-4500
F (973) 639-6327

**McCarter & English**
Mr.Ira M. Gotlieb
Four Gateway Center
100 Mulberry st.
Newark N.J. 07102
T (973) 622-4444
F (973) 624-7070

**DLA Piper Rudnick Gray**
Cary US LLP.
Mr.Robert Asuncao
370 Thornall st.
Edison, N.J. 08837
T(732) 590-1805
F(732) 590-1860

61

## LETTER OF INTENT

The following is a letter of intent between :

Ministry of Civil works of Democratic and Popular Republic of Algeria (from now on GOVERNMENT)

Genesis International Holdings ltd., 20 Commerce dr. suite #126, Cranford N J. 07016 USA (from now on GENESIS), and

**General statements**

1. GOVERNMENT and GENESIS intend to cooperate on developing a detailed BOT ( Build Operate Transfer) project architecture solution for East-West highway system in Algeria.

2. GENESIS has developed a fundamental approach for global BOT financing, implementation and operation of East-West highway system as described in exhibit A, (Detailed Agenda Proposal)

Whereas

GOVERNMENT intends

a. To develop and operate the East-West highway system as a global, 1,200 km, BOT project

GENESIS intends

a. To act as a Central Project Management entity in developing the detailed architecture proposal for financing, implementation and operation of the East-West BOT global project.

b. To finalize the detailed architecture proposal for East-West highway BOT project no later than September 30th, 2003.

GOVERNMENT and GENESIS jointly intend

a. To review the proposal for East-West highway BOT project on September 30th, 2003 or other mutually agreed date, soon thereafter.

b. To enter into a BOT concession agreement, if all the terms of the proposal are acceptable to the GOVERNMENT.

Algerian Ministry of Civil Works        0 5 MAI 2003        GENESIS

مدير التخطيط و التنمية

عبد السلام اسكندر

# BY-LAWS
# OF
# UNITED STATES - ALGERIA BUSINESS COUNCIL, Inc.,
## a qualifying 501(c)(6) non-profit corporation,
## registered in the District of Columbia, U.S.A.

*Http://www.usdz.org*

## ARTICLE 1

### PURPOSES

The corporation is organized for the following purposes: The United States-Algeria Business Council ("Council"), a private, non-profit entity incorporated in the District of Columbia, shall operate for the purpose of promoting commerce between and among business entities based in the United States and Algeria.

The corporation also has such powers as are now or may hereafter be granted under the District of Columbia General Corporation Law.

The objectives of the Council are: To promote, foster, stimulate and encourage trade and business between and among businesses based in the United States and Algeria and to act as a clearinghouse to assemble, preserve and disseminate information affecting the members of this corporation essential for their purposes in the adequate conduct of their businesses and generally to promote and advance the general welfare of the members of this corporation by all available means and methods. However, nothing in this certificate shall authorize this corporation to perform or engage in any act or practice prohibited by the General Business Law.

The Council shall be non-partisan and non-sectarian and shall take no part in or lend its influence to the election or appointment of any candidate to national, state, county or municipal office in any country.

This corporation is not organized for the pecuniary profit of its directors or members; nor may it issue stock nor declare or distribute dividends, and no part of its net income shall inure to the benefit of any director, officer or member; and any balance of money or assets remaining after the full payment of corporate obligations of all and any kinds shall be devoted solely to the promotion of their common business interests. In the event of dissolution of this corporation, any assets remaining will not be distributed to its directors, officers or members but will be transferred to another organization having purposes as similar as possible to those of this corporation.

## ARTICLE II

### OFFICES

The corporation shall have and continuously maintain in the District of Columbia a registered office and a registered agent whose office is identical with such registered office and may have other offices within or without the District of Columbia as the Board of Directors may from time to time determine.

## ARTICLE III

### MEMBERSHIP and GENERAL

**SECTION 1.** *Membership.* The corporation shall have four classes of members: Honorary, Founding Corporate, Corporate & Individual and Associate. Members in good standing shall be entitled to the rights and privileges of membership except that honorary members shall not be entitled to vote or hold office, nor

shall they be required to pay dues. Membership shall be open to individuals and firms whose business involves Algerian-North American trade or others who support the objectives of the Council. The Secretary of the Council shall maintain a current list of members and such list shall be final and conclusive for all purposes hereunder.

SECTION 2. *Qualification Of Members.* Except with respect to the membership of the corporation as of the date of adoption of these by-laws (as set forth on Exhibit "A," attached hereto and incorporated by reference herein), an entity shall be entitled to membership upon meeting the qualifications set out in the membership application (as set forth at Exhibit "B," attached hereto and incorporated by reference herein). Memberships shall be annual and a failure at any time to meet the on-going qualification requirements, including payment of assessed dues, will cause the suspension of a Member's right to participate in the governance of the Council.

SECTION 3. *Honorary Membership.* Honorary membership may be conferred upon:

    a)   The incumbent, from time to time, Ambassador of the Democratic and Popular Republic of Algeria to the United States, may serve as an Honorary President. The Ambassador may designate a member of the Embassy Staff to represent the Ambassador.

    b)   The incumbent, from time to time, Ambassador of the United States of America to the Democratic and Popular Republic of Algeria, may serve as an Honorary President. The Ambassador may designate a member of the Embassy Staff to represent the Ambassador.

    c)   Any individual who has rendered a significant service to the Council or to the business community may be nominated by any member in good standing for honorary membership.

    d)   Honorary members are not entitled to vote, nor are they required to pay dues, but are entitled to all other privileges of membership.

SECTION 4. *Voting Rights.* Each individual member shall be entitled to one (1) vote on each matter submitted to a vote of the members. Each qualified member shall file with the Secretary of the corporation the name of its authorized member. Members are authorized to vote in person or by proxy.

SECTION 5. *Dues.* Annual dues will be set by a action of the Board of Directors and will be due no later than January 31st of each year. Dues paid in CY 2002 will constitute dues for both CYs 2002 and 2003.

SECTION 6. *Termination of Membership.* The Board of Directors may, by affirmative vote of the majority of all of the members of the Board, suspend or expel a member for cause, after an appropriate hearing.

SECTION 7. *Notice of Meetings.* Written or printed notice stating the place, day and hour of any meeting of members shall be delivered, either personally or by mail, to each member not less than fifteen (15) nor more than forty (40) days before the date of such meeting, by or at the direction of the President, CEO and Secretary General, or the Secretary, or the Board of Directors. In case of a special meeting for which required by statute or by these by-laws, the purposes for which the meeting is called shall be stated in the notice, if mailed, the notice of a meeting shall be deemed delivered when deposited in the United States mail addressed to the member at the member's address as it appears on the records of the corporation, with postage thereon prepaid.

SECTION 8. *Informal Action by Members.* Any action required to be taken at a meeting of the members of the Council, or any other action which may be taken at a meeting of members, may be taken without a notice of a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the members entitled to vote with respect to the subject matter thereof.

SECTION 9. *Quorum.* A majority of the qualified members, represented in person or by proxy, shall constitute a quorum at a duly-noticed meeting but, in no event will a quorum consist of less than five members at an Annual Meeting. A majority of the votes entitled to be cast by the members present at a meeting at which a quorum is present shall be necessary for the adoption of any matter voted upon by the members. If a quorum is not present at any meeting of the members, a majority of the members present may adjourn the meeting at any time without further notice.

**SECTION 10.** *RULES.* The rules of procedure for all meetings of members shall be those contained in Robert's Rules of Order, as revised from time to time so far as applicable and not inconsistent with these by-laws, the Articles of Incorporation or applicable law.

**ARTICLE IV**

**BOARD OF DIRECTORS**

**SECTION 1.** *General Powers.* The affairs of the corporation shall be managed by its board of directors.

**SECTION 2.** *Qualifications and tenure.* Each qualified Founding Corporate Member shall serve as a member of the Board of Directors.

**SECTION 3.** *Regular Meetings.* The Board of Directors shall meet at least once during any consecutive twelve-month calendar period, at time and place to be determined by the Board. All members of the Board are entitled to notice of such meeting.

**SECTION 4.** *Special Meetings.* Requests for a special meeting must be made to the President, CEO and Secretary General who shall have the responsibility of notifying all members of the Executive Committee. Special meetings of the Board of Directors may be called by or at the request of the President, CEO and Secretary General or any three (3) members of the Executive Committee. The person or persons authorized to call special meetings of the Board may fix any place, either within or without the District of Columbia, as the place for holding any special meeting of the Board called by them. A special meeting shall be limited to the purposes stated in the notification to the Board of Directors.

**SECTION 5.** *Notice.* Notice of any special meeting of the Board of Directors shall be given at least five (5) days previously thereto by written notice delivered personally or sent by mail to each Director at his address as shown by the records of the corporation. If mailed such notice shall be deemed to be delivered when deposited in the United States mail in a sealed envelope so addressed, with postage thereon prepaid. Notice of any special meeting of the Board of Directors may be waived in writing signed by the person or persons entitled to the notice either before of after the time of the meeting. The attendance of a Director at any meeting shall constitute a waiver of notice of such meeting, except where a Director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to transacted at, not the purpose of any regular or special meeting of the Board need be specified in the notice of such meeting, unless specifically required by law or by these by-laws.

**SECTION 6.** *Quorum.* A simple majority of the Board of Directors shall constitute a quorum for the transaction of business at any meeting of the Board, except that, in order to constitute a quorum, a minimum of five (5) board members must be present.

**SECTION 7.** *Compensation.* No Director shall receive, directly or indirectly, any salary compensation, or emolument from the corporation.

**SECTION 8.** *Executive Committee.* The Executive Committee will consist of six (6) officers: the Chairman; the President, CEO and Secretary General; the Vice Chairman for Development; the Vice Chairman for Programs; the Secretary; and the Treasurer. The Executive Committee shall be responsible for the day-to-day supervision of the Corporation during the times between the annual meetings of the Board.

## ARTICLE V

### OFFICERS

**SECTION 1.** *Officers.* The officers of the Council shall be a Chairman, a President, a CEO & Secretary General, a Vice Chairman for Development, a Vice Chairman for Programs, a Secretary and a Treasurer. In the absence of a Secretary and/or Treasurer, the President, CEO & Secretary General shall act in those capacities, as well.

**SECTION 2.** *Election, Succession and Term of Office.* The officers of the corporation shall be proposed by the Executive Committee and ratified by the Board of Directors at its regular annual meeting. Each such officer shall hold office for a term as determined by the Executive Committee.

**SECTION 3.** *Chairman.* The Chairman, to be elected annually at the Annual Meeting of the Board, shall chair the Board and give general guidance and leadership to the organization.

**SECTION 4.** *President, CEO & Secretary General.* The President, CEO & &Secretary General shall be the principal executive officer of the corporation. Subject to the direction and control of the Board of Directors, he shall be in charge of the business and affairs of the corporation; he shall see that the resolution and directives of the Board of Directors are carried into effect, and, in general, he shall discharge all duties incident to his office and such other duties as may be prescribed by the Board of Directors.

**SECTION 5.** *Vice Chairman (Development).* The Vice Chairman (Development), to be elected annually at the Annual Meeting of the Board, shall implement the organization's goals at expansion of membership and attainment of funds.

**SECTION 6.** *Vice Chairman (Programs).* The Vice Chairman (Programs), to be elected annually at the Annual Meeting of the Board, shall implement the organization's goals with regard to providing programs to the members.

**SECTION 7.** *Treasurer.* The Treasurer shall be the principal accounting and financial officer of the corporation. He shall have charge of and be responsible for the maintenance of adequate books of account for the corporation, have charge and custody of all funds and securities of the corporation and be responsible therefore for the receipt and disbursement of funds, perform all the duties incident to the office of Treasurer and such other duties as may be from time to time assigned to him by the Board of Directors.

**SECTION 8.** *Secretary.* The secretary shall keep the minutes of the meetings of the members and of Board of Directors; see that all notices are duly given in accordance with the provision of these by-laws or as required by law; be custodian of the corporate records and of the seal of the corporation and see that the seal of the corporation is affixed to all documents, the execution of which on behalf of the corporation under its seal is duly authorized in accordance with the provisions of these by-laws; keep a register of the post office address of each member which shall be furnished to the Secretary by such member; and in general perform all duties incident to the office of Secretary and such other duties as from time to time may be assigned to him by the Board of Directors.

**SECTION 9.** *Compensation.* No officer shall receive, directly or indirectly, any salary, compensation, or emolument from the corporation, except as established by the Board of Directors.

## ARTICLE VI

### COMMITTEES

**SECTION 1.** *Executive Committee.* The Executive Committee shall convene when deemed necessary by the Chairman of the Council. Any action taken by the Executive Committee shall be brought to the attention of the entire Board of Directors at its next meeting for review and ratification.

**SECTION 2.** *Other Committees.* Other committees may, in the discretion of the Board of Directors, be established and abolished, from time to time, in such manner as the Board deems suitable.

## ARTICLE VII

### Dissolution

If the Council should cease to function or is legally dissolved, any remaining funds or assets shall be given to other self-sustaining charitable, educational, or scientific organizations which qualify for exemption under Section 501 (c)(4) of the United States Internal Revenue Code of 1954.

## ARTICLE VIII

### BOOKS AND RECORDS

The corporation shall keep correct and complete books and records of account and shall also keep minutes of the proceeding of its members, Board of Directors, and committees having any of the authority of the Board of Directors, and shall keep at the registered or principal office a record giving the names and addresses of the delegated of each member firm who has been duly authorized by such member to vote for such member. All books and records of the corporation may be inspected by any member, or his agent or attorney, for any proper purpose at any reasonable time.

## ARTICLE IX

### FISCAL YEAR

The fiscal year of the corporation shall begin on the 1ˢᵗ day of January and end on the last day of December in each year.

## ARTICLE X

### WAIVER OF NOTICE

Whenever any notice whatever is required to be given under the provisions of the District of Columbia General Corporation Law under the provisions of the Articles of Incorporation of the by-laws of the corporation, a waiver thereof in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

## ARTICLE XI

### SEAL

The corporate seal shall have inscribed thereon the name of the corporation, the words "Corporate Seal, District of Columbia" and "(date)," consist of the customary wording surrounding an official emblem of the Council together with the year of Incorporation and shall remain in the custody of the Secretary and/or the Secretary General.

## ARTICLE XII

### EFFECTIVE DATE

These by-laws, in addition to being effective from and after the date of their adoption shall be retroactive to, and effective as of, September 3, 2002 (the date of incorporation).

These bylaws were duly adopted by the board of directors on September 4, 2002.

James H. Bailey, Esq.
Secretary

Exhibit A

to the bylaws of

The United States-Algeria Business Council,

Roster of Founding Corporate Members

To be distributed at Board Meeting of September 4, 2002.

**Exhibit B**

to the bylaws of

The United States-Algeria Business Council

General Form of Membership Application

THE UNITED STATES - ALGERIA BUSINESS COUNCIL

Application for Membership

Application is to be (check one):

| | | |
|---|---|---|
| __ | Honorary | (no dues) |
| __ | Founding Corporate | ($10,000 or dinar equivalent, annually) |
| __ | Corporate & Individual | ($ 5,000 or dinar equivalent, annually) |
| __ | Associate | ($ 100, or dinar equivalent, annually) |

Name: _____
     (as member wishes to appear on the official records)

Contact person at Member, if not an Individual: _____

Address: _____    _____
         Street address and Room              City

_____    _____    _____
         State                          Country                  Zip

_____    _____
         E-mail address                  Website

Date application is signed: _____

Payment will be made in the following manner: _____
                              (Wire transfer instructions can be provided.)

Signature _____

7

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BOBAN JOVANOVIC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO.: 1:07-CV-00927 (CKK)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **US-ALGERIA BUSINESS COUNCIL** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JOHN DOES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PROPOSED ORDER GRANTING US-ALGERIA BUSINESS COUNCIL'S MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

This matter came before the Court on Defendant US-Algeria Business Council ("US-ABC")'s Motion to Dismiss the Amended Complaint for Failure to State a Claim Upon which Relief Can be Granted.  On good cause shown, it is

ORDERED that Defendant's Motion to Dismiss be, and hereby is, GRANTED, and it is

FURTHER ORDERED, that the Amended Complaint herein be, and is hereby, DISMISSED with prejudice.

DATED: _____                   _____
                                                Colleen Kollar-Kotelly
                                                United States District Judge

The Clerk shall send a copy of this order to:

Kevin H. Metz
Kevin.Metz@lw.com

Alan E. Kraus
Alan.Kraus@lw.com

Kira S. Dabby
Kira.Dabby@lw.com

Boban Jovanovic
440 Magie Avenue
Elizabeth, N.J. 07208