# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DISTRICT OF COLUMBIA

**Boban Jovanovic (Pro-Se)**
440 Magie ave
Elizabeth, N.J. 07208
1-908-803-0293

RECEIVED
JAN 1 6 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

---

| | | |
|---|---|---|
| Boban Jovanovic (Pro-Se) | ) | |
| Plaintiff | ) | |
| **vs.** | ) | |
| US-Algeria Business Council | ) | Docket No.    **Case No.    1:07-cv-00927** *CKK* |
| John Does's | ) | |
| **Defendants** | ) | **Answer to defendants Motion to Dismiss** |
| | ) | |

---

**Court Clerk**
US Federal District Court for District of Columbia
Dear Clerk

      Included please find an original and one copy of an answer to defendants motion to dismiss. Please file same on receipt of this mailing. Also please stamp and file one copy and mail a filed and stamped copy to me. I have also included self addressed and stamped envelope for your convenience. Your assistance in this matter is greatly appreciated.

**Bob Jovanovic Pro-SE;**
440 Magie av. Elizabeth N.J. 07208
1-908-803-0293
January 12,2008

1

**<u>PLAINTIFFS ANSWER TO DEFENDANTS MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT                                              7

    A.    **Preliminary statement**                          7

STATEMENT OF FACTS AND PROCEDURAL HISTORY        8

    A.    **Statement of Facts**                            8

    B.    **Procedural History**                           11

ARGUMENT                                                          13

    I.    **PLAINTIFFS COMPLAINT INDEED STATED CLAIMS**    13

    II.    **PLAINTIFFS CLAIMS ARE NOT TIME BARRED**       14

    III.    **PLAINTIFFS CLAIMS SHOULD NOT BE DISMISSED**  18

    A.  **Plaintiff pled all elements of his Fraud Claims and thus his Fraud claim should not be dismissed**    18

      1.    **In contrast to Defendants argument, Plaintiff indeed pled that he relied on Defendants Fraudulent statements**    21

      2.    **In contrast to Defendants arguments, Plaintiff indeed alleged Donald Wilhelm, as Chairman of US-ABC made false statements**    23

      3.    **Plaintiff indeed alleged that Donald Wilhelm, retaliated against Plaintiff**    24

    B.  **Plaintiffs pled all elements of his Tortuous interference Claims and said claims should not be dismissed**    25

      1.    **Plaintiff does not assert any claims on behalf of Genesis and IIC**    26

      2.    **Plaintiff states claims for tortuous interference**    26

        a.    **Letter of Intent (could be) either a Formal Contract and or a simple informal/implied in fact contract**    29

        b.    **Plaintiff did not have at will employee relationship but rather he had an**

executed employment contract/agreement    35

     c.    **Plaintiff executed Sotrama agreement**

        **in his individual (personal) capacity**    36

**C. Plaintiff pled all elements of his Defamation claim**

    **and thus said claim should not be dismissed**    36

**D. Plaintiff pled all elements of his Intentional Infliction of**

    **Emotional Distress  Claim (IIED) and thus said claim**

    **should not be dismissed**    38

**E.  Plaintiff has not pled a separate conspiracy claim**    39

**F.  Plaintiff is entitled to injunctive and declaratory relief**    39

**CONCLUSION**..................................................................................

# TABLE OF AUTHORITIES

CASE LAW                                                                Pg.

*__Alexander v. C.I.R.__ 825 F.2d 499 (C.A.D.C.,1987)*                    14

Alfred A. Altimont, Inc. v. Chatelain, Samperton &  Nolan,               25

374 A.2d 284, 289 (D.C.1977).

*Amelia B. Asuncion, v.Columbia Hospital for Woman,*                     38

*514 A.2d 1187"*

Blake Const. Co., Inc. v. C. J. Coakley Co., Inc., 431 A.2d 569          19

*__Browning v. Clinton__ 292 F.3d 235 C.A.D.C.,2002.*                     17

*Casco Marina Development, L.L.C., v. District of Columbia Development,*  25

*et.al.  834 A.2d 77*

*Conley,* 355 U.S. at 45-46, 78 S.Ct. 99.                                13

Davis v. Winfield, 664 A.2d 836                                          31

Emerine v. Yancey 680 A.2d 1380 D.C.,1996.                              29

Glus v. Brooklyn Eastern Dist. Terminal, 79 S.Ct. 760                    13

*"Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467, 82 S.Ct. 913,*         15, 16

*916, 8 L.Ed.2d 39.P rule 1631*

Haines v. Kerner, 92 S.Ct. 594                                          13,14

**Jenkins v. McKeithen** 395 U.S. 411, 89 S.Ct. 1843                     13,26

*__Johnson v. Long Beach Mortg. Loan Trust 2001-4__ 451 F.Supp.2d 16*    16

McCord v. Bailey, 636 F.2d 606 C.A.D.C.,1980                             36

**Otto v Burnett v. New York Central Railroad Co.85 S.Ct. 1050**        15,16

**Oparaugo v. Watts** 884 A.2d 63D.C.,2005."                            38

*__Rodriguez-Roman v. I.N.S.__98 F.3d 416 C.A.9,1996.*                   15

*Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)    33,36

**Swierkiewicz v. Sorema N. A.** 534 U.S. 506, 122 S.Ct. 992 U.S.,2002.    13,25

**Wada v. U.S. Secret Service** F.Supp.2d 2007 WL 3341847 D.D.C.,2007.    13,16

***Wallace v. Skadden, Arps, Slate, Meagher & Flom*** *715 A.2d 873 "*    37

ENCYCLOPEDIAS

Restatement Second, Contracts § 27.    29

*Williston on Contracts **1:16.***    29

FEDERAL RULES

*FRCP  rule 8(f)*    13,26

*FRCP Rule 9(b)*    19

FRCP 11 (b)(3)    24

FRCP Rule 12(b)(6)    13,16

*FRCP 1404 (a)*    14

*FRCP Rule 1406*    14,15,16

*FRCP Rule 1631*    14

IRS TAX LAW

*501 (C)(3)*    7

*501(C)(4)*    7

**CONGRESS**

*128 Cong.Rec. 3572 (1982)*    14

## PRELIMINARY STATEMENT

### A. Preliminary Statement

Plaintiff filed his claims against defendant US-ABC, as a result of his individual involvement in certain business related activities in Countries of Algeria and Ivory Coast.

Plaintiff's claims were brought about as a result of conspiracy between certain US-ABC agents, Northrop Grumman Corporation and presently unknown John Doe's, to take over Plaintiffs and Plaintiffs companies, position in major Toll Highway project in coutry of Algeria and as a result illegally destroy the reputation of plaintiff and his company Genesis) who discovered that

*(a) Defendant US-ABC was fraudulently registered with Government of District of Columbia as a 501(c)(3) [and later (c)(4) non profit corporation and*

*(b)Defendant US-ABC was violating Federal Corrupt Practices act when there was an illegal exchange of favors between the "Chairman" (agent) of US-ABC (the Northrop Grumman Corporation), and an official of Algeria Government, the Algeria Ambassador to US, mr.Idriss Jazzairy.*

"Said exchange of favors happened when Northrop Grumman corporation employed Algeria Ambassadors son Mr.Ali Jazzairy in a high paying engineering position, within Northrop Grumman Corporation, in return for Algeria Ambassadors necessary support and blessing, required for Northrop Grumman to become (through an illegal election) a new Chairman of US-ABC.

Plaintiff Jovanovic warned Defendants agents in August, that Defendant US-ABC Chairman must relinquish its Chairman's position and correct certain FCPA Corrupt act violations.

In reprisal to Plaintiffs warning, US-ABC aided and abetted a Chairman of US-ABC, Northrop Grumman Corporation, and jointly wrote a defamatory and fraudulent September 14,2004 correspondence to Plaintiff and his company, and further aided and abetted Northrop Grumman in forwarding said correspondence to Algeria Government and third parties.

Said correspondence caused major damages to **"individual"** Plaintiff Jovanovic.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Factual Background

Plaintiff Jovanovic is an "individual owner" of certain patent and know-how rights for manufacturing of building related products and processes, as well as know-how for implementing and operating major infrastructure based transportation and other projects. (from now on "his capacities")

He began developing and or obtaining and building his capacities in the mid nineteen eighties.

As a result he became interested in International Business opportunities, in the field of Transfer of Technology and Know-How, from United States to certain Governments with Economies in transition.

In June 2000, he executed "in his individual capacity, his first transfer of technology and know agreement to a Tunisia (North Africa) company, operating under the name "Sotrama". Sotrama agreement bestowed upon plaintiff Jovanovic the rights and responsibilities to act as turn key project developer and operator, for Sotrama manufacturing facilities in Tunisia and Algeria.

The Sotrama agreement obliged plaintiff to initially install and manage a turn key pilot manufacturing plant in Tunisia and within five years of Tunisia installation, install and manage six additional manufacturing plants, as sub licensees of Sotrama, in Algeria.

The Sotrama agreement provided plaintiff Jovanovic with exclusive rights to market and sell licensing rights for six Sotrama sublicenses in Algeria.

Same Sotrama agreement also granted individual plaintiff Jovanovic with exclusive rights to act as a marketing agent, for all Sotrama Algeria manufactured products in Algeria.

Plaintiff than entered into an agreement with Genesis International Holdings ltd., (in which, plaintiff became a shareholder,), where Genesis was empowered to act as a turn key, project construction and operation manager, for Sotrama Tunisia and Algeria operations.

However, plaintiff Jovanovic retained the right, under said Sotrama Agreement, to market and set up six Sotrama sublicensed manufacturing plants in Algeria as well as the exclusive right to sell the Construction industry related product and material output, of all six Sotrama, Algeria manufacturing plants.

Shortly after execution of his individual agreements, and in required support of same, Mr.Jovanovic began individually investing into development of Sotrama Market in Algeria, the Transportation related Infrastructure projects (the Algeria East-West Highway)

As part of his Algeria Market development, Plaintiff accepted an invitation by Algeria Government, for him and his company Genesis, to become one of fifteen US partners, founding members, of Defendant US-ABC.  Additional fourteen founding **partners /members** of US-ABC consisted from some of largest US Corporations in business of Engineering, Defense, Aerospace, etc.

Subsequently, plaintiffs company Genesis executed an LOI Public Private Partnership (PPP) agreement with Algeria Government, for joint development of BOT architecture for Algeria East-West highway and ultimately enter into a BOT concession agreement, upon Algeria Governments approval of proposed architecture. (Within said LOI agreement Genesis agreed to act in "CENTRAL PROJECT MANAGEMENT capacity in development of East-West project architecture.)

Than, Genesis, while acting in its Central Project management capacity (on behalf of both Genesis and Algeria Government PPP) entered into an agreement with plaintiff Jovanovic, (in his individual capacity) for Jovanovic to transfer his Individual exclusive know-how for development of major BOT/PPP transportation infrastructure projects.

Using his exclusive know-how plaintiff Jovanovic immediately began orchestrating a plan to develop, construct and operate the East-West Highway, project under the International Consortium of Capacities, and shortly after execution of his individual agreement with Genesis/Algeria Gov. PPP, Genesis, and Jovanovic, constituted said Consortium, as a US Delaware co. under the name the International Infrastructure Consortium ltd. (IIC).

The initial invited/proposed members of IIC Board of Directors as well as the

initial invited proposed short listed members of the IIC Consortium were constituted through a "by invitation only" concept. Summary of said concept, which was one of integral parts of Plaintiffs East-West highway BOT exclusive know-how, was officially represented in June 2003, in front of :

(a) Four Ministers of Algeria Government,

(b) Mr.Al Zapanta, Mr.Richard Holmes, Mr.Lamine Djilani, Mr.Ali Jazzairy, Northrop Grumman Corporation

(c) Present Members of Algeria Government and visiting Algeria Companies Delegation

(d) Present Members of Board of Directors of US-ABC,

US-ABC Board, under leadership of its founding Chairman, Mr.Al Zapanta and Mr.Holmes officially supported Plaintiff Jovanovic and his company Genesis in development of the East-West Highway project.

However, after July 2003 delivery of final draft of proposed project architecture and after September 2003, plaintiffs official presentation of a final negotiated version of project concession agreement, to Algeria president Mr.Bouteflika, *certain agents of US-ABC*, (as members of US-ABC Board of Directors), under leadership of Northrop Grumman corporation, conspired to illegally take control of US-ABC board, *through a March 2004, illegal election*, with intent to replace the founding Chairman of US-ABC, Mr.Zapanta, (*the major backer of plaintiff Jovanovic and Genesis East-West highway development effort,)* and take control of ( monopolize) management of US-ABC

Ultimately, the Conspirators plan, was centered and dependant on, defaming plaintiff Jovanovic and his company Genesis. Once the effect of defamation was achieved, conspirators planned to take over control of the IIC Consortium, which was constituted by Plaintiffs company Genesis and Algeria Government to act as the official developer and the designated owner of the rights to East-West Highway project Concession agreement.

In execution of its plan, Northrop Grumman was aided and abetted by (agents of) US-ABC and effectuated an illegal election for new Chairman of US-ABC.

Shortly after said Election, US-ABC Board illegally ratified the US-ABC

election.    Several months later, Plaintiff discovers certain violations of FCPA Corrupt act and IRS Tax laws, by US-ABC, and warns Chairman of US-ABC and agent of Northrop Grumman, that said violations should be corrected.

Shortly thereafter, Northrop Grumman Corporation, in its dual capacity as "Chairman of US-ABC" and agent of Northrop Grumman, executes and forwards a defamatory letter and defamatory e-mail to **(1)** Plaintiff, **(2)** Mr.Idriss Jazzairy, in one or more of his several capacities, (i) as an individual, and (ii) in his individual capacity as an Honorary President of US-ABC, and (iii) as an agent of Algeria Government, and **(3)** Certain members of US-ABC Board of Directors, (4) Mr.Lies Goumiry, in his individual capacity, (5) Mr.Nebojsa Solunac, and other presently not identified John Doe's

One day after receiving the defamatory e-mail, with attached defamatory letter, Algeria Government announces in major Algeria News Paper, Press release that from on the East-West Highway project will be only developed by the European and the Asian companies, and thus ended all business relations with plaintiff Jovanovic and his companies on the East-west Highway and or any other project.

Several days later, Mr.Idriss jazzairy, in his capacity as agent of Algeria Government, names mr.Jovanovic a "persona non-grata" on Algeria premises and immediately orders Algeria Consul not issue any Visas to plaintiff Jovanovic and his companies, for further entry into Country of Algeria.

As a result of Defendants acts, Plaintiffs Individual contracts/agreements with Sotrama, Algeria/Genesis PPP, Genesis and IIC were breached.

## B. Procedural History

(a) Plaintiff initially filed a 05-4487 (DMC), Federal District Court action in Federal District Court of New Jersey On September 14,2005.

(b) Plaintiff served the complaint with a waiver of service which defendant US-ABC and all other defendants in that case, timely executed and returned.

(c) Defendant US-ABC initially requested from plaintiff a 15 day extension of time on November 15,2005, to answer the case or otherwise plead and plaintiff agreed to grant said action.

(d) Defendant than on December 09,2005 now jointly with all other defendants requested a second 63 day extension to answer the complaint or otherwise plead in this case.

(e) On February 10, 2006 defendant US-ABC and ten other defendants filed a 12(b)(2) Motion to Dismiss for Lack of personal Jurisdiction.

(f) On February 10, 2006 all other defendants also filed their 12 (b) (6) motions to dismiss.

(g) On April 28 and May 01,2006 Federal District Court of New Jersey granted Motions to dismiss, to all defendants.

(h) On July 28,2006 plaintiff filed a Notice of Appeal to the Third Circuit.

(i) On May 18, 2007 defendant filed a complaint in Federal District Court of DC against defendant US-ABC and 10 other defendants in New Jersey District Court, as a result of May 01,2006 New Jersey District Court order.

(j) On May 22, 2007 Plaintiff forwarded a courtesy copy of the newly filed DC complaint to Counsel for defendant US-ABC. (Latham and Watkins, New Jersey Office)

(k) On June 28, 2007 Third Circuit rendered its decision, **overturning certain District Court orders and remanding certain claims for further proceedings.**

(l) Within same June 28, 2007 order, Third Circuit denied plaintiffs appeal as to 11 jurisdictional defendants.

(m) On July 6, 2007 plaintiff filed a request for rehearing as to all issues on appeal, denied by the Third Circuit of Appeals.

(n) On September 11,2007,Third Circuit entered a Mandate, and denied plaintiffs request for rehearing as to 11 jurisdictional defendants including defendant US-ABC.

(o) On September 10, 2007, after noticed by Third Circuit Court Clerk that Third Circuit Mandate will be issued on September 11, 2007, and as a result of Third Circuit decision, Plaintiff filed a First Amended complaint with the Clerk of Federal Court Clerk for District of DC.

(p) On September 10,2007 plaintiff served a copy of both original complaint and a first amended complaint and a summons on defendant US-ABC as well as served a waiver of service form.

(q) On October 15,2007, immediately after expiration of the 30 day statutory period for returning the waiver of service, (as defendant has not agreed to a waiver) Plaintiff requested of Arlington County Sheriffs department to serve the summons and a copy of both original and First amended complaints on defendants US-ABC.

(r) Arlington County Sheriffs department served the defendant on October 23,2007

(s) On November 13,2007 Federal District Court for the District of Columbia, granted defendants motion to enlarge time.

(t) On December 13,2007 defendant filed the motion to dismiss in this case.

**ARGUMENT**

## I.    PLAINTIFFS COMPLAINT INDEED STATED CLAIMS

Allegations of pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 92 S.Ct. 594

Where an action is brought by a pro se plaintiff, court must construe the plaintiff's filings on a motion to dismiss for failure to state a claim liberally for such complaints are held to less stringent standards than formal pleadings drafted by lawyers. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A. **Wada v. U.S. Secret Service** F.Supp.2d 2007 WL 3341847 D.D.C.,2007.

Only if defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." _Conley,_ 355 U.S. at 45-46, 78 S.Ct. 99.

In reviewing a decision granting a motion to dismiss, appellate court must accept as true all of the factual allegations contained in the complaint. **Swierkiewicz v. Sorema N. A.** 534 U.S. 506, 122 S.Ct. 992 U.S.,2002.

For purposes of motion to dismiss, material allegations of complaint are taken as admitted and complaint is to be liberally construed in favor of plaintiff. Fed.Rules Civ.Proc. rule 8(f), 28 U.S.C.A. **Jenkins v. McKeithen** 395 U.S. 411, 89 S.Ct. 1843

Complaint should not be dismissed unless it appears that plaintiff could prove no set of facts in support of his claim which would entitle him to relief. **Jenkins v. McKeithen** 395 U.S. 411, 89 S.Ct. 1843

Fact that a complaint as drawn might be too vague, was not a ground for dismissing the action where allegations were sufficient to state a cause of action.  Glus v. Brooklyn Eastern Dist. Terminal, 79 S.Ct. 760

Plaintiff indeed state a plausible claims for relief as defendant has committed acts against plaintiff.    Although Plaintiff is acting Pro-Se, and under governing Haines v. Kerner, 92 S.Ct. 594, Plaintiff complaint must be held at less stringent standards than formal pleadings drafted by lawyers. Plaintiff complaint has stated plausible claims. For the sake of clarity Plaintiff will outline summary of his claims, below, within this motion.

## II.    PLAINTIFFS CLAIMS ARE NOT TIME BARRED

**a.    Plaintiff is not time barred as the issue of Statue of Limitation in already filed Federal Diversity action is governed by Federal Rules of Civil Procedure, rather than by State law.**

Whenever a civil action is filed in a Federal Court or an appeal Court , including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and **the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred** on the date upon which it was actually filed in or noticed for the court from which it is transferred. _FRCP rule 1631_

The Court of Appeals of District of Columbia holds that Congress is very clear why it has enacted the Federal Transfer Statue.    In *Alexander* court held it is abundantly clear that Congress intended that "a case mistakenly filed in the wrong court [should] be transferred as though it had been filed in the transferee court on the date in which it was filed in the transferor court." _128 Cong.Rec. 3572 (1982). **Alexander v. C.I.R.** 825 F.2d 499 (C.A.D.C.,1987)_

The Alexander Court finds that in the Interest of Justice, Court should transfer a case: "We further find that it would be in the interest of justice to transfer Alexander's appeal to the proper circuit. _128 Cong.Rec. 3572 (1982). **Alexander v. C.I.R.** 825 F.2d 499 (C.A.D.C.,1987)_

Further 9th District Court of Appeals **Rodriguez** case clarifies that  § 1631 permits the lack of jurisdiction to be cured **if a case was not actually transferred, so long as it is transferable. Rodriguez** Court further held that a case should be deemed transferred **(in this case to Federal District of Columbia)**, even though the courts in which they were filed did not, themselves, act to transfer them. ***Rodriguez-Roman v. I.N.S.*** *98 F.3d 416 C.A.9,1996.*

Further Federal statue 1406 also apply as the District court, of a district in which a case is filed, laying venue in the  wrong division or district shall dismiss, or if it be in the

interest of justice, transfer such case to any district or division in which it could have been brought. *FRCP Rule 1406*

Thus, additionally, a federal statute, *28 U.S.C. 1406(a),* allows a district **court**'of a district in which is filed a case laying venue in the wrong division or district * * * if it be in the interest of justice,' to 'transfer such case to any district or division in which it could have been brought.'[FN7]Congress thereby recognized that the filing of a lawsuit **ITSELF SHOWS THE PROPER DILIGENCE ON THE Part of the plaintiff** which * * * statutes of limitation were intended to insure.    If by reason of the uncertainties of proper venue a mistake is made * * * 'the interest of justice' may require that the complaint * * * be transferred in order that the plaintiff not be penalized by * * * 'time-consuming and justice-defeating technicalities. *"Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39.* If petitioner in this case had instituted his suit in a federal **court** where venue was improper, his case could simply have been transferred under *Rule  1406(a)* to a **court** with proper venue; the statute of limitations would not have barred his action. *Otto v Burnett v. New York Central Railroad Co. 85 S.Ct. 1050*

In US Supreme Court *OTTO* case Court held that both Congress and states have made clear, through various procedural statutes, their desire to prevent timely actions brought in **courts** with improper venue from being time barred merely because limitation period expired while action was in improper **court**." *Otto v Burnett v. New York Central Railroad Co. 85 S.Ct. 1050*

Here in the instant case Pro-Se Plaintiff had originally and TIMELY brought his action against twenty six defendants on nine separate claims.

District Court never ruled on Defendants Venue argument but dismissed the case, for lack of personal Jurisdiction.

Although Defendant argued otherwise, Plaintiff TIMELY FILED HIS DEFAMATION CLAIMS in District of New Jersey, although apparently in the wrong District (VENUE) of the Federal District Court system, instead in DC.

Blacks Law Dictionary defines **venue** as follows: *"The proper or a possible place for a lawsuit to proceed, usu. because the place has some connection either with the events that gave rise to the lawsuit or with the plaintiff or defendant."*

As non experiences plaintiff, in Diversity Jurisdiction cases, Pro-Se Plaintiff based his case on Diversity of Jurisdiction, where Plaintiff mistakenly chose New Jersey as a most acceptable Venue, believing that it will be a most effective Venue for all parties.

Plaintiff was apparently wrong, as some defendants, including Defendant US-ABC argued that New Jersey is not the proper venue for US-ABC, et. al., and that their case should be dismissed for lack of Venue and lack of Personal Jurisdiction.

However, both Congress and states have made clear, through various procedural statutes, (Rule 1404 and Rule 1406) their desire to **prevent timely actions** brought in **courts** with improper venue from being time barred merely because limitation period expired while action was in improper **court**. **Otto v Burnett v. New York Central Railroad Co. 85 S.Ct. 1050**

Thus where an action is brought by a **pro se plaintiff**, SUCH AS THIS Plaintiff, court must construe the plaintiff's filings on a motion to dismiss for failure to state a claim liberally for such complaints **are held to less stringent standards than formal pleadings drafted by lawyers. Fed.Rules Civ.Proc.Rule** 12(b)(6), 28 U.S.C.A. **Wada v. U.S. Secret Service** F.Supp.2d 2007 WL 3341847 D.D.C.,2007.

As such IN THE INTEREST OF JUSTICE, PRO-SE Plaintiff Defamation claim is not time barred and should be allowed to proceed.

    **i.**    **Intertwining doctrine does not apply as to Plaintiff claims of Fraud, Intentional Interference with Contract and Intentional Infliction of Emotional Distress**

First and foremost the following case law sets the standard as to application of intertwining Doctrine.

A claim is "intertwined" with another when it is "completely dependent" on or essentially the same as another, and cannot survive as a separate, independent cause of action *Johnson v. Long Beach Mortg. Loan Trust 2001-4 451 F.Supp.2d 16 D.D.C.,2006.*

Another DC case law also holds that intertwining doctrine does not apply where

the claim was *"pled as a clear and distinct tort"* and subject to its own standard for statutes of limitations). *Saunders v. Nemati, 580 A.2d 660, 662 (D.C.1990).*

Also a claim is "intertwined" with another claim only when it is based on the "**same underlying facts**". *Browning v. Clinton 292 F.3d 235 C.A.D.C.,2002.*

Although Defendant argues that all claims arose from defendants September 2004 correspondences, Plaintiff distinctly alleged that the September 2004 correspondence contained **two distinct** "defamatory as to plaintiff " **(Complaint paragraphs AC56 and AC58)** and "fraudulent to plaintiff " factual representations, **(Complaint paragraphs AC 78b and AC78e)**

Although Plaintiff knew that defendant's defamatory statements **(Complaint paragraphs AC56 and AC58)** were false, Plaintiff pled that he and third parties in fact believed and relied on **(Complaint paragraphs AC 78b and AC78e)** fraudulent representations, to Plaintiffs detriment.

Plaintiff defamation claim is in fact based on defendants **"defamatory statements"** which state *that Plaintiff lied and is financially irresponsible.*

However, it is clear from Plaintiffs Complaint that Plaintiffs Fraud, Interference and Emotional Distress claims were **clearly pled independent** of his defamation claim and based on **different set of factual "fraudulent"** allegations (within same letter) which allege that *"US-ABC executed and forwarded September 14,2004 (fraudulent) letter, by its "legally elected and legally empowered US-ABC Chairman".* **(Complaint paragraph AC 78b)** and further that: *"US-ABC Board has "officially concluded" that plaintiff Jovanovic has without authorization, made significant misrepresentations and done so in the manner which reflects on US-ABC itself."* **(Complaint paragraph AC78e)**

Plaintiff further pled, in support to his fraud claim, that he, in fact believed that the September 14,2004 letter was executed by a legally elected Chairman, and that US-ABC Board **officially concluded** that Plaintiff is a liar and financially irresponsible.

In reliance to Defendants fraudulent statements, Plaintiff (to his detriment) hired a lawyer to defend against the attack.

[Detriment to Plaintiff came about in form of Algeria Government, (upon learning that Plaintiff hired a lawyer), named Plaintiff a persona non-grata on Algeria Premises,

and refused to issue him any more visas for further entry to Country of Algeria]
**(Exhibit A)**

Plaintiff, further distinctly alleged that it was Defendants fraudulent statements which interfered with his Contractual relations and that Algeria Government and all other parties to Contract with Plaintiff, ended their Contractual relations with him, when relied on **(Complaint paragraph AC67)** and believed that **it was the legally elected US-ABC Chairman acting under official approval by US-ABC Board of Directors** when issuing the "fraudulent" statements within September 14, 2004 letter.

Plaintiff further pled that he suffered Emotional distress and resulting physical injury, "when he believed" **(Complaint paragraph AC81)** that he has been attacked by a legally elected Chairman of US-ABC who was also supported in his attack, by the entire US-ABC Board.

Thus Plaintiffs factual allegations, of him believing an existence of official attack against him by the Chairman and the entire US-ABC Board, *(which Inflicted emotional distress upon him),* are very distinct and arise from separate factual allegation, than Plaintiff receiving certain defamatory statements, which he knew were false.

As such Plaintiffs Fraud, Intentional Interference with Contract and Intentional Infliction of Emotional Distress claims, were pled with facts that

**(a) Are clear and distinct**

**(b) Are not dependant on same facts as Plaintiffs defamation claim,**

**(c) Can survive as a separate, independent cause of action**

**As such the intertwining Doctrine does not apply.**

## III.   PLAINTIFFS CLAIMS SHOULD NOT BE DISMISSED

### A.    Plaintiff pled all elements of his Fraud Claims and thus his Fraud claim should not be dismissed

In District of Columbia, in order to prevail on a claim of fraud the plaintiff must establish: (1) a false representation; (2) in reference to a material fact; (3) made with knowledge of its falsity; (4) with the intent to deceive; and (5) on which action is taken in

reliance upon the representation. <u>Blake Const. Co., Inc. v. C. J. Coakley Co., Inc., 431 A.2d 569</u>

Further, in stark contrast to defendant argument, and indeed in compliance with <u>*FRCP Rule 9(b)*</u> Plaintiff stated:

**(a) Time**

a. In support of his fraud and other claims Plaintiff supplied defendants a September 14,2004 letter, which was written on letterhead of defendant and executed by purported Chairman of defendant. Said letter was faxed by the defendant to plaintiff at **16:13 pm** on September 15,2004

**(b) Place**

a. As to rule FRCP Rule 9 (b), place of fraud requirement, the letter was faxed from **Linthicum Maryland, to plaintiffs Cranford, New Jersey Fax** number. (as represented by the fax stamp of the owner of the fax machine, Northrop Grumman Corporation, which is located in Linthicum Maryland.) **(Exhibit B)**

**(c) *Content of false misrepresentation which Plaintiff alleged he relied on, to his detriment***

a. Northrop Grumman and or its agent Mr.Donald Wilhelm <u>"is acting as a legal Chairman of US-ABC"</u>.

b. US-ABC executed and forwarded September 14,2004 (fraudulent) letter, by its <u>"legally elected and legally empowered US-ABC Chairman"</u>.

c. <u>"US-ABC consulted"</u> Mr.Al Zapanta, Mr.Richard Holmes, Mr.Lamine Djilani., Mr.Ali Jazzairy and Northrop Grumman corporation in an effort to learn if these individuals and entity had business or personal relations with Mr.Jovanovic.

d. Mr.Al Zapanta, Mr.Richard Holmes, Mr.Lamine Djilani., Mr.Ali Jazzairy and Northrop Grumman corporation <u>"denied to US-ABC"</u> that they had any business or personal relations with Mr.Jovanovic.

e. US-ABC <u>"officially concluded"</u> that plaintiff Jovanovic has without authorization, made significant misrepresentations and done so in the manner which reflects on US-ABC itself.

    f. US-ABC Board of Directors, drafted, wrote and or <u>through an official vote approved</u> <u>of and directed and or empowered US-ABC Chairman</u> to execute and forward a September 14,2004 (fraudulent) letter to plaintiff Jovanovic and Algeria Government.

### (d) *The fact that was misrepresented*

    a. See **III A. (c)** above.

### (e) *What was given up in reliance on the fraud*

    a. As a proximate result of defendant's US-ABC fraudulent representations, and plaintiff's reliance and acts (hiring a lawyer to investigate the attack), plaintiff Jovanovic suffered damages when Algeria Government learned of existence of plaintiffs hiring a lawyer ( against Chairman of US-ABC and Northrop Grumman) and as a result **(1)** named plaintiff Jovanovic Persona Non-Grata on Country of Algeria premises and in Country of Algeria.

    b. As a proximate result of defendant's fraud and deceit and resulting plaintiff's acts in reliance thereof, plaintiff Jovanovic suffered damages when **(2)** estopped and or precluded to further enter into Country of Algeria.

    c. As a proximate result of defendant's fraud and deceit and resulting plaintiff's acts in reliance thereof, plaintiff Jovanovic has suffered damages when **(3)** estopped and or precluded to operate and  manage a Cultured stone and Decorative glass manufactured products distribution network, in the country of Algeria.

    d. As a proximate result of defendant's fraud and deceit and resulting plaintiff's acts in reliance thereof, plaintiff Jovanovic has suffered damages when **(3)** estopped and or precluded to perform on its employment contracts with IIC and assist IIC to finalize the development of Abidjan Urban Train project.

    e. As a proximate result of defendant's fraud and deceit and resulting plaintiff's acts in reliance thereof, plaintiff Jovanovic has suffered damages when **(4)** estopped and or precluded to exclusively or otherwise supply Cultured Marble and Decorative Glass products to Algeria East-West Highway Project and any other customer in country of Algeria.

f.   As a proximate result of defendant's fraud and deceit and resulting plaintiff's acts in reliance thereof, plaintiff Jovanovic has suffered damages when **(5)** estopped and or precluded to exclusively market sub-licensing rights of Sotrama owned construction materials technology in Algeria and when **(5a)** precluded to sell and install six Sotrama sub-licensed manufacturing plants in the Country of Algeria, valued at $2.1 Million each.

g.   As a proximate result of defendant's fraud and deceit and resulting plaintiff's acts in reliance thereof, plaintiff Jovanovic has suffered damages when   **(6)** estopped and or precluded to finalize transfer of his individually held proprietary know-how, for development of major BOT/PPP projects, to Algeria Government and Genesis Public Private Partnership (PPP).

h.   As a proximate result of defendant's fraud and deceit and resulting plaintiff's acts in reliance thereof, plaintiff Jovanovic has suffered damages when **(7)** estopped and or precluded to finalize development of BOT/PPP architecture for Algeria East-West Highway system.

i.   As a proximate result of defendant's fraud and deceit and resulting plaintiff's acts in reliance thereof, plaintiff Jovanovic has suffered damages when   **(8)** estopped and or precluded to collect monetary and other restitution for all his time invested in developing the architecture for Algeria East West Highway and Abidjan Urban Train projects.

j.   As a proximate result of defendant's fraud and deceit and resulting plaintiff's acts in reliance thereof, plaintiff Jovanovic has suffered damages when       **(9)** estopped and or precluded to collect monetary and other restitution for transferring his proprietary know-how in developing the BOT/PPP architecture for Algeria East West Highway and Abidjan Urban Train projects.

k.   As a proximate result of defendant's fraud and deceit and resulting plaintiff's acts in reliance thereof, plaintiff Jovanovic has suffered damages when     **(10)** estopped and or precluded to perform on his employment contract agreements with Genesis and IIC.

1.     **In contrast to Defendants argument, Plaintiff indeed pled that he relied on**

**Defendants Fraudulent statements**

First and foremost, the offending September 14, 2004 letter contained several statements. In his complaint (AC), plaintiff set forth defendant's statements in distinct paragraphs.(AC paragraphs 54-59 and 78 (a-f).

On one hand Plaintiff indeed alleges that he knew certain statements were false, (eg. Plaintff knew that he did not lie) however he further alleges that he believed certain statements to be true, which he relied on when hiring a lawyer..(eg. Letter was executed by a legally elected Chairman of US-ABC, etc.)

Here defendant is attempting to convince the Court that *"no reasonable person"* could believe, *if he received certain letter on letter head of a major International Council*, of which his company was one of founding members, executed by, at the time believed by Plaintiff to be a legal Chairman of the Council, was true.

Defendant's arguments logically fail.   US-ABC held elections (now know to be fraudulent) in March 2004, and Mr.Wilhelm, was in fact (although now known fraudulently) elected as new Chairman.   Thus, a reasonable person would surely believe that an election was not fraudulent and Mr.Wilhelm, a Vice President of major US Defense Contractor was a "legally" elected Chairman.   **Later discovered facts, indeed show that he was not!**

Believing that Chairman OFFICIALLY represented some or all members of <u>US-ABC Board of Directors</u>, defendant immediately hired a Lawyer with intent to elicit more information and demand an explanation for the defamatory attack..

Further defendants argument that Plaintiff did not rely to his detriment and did not believe that certain representations were true, also fails.   Plaintiff indeed alleges in AC 81 that he relied and believed that Mr.Wilhelm was a legally elected Chairman of US-ABC, etc., as follows:

> *"As a proximate result of defendants US-ABC's fraudulent representation, as factually alleged herein, plaintiff relied and believed that some or all defendant's representations were true"*

As to defendants argument that defendant did not rely to his detriment, Plaintiff

will rely on III A (e) above. (pg.18-19 within this brief)

Finally plaintiff will not respond to defendant argument, in this part of its motion, that NJ SAC paragraph 174 alleges **Genesis** "...totally refuting all allegations" as said defendants argument pertains to Genesis statements, which solely pertained to Genesis, a legal and distinct entity which is not a party to this action.

## 2.    In contrast to Defendants arguments, Plaintiff indeed alleged Donald Wilhelm, as Chairman of US-ABC made false statements

Here defendant resorts to pure conclusory arguments in support of his argument.

Plaintiff indeed alleges in his AC 45 and AC 49 that Mr.Wilhelms (as agent of Northrop Grumman) election was fraudulent:

*45. "February 2004, US-ABC schedules an electronic election, for electing a new US-ABC Chairman and a new slate of US-ABC officers."*

*49. "March    20,    2004    US-ABC    fraudulently    announced    that    Northrop Grumman/Mr.Donald Wilhelm (new US-ABC Chairman) and their team have won the election."*

Further, Defendant **resorts** to *"creative" translation"* of US-ABC By-Laws when he cites US-ABC By-Laws article V 2-3 and article IV 3, and represents to this Court *"that US-ABC By-Laws provide <u>only Board members vote</u>"* and thus need to be notified of elections..

### Article V 2-3 read as follows:

2.   " *Election, succession and Terms of Office.* The officers of the corporation shall be proposed by the executive committee and ratified by the Board of Directors at its annual meeting.  Each such office shall hold office for a term as determined by the Executive Committee.

3.   " *Chairman*.  The Chairman, to be elected annually at the annual Meeting of the Board, shall chair the Board and give general guidance and leadership to the organization.

(It is very clear that **<u>no where</u>** in these two paragraphs does it state **that only members of the Board of Directors** are authorized vote)

**Further article IV 3 reads**

3. *Regular Meetings.*    The Board of Directors shall meet at least once during any consecutive twelve month calendar period, at the time and place to be determined by the Board. All members are entitled to notice of such meeting.

Here Defendants creative translation of US-ABC By-law borders on violation of Federal rule 11 (b)(3) of Federal Civil procedure, which govern that every pleading must have evidentiary support.

*In fact defendant's argument, that only US-ABC Board members (have the right to) Vote is purely conclusorry and is not based on required evidentiary support.*

As Defendant in fact supplied **"the entire Copy"** of US-ABC By-Laws, in support of this motion, he could have **easily** referred to Article III section 4 and section 7 of the By-laws as to how Voting rights are governed by said by-laws, and not resort to his conslusory pleadings.

4.    *Voting Rights.*    Each individual member shall be entitled to one (1) vote on each matter submitted to a vote of the members..."

7. **Notice of Meeting**s.    Written or printed notice, stating the place, day and hour of any meeting of members shall be delivered, either personally or by mail, to each member not less than fifteen (15) nor more than forty (40) days before the date of such meeting..."

Thus it is clear that plaintiff's allegations of fraudulent Notice of the US-ABC Chairman's election and further fraudulent announcement of US-ABC Election results is clearly supported by documentary support.

3. **In contrast to Defendants Arguments, Plaintiff indeed alleged that Donald Wilhelm, retaliated against Plaintiff after his warnings to Mr.Wilhelm to (a) act to correct illegal status of US-ABC and (2) act to correct FCPA (Federal Corrupt Practices act) violations, resulting from his (his companies) Chairman's position in US-ABC.**

Here in this part of defendants pleading, defendant again relies on his argument, that plaintiff did not rely on defendants statements and as a result of lack of said reliance failed to plead injury to him individually and as well failed to plead the resulting

pecuniary loss.   Plaintiff again relies on well settled US Supreme Court law which states that

*"In reviewing a decision granting a motion to dismiss, appellate court must accept as true all of the factual allegations contained in the complaint."* **Swierkiewicz v. Sorema N. A.** *534 U.S. 506, 122 S.Ct. 992 U.S., 2002.*

Plaintiff indeed alleged in his AC 81, that he relied on certain defendants representations as follows:

*"As a proximate result of defendants US-ABC's fraudulent representation, as factually alleged herein, **plaintiff relied** and believed that some or all defendant's representations were true"*

Plaintiff also pled in his AC 82-92 (and cited in III A (e) above), pg. 18-19 within brief, the pecuniary loss he suffered as a result of reliance on defendants (fraudulent) representations.

**B.     Plaintiffs pled all elements of his Tortuous Interference Claims and said claims should not be dismissed**

District of Columbia has a well settled law which governs as to standards which must be met for plaintiff to prevail as to Intentional Interference claims, as follows:

*i.*     The elements of tortuous interference with contract are: (1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach. *Casco Marina Development, L.L.C., v. District of Columbia Development, et.al. 834 A.2d 77*

*ii.*     The elements of tortuous interference with prospective business advantage mirror those of interference with contract; however, to prevail a plaintiff need not demonstrate the existence of a contract , but **merely a prospective advantageous business transaction.** *Casco Marina Development, L.L.C., v. District of Columbia Development, et.al. 834 A.2d 77*

*iii.*     To establish a prima facie case of interference with business relations, "a plaintiff must show that the interference was intentional and that there was resulting

damage." *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan, 374 A.2d 284, 289 (D.C.1977).*

Plaintiff will set forth in following paragraphs that he indeed stated his claims for intentional interference.

### 1. Plaintiff does not assert any claims on behalf of Genesis and IIC

Plaintiff will not rebut any arguments by defendant as to this issue, as plaintiff has not asserted, within this case, any claims on behalf Genesis and or IIC.

### 2. Plaintiff indeed states claims for tortuous interference

Here Plaintiff again relies on well settled US Supreme Court law: *"For purposes of motion to dismiss, material allegations of complaint are taken as admitted ... Fed.Rules Civ.Proc. rule 8(f), 28 U.S.C.A. Jenkins v. McKeithen 395 U.S. 411, 89 S.Ct. 1843"*

Plaintiff in fact alleged existence of **"individual contracts"** and or "business relations" in his AC paragraphs 21-21 as follows:

> *"Plaintiff Jovanovic and IIC **entered into an employment agreement** as a result of plaintiff Jovanovic activities on behalf of IIC." AC21*

> *"Plaintiff Jovanovic and Genesis **entered into an employment agreement** as a result of plaintiff Jovanovic activities on behalf of Genesis." AC22*

Further plaintiff alleged in **SAC 25** that he, **"in his individual capacity"**, entered into an agreement/contract and or economic relations with Tunisian entity Sotrama as follows:

> *"June 2000 plaintiff Mr.Bob Jovanovic,(in his individual capacity), entered into following expressed Licensing agreement/contract and economic relations, with a Tunisian entity, named Sotrama to":*

> *(a) Transfer Technology, construct, operate and manage Cultured stone ...in the Country of Algeria and elsewhere.*

> *(b) Exclusively own and market sub-licensing rights which allow plaintiff Jovanovic to sell and manage six additional Sotrama manufacturing plants in the Country of Algeria.(valued at $2.1 Million each)*

26

Finally plaintiff alleged in SAC 28 that he entered into expressed agreement with Algeria Government and Genesis as follows:

> *"May 2003 Genesis, in its LOI granted capacity as "CENTRAL PROJECT MANAGEMENT" entity, acts on behalf of Algeria Government and Genesis itself, and executes an expressed agreement with plaintiff Jovanovic, (individually) through which Algeria Government/Genesis PPP and plaintiff Jovanovic expressly agree":*

a. *That plaintiff Jovanovic will transfer his proprietary know-how, for development of major BOT/PPP projects, to Algeria Government and Genesis, (the PPP), thus enabling Genesis and Algeria Government PPP to structure and finalize development of BOT/PPP architecture for Algeria East-West Highway system.*

b. *That, as payment for plaintiff Jovanovic services, Algeria Government and Genesis, individually and or through their PPP, agreed to compensate plaintiff Jovanovic for transfer of his know-how, and his other services by:*

    i. *Granting plaintiff Jovanovic certain percentage of shareholder ownership in Algeria East-West Highway Concession agreement. (Algeria East West-Highway project).*

    ii. *Granting plaintiff Jovanovic the exclusive right to lead the development of the architecture/management and further lead the effort, for management/oversight of Algeria East-West Toll Highway as part of said highways 30 year Toll Road Concession operation.*

    iii. *Granting plaintiff Jovanovic a right to individually act as an exclusive supplier of all required cultured stone and decorative glass (Sotrama) materials used in construction of Algeria East-West Highway project rest areas, such as Hotels, Retail Shopping Centers, etc.*

    iv. *Compensating plaintiff Jovanovic for all his time, while individually assisting Algeria/Genesis PPP in development of East-West project architecture, in monetary and other compensation.*

27

Plaintiff than alleges in AC 101-106 that defendant knew about plaintiffs agreements/contracts and or business and intentionally interfered with them:

Defendant US-ABC **knew or should have known** about the existence of plaintiffs Economic, Business and Contractual relationships, as described in paragraphs 1-100 within this complaint, and knew or should have known that these relationships would be interfered with and disrupted if defendants conspired to and drafted, wrote, executed and forwarded September 14,2004 fraudulent letter and September 15,2004 fraudulent E-mail to Algeria Government, other persons and entities as fully alleged in preceding paragraphs 1-103 of this complaint and certain other John Doe's. **AC 104**

As a result of defendants US-ABC fraudulent and other acts, all plaintiffs relationships, as described in paragraphs 1-104 of this complaint, have been actually disrupted which ultimately caused (a) Algeria Government to contract with Asia based Chinese and Japanese Consortium instead of US based, plaintiff Jovanovic, (and Genesis and IIC Consortium), for developing the architecture and operating the Algeria East-West Highway Project, (b) caused SOTRAMA and GENESIS not to enter into Country of Algeria market with assistance of plaintiff Jovanovic and (c) Caused IIC and Genesis not to perform on its Employment agreement with plaintiff Jovanovic. **AC 105**

Plaintiff also alleged in his AC 65-71 that after defendant forwarded to Algeria Government the offending September 14,2004 defendants letter, Algeria Government named plaintiff a persona no-grata in Algeria and estopped Plaintiff to further enter into Algeria by further denying him issuance of any Visas. As a result of defendant's acts, plaintiff alleged that he could not enter Algeria and perform on any of his "individual Contracts/agreements in Algeria.

Ultimately, as per LOI agreement, Plaintiff alleged that Algeria Government officially accepted **(plaintiffs developed)** project architecture and after official Algeria Commission review termed it, on May 10,2004 as "an excellent financial opportunity for Algeria". **(Exhibit C )**

*"May, 2004, Mr.Jovanovic and Mr.Azouz arrive in Algeria, for meetings with President designated UN economic adviser, where at end of process, a final project review report is issued by said Algeria president designated·advisor, in which said advisor defines IIC*

*approach to Algeria East-West highway project as **"excellent financial opportunity"** for Algeria"* **NJ SAC 138.**

**Finally** coupled with the fact that in June 2004, Algeria President, in the audience of Plaintiff, Plaintiff's advisor Mr.Azouz and US Ambassador to Algeria, personally congratulated Plaintiff **on the positive Algeria independent commission report,** requested plaintiff to be patient and promised that concession agreement will be executed during September 2004, the next Algeria Presidents visit to United Nations.

*In closing on this point, all the above allegations coupled with evidentiary support clearly allege an existence of "commercially reasonable anticipation of a future business relationship" which was interfered by defendants acts on September 14-15, 2004.*

a. **East-West Project Letter of Intent is either a Formal Contract and or a simple informal/implied in fact contract**

Williston on Contracts advises as follows as to nature of such contracts:

**Informal, simple, or parole contracts.** Contracts which derive their efficacy from the substance of the transaction rather than its form are frequently called simple contracts. **Williston on Contracts 1:16.**

"Implied-in-fact contract" **is a true contract,** containing all necessary elements of binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather, is inferred from conduct of parties in milieu in which they dealt. Emerine v. Yancey 680 A.2d 1380 D.C.,1996.

It is possible thus to make a contract the terms of which include an obligation to execute subsequently a final writing which shall contain such provision.   If parties have definitely agreed to do so, and that the final writing shall contain these provisions, they have than concluded the contract. Restatement Second, Contracts § 27.

### LOI contains all elements of a formal CONTRACT

LOI language satisfies, even Defendant's stated requirements.  Thus plaintiff will set forth facts which prove that LOI was in fact a simple formal contract (in addition to also being an informal and or parole contract).

     i.     Defendant argues that **LOI does not contain a description of the**

**project.**     He is **wrong**, as LOI indeed does **describe the project, in required simple terms, as follows: (Appendix D)**

*"GOVERNMENT and GENESIS intend to cooperate on developing a detail BOT( Build Operate Transfer) project architecture solution for East-West Highway system in Algeria"*

*ii.*     Than Defendant argues, that LOI does not describe Genesis and Algeria Government duties. **Defendant is again wrong** as LOI **indeed describe Algeria Government and Genesis (and plaintiff) obligations as follows:**

*"**Government and Genesis intend** to cooperate on developing a detailed BOT project solution for east-West Highway system in Algeria.*

*" **Genesis intends** To act as a Central Project Management entity, in developing the detailed architecture proposal for financing, implementation and operation of the East-West BOT global project.*

*"**Genesis intends** To finalize the detailed architecture proposal for East-West highway BOT project no later than September 30th, 2003.* (Appendix  )

*iii.*     Further Defendant argues that LOI does not **describe the time table** necessary for completion of the term.  **Again Defendant is wrong,** as Genesis and plaintiff promised to finalize the architecture *"no later than September 30th ,2003.",* and *"Algeria Government and Genesis (plaintiff) agreed to review the proposal on September 30th, 2003 or mutually agreed date soon thereafter."* (In satisfaction of their mutual LOI agreement, the final project review was finalized in May 2004.)

**iv.**     Finally, Defendant argues that the LOI **lacks a description of the terms** or the amount of compensation for Genesis.  **Defendant is even wrong on this final point** as the LOI language is clear on that issue:  *"Government and Genesis intend to enter into concession agreement..."* (Appendix  )

Again, in contrast to defendant argument, the LOI indeed set forth that Genesis agreed to be compensated for development of the BOT project architecture in form of 30 year right of ownership of Concession rights for the East-West Highway.

Said granted Concession rights provide Plaintiff and Genesis with compensation

in form of granting ownership of a Concession Agreement/**30 year cash flow from** the East-West Highway concession.

## Plaintiffs, Algeria Government and Genesis mutually ascended to contract and as such LOI satisfies all elements of the Informal, Implied in fact Contract

Mutual assent to contract, or "meeting of the minds," is most clearly evidenced by terms of signed written agreement, but such signed writing is not essential to formation of contract; parties' acts at time of making of contract are also indicative of meeting of minds. Davis v. Winfield, 664 A.2d 836

Although Plaintiff alleged terms of LOI to satisfy a requirements for a simple contract LOI, Plaintiff also alleged in AC 29, he jointly ascended with Algeria Government and Genesis towards execution of formal East-West Highway Concession agreement:

*From January 2003 and until September 2004, plaintiff Jovanovic, Algeria Government and Genesis jointly perform all agreed to activities (except final act of executing the East-West project Concession agreement) as part of their joint agreement to finalize the architecture for Algeria East-West Highway system and enter into a 30 year Concession agreement for said highway system.  AC29*

As Emerine v. Yancey 680 A.2d 1380 D.C.,1996 holds "Implied-in-fact contract" **is a true contract,** thus the LOI is in fact valid under law Contract.

## In summary, here is how Plaintiff/Algeria Government and Plaintiff satisfy all necessary elements for a simple Contract

### Contract:

(a) Genesis and Algeria Government agreed to **jointly develop** the architecture for the Algeria East-West Toll Highway project

(Plaintiff, Genesis and Algeria jointly developed and reviewed the architecture from January 2003-May 2004.)

**(b)** Genesis agreed **to act as a Central Project Management entity, in developing the detailed architecture** proposal for East-West project and finalize it by September 30, 2003.

<u>(Final Concession agreement architecture was officially delivered to President of Algeria on September 22,2003)</u>

**(c)** Algeria Government and Genesis agreed **to review the architecture proposal** on September 30,2003 or soon thereafter.

<u>(Plaintiff, Genesis and Algeria Government jointly review the architecture proposal and on May 10, 2004 where at the end, according to its obligation under the LOI, Algeria Government, , termed the proposal an excellent financial opportunity for Algeria.</u>

**(d)** Algeria Government agreed **to grant and compensate Genesis with 30 year Concession rights** for the Algeria East-West project, upon accepting the solution for the BOT ,proposed in Genesis architecture.

<u>(From June-August 2004, Algeria Government President and members of its Government, negotiated on the timing of Execution of East-West Highway Concession agreement and agreed to Execute same in second half of September 2004.</u>

<u>**LOI was not only with Genesis**</u>

Here, Defendant continues to conclusively argue that LOI was only with Genesis and not Plaintiff.

**First this is just not so.**

Plaintiff in fact alleges that Algeria Government, while acting through Genesis as a "CENTRAL PROJECT MANAGEMENT ENTITY", entered into an agreement *with plaintiff (in his individual capacity)* to transfer/obtain Plaintiffs necessary know-how (for Genesis/Algeria PPP), necessary for development of the BOT/PPP East-West Highway project architecture:

"MAY 20003 LOI-  "Genesis, in its Algeria Government LOI granted capacity, as CENTRAL PROJECT MANAGEMENT ENTITY, **acts on behalf of Algeria Government, (and itself),** and executes an expressed agreement with plaintiff Jovanovic, (in his individual capacity)…"

<u>**Plaintiff need not produce evidence of breach as well as evidence that defendant acted with intent to interfere, but only allege existence of same**</u>

The US Supreme Court is very clear, that as to motion to dismiss, " ...the court is bound to consider all well-pleaded facts as true, and to draw all reasonable inferences in favor of the nonmoving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)

Thus Defendant is wrong and Plaintiff needed **only to allege** Algeria Government breached its agreement with plaintiff, which plaintiff did in AC 66.

66.    *September 16, 2004, Algeria Government relied on received, joint, US-ABC/Northrop Grumman September 14,2004 letter and joint Northrop Grumman/US-ABC September 15,2004 E-mail and immediately **permanently suspends** all economic and or business and or contractual relationships with plaintiff Mr.Bob Jovanovic.*

As to Defendants Intent, Plaintiff also alleged, in his second claim for relief, that Defendant US-ABC acted intentionally (tortuously).

**Second claim for Relief**...*Tortuous Interference with Prospective Economic Relations, Tortuous Interference with Contractual Relations, and Tortuous Interference with Prospective Business Advantage.*

## Defendants fails in his "timing of Interference argument"

Further, Defendants argument that timing of interference alone makes the tortuous claim not plausible fails, as Plaintiff/Genesis/Algeria Government performance on their LOI was agreed to be jointly and fully completed upon execution of the East-West Highway Concession agreement.

In essence Defendant creatively argues that performance on the LOI **was completed in mid-2003.**

This is just not so as Plaintiff only presented a **first draft proposal** of the architecture, to Algeria Government, in July 2003.

Fact of the matter is that as per writing within the LOI, that Genesis, Plaintiffs and Algeria Government LOI obligations would have been completed only upon Algeria Government entered (executed) into Concession agreement with Genesis. (which was interfered by defendant US-ABC and John Does)

Algeria Government noticed Plaintiff of the scheduled execution of said

Concession agreement for the end of September 2004, but **said execution was interfered** when Algerian Government **received correspondence** (on the letter head of US-ABC) terming **plaintiff a liar and financially incapable.**

### Plaintiff indeed identified a motive for defendants actions against Plaintiff

Here Defendant needed only refer to a June 28, 2007 Third Circuit Appeals Court Decision, to find that that Third Circuit found that Plaintiff alleged motive for writing and distributing September 14,2004 and September 15,2004 e-mail to be:

*"According to Jovanovic...Wilhelm, and Wilhelm's subsequent election as Chairman of the US-ABC...allowed Northrop Grumman to strengthen its Monopoly and control of US-ABC."(Appendix E )*

Defendant US-ABC was also a defendant in that case and recipient of above cited June 28,2007 Court decision, thus surely aware of Third Circuit decision.

Hence Third Circuit found that Plaintiff **indeed alleged a motive.**

### Plaintiff have not speculated but pled minimum required facts in support

### of his claims

Here Defendant, <u>conclusively</u> argues that Defendant speculated, that September 2001 correspondence caused him harm.    In fact Plaintiff alleges in his AC 82-92, paragraphs 10, specific harms bestowed upon him, as a result of Defendants acts. Plaintiff's allegations are very specific, in contrast to Defendants argument.

Further defendant argues that "it strains credulity" that Algeria Government decided in one day or less not to contract with <u>any</u> United States company(in development of East-West Highway).

Certainly this issue is not a matter of Law *but rather of matter for the fact finder*, (and as such not an issue that can be decided in this Motion to dismiss), how in fact Algeria Government did act with such a swift response.

Further on this issue, as Plaintiff, in his New Jersey complaint alleged conspiracy by Northrop Grumman (one of founding members of US-ABC) to monopolize and take over control of US-ABC, (which conspiracy involved a son of the Ambassador of

34

Algeria), the Ambassador of Algeria to US may have also played a stake in the Conspiracy.

Thus as Conspiracies are generally well planned in advance and events, such as a response of Algeria Government may have been thus well orchestrated in advance by Mr.Idriss Jazzairy, The Algeria Ambassador to US, a father of one of alleged Conspirators, Mr.Ali Jazzairy.

Hence Plaintiffs allegations <u>do not strain credulity and are very plausible</u>, given plaintiffs allegations in this case and given the <u>decision of the Third Circuit Court of Appeals</u>, a case which according to defendant, arises out of the same facts. (Defendants brief pg.7)

Further, in contrast to defendant's arguments, Plaintiff indeed pled Tortuous (intentional) interference by defendant US-ABC of its contracts and or economic relations and or business advantage in his AC as follows:

**"Second Claim for Relief**...*Tortuous Interference with Prospective Economic Relations, Tortuous Interference with Contractual Relations, and Tortuous Interference with Prospective Business Advantage"*

b.   **Plaintiff did not have at will employee relationship but rather he had an executed employment contract/agreement**

Here Defendant "again" conclusively argues that Plaintiffs had "At-Will" employment contracts. **This is again not so.** Defendant never cited any record in front of this, or any other Court, which describe that Plaintiff alleged that he had at-will Employment relations. The reason he did not cite any such record is simple. There is none!

Plaintiff only alleged existence of executed employment contracts in AC 21-22:

"Plaintiff Jovanovic and IIC entered into an employment agreement as a result of plaintiff Jovanovic activities on behalf of IIC." **AC 21**

"Plaintiff Jovanovic and Genesis entered into an employment agreement as a result of plaintiff Jovanovic activities on behalf of Genesis." **AC 22**

Also in contrast to defendants arguments, Plaintiff also alleged his contracts and agreement were breached as a result of defendants September 14 and 15, 2004 correspondences" (AC 105)

> "As a result of defendants US-ABC fraudulent and other acts, all plaintiffs relationships, as described in paragraphs 1-104 of this complaint, have been actually disrupted"

**c. Plaintiff has executed the Sotrama agreement in his individual (personal) capacity**

"The court is bound to consider all well-pleaded facts as true, and to draw all reasonable inferences in favor of the nonmoving party. _Scheuer v. Rhodes,_ 416 U.S. 232, 236 (1974).

Here plaintiff has indeed pled that he had contractual relations with Sotrama as follows:

> "AC 25   June 2000 plaintiff Mr.Bob Jovanovic, (in his individual capacity), entered into _following_ expressed Licensing agreement/contract _and economic relations_, with a Tunisian entity, named Sotrama, to " :
>
> a. Transfer technology, construct, operate and manage a Cultured stone and Decorative glass Manufacturing Plants and its manufactured products distribution network, in the country of Algeria and elsewhere.
>
> b. Exclusively own and market sub-licensing rights which allow plaintiff Jovanovic to sell and manage six additional Sotrama manufacturing plants in the Country of Algeria. (valued at $2.1 Million each)

**C.    Plaintiff pled all elements of his Defamation claim and thus said claim should not be dismissed**

Defendants argument in regards to Defamation claim is barred under res-judicata and collateral estoppel.

"The doctrine of res judicata encompasses two concepts: (1) claim preclusion and (2) issue preclusion, or collateral estoppel."

Doctrine of "collateral estoppel" prohibits parties who have litigated one cause of action from relitigating in a second and different cause of action matters of fact which were, or necessarily must have been, determined in first litigation, which party against

36

whom issue preclusion is asserted had full and fair opportunity to litigate. McCord v. Bailey, 636 F.2d 606 C.A.D.C.,1980

In this case Defendant has conceded that this case arises from same facts as New Jersey District case.

" and arises out of the same facts as the New Jersey action." (Defendants brief pg.7).

Thus as in this case, the New Jersey case was based on Defendants September 14, 2004 letter and September 15,2004 e-mail. Defendant US-ABC was a defendant in that case, and got out of the case after successfully arguing that the New Jersey Court did not have Personal Jurisdiction (as to defendant US-ABC).

Nonetheless, on Plaintiffs appeal, the Third Circuit Court of Appeals reached the decision that September 14,2004 defendants letter was alleged by Plaintiff to be "malicious and defamatory"

" Jovanovic alleges that the letter was malicious, intended to defame him personally, caused various recipients to end business relationships with him personally...These allegations are sufficient to state a claim for defamation." (Exhibit E)

Thus Collateral estoppel applies, as the September 14,2004 (Defendants ) letter (issue), which was alleged to be defamatory by Plaintiff, was already decided by the Third Circuit Court of Appeals, and thus governs in this case.

Also, Defendants argument that its publication of said September 14, 2004 is protected by a "common interest privilege" fails.

In District of DC, governing law holds that common interest privilege is lost by the existence of Malice:

"Qualified privilege can be lost if alleged defamatory publication occurs outside of normal channels, is otherwise excessive, or was made with malicious intent. Wallace v. Skadden, Arps, Slate, Meagher & Flom 715 A.2d 873 "

Plaintiff alleged in his AC 115 that September 14, 2004 letter was published with Malice. "The above-described publication was not privileged because it was published by defendant with malice, hatred and ill will toward plaintiff and the desire to injure him."

Defendants argument is also again defeated by Res-Judicata through Third Circuit findings, in which Third Circuit found that Plaintiff sufficiently alleged that Defendants abused its privilege by September 14,2004 letter being malicious: *"Jovanovic alleges that the letter was malicious…"* __(Exhibit E)__

Thus Defendants argument of existence of common interest privilege is a question for the Jury: "Whether a person acts with malice in making a defamatory statement is ordinarily a question of fact for the jury. __Oparaugo v. Watts 884 A.2d 63D.C.,2005__."

Further Plaintiff in his DC complaint, **AC 62,** also alleged that September 14, 2004 letter was in addition to US-ABC members also excessively published to third parties.

*"On or about September 15 2004 **defendant US-ABC** and John Does conspired with and aided and abetted **Northrop** Grumman Corporation employees and jointly participated in forwarding a September 14,2004 letter and September 15,2004 E-Mail to Algeria Government and third parties (a) International Infrastructure Consortium ltd., (b) Algeria Government, (c) Mr.Lies Goumiry (d) John Does (e) Mr.Nebojsa Solunac and Mr.Steve Kaufman as invited members of International Infrastructure Consortium, ( f) IIC and (g) Genesis."*

Thus Plaintiff properly pled his Defamation claim.

## D. Plaintiff pled all elements of his Intentional Infliction of Emotional Distress Claim (IIED) and thus said claim should not be dismissed

In District of DC, the governing law holds that to properly plead IIED the must be some physical injury, although not substantial:

*"There must be at least some physical injury to sustain tort claim for negligent infliction of emotional distress, though physical injury need not be substantial. Amelia B.Asuncion, v.Columbia Hospital for Woman, 514 A.2d 1187"*

Plaintiff in fact properly pled in his AC complaint that he immediately and than continuously suffered physical trauma, at the time and subsequent to receiving the defendants September 14, 2004 letter.

*"September 2004, plaintiff Jovanovic receives a certain offending e-mail and a certain offending letter from Northrop Grumman, US-ABC and certain John Does and suffers great emotional distress, an anxiety attack and begins feeling nauseous." AC 72"*

*"September 2004, Plaintiff Jovanovic is named persona-Non-Grata by Algeria Government and immediately suffers great emotional distress, an anxiety attack and continues feeling nauseous" AC 73*

*" October 2004, plaintiff Jovanovic continuously feels nauseous AC 74*
*November 2004-March 2005 Mr.Jovanovic is continuously under medical treatment for anxiety and nauseous feeling. AC 75"*

*"March 2005, after learning that Algeria President officially announced it is now internally developing the Algeria East-West Highway, plaintiff Jovanovic's anxiety and nauseous feelings peak, and he is committed to two weeks of hospital stay, has vomited every day for two weeks straight, was submitted to a multitude of medical tests, was put on major drug treatment, and was on a suicide watch for several days. AC 76"*

Defendants conduct when writing and forwarding what he knew to be "false" letter to Plaintiff and Algeria Government was truly extraordinary, as it caused Plaintiff to be termed, a persona non-grata in Country of Algeria and elsewhere and **financial losses to Plaintiff in "Billions of Dollars".**
Plaintiff properly pled his IIED claim.

**E.    Plaintiff has not pled a separate Conspiracy claim**

Plaintiff had not pled a separate conspiracy claim and as such will not respond to Defendants arguments on this issue.

**F. Plaintiff is entitled to injunctive and Declaratory relief**

Plaintiff will rely on his pleadings as to this issue.

**CONCLUSION**

**Plaintiff has stated all his Claims against US-ABC Defendant.**

**Boban Jovanovic (Pro-Se)**

**January 12, 2008**

Certificate of service

I certify that I have mailed, an original of this motion for reconsideration, to Counsel for Defendant Latham and Watkins, 555 11th st. N.W. suite 1000, Washington, D.C. 20004 by Certified Mail on January , 14, 2008,

Boban Jovanovic Pro-Se

A

**EMBASSY OF THE PEOPLE'S
DEMOCRATIC REPUBLIC OF
ALGERIA**
2118 KALORAMA ROAD, N.W.
WASHINGTON, D.C. 20008
(202) 265-2800



September 24, 2004

Mr. Boban Jovanovic
President
Genesis International Holdings
20 Commerce Drive
Suite 126
Cranford NJ 07016
Fax: (908) 276-0678

Dear Mr. Jovanovic,

I understand that you have engaged a lawyer who has filed a demand letter on Mr. Donald Wilhelm in his capacity as Chairman of USABC. This escalation puts you in a position of potential litigation against the Chairman of USABC, an organization of which I am an Honorary President. Given this possibility of litigation, it is inadvisable for you to be in a position where inappropriate discussions could take place with potential litigants at my farewell reception. I request that you therefore not attend my party on September 29, 2004 and consider my former invitation as null and void.

Sincerely,

Idriss Jazairy
Ambassador

B

# US·Algeria Business Council

14 September 2004

Mr. Robert Jovanovic
President
Genesis International Holdings Ltd.
20 Commerce Drive, Suite #126
Cranford, NJ  07016

Dear Mr. Jovanovic:

By this letter, we are requesting that you immediately withdraw your company from membership in the United States-Algeria Business Council (US-ABC).  Upon receipt of your notice of withdrawal, we will have sent to you a check in the amount of one thousand, five hundred dollars ($1,500).  That will constitute repayment of the amount you have paid into the US-ABC this year, as payment of what you believe to be Genesis appropriate dues for the calendar year 2004. If you wish to expedite repayment, we ask that you send us your notice of withdrawal via facsimile, original mailed, and we will mail the check upon receipt of your facsimile.

We make this request based on some of Genesis promotional materials as well as other documents you have provided to me.  In these materials, Genesis appears to inappropriately claim some manner of affiliation with a number of individuals and entities that are or were members of the US-ABC, as well as individuals who are or were formally associated with the US-ABC.  We use the word "inappropriate" because each of those named with whom we have consulted denies any business or personal relationship with Genesis or with you as an individual. These individuals and entities with whom we have consulted include Al Zapanta and Richard Holmes, the former Chairman and President, respectively, of the US-ABC, US-ABC Vice Chairman Lamine Djilani, Ali Jazairy, son of the incumbent Algerian Ambassador to the United States, and the Northrop Grumman Corporation.  It is our conclusion that you have, without authorization, apparently made significant misrepresentations and done so in a manner that reflects on the US-ABC, itself.

These apparent misrepresentations compel us, absent your voluntary withdrawal, to seek a resolution of the membership expelling Genesis from the organization.  All of this is done in the context of an uneven history of your respect of the obligations you have, from time to time, undertaken with regard to payment of certain monies.

Sincerely,

Donald C. Wilhelm, Jr.
Chairman, US-Algeria Business Council

2121 Crystal Drive                Suite 104A                Arlington, VA  22202

C

# MEMORANDUM

A :    Monsieur le Ministre — Conseiller
Près du Président de la République
Alger

De :   Mouloud Tehami
Consultant

Alger 10-mai-04

Objet :    Projet d'autoroute à péage Est Ouest

Comme convenu j'ai repris contact avec l'équipe de GENESIS pour préciser le point important des garanties de l'Etat. Voici les résultats :

- effectivement, l'Etat Algérien, contrairement à ce que j'avais compris eu départ, n'aura pas à « garantir » directement les titres qui seront émis par GENESIS pour couvrir les travaux de l'autoroute. Les obligations seront émises par GENESIS. l'Algérie n'est pas co-signataire des titres émis pour avoir sa responsabilité engagée.

- mais pour que GENESIS puisse émettre pareils titres, il lui faut une garantie de l'Etat que sa filiale IIC – Algérie aura un revenu annuel donné. Ce qui lui permet d'ASSURER un rendement minimal à ses partenaires.

De fait, es sommes qui seront levées sur les marchés financiers internationaux ne pourront pas être considérées comme une dette de l'Algérie. Toutefois pour que GENESIS puisse lever une somme de près de 6 Milliards $ il lui faut bien offrir aux investisseurs quelques garanties : ce seront celles de l'Etat qui assurera à GENESIS un revenu minimal qui se traduira dans la réalité par trois valeurs :

- e prix minimum d'usage de l'autoroute sera de 3 DA / Km pour un véhicule léger ( à rapporter au prix du carburant qui est d'environ : 2 DA/km). Ce qui amènera l'Etat à subventionner le prix pour le ramener à une valeur psychologiquement acceptable de 1 ou 1,5 DA/KM ;

- le nombre moyen d'équivalents véhicules légers empruntant l'ensemble des 1.216 Km doit être de 20.000 par jour ;

- le risque de changes DA / $ doit être également garanti.

Ainsi l'Etat doit assurer GENESIS d'un Chiffre d'affaires minimal de près de 73.000.000 DA soit près de 01 Million US$ par jour, ou 360 Millions US$ par an. En 10 années, les investisseurs ne récupéreront même pas la ⅔ de la mise initiale.

Ce qui me fait dire que ce projet me semble une excellente affaire financière pour l'Algérie.

D

## LETTER OF INTENT

The following is a letter of intent between :
Ministry of Civil works of Democratic and Popular Republic of Algeria (from now on GOVERNMENT)
Genesis International Holdings ltd., 20 Commerce dr. suite #126, Cranford N.J. 07016 USA (from now on GENESIS), and

**General statements**

1. GOVERNMENT and GENESIS intend to cooperate on developing a detailed BOT ( Build Operate Transfer) project architecture solution for East-West highway system in Algeria.

2. GENESIS has developed a fundamental approach for global BOT financing, implementation and operation of East-West highway system as described in exhibit A, (Detailed Agenda Proposal)

Whereas

GOVERNMENT intends

a. To develop and operate the East-West highway system as a global, 1,200 km, BOT project

GENESIS intends

a. To act as a Central Project Management entity in developing the detailed architecture proposal for financing, implementation and operation of the East-West BOT global project.

b. To finalize the detailed architecture proposal for East-West highway BOT project no later than September 30th, 2003.

GOVERNMENT and GENESIS jointly intend

a. To review the proposal for East-West highway BOT project on September 30th, 2003 or other mutually agreed date, soon thereafter.

b. To enter into a BOT concession agreement, if all the terms of the proposal are acceptable to the GOVERNMENT.

Algerian Ministry of Civil Works      0 5 MAI 2003      GENESIS

مدير التخطيط والتنمية

عبد السلام اسكندر

E

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-3566

_____

GENESIS INTERNATIONAL HOLDINGS;
INTERNATIONAL INFRASTRUCTURE CONSORTIUM;
BOBAN JOVANOVIC

v.

NORTHROP GRUMMAN CORPORATION;
DONALD WILHELM; PEGGY HEWINSON; US ALGERIA BUS COUNCIL;
SONATRACH CORPORATION; HALLIBURTON CORPORATION;
BOEING CORPORATION; ANADARKO CORPORATION;
LOCKHEED MARTIN CORPORATION;
HESS CORPORATION f/k/a AMERADA HESS CORPORATION;
PFIZER INC.; SUEZ LNG NA LLC; TEXTRON INC.; RED-MED CORPORATION;
BP AMERICA, INC.; ARAB BANKING CORPORATION;
AIR PROD CORPORATION; RAYTHEON COMPANY;
GENERAL ELECTRIC COMPANY; TEXAS KEYSTONE CORPORATION;
BURLINGTON RESOURCES, INC.; LAMIN DJILANI; ALI DJAZAIRY;
JAMES BAILEY; ISMAEL CHIKHOUNE; ELIZABETH LORD STEWART;
JOHN DOES; GULF KEYSTONE PETROLEUM CORPORATION*

Boban Jovanovic,
Appellant

(*Amended per Order of 9/5/06)

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 05-cv-4487
(Honorable Dennis M. Cavanaugh)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 25, 2007

Before:  SCIRICA, Chief Judge, FUENTES and SMITH, Circuit Judges

**JUDGMENT**

This cause came to be considered on the record from the United States District

Court for the District of New Jersey and was submitted pursuant to Third Circuit LAR

34.1(a) on May 25, 2007.  On consideration whereof, it is now hereby

ORDERED and ADJUDGED by this Court that the orders of the District Court

entered April 27, 2006, May 2, 2006 and July 20, 2006, be, and the same are hereby

AFFIRMED, that the orders of the District Court entered May 1, 2006, and June 26,

2006, be, and the same are hereby AFFIRMED in part and REVERSED in part, and that

this matter is REMANDED to the District Court for further proceedings.  Each party shall

bear its own costs.  All of the above in accordance with the opinion of this Court.

ATTEST:

/s/ Marcia M. Waldron
Clerk

DATED:  June 26, 2007

2

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 25, 2007

Before:  SCIRICA, Chief Judge, FUENTES and SMITH, Circuit Judges

(Filed:  June 26, 2007)

_____

OPINION OF THE COURT
_____

PER CURIAM.

Boban Jovanovic appeals pro se from the orders of the District Court dismissing

his Second Amended Complaint ("SAC") and declining to reconsider its rulings.  As a

threshold matter, we must address the scope of this appeal.

Jovanovic, who is not a licensed attorney, also seeks to represent or appeal on

behalf of plaintiffs Genesis International Holdings ("Genesis") and International

Infrastructure Consortium ("IIC"), two companies of which he claims to be a stockholder

and "honorary President."  Jovanovic attempted to represent these companies pro se in the

District Court.  The District Court dismissed these companies' claims without prejudice

because they were not represented by counsel.  See Simbraw, Inc. v. United States, 367

F.2d 373, 374 (3d Cir. 1966).  These companies also are not represented by counsel on

appeal, so we dismiss their appeals for failure to prosecute.  See 3d Cir. LAR 107.2

(1997).[1]  Thus, we review only those claims that can be construed to seek relief on behalf

_____

[1] After the Clerk notified Jovanovic that we would take this action unless a licensed

(continued...)

2

of Jovanovic individually. Having done so, we will affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

Genesis was a member of the US-Algeria Business Council ("US-ABC"), a trade association that promotes commerce between businesses in Algeria and the United States. On September 14, 2004, defendant Donald Wilhelm – then-Chairman of the US-ABC and a Vice President of defendant Northrop Grumman Corporation ("Northrop Grumman") – sent a letter to Jovanovic threatening to expel Genesis from the US-ABC. The next day, defendant Peggy Hewinson – a Northrop Grumman Operations Manager – circulated that letter by e-mail to the US-ABC Board members. Jovanovic alleges that this correspondence defamed Genesis and him personally. He further alleges that this correspondence resulted in the loss of contracts that Genesis and IIC had to develop certain projects in Algeria and in various injuries personal to him.

Primarily on the basis of this correspondence, Jovanovic asserts ten claims against 26 defendants, many of whom are US-ABC Board members alleged merely to have received the correspondence and all of whom he accuses of having conspired to bring about his harm. The District Court dismissed his Second Amended Complaint in its

---

[1](...continued)
attorney entered an appearance on the companies' behalf, Jovanovic accused one of the defendants of raising this issue ex parte and made several arguments in his brief that he should be allowed to represent or proceed on behalf of the companies. We have considered all of his arguments and reject them.

3

entirety in three separate orders. Two of those orders dismissed claims against certain defendants (the "jurisdictional defendants") for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, and the third order dismissed the claims against the remaining defendants under Rule 12(b)(6).[2] The District Court also denied two motions that Jovanovic filed seeking reconsideration of its rulings. Jovanovic appeals from all five orders.[3]

## II.

### A. Rule 12(b)(6) Rulings

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In determining whether Jovanovich has stated a claim, we must accept his factual allegations as true and draw all reasonable inferences from them in his favor. See Alston, 363 F.3d at 233. We agree with the District Court that Jovanovic has failed to state a claim against the majority of the Rule 12(b)(6) defendants. We believe, however,

---

[2] The jurisdictional defendants are the US-ABC, Arab Banking Corporation, Burlington Resources, Inc., Gulf Keystone Petroleum Corporation, and individual defendants James Bailey, Ismael Chikhoune, Lamine Djilani, Elisabeth Lord Stuart, Ali Djazairy, Wilhelm and Hewinson. We will refer to the remaining defendants, which are all business entities, as the "Rule 12(b)(6) defendants."

[3] We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the Rule 12(b)(2) and Rule 12(b)(6) legal conclusions de novo and the denials of reconsideration for abuse of discretion. See Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004); IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258 (3d Cir. 1998).

that he has stated a claim against Northrop Grumman (which did not contest personal

jurisdiction) for vicarious liability for the actions of Wilhelm and Hewinson (who, as

explained below, are not themselves subject to personal jurisdiction in New Jersey).

Jovanovic adequately alleged that those actions defamed him personally.[4]

To state a claim for defamation, a complaint must allege "(1) that the defendant

made a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4)

which was communicated to persons other than the plaintiff; and (5) fault." Taj Mahal

Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 189 (3d Cir. 1998). Here, Jovanovic

alleges that the September 14 letter falsely stated that Jovanovic had lied to the US-ABC

about his and Genesis's affiliation with various persons and companies, including the

Algerian Ambassador's son and Northrop Grumman. (SAC ¶¶ 161-62, 274.) That

statement appears susceptible of a defamatory meaning. See Decker v. Princeton Packet,

Inc., 561 A.2d 1122, 1126 (N.J. 1989) (explaining that "[a] defamatory statement is one

that is false and is 'injurious to the reputation of another'" or "tends to . . . deter third

persons from associating or dealing with" the victim) (citations omitted). Jovanovic

---

[4]Defamation and vicarious liability are matters of state law. The District Court did not discuss any particular substantive law or perform a choice of law analysis, but it appears from the Second Amended Complaint that the law of at least three states (New Jersey, Delaware and Maryland) potentially governs one or both of these issues. The parties assume in their briefs that Jovanovic's claims are governed by New Jersey law. On this limited record, we cannot conclusively determine whether they are correct. For present purposes, however, we will assume that they are. On remand, the District Court should determine the applicable law or laws in the first instance. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006).

further alleges that Hewinson circulated that letter to multiple third parties. (SAC ¶¶ 168, 171.) Finally, Jovanovic alleges that the letter was malicious, intended to defame him personally, caused various recipients to end business relationships with him personally, and caused him various other personal injuries, including "loss of personal reputation." (Id. ¶¶ 272-73, 278-80.) These allegations are sufficient to state a claim for defamation.

Jovanovic also has adequately alleged that Northrop Grumman is vicariously liable on this claim. Generally, an employer is liable for intentional torts, including defamation, committed by its employees within the scope of their employment. See Printing Mart-Morristown v. Sharp Elecs. Corp., 563 A.2d 31, 47-48 (N.J. 1989). Jovanovic has adequately alleged that Wilhelm and Hewinson were acting within the scope of their employment here.

According to Jovanovic, Northrop Grumman first became involved in Algerian projects "through" Wilhelm, and Wilhelm's subsequent election as Chairman of the US-ABC (allegedly as a Northrop Grumman "agent") allowed Northrop Grumman to "strengthen [its] monopoly and control of US-ABC." (Id. ¶¶ 124, 132-33.) Wilhelm later invited Jovanovic to meet with him "at his Northrop Grumman office" and, when Jovanovic arrived, Hewinson greeted him and introduced herself as a Northrop Grumman manager. (Id. ¶¶ 145-47.) At that meeting, Wilhelm and Jovanovic discussed various issues regarding the US-ABC. Jovanovic told Wilhelm that he thought Wilhelm's position as US-ABC Chairman might subject Northrop Grumman to legal liability, and encouraged Wilhelm to resign. (Id. ¶¶ 148-51.) The next month, Wilhelm drafted the

6

September 14 letter threatening to expel Genesis from the US-ABC. Jovanovic alleges that Wilhelm drafted the letter as an "agent" of Northrop Grumman and that Hewinson circulated it by e-mail, which he alleges was "sent to all recipients by . . . Northrop Grumman, via Northrop Grummans [sic] e-mail server system." (Id. ¶¶ 166, 171.) Taking these allegations as true, and drawing all reasonable inferences therefrom in Jovanovic's favor, Jovanovich has adequately alleged that Wilhelm and Hewinson were acting within the scope of their employment when they drafted and circulated the correspondence at issue. Accordingly, Jovanovic is entitled at this stage to proceed against Northrop Grumman.

We stress the limited nature of this holding. The claims of Genesis and IIC have been dismissed, so Jovanovic can seek damages only for any injuries sustained by him personally, not by Genesis or IIC. On this limited record, we will not attempt to categorize each specific injury that Jovanovic alleges. We observe, however, that this limitation might significantly reduce whatever recovery might otherwise have been available on this claim.

7

### B. Rule 12(b)(2) Rulings

After reviewing the issue de novo, we agree with the District Court that Jovanovic failed to make a prima facie showing that any of the jurisdictional defendants is subject to specific or general personal jurisdiction in New Jersey. See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). We will not reiterate the District Court's analysis, except to state that we agree with its application of the "effects test" as set forth in IMO Industries. Our conclusion that Jovanovic has stated a claim against Northrop Grumman on the basis of Wilhelm's and Hewinson's alleged actions does not change this result with respect to those individuals. See Calder v. Jones, 465 U.S. 783, 790 (1984) (explaining that employer's contacts with a forum cannot subject employees to personal jurisdiction and that each defendant's contacts with the forum must instead "be assessed individually").

### C. Reconsideration Rulings

Finally, inasmuch as we are partially reversing the District Court's Rule 12(b)(6) ruling, we will reverse its denial of Jovanovic's motion for reconsideration of that ruling to the same extent. We otherwise find no abuse of discretion in the District Court's denials of reconsideration and will affirm them in all other respects.

8