**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BOBAN JOVANOVIC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO.: 1:07-CV-00927 (CKK)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **US-ALGERIA BUSINESS COUNCIL** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JOHN DOES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT
OF US-ALGERIA BUSINESS COUNCIL'S MOTION TO DISMISS
THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED**

---

Nathaniel A. Vitan
D.C. Bar No. 477402
Kevin H. Metz
D.C. Bar No. 494087
LATHAM & WATKINS LLP
555 11th Street, N.W, Suite 1000
Washington, D.C. 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Nathan.Vitan@lw.com
Kevin.Metz@lw.com

*Attorneys for Defendant US-Algeria
Business Council*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT.......................................................................................................................2

I.      PLAINTIFF'S PRO SE STATUS DOES NOT INSULATE HIM FROM
        THE PLEADING REQUIREMENTS. ...................................................................2

II.     PLAINTIFF'S NEW JERSEY FILING DOES NOT TOLL THE
        STATUTE OF LIMITATIONS. ...........................................................................4

        A.      Transfer Statutes Do Not Resuscitate Plaintiff's Untimely Claims............4

        B.      The Intertwining Doctrine Bars All Claims As Untimely Under
                The One-Year Statute of Limitations For Defamation. ............................7

III.    EVEN IF PLAINTIFF'S CLAIMS WERE TIMELY, THE COMPLAINT
        STILL MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM. ............8

        A.      Plaintiff's Fraud Claim Fails For Want Of Reliance And Other
                Defects. ....................................................................................................9

        B.      Plaintiff's Tortious Interference Claims Fail Because He Lacks
                Standing And Cannot Allege Necessary Elements Of The Claims. ..........11

                1.      Plaintiff Lacks Standing To Bring These Claims. .........................11

                2.      Plaintiff Cannot Plead Essential Elements Of Tortious
                        Interference. ...............................................................................12

                        a.      Plaintiff Has No Business Expectancy In The Letter
                                Of Intent.......................................................................12

                        b.      Plaintiff Cannot Allege That His Employment
                                Contracts Were Breached. .................................................15

                        c.      Plaintiff Does Not Plead Intentional Interference Or
                                Motive By The US-ABC. .................................................16

                        d.      Breach And Causation Requirements Defeat Any
                                Tortious Interference Claim Based On Plaintiff's
                                Sotrama Contract. ............................................................17

                        e.      Plaintiff Makes No Attempt To Plead Damages...............19

        C.      The Common Interest Privilege Defeats Plaintiff's Defamation
                Claim........................................................................................................19

                1.      Res Judicata Does Not Prevent The US-ABC From
                        Highlighting Insufficient Allegations Of Malice .........................20

2.      Neither Does Collateral Estoppel Prevent The US-ABC From Litigating The Failure To Plead Malice. .............................21

D.      Plaintiff Cannot Claim Intentional Infliction Of Emotional Distress.........................................................................................24

E.      Plaintiff No Longer Alleges Conspiracy, Which Requires The Dismissal Of All Of His Claims. ..............................................24

**CONCLUSION** ....................................................................................................**25**

# TABLE OF AUTHORITIES

## CASES

Page(s)

\* *Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) ................................................................................................. 3, 9

\* *Blodgett v. Univ. Club*,
  930 A.2d 210 (D.C. 2007) ................................................................................................. 20

*Braude & Margulies, P.C. v. Fireman's Fund Ins. Co.*,
  468 F. Supp. 2d 190 (D.D.C. 2007) ................................................................................. 13

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002) ........................................................................................... 7

*Bryson v. Gere*,
  268 F. Supp. 2d 46 (D.D.C. 2003) ................................................................................... 21

\* *Cadet v. Draper & Goldberg, PLLC*,
  No. 05-2105, 2007 U.S. Dist. LEXIS 72504 (D.D.C. Sept. 28, 2007) .......................... 9, 24

*Caudle v. Thomason*,
  992 F. Supp. 1 (D.D.C. 1997) ........................................................................................... 23

*Chambliss v. Nat'l R.R. Passenger Corp.*,
  No. 05-2490, 2007 U.S. Dist. LEXIS 11522 (D.D.C. Feb. 20, 2007) ......................... 16, 24

*Columbia First Bank v. Ferguson*,
  665 A.2d 650 (D.C. 1995) ................................................................................................. 22

*Conley v. Gibson*,
  355 U.S. 41 (1957) ............................................................................................................. 3

*Conners v. Tanoma Mining Co.*,
  953 F.2d 682 (D.C. Cir. 1992) ......................................................................................... 21

*Consol. Edison Co. of N.Y., Inc. v. Bodman*,
  449 F.3d 1254 (D.C. Cir. 2006) ....................................................................................... 21

*Control Group, Inc. v. Justice*,
  536 F. Supp. 658 (D. Del. 1982) ....................................................................................... 11

*Duffy v. Duffy*,
  881 A.2d 630 (D.C. 2005) ................................................................................................. 13

*Dye v. U.S.*,
  No. 06-1372, 2007 U.S. Dist. LEXIS 71449 (D.D.C. Sept. 27, 2007) ........................... 2, 3

*Dynaquest Corp. v. U.S. Postal Serv.*,
242 F.3d 1070 (D.C. Cir. 2001) ...................................................................... 7

*Feggans v. Billington*,
677 A.2d 771 (N.J. Super. Ct. App. Div. 1996) .................................................. 21

*Fraser v. Gottfried*,
636 A.2d 430 (D.C. 1994) ............................................................................ 15

*Genesis Int'l Holdings v. Northrop Grumman Corp.*,
238 Fed. Appx. 799 (3d Cir. 2007) ........................................................... passim

*Gottlieb v. U.S.*,
No. 05-3803, 2006 U.S. Dist. LEXIS 64249 (D.N.J. Sept. 8, 2006) .................... 4

\* *Government Relations, Inc. v. Howe*,
No. 05-1081, 2007 U.S. Dist. LEXIS 4952  (D.D.C. Jan. 24, 2007) .......... 15, 16, 19

*Hafezi v. Constr. & Dev., Inc.*,
No. 04-2198, 2006 U.S. Dist. LEXIS 19742 (D.D.C. Apr. 14, 2006) ........... 20, 21

*Harrison v. Norton*,
429 F. Supp. 2d 83 (D.D.C. 2006) .................................................................. 7

*Henthorn v. Dep't of Navy*,
29 F.3d 682 (D.C. Cir. 1994) .......................................................................... 2

*Hester v. D.C.*,
505 F.3d 1283 (D.C. Cir. 2007) ............................................................... 15, 18

\* *Hill v. U.S. Air Force*,
795 F.2d 1067 (D.C. Cir. 1986) ...................................................................... 5

*Howitt v. U.S. Dep't of Commerce*,
897 F.2d 583 (1st Cir. 1990) ....................................................................... 5, 6

*Hundley v. D.C.*,
494 F.3d 1097 (D.C. Cir. 2007) ................................................................... 18

*Jankovic v. Int'l Crisis Group*,
494 F.3d 1080 (D.C. Cir. 2007) ...................................................................... 3

\* *Johnson v. Long Beach Mortgage Loan Trust 2001-4*,
451 F. Supp. 2d 16 (D.D.C. 2006) ............................................................... 7, 8

*Kitt v. Capital Concerts, Inc.*,
742 A.2d 856 (D.C. 1999) ........................................................................... 11

*Larue v. U.S.*,
   No. 06-61, 2007 U.S. Dist. LEXIS 50567 (D.D.C. July 12, 2007) ..................................... 3

*Marsh v. Hollander*,
   339 F. Supp. 2d 1 (D.D.C. 2004) ..................................................................................... 19

\* *Mastro v. Potomac Elec. Power Co.*,
   447 F.3d 843 (D.C. Cir. 2006) ........................................................................................ 22

*Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*,
   983 F.2d 551 n.3 (3d Cir. 1993).......................................................................................... 4

*Overseas Partners v. Progen Musavirlik Ve Yonetim Hizmetleri, Ltd.*,
   15 F. Supp. 2d 47 (D.D.C. 1998) ..................................................................................... 12

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)......................................................................................................... 20

*Polsby v. Thompson*,
   201 F. Supp. 2d 45 (D.D.C. 2002) ................................................................................... 20

*Rodriguez-Roman v. I.N.S.*,
   98 F.3d 416 (9th Cir. 1996) ........................................................................................... 5, 6

*Russell v. Levi*,
   229 Fed. Appx. 110 (3d Cir. 2007) .................................................................................... 4

*Schutter v. Herskowitz*,
   No. 06-1846, 2007 U.S. Dist. LEXIS 48152 (D.D.C. July 5, 2007) ................................... 4

\* *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004) .............................................................................................. 12

\* *Triestman v. Drug Enforcement Admin.*,
   No. 96-1041, 1996 U.S. App. LEXIS 7268 (D.C. Cir. Feb. 6, 1996)................................... 5

*Vereen v. Clayborne*,
   623 A.2d 1190 (D.C. 1993) ............................................................................................. 13

*Wada v. U.S. Secret Serv.*,
   No. 07-442, 2007 WL 3341847 (D.D.C. Nov. 13, 2007) ..................................................... 2

\* *Wash. Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*,
   Nos. 04-838/04-687, 2006 U.S. Dist. LEXIS 24510 (D.D.C. Apr. 28, 2006)............. 12, 16

*Watts v. Sec. & Exch. Comm'n*,
   482 F.3d 501 (D.C. Cir. 2007)........................................................................................... 4

*Yamaha Corp. of Am. v. U.S.*,
  961 F.2d 245 (D.C. Cir. 1992) ...................................................................................... 21, 22

## STATUTES

28 U.S.C. § 1404(a) ...................................................................................................... 4

28 U.S.C. § 1406(a) ...................................................................................................... 4

28 U.S.C. § 1631 ...................................................................................................... 4, 5

D.C. Code § 12-301(4) (2001) .......................................................................................8

## TREATISES

Prosser & Keeton on the Law of Torts § 44, at 313 (5th ed. 1984) ........................................ 18

Defendant US-Algeria Business Council ("US-ABC" or "Defendant") submits this Reply Memorandum of Points and Authorities in Further Support of its Motion to Dismiss the Amended Complaint for Failure to State a Claim Upon which Relief Can be Granted.

## PRELIMINARY STATEMENT

Plaintiff apparently believes that he can save his Amended Complaint from dismissal by claiming he is entitled to deferential treatment because he is appearing *pro se*; by arguing that his claims are not time-barred because his defamation claim was timely filed in the District of New Jersey and could have been transferred here (although it was not); by contending that his other causes of action are not intertwined with his defamation claim, even though they all arise out of the same allegedly defamatory letter; and by re-casting his factual story yet again in a last ditch effort to make it appear that Plaintiff himself was maliciously attacked and lost multi-billion dollar contractual opportunities in Algeria, even though the self-described "Letter of Intent" on which he relies was between the Algerian Government and Genesis International Holdings Ltd. ("Genesis"), not Plaintiff.

Plaintiff is wrong on all counts.  First, whatever leniency he may be entitled to as a *pro se* litigant does not excuse him from the requirement of stating a claim upon which relief may be granted.  The Amended Complaint fails that test and should therefore be dismissed.

Second, Plaintiff's District of New Jersey action was dismissed as against the US-ABC for lack of personal jurisdiction.  The District Court there chose not to transfer the action to this or any other court.  It is well-established in this District that this Court will not second-guess another District Court's decision not to transfer.  Accordingly, Plaintiff is not entitled to the benefit of his filing date in the District of New Jersey, and his defamation and other claims in this Court are therefore time-barred.

<u>Third</u>, Plaintiff's argument that his defamation claim is not intertwined with his fraud, tortious interference and emotional distress claims is incomprehensible. Plaintiff admits that <u>all</u> of his claims arise from the same allegedly defamatory letter, and that the harm he allegedly suffered as a result was, for each of his claims, the loss of alleged contractual opportunities in Algeria. If those claims are not intertwined, it is difficult to imagine what claims would be.

And <u>fourth</u>, no matter how hard Plaintiff tries, he cannot transform a vague, one-page "Letter of Intent" between the Algerian Government and Genesis into a multi-billion dollar contract to which he personally was a party.

This is at least the sixth time Plaintiff has attempted to plead a viable claim arising out of the allegedly defamatory September 14, 2004 letter. Enough is enough.

## ARGUMENT

## I.     PLAINTIFF'S PRO SE STATUS DOES NOT INSULATE HIM FROM THE PLEADING REQUIREMENTS.

Plaintiff repeatedly reminds the Court that he is a *pro se* plaintiff, entitled to leniency. (*See* Opposition ("Opp.") at 13, 16.) Leniency as a *pro se* litigant, however, does not excuse him from the pleading standards. "[A] *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Wada v. U.S. Secret Serv.*, No. 07-442, 2007 WL 3341847, at *5 (D.D.C. Nov. 13, 2007) (internal quotations omitted). Even *pro se* plaintiffs cannot clear pleading hurdles with mere conclusory assertions, unsupported by facts, or legal conclusions in the guise of factual allegations. *See Dye v. U.S.*, No. 06-1372, 2007 U.S. Dist. LEXIS 71449, at *15 (D.D.C. Sept. 27, 2007); *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994).

Plaintiff mentions his *pro se* status six times, presumably with the not-too-subtle goal of engendering sympathy from this Court. Plaintiff again touts his inexperience on page 16 of his

Opposition. The Court should note, however, that Plaintiff has more legal experience than some lawyers. The Court is already aware of Plaintiff's lawsuit in the District of New Jersey, which he appealed to the Third Circuit, and is now prosecuting in District Court against Northrop Grumman Corporation. In addition, Plaintiff's company recently filed a new lawsuit arising out of these facts against Northrop Grumman and Donald Wilhelm in Maryland state court.[1] Furthermore, as noted in the US-ABC's initial brief, there have been at least three additional suits and one appeal in which Mr. Jovanovic participated *pro se*. (*See* Motion to Dismiss at 2 n.2.) Given this track record, Plaintiff's claim of "inexperience" rings hollow.

Plaintiff also relies heavily on the liberal pleading standard from *Conley v. Gibson*, 355 U.S. 41 (1957). The United States Supreme Court, however, recently clarified this standard in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965-66 (2007): In granting a motion to dismiss, a court no longer must conclude "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley*, 355 U.S. at 45-46. That standard, according to the Supreme Court, "is best forgotten as an incomplete, negative gloss . . . ." *Twombly*, 127 S. Ct. at 1969. To survive a motion to dismiss, a plaintiff now must state a claim for relief that is "plausible on its face." *Id.* at 1974; *see also Dye,* 2007 U.S. Dist. LEXIS 71449, at *14; *Larue v. U.S.*, No. 06-61, 2007 U.S. Dist. LEXIS 50567, at *7 (D.D.C. July 12, 2007). Plaintiff's allegations are insufficient even under the more lenient (and outdated) *Conley* standard. Under *Twombly*'s plausibility standard, his unfounded conspiracy theories, conclusory statements of law, and bald allegations of intent and reliance stand no chance.

---

[1]    The Court may take judicial notice of the Complaint in the Maryland case. *See Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (court may consult extrinsic public record information from party's filings in separate action without converting Rule 12 motion to Rule 56 summary judgment motion).

## II.    PLAINTIFF'S NEW JERSEY FILING DOES NOT TOLL THE STATUTE OF LIMITATIONS.

### A.    <u>Transfer Statutes Do Not Resuscitate Plaintiff's Untimely Claims.</u>

In a desperate attempt to revive his time-barred claims, Plaintiff argues that his claims *could* have been transferred from the District of New Jersey under 28 U.S.C. § 1406(a) or § 1631, so they should be treated as if they *were* transferred, and Plaintiff should get the benefit of his District of New Jersey filing date.  This argument fails as a matter of law.

As a preliminary matter, the District of New Jersey had discretion over whether to transfer Plaintiff's claims against the US-ABC -- and chose not to do so.  *See Russell v. Levi*, 229 Fed. Appx. 110, 112 (3d Cir. 2007) ("The determination whether a case should be transferred in the interest of justice, *see* 28 U.S.C. § 1631, is generally committed to the discretion of the District Court in the first instance") (internal quotations omitted); *Gottlieb v. U.S.*, No. 05-3803, 2006 U.S. Dist. LEXIS 64249 (D.N.J. Sept. 8, 2006) (stating when venue is improper, "Court has discretion to determine whether dismissal or transfer is appropriate under the circumstances.").[2] Instead, the District of New Jersey decided to dismiss Plaintiff's claims against the US-ABC for lack of personal jurisdiction (<u>not</u> improper venue).  Indeed, Plaintiff never requested a transfer from that court to this or any other court.  *See Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 558 n.3 (3d Cir. 1993) (stating district court may transfer case under § 1631 "**if a motion to do so is seasonably filed**") (emphasis added).  A motion to transfer was

---

[2]    The same rule of law -- that § 1404(a) and § 1631 transfers are discretionary -- holds true in this Circuit.  *See Schutter v. Herskowitz*, No. 06-1846, 2007 U.S. Dist. LEXIS 48152, at \*19 n.3, \*20 (D.D.C. July 5, 2007) (stating decision to transfer under venue statutes is within district court's discretion, and court "may" *sua sponte* consider transfer when party moved only to dismiss); *Watts v. Sec. & Exch. Comm'n*, 482 F.3d 501 (D.C. Cir. 2007) (stating "we have discretion to transfer the case to another court where it could have been brought at the time it was filed.  *See* 28 U.S.C. § 1631.").

not "seasonably" filed -- indeed, it was never filed.

In short, the District of New Jersey's dismissal order put an end to that case as against the US-ABC and precludes Plaintiff from relying on his New Jersey filing date for statute of limitations purposes. Plaintiff now would like to pretend otherwise, but the law of this Circuit expressly forecloses that possibility. *See Triestman v. Drug Enforcement Admin.*, No. 96-1041, 1996 U.S. App. LEXIS 7268, at *1-2 (D.C. Cir. Feb. 6, 1996) (noting that although First Circuit possessed authority to transfer action, it did not do so, and holding that "[a]bsent a transfer, the petition is now time-barred and the court is without authority to extend the limitations period."); *Hill v. U.S. Air Force*, 795 F.2d 1067, 1070 (D.C. Cir. 1986) (court did not err in not transferring case when neither party requested transfer, court did not consider issue *sua sponte*, and court has discretion under 28 U.S.C. § 1631 whether to transfer claims within larger action). That is, of course, fully consistent with District of Columbia law discussed in the US-ABC's initial brief, holding that a good faith mistake of forum does not toll the statute of limitations. (*See* Motion to Dismiss at 11-12.) In this Circuit, "transferable" is not the same as "transferred."

Citing *Rodriguez-Roman v. I.N.S.*, 98 F.3d 416 (9th Cir. 1996), however, Plaintiff contends that this Court should ignore this Circuit's well-established law and treat his District of New Jersey case as if it had been transferred here. Putting aside the fact that Ninth Circuit law is not controlling, Plaintiff has misread *Rodriguez-Roman*.

*Rodriguez-Roman* involved an appeal from an adverse I.N.S. decision that the appellant initially attempted to file, incorrectly, in the Eleventh Circuit and then re-filed in the correct Circuit -- but too late. In *Rodriguez-Roman*, the Ninth Circuit recognized and responded to concerns previously raised in *Howitt v. U.S. Dep't of Commerce*, 897 F.2d 583 (1st Cir. 1990). When the *Howitt* plaintiff asked the court to treat a case as having been transferred from the

Federal Circuit, that court stated:

> We are aware of no legal authority that would permit one circuit to review another circuit's decision not to transfer. (We should think that a party would have to ask the Supreme Court to review the initial decision.) Regardless, this is not an appropriate case to consider unusual procedural holdings, for our review of the merits of the case convinces us that Howitt is most unlikely to win his claim . . . . Indeed, his case is sufficiently weak on the merits that we could not second guess a Federal Circuit determination that transfer was not "in the interest of justice" even were we to possess the power to review that Howitt seeks to give us.

897 F.2d at 584. Thus, the *Howitt* court recognized the impermissibility of one circuit reviewing another circuit's decision not to transfer a case. In deeming the plaintiff's case transferred because it was transferable, the Ninth Circuit in *Rodriguez-Roman* noted that *Howitt*'s "concern[s] [are] not implicated in the present case." 98 F.3d at 423. *Rodriguez-Roman* did not "offend[] the dignity of a co-equal circuit" because the plaintiff's petition had never been filed in the Eleventh Circuit -- his incorrectly-submitted papers were returned by the clerk before the court ever docketed or considered the case. *See id.* "Accordingly, we are not called upon to review or overrule, directly or indirectly, a transfer decision of the Eleventh Circuit, <u>or even a decision to dismiss</u>." *Id.* (emphasis added). Moreover, *Rodriguez-Roman* also agreed that courts may, "in cases that would otherwise qualify, decline to transfer if the petition or appeal is frivolous." *Id.* at 424.

In short, *Rodriguez-Roman* presented a unique set of facts, and the Ninth Circuit was careful not to pronounce a rule of law that would be inconsistent with the approach the First Circuit takes to the issue of transferability. Indeed, for this Court to treat Plaintiff's claims against the US-ABC as if they had been transferred (when they were not) would require this Court directly to overrule the District of New Jersey's decision to *dismiss* that case against the US-ABC for lack of personal jurisdiction -- a discretionary decision that was affirmed by the Third Circuit. *Genesis Int'l Holdings v. Northrop Grumman Corp.*, 238 Fed. Appx. 799, 803 (3d

Cir. 2007).  As *Howitt* and this Court have both stated, "This circuit . . . has no authority to collaterally review the decisions of a sister circuit."  *Harrison v. Norton*, 429 F. Supp. 2d 83, 92 (D.D.C. 2006) (quoting *Dynaquest Corp. v. U.S. Postal Serv.*, 242 F.3d 1070, 1075 (D.C. Cir. 2001)).[3]

The law of this Circuit is clear -- good faith mistakes of forum do not justify tolling the statute of limitations, and "transferable" does not mean "transferred."  Plaintiff cannot roll back his filing date to when he filed his District of New Jersey Complaint.  Because not even Plaintiff contends his filing in this Court was timely for his defamation claim, that cause of action is time-barred and should be dismissed with prejudice.

### B.    The Intertwining Doctrine Bars All Claims As Untimely Under The One-Year Statute of Limitations For Defamation.

As pointed out in the US-ABC's Motion to Dismiss brief, all of Plaintiff's claims arise out of the same essential facts, namely, the sending of a September 14, 2004 letter and September 15, 2004 email forwarding that letter (together, the "September 2004 correspondence").  (*See* Motion to Dismiss at 10-11.)  Accordingly, all of his claims are subject to, and barred by, the one-year limitations period governing his defamation claim.  *See Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 48 (D.D.C. 2006) ("'When a cause of action with no prescribed statute of limitations is 'intertwined' with one having a prescribed limitations period, District of Columbia courts apply the prescribed period.'") (quoting *Browning v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002)); D.C. CODE § 12-301(4)

---

[3]    Moreover, the District of New Jersey dismissed the rest of Plaintiff's case because he could not state a claim for relief.  The Third Circuit affirmed that dismissal as to eleven of the twelve remaining defendants (the court permitted Plaintiff's defamation claim against Northrop Grumman to proceed).  *See Genesis Int'l Holdings*, 238 Fed. Appx. at 802.  Accordingly, even if Plaintiff's claim against the US-ABC otherwise qualified for transfer, and even if Plaintiff had requested a transfer at the time, the District of New Jersey, in all probability, would have declined the request because Plaintiff's claims lack merit.

(2001). Plaintiff does not dispute that statement of District of Columbia law. Rather, he argues that his other claims are not intertwined with his defamation cause of action.

But Plaintiff's arguments against intertwining are unavailing: he cannot escape the intertwining doctrine by simply contending, as he does, that his claims are not intertwined because he placed different labels on his other causes of action or because they appear in different paragraphs of his Amended Complaint. (Opp. at 17); *see also Johnson*, 451 F. Supp. 2d at 49 (stating intertwining doctrine prevents "claims turning on identical elements of proof from being allowed under one label but not another"). Nor can he distinguish his defamation and fraud claims by contending they arise out of different paragraphs of the September 2004 correspondence. (Opp. at 17-18.) As an initial matter, that is not true. (*Compare* Opp. at 17-18 with AC ¶¶ 78, 111.) More to the point, the harm Plaintiff claims to have suffered -- the loss of alleged contractual opportunities in Algeria -- is the same for all of Plaintiff's claims and the evidence would be overlapping, if not identical, on all of his claims.[4] Indeed, Plaintiff does not even attempt to articulate a reasoned basis to distinguish between his defamation claim and his tortious interference and emotional distress causes of action. There is none.

In sum, all of Plaintiff's claims are intertwined. They are all subject to the one-year statute of limitations. They were all well more than two years old when Plaintiff filed this suit in May 2007. They are all time-barred and should be dismissed with prejudice.

## III. EVEN IF PLAINTIFF'S CLAIMS WERE TIMELY, THE COMPLAINT STILL MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Even if Plaintiff's claims were not time-barred, they still would have to be dismissed on the merits. Plaintiff's fraud, tortious interference and intentional infliction of emotional distress

---

[4]     For his intentional infliction of emotional distress claim, Plaintiff claims that the loss of his alleged Algerian opportunities caused him to suffer emotional distress. (AC ¶¶ 72-76, 118-122.)

claims all fail because, even as "supplemented" by new factual assertions in his Opposition, Plaintiff has not alleged -- because he cannot, no matter how creatively he re-invents the facts -- essential elements of those claims.[5]

### A.    Plaintiff's Fraud Claim Fails For Want Of Reliance And Other Defects.

Reliance is an essential element of fraud.  Yet, Plaintiff now concedes "that he knew certain statements were false."  (Opp. at 22, 17.)  Plainly, his fraud claim cannot survive this candid admission.  *See Cadet v. Draper & Goldberg, PLLC*, No. 05-2105, 2007 U.S. Dist. LEXIS 72504, at *39 (D.D.C. Sept. 28, 2007) (reliance is not justified, and there is no entitlement to relief, when recipient knows misrepresentation is false).

Plaintiff also asserts, though, that he "believed certain statements to be true, which he relied on when hiring a lawyer."[6]  (Opp. at 22, 20.)  His Opposition admits, however, that the only "misrepresentation" he believed to be true was that the September 2004 correspondence "was executed by a legally elected Chairman of US-ABC."  (Opp. at 22.)[7]  The flaw in that claim, however, is there was no such misrepresentation -- Mr. Wilhelm <u>was</u> "legally elected" in accordance with the US-ABC's By-Laws.  Article V.3 of the By-Laws states that the Chairman

---

[5]    Plaintiff's Opposition is at least the eighth time he has told his "story": three complaints in the District of New Jersey; a lengthy brief and certification in opposition to the defendants' motion to dismiss in that court; two complaints and an Opposition in this court; and the Maryland state court complaint.  Each time, depending on his objective at the moment, Plaintiff has "spun" the facts differently.

[6]    Plaintiff continues to maintain that his hiring an attorney "with intent to elicit more information and demand an explanation for the defamatory attack" reflects his reliance. (Opp. at 20, 22; *see also* AC ¶ 81.)  It is not "plausible," to quote *Twombly*, that Plaintiff both believed certain statements were true and also hired an attorney to demand an explanation for the defamatory attack.

[7]    At pages 19-20 of his Opposition, Plaintiff actually lists six alleged "misrepresentations" from the September 14, 2004 letter that he claims to have relied upon to his detriment. Four of those alleged misrepresentations, however, are simply other ways of stating the facts that Plaintiff claims were defamatory and that he concedes he never believed were true, namely, that the US-ABC investigated and concluded that Plaintiff had misrepresented his relationships with certain individuals.  (AC ¶ 111.)  The other two "misrepresentations" on Plaintiff's list both concern the propriety of the election of Donald Wilhelm as the US-ABC Chairman.

of the US-ABC is "to be elected annually at the **Annual Meeting of the Board**." (*See* Metz Decl. Exh. 3 (emphasis added).) Article V.2 provides, more generally, "The officers of the [US-ABC] shall be proposed by the Executive Committee and **ratified by the Board of Directors at its regular annual meeting**." (*See id.* (emphasis added).) The Chairman is an officer of the US-ABC. (S*ee id.* at Article IV.8.) Article IV.3, referring to Board Meetings, specifies, "All **members of the Board** are entitled to notice of such meetings." (*See id.* (emphasis added).) Read together, these provisions dictate that the Chairman is to be elected at a Board Meeting, and only Board Members are entitled to notice of Board Meetings. The "Voting Rights" and "Notice of Meetings" provisions cited by Plaintiff are in the "Membership and General" Article; they do not pertain to Board Meetings and are irrelevant. (*See* Opp. at 24.) In fact, the segments Plaintiff quotes reference that very fact: the "Voting Rights" provision expressly states, "Each individual member shall be entitled to one (1) vote on each matter submitted to a vote of the members." Similarly, the "Notice of Meetings" provision is limited to "any meeting of members." Plaintiff seemingly misunderstands that all US-ABC members did not vote in Mr. Wilhelm's election because the Chairman's selection, under the By-Laws, was not a "matter submitted to a vote of the members." Similarly, the Board Meeting at which the election occurred was not a "meeting of members," so the By-Laws did not require that all members be notified. Because Mr. Wilhelm's election did not violate the By-Laws, any statement concerning his status as the legally-elected Chairman of the US-ABC was not a misrepresentation.[8]

---

[8]    Brazenly, Plaintiff accuses the US-ABC's attorneys of a possible Federal Rule of Civil Procedure 11 violation for asserting that the By-Laws provide for the election of the Chairman by the Board of Directors. (Opp. at 24.) According to Plaintiff, the US-ABC's position is frivolous because the By-Laws do not expressly state that members do <u>not</u> vote on the selection of the Chairman. (*Id.*) Of course, the By-Laws state in the affirmative that the <u>Board</u> votes; there was no reason to also state in the negative that members do not.

In any event, Plaintiff still fails to allege that he relied to his detriment on any contention that Mr. Wilhelm was legally elected. *See Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 861 (D.C. 1999) (calling pecuniary loss proximately caused by reliance the *sine qua non* of recovery for misrepresentation). Plaintiff responds to the US-ABC's argument by referencing Section III.A.e of his Opposition, which lists all of the hardships that he or his companies allegedly suffered after September 14, 2004. (Opp. at 22-23.) But even accepting for argument's sake those allegations as true, Plaintiff's reliance on the belief that Mr. Wilhelm was properly elected did not cause him to take or not take any action that caused him harm. The hardships listed in Section III.A.e of the Opposition (e.g., being named a *persona non grata*) resulted from actions by the Algerian Government -- not detrimental reliance by Plaintiff.[9]

Plaintiff's fraud claim fails for all these reasons; it should be dismissed.

### B.    Plaintiff's Tortious Interference Claims Fail Because He Lacks Standing And Cannot Allege Necessary Elements Of The Claims.

#### 1.    Plaintiff Lacks Standing To Bring These Claims.

Plaintiff has chosen not to respond to the US-ABC's argument that he, personally, lacks standing to bring claims for conduct that allegedly harmed his companies, Genesis, International Infrastructure Consortium ("IIC"), and Sotrama. (*See* Opp. at 26); *Cont'l Group, Inc. v. Justice*, 536 F. Supp. 658, 660 (D. Del. 1982) (holding shareholder lacks individual right of action against third party for acts harming corporation). And for good reason: as discussed more fully in the US-ABC's initial brief, Plaintiff's alleged lost share value, profits, and employee

---

[9]    Contrary to Plaintiff's assertion, he did <u>not</u> allege in his Amended Complaint in this case that Mr. Wilhelm "retaliated against Plaintiff after his warnings to Mr. Wilhelm to . . . act to correct FCPA (Federal Corrupt Practices Act) violations . . . ." (Opp. at 24.) To the contrary, the Foreign Corrupt Practices Act is not mentioned in Plaintiff's Amended Complaint. Moreover, Mr. Wilhelm's alleged retaliation to further Northrop Grumman's interests does not explain how Plaintiff detrimentally relied on the September 2004 correspondence, nor does it provide a basis for liability against the US-ABC.

compensation indirectly resulting from Genesis not winning the East-West Highway construction project are not recoverable.  (*See* AC ¶¶ 99-100, 130-128.)[10]  Plaintiff's disappointment that his contracts were not as lucrative as he had hoped is no more compensable than would be the claim of any shareholder being similarly disappointed.  Because Plaintiff cannot, without relying on alleged losses suffered by Genesis, allege any injury to himself, he lacks standing to bring these claims.  *See Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004).

    2.    **Plaintiff Cannot Plead Essential Elements Of Tortious Interference.**

        a.    **Plaintiff Has No Business Expectancy In The Letter Of Intent.**

    The core allegation of Plaintiff's tortious interference claims is the assertion that the September 2004 correspondence caused the loss of a contract between Genesis and the Algerian Government concerning the development of an East-West Highway and memorialized in a self-titled May 5, 2003 Letter of Intent ("LOI").[11]  Putting aside the indisputable fact that Plaintiff, in his individual capacity, was not a party to the LOI, Plaintiff's tortious interference claims fail for yet another simple and straightforward reason: the LOI is neither a contract nor a commercially reasonable business expectancy.  (*See* Metz Decl. Exh. 2); *see also Wash. Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*, Nos. 04-838/04-687, 2006 U.S. Dist. LEXIS 24510, at *17 (D.D.C. Apr. 28, 2006).  If anything, it is a mere "agreement to agree," not enforceable under District of Columbia law.  *See Overseas Partners v. Progen Musavirlik Ve Yonetim Hizmetleri, Ltd.*, 15 F. Supp. 2d 47, 53 (D.D.C. 1998) (holding 'agreements to agree' do not create contracts under District of Columbia law).  The very title of the document, "Letter of Intent," underscores

---

[10]    Plaintiff's Amended Complaint is misnumbered.

[11]    Most, if not all, of Plaintiff's alleged contracts or business expectancies are predicated on the East-West Highway project.  (*See* AC ¶ 21 (referencing employment agreement with IIC, the operating company of the East-West Highway development project); ¶¶ 22, 28 (referencing employment agreement with Genesis, the entity competing for the East West Highway project); ¶¶ 25, 100(c) (referencing agreement with Sotrama and Sotrama's role in selling marble to the East-West Highway).)

its non-binding nature.  Just as obviously, the LOI lacks the terms necessary to be a binding

contract for development of the East-West Highway: despite Plaintiff's assertions, the fact that

"Government and Genesis intend to enter into concession agreement . . . " is not an adequate

description of the compensation to be paid, or any other material term.  (*See* Opp. at 30); *Duffy v.

Duffy*, 881 A.2d 630, 634 (D.C. 2005) (holding failure to agree to all material terms means no

contract was formed).  For example, if Genesis had decided to sue the Algerian Government for

breaching the LOI, no court could have crafted relief on such a claim: the LOI does not define

what Genesis was supposed to do or how it would be paid, and the LOI expressly states that the

Algerian Government could decline to enter into any agreement with Genesis in the

Government's sole discretion.  That is not an express, binding contract.

    Nor is the LOI an implied contract.  (*See* Opp. at 29.)  An implied contract is a contract,

not reduced to writing or stated orally, which can be inferred from the parties' conduct because it

satisfies all necessary elements of a binding agreement.  *Braude & Margulies, P.C. v. Fireman's

Fund Ins. Co.*, 468 F. Supp. 2d 190, 198 (D.D.C. 2007) ) (citing *Vereen v. Clayborne*, 623 A.2d

1190, 1193 (D.C. 1993)).  "To recover under an implied contract, a plaintiff must show that (1)

valuable services were rendered; (2) for the person sought to be charged, (3) which services were

accepted, used, and enjoyed by the person sought to be charged, (4) under such circumstances as

reasonably notified the person sought to be charged that the person rendering the service

expected to be paid by him."  *Id.*  To be sure, the LOI was not an implied contract between

Genesis and the Algerian Government because (1) no services were rendered to, or accepted by,

the Algerian Government in a manner that reasonably notified the Government that Genesis

expected to be paid.  The LOI itself refutes any such notion, as the Government was bound to

further contract only if "all the terms of [Genesis'] proposal are acceptable [to] the

GOVERNMENT." (*See* Metz Decl. Exh. 2.) Aside from possibly reviewing Genesis' proposal, the Government essentially agreed to nothing at all.[12]

Moreover, Plaintiff's Opposition, the Amended Complaint, and the face of the LOI leave no doubt that Plaintiff was <u>not</u> a party to the LOI. Plaintiff's purported contact with Genesis was merely to transfer his "proprietary know-how, for development of major BOT/PPP projects, to Algeria Government and Genesis, (the PPP), thus enabling Genesis and Algeria Government PPP to structure and finalize development of BOT/PPP architecture for Algeria East-West Highway System." (Opp. at 27, 32.)[13] This agreement merely to provide know-how toward the East-West Highway project, (AC ¶ 28(a)), and to be compensated from the Highway's profits if Genesis were to receive the bid (AC ¶ 28(b)), does not make Plaintiff a party to the LOI with the Algerian Government.[14] And if he were not a party to that alleged contract or opportunity, he has no standing to complain about any interference with it. *See Gov't Relations, Inc. v. Howe,*

---

[12]     Moreover, it is only the Government's illusory obligation that Plaintiff contends was tortiously interfered with. Because Plaintiff alleges that he presented the "Final Concession agreement architecture" to the President of Algeria in September 2003, the only aspect of the LOI left to be performed was the Algerian Government's execution of the Concession Agreement with Genesis. (*See* Opp. at 32-33.) Because the Algerian Government could (and did) decide not to accept Genesis' proposal at any time and for any reason, there was no agreement with which to tortiously interfere.

[13]     Interestingly, the recent complaint filed by Genesis against Northrop Grumman Corporation, et al., in the Circuit Court for Anne Arundel County, Maryland, No. 02-C-07-125645, to which Plaintiff is not a party, contends that <u>Genesis</u> or <u>IIC</u> would "draft the development architecture plans for the highway" or "develop the development architecture plans delineated in the Letter of Intent." (*See* Md. Compl. ¶¶ 12, 14.) The complaint references Plaintiff's role as providing assistance only "in his corporate capacity as an officer for both Genesis and IIC." (*See id.* at ¶ 15, 19, 23, 24.) Apparently, Plaintiff's personal involvement in these events differs based on whether he, personally, seeks relief. It is also noteworthy that Plaintiff attached the LOI to his Opposition but opted not to attach the supposedly "expressed agreement" between himself and Genesis. (*See* Opp. at 32.)

[14]     Accordingly, Plaintiff's arguments and exhibit contending that the Algerian Government called Genesis' proposal "an excellent financial opportunity for Algeria," and promised to execute the concession agreement, are irrelevant. (*See* Opp. at 28-29, 32, 46.) There is, in truth, no promise to execute a concession agreement in that exhibit. Moreover, whether Genesis was or was not likely to have won the construction bid does not affect Plaintiff's "execute[d] [] expressed agreement" to provide proprietary know-how. (*See id.* at 27.)

No. 05-1081, 2007 U.S. Dist. LEXIS 4952, at *29 (D.D.C. Jan. 24, 2007). ("[I]nterference with

contractual relations . . . only arises . . . if there is interference with a contract between the

*plaintiff* and some third party.") (emphasis added) (citations omitted).[15]

> **b.    Plaintiff Cannot Allege That His Employment Contracts Were Breached.**

If anything, Plaintiff may have had an employment agreement whose performance was,

in part, contingent upon Genesis winning the right to construct the East-West Highway.[16]  This

agreement, and any other alleged agreements between Plaintiff and Genesis or IIC, however,

cannot provide bases for a tortious interference claim because Plaintiff cannot allege they were

breached.  The hallmark of tortious interference is a breach of contract or a business expectancy

lost as a result of the defendant's conduct.  Plaintiff nowhere alleges that Genesis breached its

"expressed agreement" with Plaintiff for Plaintiff to "transfer his proprietary know-how."

Plaintiff states in his Opposition that he "need not produce evidence of a breach . . . but only

allege existence of same."  (*See* Opp. at 32.)  But he has not even alleged a breach by Genesis.

At most, Plaintiff alleges Genesis and IIC were unable to perform the contracts due to

impossibility -- because Genesis did not win the East-West Highway project.  (AC ¶ 105; Opp. at

28.)  An inability to perform due to impossibility, though, does not create grounds for a tortious

interference claim.  *See Hester v. D.C.*, 505 F.3d 1283, 1286 (D.C. Cir. 2007) (holding failure to

---

[15]    In his Opposition, Plaintiff repeatedly asserts that his contract was with Genesis as the representative of a "Public Private Partnership" with the Algerian Government.  (*See* Opp. at 9, 21.)  But that conclusory statement is demonstrably not true: the LOI makes no mention of any such partnership.  And for the same reasons discussed above that the LOI is not a contract, it is not a partnership agreement either.  *See Fraser v. Gottfried*, 636 A.2d 430, 432 (D.C. 1994) (stating customary attributes of partnership are profit and loss sharing and joint control of decision-making).

[16]    To the extent Plaintiff's contract was to provide "know-how" to assist Genesis in securing the opportunity to build the East-West Highway, that portion of Plaintiff's contract was, according to Plaintiff himself, completed.  (*See* Opp. at 32 (stating final agreement architecture was delivered to Algerian Government in September 2003).)

perform due to impracticability does not constitute breach).  If that were actionable, any party

that had a contract with Genesis or an expectation of benefit from Genesis winning the Highway

bid could sue.

> **c.    Plaintiff Does Not Plead Intentional Interference Or Motive By The US-ABC.**

Although "intentional procurement of a breach" is required for these claims, Plaintiff has

decided not to "produce evidence . . . that defendant acted with intent to interfere," since he has

"allege[d] existence of same."  *See Gov't Relations,* 2007 U.S. Dist. LEXIS 4952, at *27; (Opp.

at 32).  Plaintiff's sole citation for an allegation of intent, however, is the heading for his

Amended Complaint's tortious interference cause of action.  (Opp. at 33.)  Plainly, that is

insufficient.  *Gov't Relations*, 2007 U.S. Dist. LEXIS 4952, at *30 (intentional procurement of

breach requires strong showing of intent); *Wash. Metro. Transit Auth.*, 2006 U.S. Dist. LEXIS

24510, at *17 (evidence of general intent that conduct will interfere is insufficient; plaintiff must

"demonstrate strong intent to disrupt the business expectancy through egregious conduct.");

*Chambliss v. Nat'l R.R. Passenger Corp.*, No. 05-2490, 2007 U.S. Dist. LEXIS 11522, at *96-97

(D.D.C. Feb. 20, 2007) (holding plaintiff failed to adduce evidence that defendant acted with

requisite intent to interfere with contract).  Without intent, Plaintiff's tortious interference claims

fail.

Although motive is not an essential element of tortious interference, Plaintiff's total

inability to supply any motive for the US-ABC's alleged misconduct raises serious doubts about

the plausibility of his claims.  Plaintiff's reliance on the opinion of the United States Court of

Appeals for the Third Circuit as authority for the sufficiency of Plaintiff's motive allegations in

this action (*see* Opp. at 34) is, at best, misplaced.  The Third Circuit's only reference to motive

was in the context of a discussion over whether Donald Wilhelm was acting within the scope of

his Northrop Grumman employment when he drafted and sent the September 2004 correspondence. There was no reason for the Third Circuit to address motive or intent on the part of the US-ABC, which had been dismissed for lack of personal jurisdiction. Moreover, it makes no sense to suggest, as Plaintiff does, that the US-ABC's motive for allegedly interfering with Plaintiff's contracts was to allow Northrop Grumman "to strengthen its Monopoly and control of US-ABC."[17] (*See* Opp. at 34, 10.) Nor does it make sense that the US-ABC sought "to take over Plaintiff['']s and Plaintiff['']s companies['], position in major Toll Highway project in country of Algeria." (Opp. at 7, 10.) Plaintiff admits that the US-ABC was formed "to act as a supporting umbrella organization for US-ABC members, designed to provide its members the ability to achieve unprecedented access to major Infrastructure business opportunities in Algeria." (AC ¶ 34.) Plaintiff wants this Court to believe that a trade association, designed to help its members access infrastructure projects in Algeria, secretly conspired to usurp Plaintiff's opportunity on the Algerian East-West Highway.[18] Plaintiff's motive allegations are as deficient as the rest of his claims.

### d. Breach And Causation Requirements Defeat Any Tortious Interference Claim Based On Plaintiff's Sotrama Contract.

Breach and causation requirements are insurmountable obstacles to any tortious interference claim based on Plaintiff's Sotrama contract. "D.C. follows the black-letter tort law

---

[17] Plaintiff asserted an antitrust claim in the District of New Jersey based on Northrop Grumman's alleged efforts to elect Donald Wilhelm and refuse Plaintiff access to an essential facility (Plaintiff defined "essential facility" as the US-ABC). (*See* Metz Decl. Exh. 1 at ¶¶ 291, 297.) The District of New Jersey dismissed this claim with prejudice, and the Third Circuit affirmed the dismissal on appeal. Plaintiff is collaterally estopped from claiming that Northrop Grumman's "monopoly" of the US-ABC caused him harm.

[18] Insofar as Plaintiff raises a violation of the Foreign Corrupt Practices Act as a potential motive for the US-ABC's seeking to "destroy the reputation of plaintiff," Plaintiff's new "facts" allege, if anything, only that Northrop Grumman may have violated the Act -- not the US-ABC. (Opp. at 7 (alleging Northrop Grumman employed son of Algerian Ambassador in return for Ambassador's support and blessing for Northrop Grumman).) In fact, all of the motives Plaintiff offers for the US-ABC's alleged conduct are more appropriately attributed to Northrop Grumman, the real target of Plaintiff's claims.

principle that an intervening force breaks the chain of proximate causation when that intervening force is sufficiently unforeseeable as to constitute a superseding cause." *Hundley v. D.C.*, 494 F.3d 1097, 1104 (D.C. Cir. 2007). The misconduct complained of must be anticipated. *Id.* (citing Keeton, et al., Prosser & Keeton on the Law of Torts § 44, at 313 (5th ed. 1984)).

In its initial brief, the US-ABC pointed out that even if Plaintiff's Sotrama contract were independent of the East-West Highway, Plaintiff still has not alleged any breach caused by the US-ABC. (Motion to Dismiss at 23.) The Amended Complaint simply does not allege how the September 2004 correspondence prevented Plaintiff from "transfer[ing] technology, construct[ing], operat[ing] and manag[ing] a Cultured stone and Decorative glass Manufacturing Plants and its manufactured products distribution network, in the country of Algeria and elsewhere" or "own[ing] and market[ing] sub-licensing rights which allow plaintiff Jovanovic to sell and manage six additional Sotrama manufacturing plants . . . ." (*See* AC ¶ 25.) Plaintiff's Opposition suggests that his efforts were thwarted when he was prevented physical entry into Algeria. (Opp. at 20, 28.) But this argument fails for a number of reasons. First, any inability to perform by Plaintiff does not count as a "breach" caused by the US-ABC. *See Hester*, 505 F.3d at 1286 (holding failure to perform due to impracticability does not constitute breach). Second, it strains logic to suggest that Plaintiff cannot perform contracts pertaining to Algeria merely because he cannot physically set foot on the land. Third, Plaintiff's chain of causation belies any notion of proximate cause: Plaintiff's "logic" is that Mr. Wilhelm's letter concerning his membership in the US-ABC caused Plaintiff to hire an attorney to represent him, which caused the Algerian Government to name him a *persona non-grata* and refuse him entry into Algeria, which caused his inability to conduct business relating to Algeria. (Opp. at 20, 22, 28.) This chain is implausible at best, and it certainly is not foreseeable. *See Hundley*, 494 F.3d at 1104.

**e.** **Plaintiff Makes No Attempt To Plead Damages.**

Plaintiff's Opposition fails even to address his failure to plead damages in anything more than a wholly conclusory manner. *See Gov't Relations*, 2007 U.S. Dist. LEXIS 4952, at *31 (requiring that damages be pleaded with supporting facts). Plaintiff provides absolutely no basis for the $6.2 billion (before trebling) in damages he claims the US-ABC caused him to suffer. Indeed, he provides no facts to support a claim that he suffered <u>any</u> damages in any provable amount due to the US-ABC's conduct.[19]

For all the reasons set forth above, Plaintiff's tortious interference claims fail.

**C.** **The Common Interest Privilege Defeats Plaintiff's Defamation Claim.**

Plaintiff's defamation claim against the US-ABC fails because he cannot allege that the US-ABC published the allegedly defamatory statement "without privilege." *See Marsh v. Hollander*, 339 F. Supp. 2d 1, 5 (D.D.C. 2004).[20] To the contrary, as discussed in the US-ABC's

---

[19]    Genesis' complaint in Maryland state court alleges intentional interference with prospective advantage, business disparagement, unfair competition, and false light based on the same facts as this case. Curiously, Genesis -- the company that purportedly intended to build and reap profits from the East-West Highway -- demanded only $200 million in compensatory damages. Plaintiff's request in this case for <u>thirty-one times</u> that amount based on damages that he, personally, suffered is unexplained in his Amended Complaint in this Court -- and inexplicable.

[20]    Plaintiff and his company (Genesis) continue to maintain in other lawsuits that the US-ABC is not responsible for the allegedly defamatory letter. In its initial brief, the US-ABC mentioned Plaintiff's allegation in the District of New Jersey that

> [s]aid letter was in fact written <u>above and beyond acting Chairman's prescribed duty</u>, and <u>in violation and breach of fiduciary duty</u>, as prescribed by article V, and other articles of US-ABC By-Laws, and in fact was written <u>without official authorization from the US-ABC Board, to Chairman of US-ABC</u> . . .

(*See* Metz Decl. Exh. 1 (NJ SAC ¶ 163) (emphasis added).) In the Maryland suit, Genesis similarly alleged that "the letter and e-mail were prepared and transmitted by Wilhelm and Hewinson **in the scope of their employment at Northrop Grumman and in furtherance of their duties as employees of Northrop Grumman**." (Md. Compl. ¶ 41.) Genesis further alleged that the Northrop Grumman personnel "**unlawfully** used their roles within US-ABC to knowingly disseminate malicious falsehoods regarding Plaintiffs under the imprimatur of US-ABC, in an attempt to interfere with the Algerian

initial brief, the allegedly defamatory statements fall squarely into the common interest privilege, and the claim should be dismissed on that ground. *See Blodgett v. Univ. Club*, 930 A.2d 210, 223-24 (D.C. 2007); (Motion to Dismiss at 24-28.). Plaintiff's only response to this argument is to argue that the US-ABC is bound, either through *res judicata* or *collateral estoppel*, by the Third Circuit's opinion overturning the dismissal of Plaintiff's defamation claim against Northrop Grumman. (Opp. at 36-37.) Plaintiff is wrong.

       1.     ***Res Judicata* Does Not Prevent The US-ABC From Highlighting Insufficient Allegations Of Malice**

*Res judicata* or claim preclusion requires "(1) an identity of parties or their privies in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) an identity of the cause of action in both suits." *Hafezi v. Constr. & Dev., Inc.*, No. 04-2198, 2006 U.S. Dist. LEXIS 19742, at *18 (D.D.C. Apr. 14, 2006). A judgment on the merits "is one that disposes of the underlying cause of action." *Id.* at *28 (quoting *Polsby v. Thompson*, 201 F. Supp. 2d 45, 48 (D.D.C. 2002)). *Res judicata* does not apply to a judgment issued against a party over whom the court lacked proper personal jurisdiction. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985).

*Res judicata* does not preclude the US-ABC from arguing Plaintiff's complete failure to plead malice. Because the District of New Jersey lacked personal jurisdiction over the US-ABC -- an issue the Third Circuit affirmed -- the Third Circuit's dictum that Plaintiff alleged malice in that case cannot bind the US-ABC in this case. *See Genesis Int'l Holdings*, 238 Fed. Appx. At 802. Moreover, the Third Circuit's opinion on the sufficiency of Plaintiff's complaint was far from a final judgment on the merits: it did not dispose of his defamation claim; to the contrary, it

---

government's award of the East-West Highway Project to Plaintiffs and to obtain for themselves such project and similar projects." (*Id.* at ¶ 55.) The only time Plaintiff tries to blame the US-ABC for any alleged defamation is when Northrop Grumman and its employees are not parties to the suit.

merely allowed the claim to proceed against Northrop Grumman. *See Hafezi*, 2006 U.S. Dist. LEXIS 19742, at *28. For these reasons, *res judicata* principles do not preclude the US-ABC's common interest privilege argument.

> ## 2. Neither Does Collateral Estoppel Prevent The US-ABC From Litigating The Failure To Plead Malice.

Collateral estoppel, or issue preclusion, requires three elements: (1) the issue must be the same as one previously contested by the parties and submitted for judicial determination, (2) the issue must have been "actually and necessarily" determined through a valid and final judgment by a court of competent jurisdiction, and (3) preclusion must not work a basic unfairness to the party that is bound. *Yamaha Corp. of Am. v. U.S.*, 961 F.2d 245, 254 (D.C. Cir. 1992); *Consol. Edison Co. of N.Y., Inc. v. Bodman*, 449 F.3d 1254, 1258 (D.C. Cir. 2006). Any ambiguity as to whether an issue was "actually and necessarily determined" prevents preclusion. *See Conners v. Tanoma Mining Co.*, 953 F.2d 682, 684-85 (D.C. Cir. 1992) (holding preclusion was improper because precise legal basis upon which prior judgment rested was unclear). Moreover, to be "necessarily determined," the issue must be "essential" to the prior judgment; a party cannot be precluded based on dictum alone. *Bryson v. Gere*, 268 F. Supp. 2d 46, 57, 60 (D.D.C. 2003).

Plainly, the Third Circuit's Opinion in *Genesis International Holdings v. Northrop Grumman Corp.* does not collaterally estop the US-ABC from litigating the lack of a basis for malice in Plaintiff's Amended Complaint. First, the US-ABC never raised the common interest privilege in that action, and malice is not an element of defamation. *See Feggans v. Billington*, 677 A.2d 771, 775 (N.J. Super. Ct. App. Div. 1996) (stating elements for non-public figure defamation are that defendant (1) made a defamatory statement of fact (2) concerning plaintiff (3) which was false, and (4) which was communicated to third person). Accordingly, malice was not litigated by these parties.

Second, the Third Circuit's passing reference to Plaintiff's allegations, including his naked malice allegation, does not mean the court "actually" determined the sufficiency of that allegation -- much less that Plaintiff's malice allegation defeated the common interest privilege. At no point does the Opinion even mention the common interest privilege. Moreover, the court's recitation of the elements of defamation (without mentioning malice) illustrates that its statement "*Jovanovic alleges that the letter was malicious*," was mere dictum and not essential to its decision. *See Genesis Int'l Holdings*, 238 Fed. Appx. at 802. In any event, the Third Circuit's holding that Plaintiff's defamation claim could proceed against Northrop Grumman was not a final judgment. That alone defeats collateral estoppel.

Third, the US-ABC did not have a full and fair opportunity to contest Plaintiff's "malice" allegations in the prior action. Indeed, the US-ABC had no incentive to litigate a potential exception to the common interest privilege when its primary defense was that the court lacked personal jurisdiction. *See Yamaha Corp.*, 961 F.2d at 254 (stating unfairness exists "when the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude."). In short, Plaintiff cannot satisfy any of the elements of collateral estoppel.

The District of Columbia sets a "high standard" for establishing malice sufficient to defeat the common interest privilege. *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 859 (D.C. Cir. 2006). Ill will does not "forfeit the privilege so long as the *primary* purpose is to further the interest which is entitled to protection." *Id*. (quoting *Columbia First Bank v. Ferguson*, 665 A.2d 650, 656 (D.C. 1995)) (internal quotations omitted). Given this high hurdle, Plaintiff's conclusory allegation of malice is wanting. (AC ¶ 115.) If anything, Plaintiff's

malice allegations, like his motive allegations, are more aptly applied against Northrop Grumman, the actual target of Plaintiff's wrath.

Moreover, Plaintiff cannot contend that the September 2004 correspondence was "excessively published to third parties." (*See* Opp. at 38.) The September 2004 correspondence establishes on its face that it was not sent to Plaintiff's company IIC or its "invited members" Messrs. Solunac and Kaufman. (*See* AC at Exhs. A-B.) To the extent IIC, Mr. Solunac, or Mr. Kaufman saw those letters, Plaintiff must have shared them himself. In any event, IIC also would share a common interest in Genesis' membership in the US-ABC. (*See* AC ¶ 24(a).) Plaintiff's Exhibits to his Amended Complaint also show that the documents were not sent to any John Does. In addition, Plaintiff admits that the Algerian Ambassador[21] and Lies Goumiry are US-ABC personnel. (*See* AC at Exh. B (sending email to Algerian Ambassador and Mr. Goumiry addressed "To All Board Members"); AC ¶¶ 30-31 (alleging Algerian Ambassador is "Honorary President of US-ABC"); Md. Compl. ¶ 32 (alleging Algerian Ambassador was US-ABC Board Member); Metz Decl. Exh. 1 (NJ SAC ¶ 48-49 (noting Goumiry was associated with US-ABC)).) Plaintiff's allegations make clear that the "third parties" who allegedly received the correspondence were not, in fact, third parties. Because all of the recipients are US-ABC personnel, no "excessive publication" defeats the privilege.

Plaintiff's defamation claim, like his other claims, must be dismissed.

---

[21] Insofar as Plaintiff alleges that the Algerian Government -- separate from the Algerian Ambassador -- received the correspondence, Plaintiff cannot hold the US-ABC responsible. *See Caudle v. Thomason*, 992 F. Supp. 1, 5 (D.D.C. 1997) (protecting statements that were not "knowingly published" outside common interest privilege); (*see also* Metz Decl. Exh. 1 (NJ SAC ¶ 190 (alleging Algerian Government received copy of correspondence forwarded by Algerian Ambassador, not the US-ABC)).) Plaintiff contends it was the republication of the September 2004 correspondence to the Algerian Government that caused the lion's share, if not all, of his injuries. Since he admits that the Algerian Ambassador, and not the US-ABC, sent the letter to the Algerian Government, the US-ABC cannot be liable as a matter of law for any of Plaintiff's losses. Both this fact and the common interest privilege require the dismissal of Plaintiff's defamation claim.

**D.    Plaintiff Cannot Claim Intentional Infliction Of Emotional Distress.**

Plaintiff cannot meet the threshold element of this tort -- he cannot allege that the US-ABC's conduct was "extreme and outrageous."[22]  *See Chambliss*, 2007 U.S. Dist. LEXIS 11522, at *101.  Plaintiff's response relying on the injury standard for <u>negligent</u> infliction of emotional distress and asserting that he suffered "physical trauma" through anxiety and nausea misses the point.  (Opp. at 38-39.)  Clearly, anxiety and nausea are insufficient to constitute "severe emotional distress."  *See Chambliss*, 2007 U.S. Dist. LEXIS 11522, at *101 (requiring plaintiff to prove "severe emotional distress").  More to the point, the manner of Plaintiff's "distress" says nothing about whether the US-ABC's conduct was "extreme" or "outrageous."  Plaintiff has no basis for this claim.

**E.    Plaintiff No Longer Alleges Conspiracy, Which Requires The Dismissal Of All Of His Claims.**

As noted in the US-ABC's initial brief, Plaintiff fails properly to plead conspiracy.  (*See* Motion to Dismiss at 31); *Cadet*, 2007 U.S. Dist. LEXIS 72504, at *46-48 (dismissing conspiracy claims because allegations that merely re-state allegedly wrongful action and add that defendants acted in concert are "impermissibly bare").  The conspiracy claim is essential to Plaintiff's Amended Complaint:  According to Plaintiff, it was the forwarding of the September 2004 correspondence to the Algerian Government that caused all of his injuries.  Plaintiff alleges that the US-ABC's entire role in forwarding that letter was in having "conspired with and aided and abetted Northrop Grumman Corporation employees" to do so.  (AC ¶¶ 60-62, 101-102, 109.) Without properly alleging the conspiracy, Plaintiff cannot claim that the US-ABC had <u>any</u> role in the Algerian Government's receipt of the September 2004 correspondence -- the impetus of all of Plaintiff's troubles.  Rather than attempt to save this claim, Plaintiff contends he "had not pled a

---

[22]    The US-ABC relies on pages 29-31 of its initial brief to establish the absence of this essential element.

separate conspiracy claim and as such will not respond to Defendants arguments on this issue."

(Opp. at 39.)  Plaintiff's decision not to respond, combined with the inadequate allegations in his

Amended Complaint, is telling, indeed.  (*See* Opp. at 39.)

**CONCLUSION**

Plaintiff's claims are time-barred.  And even if they were not, they fail to state a claim

upon which relief can be granted.  Accordingly, his Amended Complaint must be dismissed.

Dated: January 28, 2008

Respectfully submitted,


/s/ Nathaniel A. Vitan
Nathaniel A. Vitan
D.C. Bar No. 477402
Kevin H. Metz
D.C. Bar No. 494087
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Nathan.Vitan@lw.com
Kevin.Metz@lw.com


Alan E. Kraus, admitted *pro hac vice*
Kira S. Dabby, admitted *pro hac vice*
LATHAM & WATKINS LLP
One Newark Center, 16th Floor
Newark, NJ 07101
Telephone: 973-639-1234
Facsimile: 973-639-7298
Alan.Kraus@lw.com
Kira.Dabby@lw.com

*Attorneys for Defendant US-Algeria
Business Council*

**PROOF OF SERVICE**

I, Nathaniel A. Vitan, counsel for the US-Algeria Business Council and a member of the Bar of

this Court, hereby certify that on this 28th day of January, 2008, I caused a true and correct copy

of the US-ABC's **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN**

**FURTHER SUPPORT OF US-ALGERIA BUSINESS COUNCIL'S MOTION TO**

**DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON**

**WHICH RELIEF CAN BE GRANTED** to be served by Federal Express on Plaintiff Boban

Jovanovic at the following address:


Boban Jovanovic
440 Magie Ave
Elizabeth, NJ 07208



Dated:  January 28, 2008                     /s/ Nathaniel A. Vitan
                                             Nathaniel A. Vitan