UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBAN JOVANOVIC,

    Plaintiff,

     v.

US-ALGERIA BUSINESS COUNCIL,
*et al.*,

    Defendants.

Civil Action No. 07-927 (CKK)

**MEMORANDUM OPINION**
(June 26, 2008)

*Pro se* Plaintiff, Boban Jovanovic, brings this action against Defendant, the US-Algeria

Business Council ("US-ABC"), asserting claims of fraud, tortious interference with contract and

prospective business advantage, defamation, and intentional infliction of emotional distress,

arising out of a letter written on US-ABC letterhead and sent by e-mail to the members of the

US-ABC's Board of Directors. According to Plaintiff's Amended Complaint, the single-page

letter caused him to lose $6.2 billion in potential profits from the management of a highway

development project in Algeria, as well as related opportunities. US-ABC has moved to dismiss

Plaintiff's Amended Complaint, arguing first that all of Plaintiff's claims are inextricably

intertwined with his defamation claim and thus barred by the one-year statute of limitations

applicable to such a claim under District of Columbia law, and second, that even if Plaintiff's

claims are not time-barred, the Amended Complaint fails to state a claim upon which relief may

be granted and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Upon a searching review of Plaintiff's Amended Complaint, the parties' filings in

connection with Defendant's Motion to Dismiss, the relevant case law, and the entire record herein, the Court finds that Plaintiff's tortious interference and intentional infliction of emotional distress claims are intertwined with his defamation claim, and thus barred by the applicable one-year statute of limitations.  The Court further finds that Plaintiff's previous filing of similar claims in a since-dismissed action in the District of New Jersey does not toll the statute of limitations for Plaintiff's claims in this action.  As to Plaintiff's fraud claim, the Court finds that it is not intertwined with Plaintiff's defamation claim, but nevertheless finds that it must be dismissed for failure to state a claim.  Although the parties' briefs raise a number of additional arguments regarding the merits of Plaintiff's claims, the Court does not reach those arguments because its conclusions regarding the statute of limitations and Plaintiff's fraud claim obviate the need to do so.  Accordingly, the Court shall grant Defendant's [15] Motion to Dismiss and shall dismiss the instant case in its entirety.

## I.  BACKGROUND

### A.    *Factual Background*

For purposes of addressing US-ABC's motion to dismiss, the Court assumes, as it must, the truth of the factual allegations set forth in Plaintiff's Amended Complaint.  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Plaintiff, Boban Jovanovic, is a United States citizen and resident of New Jersey who alleges that he owns "certain technology and know how for manufacturing of decorative Glass and Cultured marble products," as well as "proprietary know-how for development of Transportation and other major Infrastructure

projects." Am. Compl. ¶ 1.[1]  Plaintiff further alleges that he is a shareholder and Honorary

President and "as per special need an acting President" of Genesis International Holdings, Ltd.

("Genesis"), a Delaware corporation, *Id.* ¶ 19, as well as a shareholder and "as per special need

an acting President" of International Infrastructure Consortium, Ltd. ("IIC"), another Delaware

corporation, *id.* ¶ 20.  According to Plaintiff's Amended Complaint, at an unspecified time, he

entered into employment agreements with both Genesis and IIC.  *Id.* ¶¶ 21-22.  Defendant US-

ABC "is an International business council, constituted in September 2002, as a District of

Columbia 501(c)(4)/(6) non-profit corporation, for the purpose of developing closer economic

and political ties between the Countries of [sic] United States and Algeria."  *Id.* ¶ 2.

On May 5, 2003, Genesis and the Algerian Government executed a Letter of Intent

("LOI"), which states that the Algerian Government and Genesis "intend to cooperate on

developing a detailed BOT (Build Operate Transfer) project architect solution for [an] East-West

highway system in Algeria," and that Genesis "has developed a fundamental approach for global

BOT financing, implementation and operation of [an] East-West highway system."  *Id.* ¶ 23; US-

---

[1] Although Plaintiff proceeds *pro se* in this action, the Court notes that Plaintiff is not an
inexperienced litigant.  US-ABC's Motion to Dismiss brings to the Court's attention at least
three lawsuits commenced by Plaintiff *pro se*: (1) a lawsuit filed in the United States District
Court for the District of New Jersey in 2005 against US-ABC and 25 members of US-ABC
and/or US-ABC personnel based on the events at issue in this case, discussed below, *Genesis
International Holdings v. Northrop Grumman Corporation*, Case No. 05-4487 (DMC); (2) a
bankruptcy complaint filed in the District of New Jersey against twenty-two separate defendants
asserting forty-eight causes of action, *Jovanovic v. Wilentz, Goldman and Spitzer*, C.A. No. 95-
21321; and (3) another case filed in New Jersey state court and removed to the District Court for
the District of New Jersey, in which Plaintiff asserted claims for damages because he was not
permitted to take two carry-on bags onto an airline, *Jovanovic v. Swiss Airlines*, Civ. A. No. 01-
1842.  The Court may take judicial notice of the records in those cases without converting US-
ABC's motion to dismiss into a motion for summary judgment.  *See Jankovic v. Int'l Crisis
Group*, 494 F.3d 1080, 1088 (D.C. Cir. 2007).

ABC MTD, Ex. 2 (5/5/03 LOI).  The LOI continues to state: (1) the Algerian Government's intent to develop and operate the East-West highway system, (2) Genesis' intent to develop a detailed proposal for that project by September 30, 2003; and (3) the parties' joint intent "[t]o review the proposal for East-West highway BOT project on September 30th, 2003 or other mutually agreed date, soon thereafter" and "[t]o enter into a BOT concession agreement, *if all terms of the proposal are acceptable to the Government*." *Id.* (emphasis added).  Plaintiff alleges that, following this LOI, he entered into contracts to transfer his know-how for the development of major BOT projects to Genesis in exchange for various forms of compensation, including "a right to individually act as an exclusive supplier of all required cultured stone and decorative glass [] materials used in construction of Algeria East-West Highway project rest areas." *Id.* ¶ 28.

Although Plaintiff's Amended Complaint does not actually allege as much, it is clear that at some point Genesis became a member of US-ABC, along with other US and Algerian companies.  *See* Pl.'s Opp'n at 9; Am. Compl. ¶ 33.  In March 2004, US-ABC held an election for a new Chairman and slate of officers for US-ABC, which resulted in Donald Wilhelm, Vice President of Northrop Grumman Corporation ("Northrop Grumman"), being elected Chairman. *Id.* ¶¶ 45-50.  Plaintiff's Amended Complaint includes various allegations that the March 2004 election was fraudulent because only the US-ABC Board voted, *id.*, and also alleges that US-ABC was "fraudulently and illegally enacted and or registered" as a District of Columbia social welfare organization, *id.* ¶¶ 35-37.

On September 14, 2004, Mr. Wilhelm, acting as Chairman of US-ABC, wrote Plaintiff a letter–which Plaintiff describes as "fraudulent and defamatory"–requesting that Genesis

4

immediately voluntarily withdraw from the US-ABC because Genesis "inappropriately claim[ed] some manner of affiliation with a number of individuals and entities that are or were members of the US-ABC, as well as individuals who are or were formally associated with the US-ABC." Am. Compl., Ex. A (9/14/04 Letter from D. Wilhelm to B. Jovanovic).  Mr. Wilhelm's letter continued to state that "each of those named with whom [US-ABC] consulted denies any business or personal relationship with Genesis or with [Plaintiff] as an individual," and that US-ABC had concluded that Plaintiff had "without authorization, apparently made significant misrepresentations and done so in a manner that reflects on the US-ABC, itself." *Id.*  The letter also warned that, if Plaintiff declined to voluntarily withdraw Genesis' membership, US-ABC would "seek a resolution of the membership expelling Genesis from the organization," and stated "[a]ll of this is done in the context of an uneven history of your respect of the obligations you have, from time to time, undertaken with regard to payment of certain monies." *Id.*

On September 15, 2004, a copy of Mr. Wilhelm's September 14, 2004 letter was forwarded to the US-ABC Board members by a Northrop Grumman employee.  Am. Compl., Ex. B (9/15/04 e-mail from P. Hewinson).  Plaintiff's Amended Complaint alleges that Mr. Wilhelm's September 14, 2004 letter, and the subsequent forwarding of the letter to the US-ABC Board was the result of a conspiracy between US-ABC, certain John Does, and certain Northrop Grumman employees. *Id.* ¶¶ 51-53, 60-62.

Plaintiff alleges that Mr. Wilhelm's September 14, 2004 letter and the September 15, 2004 e-mail (together, the "September 2004 Correspondence") damaged his reputation, caused him extreme emotional distress, and interfered with his various business relationships, including the LOI. *Id.* ¶¶ 77-126.  In particular, Plaintiff alleges that, on September 16, 2005, a day after

receiving a copy of the September 14, 2004 letter, the Algerian Government "immediately [and] permanently suspend[ed] all economic and or business and or contractual relationships with plaintiff" and "immediately announce[d] in Algeria['s] offical newspaper" that the East-West highway project would only be developed by European and Asian entities. *Id.* ¶ 65-67. Plaintiff further alleges that in September 2004, the Algerian Government named him a persona non-grata on Algerian premises and instructed the Algerian Consul in Washington, D.C. not to issue Plaintiff any visas for entry into Algeria. *Id.* ¶¶ 68-71.

Based on the foregoing, Plaintiff's Amended Complaint asserts claims for fraud (*id.* ¶¶ 77-78), tortious interference with contract and prospective business advantage (*id.* ¶¶ 95-107), defamation, libel and slander (*id.* ¶¶ 108-116), intentional infliction of emotional distress (*id.* ¶¶ 117-122), and injunctive and declaratory relief (*id.* ¶¶ 123-126).[2] As damages, Plaintiff requests $6.2 billion in compensatory damages, $18.6 billion in treble damages, and various forms of injunctive and declaratory relief. *Id.* ¶¶ 94, 107, 114-116, 124-126.

B.    *Procedural History*

Plaintiff's Amended Complaint asserts–and US-ABC agrees–that this action arises out of a lawsuit Plaintiff filed in the United States District Court for the District of New Jersey on

---

[2] Plaintiff's "claim" for injunctive and declaratory relief, which does not include additional factual allegations beyond those incorporated in Plaintiff's other claims, is more properly described as a prayer for relief than a legal claim. As such, the Court does not address the sufficiency of Plaintiff's pleading as to that "claim." Further, although the headings of Plaintiff's fraud, tortious interference, and intentional infliction of emotional distress claims in his Amended Complaint include assertions of conspiracy to commit the tort at issue, *see* Am. Compl. at 14, 17, 21, Plaintiff's Opposition asserts that he "had not pled a separate conspiracy claim." Pl.'s Opp'n at 39. The Court therefore understands that Plaintiff is not attempting to state a claim for conspiracy, and does not address Plaintiff's references to conspiracy in this Memorandum Opinion.

September 14, 2005 (i.e., one year to the day after Mr. Wilhelm's September 14, 2004 letter). *Id.*

¶ 3; US-ABC MTD at 6.  Plaintiff filed that case *pro se* on behalf of himself, Genesis, and IIC,

against the US-ABC and twenty-five defendants, who were all members of, or personnel

associated with, the US-ABC.  Am. Compl. ¶¶ 4-5; US-ABC MTD at 6-7, Ex. 1 (Pl.'s Second

Am. Compl. in action filed in District of New Jersey ("NJ SAC")).  Like the instant case,

Plaintiff's New Jersey case asserted claims arising out of the September 2004 Correspondence.

*Id.*  On April 27, 2006, Judge Dennis M. Cavanaugh dismissed Plaintiff's New Jersey case

against US-ABC and certain other defendants for lack of personal jurisdiction.  *See Genesis Int'l*

*Holdings v. US-Algeria Bus. Council*, No. 05-CV-4487, 2006 WL 1128729 (D.N.J. Apr. 27,

2006); Am. Compl. ¶ 6.  Thereafter, on May 1, 2006, Judge Cavanaugh dismissed Plaintiff's

New Jersey case against the remaining defendants for failure to state a claim.  *See  Genesis Int'l*

*Holdings v. Amerada Hess Corp.*, No. 05-CV-4487, 2006 WL 1210443 (D.N.J. May 1, 2006);

Am. Compl. ¶ 7.  Plaintiff appealed these dismissals to the United States Court of Appeals for

the Third Circuit, and on June 26, 2007, the Third Circuit affirmed Judge Cavanaugh's dismissal

of Plaintiff's claims against all defendants but Northrop Grumman, finding that Plaintiff

adequately stated a claim against Northrop Grumman.  *See Genesis Int'l Holdings v. Northrop*

*Grumman Corp.*, No. 06-3566, 238 Fed. Appx. 799, 2007 WL 1821680 (3d Cir. Jun. 26, 2007 );

Am. Compl. ¶¶ 8-9.  Plaintiff filed a petition for rehearing with the Third Circuit as to the

dismissal of his claims against the other defendants, which the Third Circuit denied on August 8,

2007.  *Id.* ¶¶ 10-11.

     Plaintiff filed his initial Complaint in this action on May 18, 2007, alleging many of the

same facts at issue in his New Jersey case, and asserting many of the same legal claims asserted

in that action. *Compare* Compl. *with* US-ABC MTD, Ex. 1 (Pl.'s Second Am. Compl. in New Jersey case).[3] Plaintiff initially sued twelve defendants, including US-ABC, but on September 12, 2007, Plaintiff filed his Amended Complaint, in which he removed all defendants but the US-ABC and unnamed John Does. *See generally* Am. Compl. US-ABC filed its Motion to Dismiss Plaintiff's Amended Complaint on December 13, 2007, *see* Docket No. [15], and on the same date the Court issued a *Fox* Order to Plaintiff, in light of his *pro se* status, advising him of his duty to respond to US-ABC's motion to dismiss. *See* Docket Nos. [16] and [17]. Plaintiff's Opposition to US-ABC's Motion to Dismiss was received and filed on January 16, 2008, *see* Docket No. [18], and US-ABC filed its Reply on January 28, 2008, *see* Docket No. [20].

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of

---

[3] As US-ABC notes in its Motion to Dismiss, the allegations contained in Plaintiff's Amended Complaint in this action differ in certain significant ways from the allegations raised in his New Jersey case.  In particular, in this case, Plaintiff alleges that US-ABC and unnamed John Does conspired to produce the September 2004 Correspondence. Am. Compl. ¶¶ 51-53, 60-62. That allegation is in direct conflict with Plaintiff's allegation in his New Jersey case that Mr. Wilhelm's September 14, 2004 "letter was in fact written above and beyond Chairman's prescribed duty . . . and in fact was written without official authorization from the US-ABC Board, to Chairman of US-ABC, and executed expressly in his capacity as Chairman of US-ABC to plaintiffs Genesis and Bob Jovanovic." *See* US-ABC MTD, Ex. 1 (NJ SAC) ¶ 163.

action." *Bell Atl. Corp.*, 127 S. Ct. at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 127 S. Ct. at 1965 (citations omitted).  Hence, although "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is impossible, and 'that a recovery is very remote and unlikely,'" *id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), the "threshold requirement" of Fed. R. Civ. P. 8(a)(2) is "that the 'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to relief,'" *id.* at 1966 (quoting Fed. R. Civ. P. 8(a)(2)).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged.").  While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276.  Moreover, the court is not bound to accept the legal conclusions of the non-moving party.  *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).  The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*,

117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

Where, as here, an action is brought by a *pro se* plaintiff, the Court must construe the plaintiff's filings liberally, because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). When considering *pro se* complaints, courts may "consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged." *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) (citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1054 (D.C. Cir. 1998)). "Nonetheless, a *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994) (quoting *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

## III. DISCUSSION

US-ABC makes two different arguments in favor of dismissal of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). First, US-ABC asserts that "every single one of [Plaintiff's] claims in this Court is time-barred" because Plaintiff "did not file his defamation claim within the District of Columbia's one-year statute of limitations period for defamation claims," and "because all his other causes of action are inextricably intertwined with his defamation claim." US-ABC MTD at 2. Second, US-ABC argues that even if this Court does not find Plaintiff's claims time-barred, each of them fails to state a cause of action upon which relief may be granted, and therefore must also be dismissed on the merits. *Id.* at 3. The Court agrees with US-ABC that Plaintiff failed to file his defamation claim within the

applicable one-year statute of limitations and that Plaintiff's tortious interference and intentional

infliction of emotional distress claims are intertwined with his defamation claim, such that all

three claims are time-barred.  As to Plaintiff's fraud claim, the Court finds that it is not

intertwined with Plaintiff's defamation claim but that it must be dismissed as well because it fails

to state a claim upon which relief may be granted.

> A.    *Plaintiff's Defamation, Tortious Interference, and Intentional Infliction of Emotional Distress Claims Are Time-Barred*
>
> 1.    *Plaintiff's Filing of His New Jersey Case Does Not Toll the Statue of Limitations for His Defamation Claim*

US-ABC's argument that Plaintiff's claims are barred by the District of Columbia's one-

year statute of limitations for defamation claims is properly considered on its Rule 12(b)(6)

motion.  *See Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 38

(D.D.C. 2006) (CKK); *see also Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp.

2d 287, 292 (D.D.C. 2005), *aff'd* 249 Fed. Appx. 832 (D.C. Cir. Oct. 3, 2007) ("A defendant

may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the

facts giving rise to the defense are apparent on the face of the complaint").  A federal court

sitting in diversity must apply state law to the substantive issues before it.  *Erie Railroad Co. v.

Tompkins*, 304 U.S. 64 (1938).  As the statute of limitations is considered substantive for this

purpose, the Court looks to state law to determine whether Plaintiff's cause of action based on

state law has expired, and applies the District of Columbia choice of law rules to determine

which state's statute of limitations applies.  *A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp.*,

62 F.3d 1454, 1458 (D.C. Cir. 1995) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S. Ct.

1464, 89 L. Ed. 2079 (1945); *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 61 S. Ct.

1020, 85 L. Ed. 1477 (1941); and *Lee v. Flintkote Co.*, 593 F.2d 1275, 1278-80 (D.C. Cir.

1979)).  As the District of Columbia choice of law rules "treat statutes of limitations as

procedural," they "mandate application of the District's own statute of limitations," in this action.

*Id.* (citations omitted),

Here, the District of Columbia's one-year statute of limitations for libel and slander

claims applies to Plaintiff's defamation claim.  D.C. Code § 12-301(4); *Jankovic*, 494 F.3d at

1086.  That claim arises out of the September 2004 Correspondence and, as a result, under

District of Columbia law, was required to be brought on or before September 15, 2005, i.e., more

than a year and a half before Plaintiff commenced this action in May 2007.  Plaintiff does not

dispute that his defamation claim was filed after the applicable statute of limitations had run.

Instead, he argues that his filing of his New Jersey case tolled the statute of limitations because

the District of New Jersey had discretion to transfer Plaintiff's claims against US-ABC to this

Court rather than dismiss them for lack of personal jurisdiction.  Plaintiff's argument fails for

two reasons.

First, "District of Columbia precedent firmly holds that statutes of limitations are not

equitably tolled when a similar cause of action, filed within the limitations period, has been

dismissed for lack of . . . jurisdiction."  *Johnson*, 451 F. Supp. 2d at 52-53.  Indeed, "[t]he

District of Columbia Court of Appeals has made clear that 'good-faith mistakes of forum' do not

qualify for equitable tolling even if 'the defendant was on notice of the claim as of the initial

filing in an improper forum that occurred within the limitations period.'" *Jankovic*, 494 F.3d at

1097 (quoting *Sayyad v. Fawzi*, 674 A.2d 905,906 (D.C. 1996)); *see also Bond v. Serano*, 566

A.2d 47, 47 (D.C. 1989).  In light of this clear precedent, Plaintiff's previous filing of similar

claims against US-ABC in New Jersey within the statute of limitations period is simply irrelevant in determining whether his current defamation claim is time-barred.

Plaintiff's argument that this Court should treat his claims against US-ABC as if they were transferred by the District of New Jersey–despite the fact that that Court did not exercise its discretion to do so–is likewise unavailing. As Plaintiff correctly points out, 28 U.S.C. § 1631 gives a court authority to transfer a civil action filed in the wrong jurisdiction, "if it is in the interest of justice" to do so, and further provides that when a case is transferred pursuant to 28 U.S.C. § 1631, it "proceed[s] as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred." *Id.*

US-ABC is correct that, under the Third Circuit law binding on the District Court for the District of New Jersey, "[t]he determination whether a case should be transferred in the interest of justice [under] 28 U.S.C. § 1631, is generally committed to the discretion of the District Court in the first instance." *Russell v. Levi*, No. 06-3967 229 Fed. Appx. 110, 2007 WL 1217953 (3d Cir. Apr. 5, 2007) (citation omitted). Here, as noted above, Judge Dennis M. Cavanaugh of the United States District Court of the District of New Jersey *dismissed* (rather than transferred) Plaintiff's previous claims against US-ABC for lack of personal jurisdiction in April 2006. Significantly, Plaintiff never requested that the District Court for the District of New Jersey transfer his claims against US-ABC to this court, and the District of New Jersey did not opt to transfer those claims *sua sponte*. US-ABC Reply at 4-5.[4] Thus, while the District of New Jersey

---

[4] The law of this Circuit also holds that *sua sponte* transfers pursuant to 28 U.S.C. § 1631 are committed to the discretion of the District Court where no party has moved to transfer a case brought in the wrong jurisdiction. *See Hill v. U.S. Air Force*, 795 F.2d 1067, 1070 (D.C. Cir. 1986) ("Neither party urged the District Court to transfer this case, and the court did not consider the issue on its own motion. . . .we find that the District Court did not abuse its discretion in

*might* have transferred Plaintiff's claims against US-ABC to this District pursuant to 28 U.S.C. § 1631, it did not do so. Notably, the District of New Jersey's *dismissal* of Plaintiff's claims against US-ABC for lack of jurisdiction has since been affirmed by the Third Circuit. *Genesis Int'l Holdings v. Northrop Grumman Corp.*, 238 Fed. Appx. at 803.

Plaintiff essentially asks this Court to overrule the District of New Jersey's discretionary decision not to transfer Plaintiff's claims against US-ABC or, in the alternative, to treat Plaintiff's claims as if the District of New Jersey had transferred them. As the First Circuit noted when faced with a similar request, however, this Court is "aware of no legal authority that would permit one [District Court] to review another [District Court's] decision not to transfer." *Howitt v. U.S. Department of Commerce*, 897 F.2d 583, 584 (1st Cir. 1990). Further, as the D.C. Circuit explained when faced with a similar situation, "[w]hile the [District of New Jersey] possessed authority to transfer this action in the 'interest of justice,' it did not choose to do so. Absent a transfer, the petition is now time-barred and the court is without authority to extend the limitations period." *Triestman v. Drug Enforcement Admin.*, No. 96-1041, 1996 WL 135129, *1 (D.C. Cir. Feb. 6, 1996) (internal citation omitted).

For his part, Plaintiff argues that the Ninth Circuit's opinion in *Rodriguez-Roman v. I.N.S.*, 98 F.3d 416 (9th Cir. 1996), establishes that this Court should treat Plaintiff's claims against US-ABC as if they had been transferred to this Court by the District of New Jersey. In that case, the plaintiff filed an untimely appeal from an adverse I.N.S. decision in the Ninth Circuit after incorrectly attempting to file it in the Eleventh Circuit and having it returned to him

---

failing *sua sponte* to transfer [plaintiff's] claims against [his supervisor] in his personal capacity to the District Court in New Mexico").

by the Eleventh Circuit's clerk of the court. *Id.* at 421. The Ninth Circuit, relying upon 28 U.S.C. § 1631, opted to treat the plaintiff's petition as if filed when submitted to the Eleventh Circuit clerk of the court. *Id.* at 423-24. In so doing, however, the Ninth Circuit explicitly stated that its decision "did not offend[] the dignity of a co-equal circuit," as in the First Circuit's opinion in *Howitt*, because the plaintiff's petition "was never actually filed in the Eleventh Circuit, [and] that court never considered or decided the transfer issue." *Id.* at 423. The Ninth Circuit stressed that it was "not called upon to review or overrule, directly or indirectly, a transfer decision of the Eleventh Circuit, or even a decision to dismiss." *Id. Rodriguez-Roman* is thus clearly distinguishable from the instant case, because here the District of New Jersey *did* decide to dismiss Plaintiff's case. As such, treating Plaintiff's claims against US-ABC as if they were transferred by the District of New Jersey would require this Court to review and essentially overrule the District of New Jersey's decision. The Court declines to do so, and instead holds–consistent with District of Columbia and D.C. Circuit law–that Plaintiff's filing of his New Jersey case does not equitably toll the statute of limitations for his claims against US-ABC. As such, the Court finds that Plaintiff's defamation claim is barred by the District of Columbia's one-year statute of limitations.

> ### 2. Plaintiff's Tortious Interference and Intentional Infliction of Emotional Distress Claims Are Intertwined With His Defamation Claim

US-ABC argues that the Court should also find the remainder of Plaintiff's claims time-barred because they are "inextricably intertwined" with his defamation claim as they "arise from the same allegedly defamatory letter" and purportedly resulted in the same harm: the loss of Plaintiff's alleged contractual opportunities in Algeria. US-ABC Reply at 2. The Court agrees with US-ABC as to Plaintiff's tortious interference and intentional infliction of emotional

distress claims.  Under D.C. law, causes of action for which a limitation is not specifically

prescribed by statute are covered by a residual three-year limitations period.  *See* D.C. Code § 12-

301(8).  However, "[w]hen a cause of action with no prescribed statute of limitations is

'intertwined' with one having a prescribed limitations period, District of Columbia courts apply

the prescribed period."  *Browning v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002).  A claim is

"intertwined" with another when it is "completely dependent" on or essentially the same as

another, and cannot survive as a separate, independent cause of action.  *See Thomas v. New*

*World Communications*, 681 F. Supp. 55, 73 (D.D.C. 1988).  The purpose of the intertwining

doctrine is to protect the consistency of the D.C. limitations policy by preventing claims turning

on identical elements of proof from being allowed under one label but not another.  *Johnson*, 451

F. Supp. 2d at 49 (citing *Mittleman v. United States*, 104 F.3d 410, 415 (D.C. Cir. 1997)).  In

particular, the one-year limitations period applied to defamation claims in the District of

Columbia "has also been imposed to govern actions for torts, like the intentional infliction of

emotional distress, that are dependent on 'the same personal interests infringed by the intentional

torts' expressly subject to  § 12-301(4)."  *Thomas*, 681 F. Supp. at 73 (quoting *Hanoch Tel-Oren*

*v. Libyan Arab Repub.*, 517 F. Supp. 542, 550 (D.D.C. 1981), *aff'd* 726 F.2d 774 (D.C. Cir.

1984)); *see also Mittleman*, 104 F.3d at 415-16.  The one-year statute of limitations for

defamation has also been applied to claims for tortious interference with business expectancy that

are intertwined with a defamation claim.  *Jankovic*, 494 F.3d at 1086.

     Here, Plaintiff's tortious interference and intentional infliction of emotional distress

claims are entirely dependent on, and thus intertwined with, his defamation claim.  Plaintiff's

defamation claim alleges that the September 2004 Correspondence included false statements that

Plaintiff had made significant misrepresentations, had an uneven history regarding monetary

obligations, and did not have business or personal relations with the individuals and entities

affiliated with US-ABC.  Am. Compl. ¶ 111.  Plaintiff's tortious interference claim alleges that,

as a result of the allegedly false September 2004 Correspondence, the Algerian Government

decided not to use Genesis for the development of the East-West Highway project, and further

alleges that Plaintiff suffered drastic financial consequences from that decision.  *Id.* ¶¶ 104-06.

Plaintiff's tortious interference claim is thus premised directly upon his allegation that the

September 2004 Correspondence contained false statements regarding Plaintiff, the linchpin of

his defamation claim.  Similarly, Plaintiff's intentional infliction of emotional distress claim

alleges only that Plaintiff suffered severe emotional distress upon reading the allegedly false

statements in the September 2004 Correspondence, *id.* ¶¶ 120-21, and is therefore dependent on

"the same personal interests" purportedly infringed by US-ABC's alleged defamation of Plaintiff.

*Thomas*, 681 F. Supp. at 73. Accordingly, the Court finds that Plaintiff's tortious interference and

intentional infliction of emotional distress claims are barred by the one-year statute of limitations

applicable to Plaintiff's defamation claim, and shall dismiss all three claims as a result.

The Court reaches a different conclusion, however, with respect to Plaintiff's fraud claim.

A claim is not considered intertwined with another where it is"pled as a clear and distinct tort."

*Saunders v. Nemati*, 580 A.2d 660, 661-62 (D.C. 1990); *see also Reaves-Bey v. Karr*, 840 A.2d

701, 704 (D.C. 2004) (failures of pleading and the intertwining doctrine "do not preclude

separate causes of action where the plaintiff has pled and established separate and distinct

claims") (citation omitted); *Mittleman*, 104 F.3d at 416.  Plaintiff argues that his fraud claim is

"pled as a clear and distinct tort" because it is premised upon certain portions of the September

2004 Correspondence that he describes as "fraudulent to plaintiff"–namely the representations

that Mr. Wilhelm was the Chairman of US-ABC and that US-ABC's Board had "officially

concluded" that Plaintiff had made significant misrepresentations–while his defamation claim is

premised upon other portions of the September 2004 Correspondence that he describes as

"defamatory as to plaintiff"–namely the suggestions that Plaintiff lied and was financially

irresponsible.  Pl.'s Opp'n at 17.

 To be sure, Plaintiff's distinction is not crystal clear in his Amended Complaint; as US-

ABC correctly notes, Plaintiff refers to some passages of the September 2004 Correspondence in

support of both his fraud and defamation claims.  US-ABC Reply at 8 (citing Am. Compl. ¶¶ 78,

111).  US-ABC is also correct that "the harm Plaintiff claims to have suffered -- the loss of

alleged contractual opportunities in Algeria -- is the same for all of Plaintiff's claims."  *Id.*

Nevertheless, construing Plaintiff's Amended Complaint in the light most favorable to Plaintiff

on US-ABC's motion to dismiss, and cognizant of the fact that courts may "consider

supplemental material filed by a pro se litigant in order to clarify the precise claims being urged."

*Greenhill*, 482 F.3d at 572, the Court concludes that Plaintiff's fraud claim is not clearly

intertwined with his defamation claim.  In particular, Plaintiff's fraud claim involves additional

elements beyond those required for his defamation claim, including Plaintiff's allegations that he

reasonably relied to his detriment upon the representations included in the September 2004

Correspondence.  As Plaintiff's fraud claim is arguably "pled as a clear and distinct tort," the

Court does not find it intertwined with his defamation claim, but rather concludes that it is

subject to the three-year residual limitations period.  *See* D.C. Code § 12-301(8).  Accordingly,

the Court declines to dismiss Plaintiff's fraud claim on statute of limitations grounds.

B.     *Plaintiff's Fraud Claim Fails to State a Claim Upon Which Relief May Be Granted*

Unfortunately for Plaintiff, the Court's conclusion that his fraud claim is not time-barred does not ultimately mean that he may proceed with that claim in this action.  Rather, even a cursory review of Plaintiff's fraud claim reveals that it fails to state a claim upon which relief may be granted, and therefore must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  In order to state a claim for fraud under District of Columbia law, Plaintiff must allege that US-ABC "(1) made a false representation of [fact] or wilfully omitted a material fact; (2) that [US-ABC] had knowledge of the misrepresentation or willful omission; (3) that [US-ABC] intended to induce [Plaintiff] to rely on the misrepresentation or willful omission; (4) that [Plaintiff] acted in reliance on that misrepresentation or willful omission; and (5) that [Plaintiff] suffered damages as a result of his reliance."  *Schiff v. AARP*, 697 A.2d 1193, 1198 (D.C. 1997)); *see also Hercules & Co., Ltd. v. Shama Restaurant Corp.*, 613 A.2d 916, 923 (D.C. 1992).  While US-ABC argues that Plaintiff's fraud claim fails on all of these fronts, the Court need only address the fact that Plaintiff's fraud claim fails to sufficiently allege that he suffered damages as a result of *his* reliance on the representations in the September 2004 Correspondence.

At the outset, the Court clarifies that insofar as Plaintiff's fraud claim is based upon the statements in the September 2004 Correspondence regarding Plaintiff himself (i.e., that he had made misrepresentations and had not timely complied with financial obligations), US-ABC is correct that Plaintiff cannot claim that he believed those representations or reasonably relied upon them because his Amended Complaint clearly alleges that the same representations were defamatory.  Plaintiff's Opposition, however, clarifies that while Plaintiff knew those statements were false, he "believed certain [other] statements to be true."  Pl.'s Opp'n at 22.  Specifically,

Plaintiff focuses upon the September 2004 Correspondence's representations that: (1) Mr.

Wilhelm was US-ABC's duly appointed chairman; (2) US-ABC had consulted with the

individuals affiliated with US-ABC; (3) those officials had denied to US-ABC that they had

business or personal relationships with Plaintiff; and (4) the US-ABC "officially concluded" that

Plaintiff had made misrepresentations without authorization. *Id.* at 17-25.[5]  In particular,

Plaintiff's Opposition vigorously argues that Mr. Wilhelm was not the legally and duly appointed

Chairman of US-ABC, a claim that US-ABC in turn strenuously disputes.

    The Court need not resolve the factual issue of whether Mr. Wilhelm was–pursuant to the

US-ABC bylaws–validly elected as Chairman, because the Court finds that Plaintiff does not

allege that he reasonably relied upon the September 2004 Correspondence and suffered damages

as a result.  Even if Plaintiff believes that the Correspondence included misrepresentations, the

only action that Plaintiff alleges *he* took in reliance upon those misrepresentations was "to hire a

lawyer, who threaten[ed] litigation against US-ABC and certain defendants, as part of plaintiffs

[sic] legal effort to ascertain the reason for the attack against [him]."  Am. Compl. ¶ 81.  As an

---

[5] Plaintiff's Amended Complaint also alleges that the September 2004 Correspondence falsely represented that the "US-ABC Board of Directors, drafted, wrote or <u>through an official vote approved of and directed and or empowered US-ABC Chairman</u> to execute and forward a September 14, 2004 (fraudulent) letter to plaintiff Jovanovic and Algeria Government."  Am. Compl. ¶ 78(f) (emphasis in original).  The Court notes that the September 14, 2004 letter is written by Mr. Wilhelm in his capacity as Chairman of US-ABC and that, while it uses the pronoun "we," it does not affirmatively state that the letter is authorized by the US-ABC Board of Directors rather than undertaken by Mr. Wilhelm in his capacity as Chairman.  As such, Plaintiff cannot allege that the September 14, 2004 letter fraudulently represented that Mr. Wilhelm was authorized to send the letter by the US-ABC Board.  Moreover, the Court again notes that in his New Jersey case, Plaintiff alleged just the opposite: that Mr. Wilhelm's September 14, 2004 "letter was in fact written above and beyond Chairman's prescribed duty . . . and in fact was written without official authorization from the US-ABC Board, to Chairman of US-ABC, and executed expressly in his capacity as Chairman of US-ABC to plaintiffs Genesis and Bob Jovanovic."  *See* US-ABC MTD, Ex. 1 (NJ SAC) ¶ 163.

initial matter, Plaintiff's description of his reasons for, and his actual hiring of, a lawyer

significantly undercuts his claim that he believed the representations in the letter.  As the D.C.

Circuit explained in *Resolution Trust Corporation v. District of Columbia*, 78 F.3d 606 (D.C.

Cir. 1996), "if the recipient knows that the assertion is false or should have discovered its falsity

by making a cursory examination, his reliance is clearly not justified and he is not entitled to

relief."  *Id.* at 609 (quoting Restatement (Second) of Contracts § 172 cmt.b); *see also Cadet v.*

*Draper & Goldberg, PLLC*, Civ. A. No. 05-2105 (JDB), 2007 WL 2893418, *12 (D.D.C. Sept.

28, 2007).  Plaintiff's claim that he hired a lawyer "to ascertain the reason for the attack against

him" certainly suggests that he did not actually believe the representations in the September 2004

Correspondence.

On an even more basic level, the only action Plaintiff alleges *he* took in reliance on the

September 2004 Correspondence was to hire a lawyer.  Am. Compl. ¶ 81.  According to Plaintiff,

that lawyer threatened US-ABC and other entities with litigation, *id.*, and, subsequently, the

Algerian Government took a number of steps to sever relationships with Genesis and Plaintiff

personally, *id.* ¶¶ 82-92, which resulted in Plaintiff's purported $6.2 billion worth of damages.

*Id.*  As the D.C. Circuit recently reiterated, however, "a plaintiff may recover for a defendant's

fraudulent statement only if the plaintiff took some action in reliance on that statement."

*Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 22-23 (D.C. Cir. 2008)

("*Fame Jeans*").  The analysis in *Fame Jeans* makes clear that Plaintiff fails to allege as much.

In *Fame Jeans*, the plaintiff claimed that the defendant had misrepresented to the United States

Patent and Trademark Office ("PTO") its intent to use a trademark in commerce.  *Id.* at 22.  The

D.C. Circuit rejected the plaintiff's fraud claim because the plaintiff "utterly fail[ed] to allege,

indeed contradict[ed], the element of reliance" where "[r]ather than suggesting its own reliance, [the plaintiff] sa[id] the PTO relied on [the defendant's] alleged misrepresentation." *Id.* at 22-23. Similarly, in the instant case, Plaintiff's allegations that the Algerian Government took actions detrimental to Plaintiff in reliance on the September 2004 Correspondence does not establish that Plaintiff *himself* acted in detrimental reliance on that Correspondence. Further, the *Fame Jeans* court concluded that the plaintiff failed to state a claim for fraud because its "only action in response to [the defendant's] statement of an intent to use the mark appears to have been opposing [the defendant's] application-an action that hardly suggests [the plaintiff] detrimentally relied on that statement." *Id.* at 23. Likewise, in this case, Plaintiff's only alleged action in response to the September 2004 Correspondence appears to have been hiring an attorney, an action that does not suggest detrimental reliance on the statements in the Correspondence.

Plaintiff cannot avoid this obvious problem with his fraud claim simply by alleging that the various hardships he purportedly suffered were the "proximate result" of "US-ABC's fraudulent representations" in the September 2004 Correspondence and "plaintiff's reliance on same fraudulent representations." *See* Am. Compl. ¶¶ 81-92. "The courts of the District of Columbia subscribe to the fundamental principle that a plaintiff in a tort action cannot recover without showing that the defendant's challenged conduct proximately caused plaintiff's injury." *Steele v. Isikoff*, 130 F. Supp. 2d 23, 34 (D.D.C. 2000) (CKK) (citing Prosser & Keaton, The Law of Torts § 41, at 263 (5th ed. 1984) and *Thompson v. Shoe World, Inc.*, 569 A.2d 187, 189 (D.C. 1990)). "A defendant's conduct is the proximate cause of a plaintiff's injury only if 'the injury is the natural and probable consequence of the negligence or wrongful act and ought to [have been] foreseen in light of the circumstances.'" *Id.* (quoting *Sanders v. Wright*, 642 A.2d 847, 849 (D.C.

1994)).  Plaintiff's "labels and conclusions" and " formulaic recitation," *see Bell Atl. Corp.*, 127 S. Ct. at 1964-65, simply cannot–and do not–establish that the various hardships Plaintiff suffered were the proximate result of the representations in the September 2004 Correspondence. If anything, Plaintiff's Amended Complaint alleges that Plaintiff's own hiring of a lawyer and threatening of litigation (as opposed to any action taken by US-ABC) set in motion the chain of events that ultimately resulted in the harms Plaintiff allegedly suffered.  Plaintiff's Amended Complaint simply does not allege that the harm he suffered was the "natural and probable consequence" of the representations in the US-ABC Correspondence.

As such, Plaintiff's fraud claim cannot survive US-ABC's motion to dismiss pursuant to Rule 12(b)(6), and the Court must dismiss it for failure to state a claim.  As the Court's previous dismissal of Plaintiff's remaining claims on statute of limitations grounds leaves Plaintiff without an actionable claim, the Court is compelled to conclude that this action must be dismissed in its entirety.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall GRANT [15] US-ABC's Motion to Dismiss. Specifically, the Court shall dismiss Plaintiff's defamation, tortious interference, and intentional infliction of emotional distress claims as time-barred, and shall dismiss Plaintiff's fraud claim for failure to state a claim.  Accordingly, the Court shall dismiss the instant case in its entirety.  An appropriate Order accompanies this Memorandum Opinion.

Date:   June 26, 2008

_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge

23